**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8    DEBORAH TAMBURRI,                          No. C-11-2899 EMC

9              Plaintiff,

10        v.                                    **ORDER GRANTING IN PART AND
                                                DENYING IN PART DEFENDANTS'
11   SUNTRUST MORTGAGE, INC., *et al.*,         MOTION TO DISMISS; GRANTING
                                                DEFENDANTS' MOTION TO STRIKE;
12             Defendants.                       DENYING PLAINTIFF'S MOTION FOR
     _____/       DEFAULT JUDGMENT: AND
13                                              GRANTING DEFENDANT'S MOTION
                                                TO SET ASIDE DEFAULT
14
                                                **(Docket Nos. 31, 54, 57)**
15

16        Plaintiff Deborah Tamburri initiated this lawsuit in state court, asserting claims for, *inter*

17   *alia*, violation of California Civil Code § 2923.5, violation of the Real Estate Settlement Procedures

18   Act ("RESPA"), unfair business practices, and wrongful foreclosure.  Defendants are Suntrust

19   Mortgage, Inc. ("Suntrust"), Wells Fargo Bank, NA ("Wells Fargo"), U.S. Bank National

20   Association ("US Bank"), Recontrust Company, NA ("Recontrust"), and Mortgage Electronic

21   Registration Systems, Inc. ("MERS").  Defendant Suntrust removed the case to federal court, and

22   the next day Ms. Tamburri moved for a temporary restraining order to enjoin the foreclosure sale of

23   her home.  This Court granted the motion and, after holding a hearing on June 28, 2011, granted the

24   preliminary injunction enjoining Defendants from foreclosing on her home.  Docket No. 33.  All

25   Defendants besides Wells Fargo and Recontrust have moved to dismiss Plaintiff's complaint and

26

27

28

strike her claim for punitive damages.[1]  Wells Fargo did not appear in this matter and default was entered against it on September 6, 2011.  Docket No. 45.  Plaintiff moved for default judgment against Wells Fargo, but Wells Fargo subsequently moved to set aside default.

Pending before the Court are Defendants Suntrust, MERS, and US Bank's motion to dismiss and strike,[2] Plaintiff's motion for default judgment, and Wells Fargo's motion to set aside default. Docket Nos. 31, 54, 57.  After considering the parties' submissions, oral argument, and supplemental briefing, and for the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss, **GRANTS** the motion to strike, **DENIES** the motion for default judgment, and **GRANTS** the motion to set aside default.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff's First Amended Complaint, Docket No. 21 ("FAC"),[3] raises nine causes of action against Defendants:

1.   Cal. Civ. Code § 2923.5 (against Suntrust, Wells Fargo, MERS, and Recontrust)

2.   11 U.S.C. § 2605 (RESPA) (against Suntrust, Wells Fargo, MERS, and US Bank)

3.   Cal. Bus. & Prof. Code § 17200 (against all Defendants)

4.   Fraud (against Suntrust and US Bank)

5.   Quiet Title (against all Defendants)

6.   Wrongful Foreclosure (against all Defendants)

7.   Negligence (against all Defendants)

8.   Accounting (against Suntrust, Wells Fargo, and US Bank)

9.   Declaratory Relief (against all Defendants)

---

[1]  Recontrust has filed a declaration of non-monetary status and has agreed to abide by any order or judgment issued by the Court regarding the Deed of Trust at issue in this matter.  *See* Docket No. 39.

[2]  For ease of reference, the Court refers to these three defendants simply as "Defendants" for purposes of the motion to dismiss.

[3]  The FAC is attached as Ex. A to a filing by Defendants.  The FAC was originally filed in state court.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

In her FAC, Plaintiff alleges as follows. Ms. Tamburri entered into a refinance mortgage with Suntrust in December of 2006. FAC ¶ 17. Suntrust has been her loan servicer. *Id.* ¶ 18. The Note and Deed of Trust ("DOT") executed in conjunction with that loan, Docket No. 11, Ex. 1, conveys title and power of sale to Jackie Miller as Trustee. It names Suntrust as the Lender and MERS as the Beneficiary. As Beneficiary, MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." DOT at 3.

In August 2008, Plaintiff defaulted on her loan. FAC ¶ 20. Suntrust recorded a Notice of Default on April 21, 2009, *id.* ¶ 21, which stated that it had complied with § 2923.5's requirement that it contact Plaintiff regarding alternatives to foreclosure, *id.* ¶ 22. However, Suntrust never contacted Plaintiff. *Id.* ¶ 23. Plaintiff sent documents to Suntrust numerous times, but she was only requested to re-send them. *Id.* ¶ 24. She sent a qualified written request ("QWR") in November 2009, but Suntrust's delayed response referenced the wrong account. *Id.* ¶¶ 25-26. The Notice of Default was then rescinded on January 13, 2010. *Id.* ¶ 27. Plaintiff learned at this time that Wells Fargo actually held the Note, but Wells Fargo was unable to confirm that information in response to Plaintiff's QWR. *Id.* ¶¶ 28-29. Plaintiff's subsequent attempts to contact Suntrust were also fruitless. *Id.* ¶¶ 30-31.

Another Notice of Default was filed on June 9, 2010, listing US Bank as the beneficiary and Recontrust as the Trustee, according to Plaintiff. *Id.* ¶ 32; Tamburri Decl., Docket No. 11, Ex. 6. It lists US Bank as the entity to contact regarding questions of payment and how to stop the foreclosure. On June 21, 2010, an Assignment of the Deed of Trust was recorded naming MERS as the grantor and US Bank as the grantee. FAC ¶ 33. It also substituted Recontrust as Trustee. Docket No. 9.

In response to a Notice of Trustee's Sale, Plaintiff filed for bankruptcy to stop the foreclosure. FAC ¶¶ 34-35. She also submitted additional QWRs to Suntrust, MERS, and US Bank,

United States District Court

For the Northern District of California

but only Suntrust responded. *Id.* ¶¶ 36-37. Suntrust's response asserted that Wells Fargo owns the Note.[4] *Id.* After Plaintiff was discharged from bankruptcy, she filed this action and, upon removal to this Court, sought a TRO enjoining the sale. *Id.* ¶¶38-39. The Court granted the TRO and, after a hearing, granted a preliminary injunction. Docket No. 33.

Defendants Suntrust, MERS, and US Bank moved the Court to dismiss all causes of action on July 1, 2011. Docket Nos. 31, 35 (US Bank's notice of joinder). Meanwhile, the Clerk entered default against Wells Fargo, which had failed to appear. After Plaintiff filed a motion for default judgment, Docket No. 54, Wells Fargo has now filed a motion to set aside default asserting no interest at all in the property. Docket No. 57. In addition, Recontrust filed a "Declaration of Non-Monetary Status" on August 2, 2011. Docket No. 39. Pursuant to Cal. Civ. Code § 2924l(d),[5] Recontrust will not participate in this action and will be bound by any order relating to the deed of trust.

## II.   DISCUSSION

A.   Motion to Dismiss

   1.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. F. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

---

[4] Suntrust counsel also represented to the Court during the preliminary injunction hearing that Wells Fargo was the owner of the note. *See* Transcript, Docket No. 34, at 21.

[5] Section 2924l(d) provides: "In the event that no objection is served within the 15-day objection period, the trustee shall not be required to participate any further in the action or proceeding, shall not be subject to any monetary awards as and for damages, attorneys' fees or costs, shall be required to respond to any discovery requests as a nonparty, and shall be bound by any court order relating to the subject deed of trust that is the subject of the action or proceeding."

United States District Court

For the Northern District of California

1   facts to state a claim to relief that is plausible on its face.'"  Id.  "A claim has facial plausibility when

2   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3   defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

4   *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to

5   a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

6   unlawfully."  *Id.*

        2.      Tender Rule

8       Defendants argue first that all of the claims should be dismissed because each of them is

9   based on an alleged wrongful foreclosure and Plaintiff has failed to provide or allege tender of the

10  indebtedness owed.  Mot. to Dismiss at 4-5.

11      "The California Court of Appeal has held that the tender rule applies in an action to set aside

12  a trustee's sale for irregularities in the sale notice or procedure and has stated that '[t]he rationale

13  behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures

14  been proper, any irregularities in the sale did not result in damages to the plaintiffs.'"  *Cohn v. Bank*

15  *of America*, No. 2:10-cv-00865 MCE KJN PS, 2011 WL 98840, at *9 (E.D. Cal. Jan. 12, 2011)

16  (quoting *FPCI RE-HAB 01 v. E & G Invs., Ltd.*, 207 Cal. App.3d 1018, 1021 (1989)).  As explained

17  in the Miller & Starr legal treatise,

> A challenge to the validity of the trustee's sale is an attempt to have
> the sale set aside and to have the title restored.  The action is in equity,
> and a trustor seeking to set the sale aside is required to do equity
> before the court will exercise its equitable powers.  Therefore, as a
> condition precedent to an action by the trustor to set aside the trustee's
> sale on grounds that the sale is voidable, the trustor must pay, or offer
> to pay, the secured debt, or at least all of the delinquencies and costs
> due for redemption, before an action is commenced or in the
> complaint.  Without an allegation of such a tender in the complaint
> that attacks the validity of the sale, the complaint does not state a
> cause of action.

24  Miller & Starr California Real Estate 3d § 10:212; *see also Arnolds Mgmt. Corp. v. Eischen*, 158

25  Cal. App. 3d 575, 578-79 (1984) ("It is settled that an action to set aside a trustee's sale for

26  irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of

27  the debt for which the property was security.  This rule is premised upon the equitable maxim that a

28  court of equity will not order that a useless act be performed.").

While the tender rule thus has application to the instant case in general terms, the Court should note that despite Defendants' suggestions, the tender rule is not without exceptions. First, there is a general equitable exception that "tender may not be required where it would be inequitable to do so.'" *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911) (recognizing that there are "cases holding that, where a party has the right to avoid a sale, he is not bound to tender any payment in redemption"; adding that, "[w]hatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale"); Miller & Starr California Real Estate 3d § 10:212 (same). In the instant case, Plaintiff has a fairly strong argument that tender – or at least full tender – should not be required because she is contesting the validity of the foreclosure in the first place. *See In re Salazar*, 448 B.R. 814, 819 (S.D. Cal. 2011) ("If U.S. Bank was not authorized to foreclose the [Deed of Trust] under Civil Code section 2932.5, the foreclosure sale may be void, and Salazar would not need to tender the full amount of the Loan to set aside the sale."); *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM (CWx), 2011 WL 2533029, at *9-10 (C.D. Cal. June 24, 2011) (declining to require tender in wrongful foreclosure action because it "would permit entities to foreclose on properties with impunity"). The Court has already required Plaintiff to post a bond of $2,000 per month pursuant to the Court's preliminary injunction order. Docket No. 33. This protects Defendants' ongoing interests and thus provides some equity in Plaintiff's favor. Plaintiff has shown a willingness and ability to pay during the pendency of this action.

Second, at least one federal court has explicitly held that the tender rule only applies in cases seeking to set aside a completed sale, rather than an action seeking to prevent a sale in the first place. *See, e.g.*, *Vissuet v. Indymac Mortg. Services*, No. 09-CV-2321-IEG (CAB), 2010 WL 1031013, at *2 (S.D. Cal. March 19, 2010) ("[T]he California 'tender rule' applies only where the plaintiff is trying to set aside a foreclosure sale due to some irregularity."). As the court held in *Vissuet*, "where a party has the right to avoid a sale, he is not bound to tender any payment in redemption." *Id*. at *3. While *Vissuet* noted an old California Supreme Court case applying the tender rule to a request to enjoin a foreclosure sale, *see Meetz v. Mohr*, 141 Cal. 667, 673 (1904),

1 that case is distinguishable on the grounds that the defendants had performed all of their obligations

2 and the plaintiff's only recourse to avoid a sale was to tender the amount owed. Here Plaintiff

3 alleges Defendants have not performed all their obligations.

4      Moreover, the California Court of Appeal noted in *Mabry* that the tender rule was designed

5 to apply to "a paradigm where, *by definition*, there is no way that a foreclosure sale can be avoided

6 absent payment of *all* the indebtedness," thus rendering "[a]ny irregularities in the sale [] necessarily

7 [] harmless to the borrower if there was no full tender." *Mabry v. Superior Court,* 185 Cal. App. 4th

8 208, 225 (2010). Such a "harmless error" standard is inapposite in a case brought before the

9 foreclosure sale has taken place. As the *Mabry* court noted, where statutes provide for certain

10 requirements before foreclosure, a prerequisite of full tender before one can initiate an action

11 challenging a foreclosing party's failure to satisfy those requirements would be nonsensical. *See id.*

12 ("[T]he whole point of section 2923.5 is to create a new, even if limited right, to be contacted about

13 the possibility of *alternatives* to full payment of arrearages. It would be contradictory to thwart the

14 very operation of the statute if enforcement were predicated on full tender. It is well settled that

15 statutes can modify common law rules.").

16      Third, where a sale is void, rather than simply voidable, tender is not required. Miller &

17 Starr California Real Estate 3d § 10:212 ("When the sale is totally void, a tender usually is not

18 required."); *see also Dimock v. Emerald Properties LLC*, 81 Cal. App. 4th 868, 876 (2000) (holding

19 that where the incorrect trustee had foreclosed on a property and conveyed it to a third party, the

20 conveyed deed was not merely voidable, but void). "The word void, in its strictest sense, means that

21 which has no force and effect . . . ." *Little v. CFS Serv. Corp.*, 188 Cal. App. 3d 1354, 1358 (1987)

22 (internal quotation marks omitted). In contrast, "[v]oidable is defined as [that] which may be

23 avoided" or set aside as a matter of equity. *Id.* (internal quotation marks omitted). The requirement

24 of tender for a voidable sale is "based on the theory that one who is relying upon equity in

25 overcoming a voidable sale must show that he is able to perform his obligations under the contract

26 so that equity will not have been employed for an idle purpose." *Id.* at 878 (emphasis omitted).

27      The state court's opinion in *Little* provides guidance as to what constitutes a void sale and

28 what constitutes a voidable one. According to the court, when a notice defect is at issue, it is not the

**United States District Court**
For the Northern District of California

1  extent of the defect that is determinative.  Rather, "what seems to be determinative" is whether the

2  deed of trust contains a provision providing for a conclusive presumption of regularity of sale.

3  *Little*, 188 Cal. App. 3d at 1359.  "Where there has been a notice defect and *no* conclusive

4  presumption language in the deed, the sale has been held void." *Id.* (emphasis in original).  In

5  contrast, "[w]here there has been a notice defect *and* conclusive presumption language in a deed,

6  courts have characterized the sales as 'voidable.'" *Id.* (emphasis added).   In the instant case, the

7  deed of trust provides no conclusive presumption language.  *See Ottolini v. Bank of America*, No.

8  C–11–0477 EMC, 2011 WL 3652501, at *4 (N.D. Cal. Aug. 19, 2011) (declining to dismiss

9  complaint on basis of tender with a similar deed of trust where "the Court cannot conclude, at least

10  at this juncture, that the sale is merely voidable wherein tender would be required").

11       These exceptions and qualifications counsel against a blanket requirement of the tender rule

12  at the pleading stage.  The Court thus declines to dismiss the complaint on the basis of her failure to

13  allege tender.

14       3.    Cal. Civ. Code § 2923.5

15       California Civil Code § 2923.5(a)(1) provides that "[a] mortgagee, trustee, beneficiary, or

16  authorized agent may not file a notice of default pursuant to Section 2924 until 30 days *after* initial

17  contact is made as required by paragraph (2) or 30 days *after* satisfying the due diligence

18  requirements as described in subdivision (g)."  Cal. Civ. Code § 2923.5(a)(1) (emphasis added).

19  Under paragraph (2), "[a] mortgagee, beneficiary, or authorized agent shall contact the borrower in

20  person or by telephone in order to assess the borrower's financial situation and explore options for

21  the borrower to avoid foreclosure." *Id.* § 2923.5(a)(2).  Under subdivision (g), "[a] notice of default

22  may be filed . . . when a mortgagee, beneficiary, or authorized agent has *not* contacted a borrower as

23  required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred

24  despite the due diligence of the mortgagee, beneficiary, or authorized agent." *Id.* § 2923.5(g)

25  (emphasis added).

26       In the instant case, Ms. Tamburri asserts that Defendants violated § 2923.5(a)(1) because

27  they failed to contact her prior to filing the notice of default on June 9, 2010.  FAC ¶ 32.  Defendants

28  argue that Ms. Tamburri has failed to state a claim under this cause of action because "SunTrust

**United States District Court**
For the Northern District of California

1    fully complied with" the statute.  Mot. to Dismiss at 5.  However, Defendants' motion to dismiss is

2    foreclosed by this Court's prior ruling granting a preliminary injunction.  *See* Order Granting PI,

3    Docket No. 33, at 4-6.  In its Order, the Court held that "Ms. Tamburri has raised at least a serious

4    question whether Suntrust violated § 2923.5." *Id.* at 5.  That there are competing declarations on the

5    merits of whether Defendants complied with § 2923.5, *see id.* at 5 ("Here, the Court is faced with

6    two competing declarations – one from Ms. Tamburri and one from Suntrust/Defendants – as to

7    whether Suntrust in fact contacted Ms. Tamburri as required by § 2923.5."), does not establish that

8    Plaintiff has failed to state a claim.  *Id.* ("[C]ontrary to what Suntrust contends, the fact of such a

9    declaration (even one signed under oath), while perhaps fulfilling one of the statutory requirements

10   under § 2923.5, does not bar the homeowner from disputing the facts asserted in the declaration.").

11   Rather, under 12(b)(6) standards, taking Plaintiff's allegation as true, Defendants' motion to dismiss

12   must be denied.

13        Defendants also argue that Plaintiff's claim cannot succeed because she has failed to tender.

14   However, as discussed above, this argument fails.

15        Accordingly, the Court **DENIES** the motion to dismiss as to the § 2923.5 claim.

16        4.    Real Estate Settlement Procedures Act ("RESPA") – 12 U.S.C. § 2605

17        Ms. Tamburri alleges that Defendants violated 12 U.S.C. § 2605(e) by either failing to

18   properly respond to Plaintiff's Qualified Written Requests ("QWRs") (in the case of Suntrust,

19   MERS, and US Bank), or by denying it has an interest in the loan (in the case of Wells Fargo).[6]

20   FAC ¶¶ 43-48; Opp. At 12-14.

21        "Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home

22   purchasing process." *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002).  It

23   sought to implement significant reforms in the real estate settlement process which "are needed to

24   insure that consumers throughout the Nation are provided with greater and more timely information

25   on the nature and costs of the settlement process."  12 U.S.C. § 2601.  RESPA applies not only to

26

27   ─────────────

28        [6] The Court does not address the argument specific to Wells Fargo since it is not joined to
     this motion to dismiss.

the actual settlement process, however, but also to the servicing of federally related mortgage loans.

*See, e.g.*, *id*. § 2605(e) (imposing requirements on servicers of federally related mortgage loans).

Section 2605(e) is titled "[d]uty of loan servicer to respond to borrower inquiries." It

provides in relevant part as follows.

> (1) Notice of receipt of inquiry
> (A) In general. If any servicer of a federally related mortgage
> loan receives a qualified written request from the borrower (or
> an agent of the borrower) for information relating to the
> servicing of such loan, the servicer shall provide a written
> response acknowledging receipt of the correspondence within
> 20 days . . . unless the action requested is taken within such
> period.
> (B) Qualified written request. For purposes of this subsection,
> a qualified written request shall be a written correspondence,
> other than notice on a payment coupon or other payment
> medium supplied by the servicer, that –
>> (i) includes, or otherwise enables the servicer to
>> identify, the name and account of the borrower; and
>> (ii) includes a statement of the reasons for the belief of
>> the borrower, to the extent applicable, that the account
>> is in error or provides sufficient detail to the servicer
>> regarding other information sought by the borrower.

12 U.S.C. § 2605(e).  The terms "servicer" and "servicing" are defined in § 2605(i). "The term

'servicer' means the person responsible for servicing of a loan (including the person who makes or

holds a loan if such person also services the loan)." *Id*. § 2605(i)(2). "The term 'servicing' means

receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . .

and making the payments of principal and interest and such other payments with respect to the

amounts received from the borrower as may be required pursuant to the terms of the loan." *Id*. §

2605(i)(3).

Under § 2605(e), a loan servicer has an obligation to act when it receives a QWR from the

borrower or borrower's agent "for information relating to the servicing of [the] loan." 12 U.S.C. §

2605(e)(1)(A). As noted above, "'servicing' means receiving any scheduled periodic payments from

a borrower . . . and making the payments of principal and interest and such other payments with

respect to the amounts received from the borrower."  *Id*. § 2605(i)(3).

United States District Court

For the Northern District of California

Defendants argue that Plaintiff's claim should be dismissed for two reasons. First, Defendants claim that Plaintiff's letters are not QWRs because they do not relate to the servicing of the loan as required under § 2605; rather, they merely ask for documentation as to who owns the loan. Mot. to Dismiss at 9; *see Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) ("That a QWR must address the servicing of the loan, and *not its validity*, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan.") (emphasis added). Second, Defendants assert that Plaintiff fails to allege damages, and that she cannot have been harmed by failing to learn the identity of the holder of her note because Defendants are under no obligation to produce the note under California law. *See* Mot. to Dismiss at 6. Because RESPA does not provide for injunctive relief, *see Rivera v. BAC Home Loans Serv., L.F.*, No. C 10-02439 RS, 2010 U.S. Dist. LEXIS 80294, at *12-13 (concluding that RESPA claims could not stop a foreclosure because RESPA did not have as a remedy injunctive relief), actual damages and, in the case of a pattern or practice, statutory damages, are the only remedy. *See* 12 U.S.C. § 2605(f)(1).

With respect to the first argument, it is unclear whether each of the purported QWRs indeed qualify as QWRs. Some of the requirements Defendants seek to impose (*e.g.*, the need to "attach a date of receipt", *see* Mot. to Dismiss at 9), are not required by the statute. *See* 12 U.S.C. § 2605(e). In addition, it does not appear that the Court has copies of all of Plaintiff's alleged QWRs.[7] However, with regard to the letters the Court has in its possession, Plaintiff requested "documents and documentation supporting [] collection and enforcement efforts," including "documents in support of the enforcement of [Ms. Tamburri's] Promissory Note . . . and the Deed of Trust." Docket 11-7. The letter also requests a list of all assignments, "as well as any reporting of this account internally and to credit bureaus." *Id*. While some of these requests appear to go to the validity, rather than the servicing, of the loan, they also arguably request information as to how the

---

[7] Ms. Tamburri's declaration in support of her TRO request, Docket No. 11, attaches her attorney's letters to Suntrust, MERS, and US Bank in March of 2011. Ex. 7. However, while the same declaration attaches Suntrust and Wells Fargo's responses to Plaintiff's letters in December 2009 and February 2010, respectively, it does not attach the letters she sent. *See* Exs. 4 (Suntrust), 5 (Wells Fargo).

United States District Court

For the Northern District of California

1   servicer has handled her account.  *Cf. Harris v. Am. Gen. Finance, Inc.*, No. Civ.A. 02-1395-MLB,

2   2005 WL 1593673, at *3 (D. Kan. July 6, 2005) (finding letter not a QWR where it provided "no

3   statement that the account is in error, nor does the letter request any information from the lender,"

4   but rather simply complained about collection practices); *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d

5   885, 901 (N.D. Ill. 2000) (finding letter not a QWR where "the letter sought information about the

6   validity of the loan and mortgage documents, but made no inquiry as to the status of the [] account

7   balance"); *Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1014 (N.D. Cal. 2009)

8   (Chen, J.) (finding a letter not a QWR where plaintiff had "simply disputed the validity of the loan

9   and not its servicing (*e.g.*, not whether Saxon had failed to credit her for payments she made

10  pursuant to the loan")).[8]  Given the relatively broad language included in the statute (providing that

11  one can make an inquiry describing the "information sought by the borrower" if it is "relating to the

12  service of the loan"), Plaintiff's letter may suffice, at least for purposes of Rule 12(b)(6).

13          Even construing Plaintiff's letters as QWRs, however, Plaintiff has not alleged any actual

14  damages resulting from Defendants' failure to respond to them.  *Cf. Hutchinson v. Delaware Sav.*

15  *Bank FSB*, 410 F. Supp.2d 374, 383 (D.N.J. 2006 (finding harm alleged where plaintiff could not

16  obtain loan due to wrongful reporting of delinquent loan to credit bureaus).  Her statement that she

17  was harmed by not knowing the true owner of Note and "whether her payments have been properly

18  applied," FAC ¶ 47, is insufficient to allege the pecuniary harm required by the statute.  *See Allen v.*

19  *United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (dismissing RESPA

20  claim with prejudice where plaintiff alleged only harm as a result of foreclosure and did not directly

21  "attempt[] to show that the alleged RESPA violations caused any kind of pecuniary loss"); *Lal v.*

22  *American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) ("[T]he Court rejects,

23  as a matter of law, Plaintiffs' argument that they were harmed by not being able to name the real

24  _____

25          [8]  Defendants cite another case in support of this argument.  *Pettie v. Saxon Mortg. Services*,
     No. C08-5089RBL, 2009 WL 1325947, at *2 (W.D. Wash. May 12, 2009) (finding letter not a QWR

26  where it did not provide "reasons for their dispute of the amount due on the loan").  However, *Pettie*
     appears to rest on a misreading of § 2605(e) insofar as it appears to require both a statement of

27  reasons the account may be in error and a description of information sought by the borrower.
     Contrary to *Pettie*, the statute does not appear to require both by its plain language; rather, the

28  statute defines a QWR as a letter that either includes a statement of reasons the borrower thinks the
     account is in error, or provides sufficient detail regarding the information sought by the borrower.

1   party of interest in this suit. Under RESPA, a borrower may not recover actual damages for

2   nonpecuniary losses.").  Plaintiff has not alleged that she attempted to make a payment that was not

3   properly credited, thus leading to Plaintiff's default.  Therefore, the Court finds that dismissal of the

4   RESPA claim is appropriate on this ground.

5          The Court also notes some Defendants, including US Bank, do not appear to be the servicers

6   of her loan.  *See* Joinder at 1; 12 U.S.C. § 2605(e)(1) (imposing duty only on servicers of loan); FAC

7   ¶ 18 (asserting that Suntrust has been the servicer since 2006).

8          Accordingly, the Court **GRANTS** the motion to dismiss the RESPA cause of action.  The

9   dismissal is without prejudice.

10         5.     Fraud

11         Defendants Suntrust and US Bank argue that Plaintiff has failed to satisfy the Rule 9(b)

12  requirement that "a party must state with particularity the circumstances constituting fraud or

13  mistake."  Specifically, Defendants argue that Plaintiff "pleads almost no facts in support of her

14  fraud claim," including the specifics of dates, times, content of alleged misrepresentations, and other

15  details.  Mot. to Dismiss at 12.  In addition, they argue that Plaintiff provides no allegations of

16  damages, *id.*, no allegations of justifiable reliance, *id.* at 13, and no allegations of exclusive

17  knowledge by Suntrust of material facts not known to Plaintiff, *id.*

18         "[T]he required elements for claims for fraud [are]: (a) misrepresentation (false

19  representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to

20  defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *In re Estate of*

21  *Young*, 160 Cal. App. 4th 62, 79 (2008) (internal quotation marks omitted).

22         Plaintiff's FAC falls well short of this mark.  The FAC includes only two substantive

23  paragraphs regarding the fraud allegations.  It points only to general assertions the Suntrust has

24  made in "numerous documents" regarding its purported ownership of Plaintiff's Note, and later

25  Wells Fargo's purported ownership of the loan, which seem at odds with other information in

26  Plaintiff's possession regarding the latest assignment of the loan to US Bank.  FAC ¶ 56.  The only

27  other allegations in the fraud section of the FAC relate to Plaintiff's claimed detrimental reliance,

28  FAC ¶ 57 (alleging reliance based on Plaintiff continuing to contact Suntrust with questions about

**United States District Court**
For the Northern District of California

1   her loan, rather than contacting Wells Fargo and/or US Bank), and harm, *id.* (alleging harm if Wells

2   Fargo or US Bank holds the Note because Plaintiff has been unable to speak with them about her

3   options to avoid foreclosure).

4         This is insufficient to describe any elements of fraud.  While some portions of Plaintiff's

5   FAC provide some of the dates and details presumably at issue, *e.g.*, FAC ¶ 32 (Notice of Default

6   names US Bank as beneficiary); ¶ 33 (describing assignment of Deed of Trust naming US Bank as

7   grantee); ¶ 37 (Suntrust's letter naming Wells Fargo as the holder of the Note), many of the other

8   allegations in the FAC are too general to support a fraud claim, *e.g.*, FAC ¶ 28 ("Around this time,

9   the plaintiff was informed the Wells Fargo was the actual holder of the Note."); ¶ 30 (describing

10  numerous unsuccessful attempts to contact Suntrust).  *See Kearns v. Ford Motor Co.*, 567 F.3d

11  1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by 'the who, what, when,

12  where, and how' of the misconduct charged.") (quotations omitted); *Vess v. Ciba-Geigy Corp. USA*,

13  317 F.3d 1097, 1106 (9th Cir. 2003) ("The plaintiff must set forth what is false or misleading about

14  a statement, and why it is false.") (quotations omitted); *Kelley v. Mortgage Electronic Registration

15  Systems, Inc.*, 642 F. Supp. 2d 1048, 1056 (N.D. Cal. 2009) ("Plaintiffs' fraud claims are not

16  sufficiently specific.  Plaintiffs must allege each of the elements of fraud.  In particular, they must

17  allege what the misrepresentations were, who made them, when, where, and why plaintiffs' reliance

18  on these statements was reasonable."); *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F. Supp.

19  1053, 1056 (N.D. Cal. 1991) ("[P]laintiff must allege the time, place, and contents of the alleged

20  fraud.").

21        Moreover, Plaintiff has not pled facts establishing reliance on such fraud.  If anything, it

22  appears that Plaintiff has *not* relied on Defendants' statements, as she has contacted all parties

23  requesting information as to who owns her loan and has challenged foreclosure on this basis.  As for

24  the harm, that a particular defendant may hold the note does not cause Plaintiff harm if the servicer

25  is available to discuss options to avoid foreclosure.[9]  Finally, even assuming any of the

26  misrepresentation, reliance, or damages elements are adequately pled, Plaintiff provides no

27  ─────────────

28         [9]  In addition, Plaintiff has not named Wells Fargo as a defendant in her fraud claim, so any
   misconduct by it could not form the basis of her claim to harm.

14

United States District Court

For the Northern District of California

allegations, to any level of specificity, regarding scienter or intent.  *See* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").  Accordingly, the Court **GRANTS** the motion to dismiss the fraud claim without prejudice.

　　　　6.　　Wrongful Foreclosure

In the instant case, Ms. Tamburri alleges a cause of action for wrongful foreclosure because, although Suntrust has identified Wells Fargo as the owner of her loan, Wells Fargo has no right to foreclose on the real property at issue because the last recorded assignment of the deed of trust reflects that US Bank is the beneficiary, and not Wells Fargo.  *See* FAC ¶¶62-63.  More specifically, she alleges that Defendants violated Cal. Civ. Code § 2932.5 because they do not have the power of sale and have not demonstrated "legal standing to foreclose upon the subject property."  FAC ¶ 64.  In addition, Plaintiff alleges that US Bank, the entity that issued the Notice of Default to Plaintiff on June 9, 2010, acted before it had legal authority to do so pursuant to an assignment of the deed of trust.  FAC ¶ 65.

As a preliminary matter, to the extent that Plaintiff's wrongful foreclosure claim is predicated on the foreclosing parties' failure to physically produce the note, Defendants are correct that she cannot state a viable claim on the basis of that theory.  California law does not require a foreclosing entity to produce the note.  *See, e.g.*, *Wootten v. BAC Home Loans Servicing, LLP*, No. 10-4946 LHK, 2011 WL 500067, at *7 (N.D. Cal. Feb. 8, 2011) ("[U]nder California law, there is no requirement that a trustee produce the original promissory note prior to a non-judicial foreclosure sale.") (citations omitted).

Defendants next argue that Plaintiff has failed to state a claim for wrongful foreclosure under § 2932.5 because it is not applicable to her loan as the "deed of trust gives the power of sale not to a 'mortgagee or other encumbrancer,' but to the trustee."  Mot. to Dismiss at 15.  Section 2932.5 provides as follows:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.  *The power of sale may be exercised by the assignee if the assignment is acknowledged and recorded.*

**United States District Court**
For the Northern District of California

1  Cal. Civ. Code § 2932.5 (emphasis added).

2  As the Court already foreshadowed in its Preliminary Injunction Order, there is an ongoing

3  debate among courts as to whether 2932.5 applies to deeds of trust and not just mortgages.  As the

4  Court previously noted, multiple courts have held that § 2932.5 applies only to mortgages and not to

5  deeds of trust.  *See, e.g.*, *Selby v. Bank of Am., Inc.*, No. 09cv2079 BTM (JMA), 2010 U.S. Dist.

6  LEXIS 139966 (S.D. Cal. Oct. 27, 2010); *Parcray v. Shea Mortg., Inc.*, No. CV-F-09-1942

7  OWW/GSA, 2010 U.S. Dist. LEXIS 40377 (E.D. Cal. Apr. 23, 2010); *Roque v. Suntrust Mortg.,*

8  *Inc.*, No. C-09-00040 RMW, 2010 WL 54896 (N.D. Cal. Feb. 10, 2010); *Gomes v. Countrywide*

9  *Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011).  Furthermore, *Stockwell v. Barnum*, 7 Cal. App.

10  413 (1908), supports Defendants' position.  And most recently, a California Court of Appeal opinion

11  reaffirmed *Stockwell*, holding that § 2932.5 does not apply to deeds of trust.  In *Calvo v. HSBC*, 199

12  Cal. App. 4th 118 (2011), the Second District Court of Appeal held that "[t]he holding of *Stockwell*

13  has never been reversed or modified in any reported California decision in the more than 100 years

14  since the case was decided."  *Id.* at 123.  The court found "no merit" to Plaintiff's argument that her

15  "foreclosure sale was void and should be set aside because HSBC Bank invoked the power of sale

16  without complying with the requirement of section 2932.5 to record the assignment of the deed of

17  trust from the original lender to HSBC Bank."  *Id.* at 121.[10]

18  Defendants also cite in support of their position *Gomes v. Countrywide Home Loans, Inc.*,

19  192 Cal. App. 4th 1149 (2011), which merits more complete analysis.  *Gomes* held that California

20  Civil Code § 2924(a)(1)[11] does not "provide for a judicial action to determine whether the person

21  initiating the foreclosure process is indeed authorized."  *Id.* at *1155.  But the issue in *Gomes* was

22  not whether the wrong entity had initiated foreclosure; rather, the issue was whether the company

23  selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by the owner

24  _____

25  [10]  Defendants also cite to *Ferguson v. Avelo*, 195 Cal. App. 4th 1618 (2011), and US Bank
discusses it extensively in its joinder to the motion to dismiss.  However, it was ordered de-

26  published by the California Supreme Court, and is not citable under the California Rules of Court.
The same is true of *Robinson v. Onewest Bank*, 2011 Cal. App. Unpub. LEXIS 6048 (Aug. 11,

27  2011), on which Defendants also attempt to rely.

28  [11]  Cal. Civ. Code § 2924(a)(1) allows a "trustee, mortgagee, or beneficiary, or any of their
authorized agents" to initiate the foreclosure process.

United States District Court

For the Northern District of California

1   of the promissory note.  *See id.* at 1155 (rejecting the argument that a plaintiff may test whether the

2   person initiating the foreclosure has the authority to do so; "[t]he recognition of the right to bring a

3   lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the

4   noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the

5   possibility of lawsuits filed solely for the purpose of delaying valid foreclosures").  Notably, the

6   *Gomes* court distinguished a case cited by the plaintiff precisely because, in that case, "the plaintiff

7   alleged wrongful foreclosure on the ground that assignments of the deed of trust had been

8   improperly backdated, and thus the wrong party had initiated the foreclosure process.  No such

9   infirmity is alleged here."  *Id.*  Thus, *Gomes* explicitly avoided the scenario pled here, in which "the

10   plaintiff's complaint identified a *specific factual basis* for alleging that the foreclosure was not

11   initiated by the correct party."  *Id*. at 1156.  *Gomes* is therefore inapposite.

12         As this Court noted in its previous Order, there is also authority that favors Ms. Tamburri.

13   For example, in *In re Salazar*, 448 B.R. 814 (S.D. Cal. 2011), a federal bankruptcy court disagreed

14   with the above authority based on state cases, indicating that formal distinctions between mortgages

15   and deeds of trust were "outdated" and that trustors were deserving of the same protection as

16   mortgagors under California law.  *Id.* at 821.  Moreover, as this Court previously stated, "given its

17   age, *Stockwell* is arguably an "outdated" opinion that improperly credits the formal distinctions

18   between mortgages and deeds of trust, and *Strike v. Trans-West Discount Corp.*, 92 Cal. App. 3d 735

19   (1979), a case of more recent vintage, suggests to the contrary."  Order at 7 (citing *Strike*, 92 Cal.

20   App. 3d at 743 (stating that "[a] recorded assignment of note and deed of trust vests in the assignee

21   all of the rights and interests of the beneficiary, including authority to exercise any power of sale

22   given the beneficiary"; citing in support the predecessor statute to § 2932.5)).

23         Most recently, the Bankruptcy Court in *In re Cruz*, No. 11-1133-MM13, 2011 WL 3583115

24   (S.D. Cal. Aug. 11, 2011), held that § 2932.5 requires an assignee trust deed beneficiary to record its

25   interest before it non-judicially forecloses.  *Id*. at *5.  The court thoroughly distinguished the

26   California Court of Appeal decisions holding to the contrary, reasoning that the plain language and

27   legislative history of the statute applied to deeds of trust, *id*. at *5, and the authority on which those

28   cases relied (*Stockwell*) was outdated, *id*. at *6.  Moreover, the court explained that California law

United States District Court

For the Northern District of California

1  has abrogated the distinction between mortgages and deeds of trust where necessary to "protect a

2  borrower's rights." *Id*. at *7 (citing *Bank of Italy v. Bentley*, 217 Cal. 644, 657-58 (1933) ("The

3  economic function of the two instruments [mortgages and deeds of trust] would seem to be identical.

4  Where there is one and the same object to be accomplished, important rights and duties of the parties

5  should not be made to depend on the more or less accidental form of the security."). Thus, the court

6  concluded that to shelter beneficiaries, who are the real parties in interest under a deed of trust, from

7  the recording requirements of 2932.5, would be to "elevate[] form over substance." *Id*.

8  Accordingly, the fact that the beneficiary of record was not the foreclosing beneficiary gave "rise to

9  suspicion that the sale was not authorized," which was "the very risk that § 2932.5 was intended to

10 safeguard." *Id*. at *8 (citing *Stockwell*, 7 Cal. App. At 416-17 ("[T]he record should correctly show

11 the authority of a mortgagee or his assigns to sell.")).

12        Other courts have allowed wrongful foreclosure actions to proceed under similar reasoning,

13 but without relying on § 2932.5. Regardless of whether § 2932.5 applies, Plaintiff may still assert

14 that only an authorized entity may initiate foreclosure. *See* Cal. Civ. Code § 2924(a)(1) (requiring

15 the notice of default to be issued by the "trustee, mortgagee, or beneficiary, or any of their

16 authorized agents"). For example, the court in *Sacchi v. Mortgage Electronic Registration Systems,*

17 *Inc.*, No. CV 11–1658 AHM (CWx), 2011 WL 2533029, at *9-10 (C.D. Cal. June 24, 2011), held

18 Plaintiff had stated a wrongful foreclosure claim against an entity that had "no beneficial interest in

19 the Deed of Trust when it acted to foreclose on Plaintiffs' home." The court expressed incredulity

20 when confronted with counsel's arguments—similar to those made here—suggesting that "someone

21 . . . can seek and obtain foreclosure regardless whether he has established the authority to do so." *Id*.

22 at *7. The court asked, if defendants' argument that "the recording and execution date is

23 inconsequential and in no way connotes that the DOT's beneficial interest was transferred at that

24 precise time" was accepted, "how is one to determine whether (and when) the purported assignment

25 was consummated? How could one ever confirm whether the entity seeking to throw a homeowner

26 out of his residence had the legal authority to do so?" *Id*. at *6. The court thus distinguished *Gomes*

27 and held that, since the plaintiffs had alleged facts suggesting the foreclosing party had no legal

28 interest in the deed at the appropriate time, there was a valid cause of action. *Id*. at *8. Hence, the

United States District Court
For the Northern District of California

failure to record an assignment of the deed of trust, even if it were not fatal under § 2932.5, opens the door (as an evidentiary matter) to the claim that there is no valid assignment held by the foreclosing party.

In *Ohlendorf v. Am. Home Mortg.*, No. Civ. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098, at *21-24 (E.D. Cal. March 31, 2010), the court held that, while "proof of possession of the note" is not necessary to "legally institute non-judicial foreclosure proceedings against plaintiff," Plaintiff still had a viable claim for wrongful foreclosure insofar as he argued that defendants "are not the proper parties to foreclose." *Id*. at *22. The Court noted that because the assignments of interest were recorded after the new beneficiary had already issued the Notice of Default, and were simply backdated to be effective before the Notice of Default was issued, Plaintiff could argue the backdated assignments were not valid. *Id*. at *23. While the Court stated that "California law does not require beneficiaries to record assignments, *see* California Civil Code section 2934,[12] the process of recording assignments with backdated effective dates may be improper, and thereby taint the notice of default." *Id*.

Finally, in *Castillo v. Skoba*, the court granted a preliminary injunction where it concluded that "Plaintiff is likely to succeed on the merits of his claim that neither Aurora nor Cal-Western had authority to initiate the foreclosure sale at the time the Notice of Default was entered." No. 10cv1838 BTM, 2010 WL 3986953, at*2 (S.D. Cal. Oct. 8, 2010). The Court concluded that because the assignments appeared to have been backdated, the "[d]ocuments do not support a finding that either Cal-Western was the trustee or Aurora was the beneficiary on May 20, 2010 when the Notice of Default was recorded." *Id.* The court thus concluded that "the Notice of Default appears to be void *ab initio*." *Id*.

---

[12] Section 2934 provides, in relevant part: "Any assignment of a mortgage and any assignment of the beneficial interest under a deed of trust may be recorded, and from the time the same is filed for record operates as constructive notice of the contents thereof to all persons."

**United States District Court**

For the Northern District of California

1    As in *Sacchi*, *Ohlendorf*, and *Castillo*, in the instant case, there is a backdating issue.[13]

2    While MERS' Substitution of Trustee (Recontrust) and Assignment of Deed (US Bank) is dated

3    June 8, 2010, *see* Docket No. 9, the notary public signature date is June 10, 2010, the day *after*

4    Recontrust recorded the notice of default, and the assignment was not recorded until June 21, 2010.

5    The Notice of Default, by contrast, was dated June 8, 2010, and recorded June 9, 2010.  Thus,

6    insofar as Plaintiff contends that the Notice of Default (NOD) is invalid due to a lack of authority to

7    foreclose, Plaintiff's claim is similar to those in *Sacchi* and *Ohlendorf*.[14]  At the time of the NOD,

8    there had been no assignment.

9    Similar to *Ohlendorf*, Defendants in this case respond that a *recorded* assignment is

10    unnecessary.  *See* Def's Supp. Memo at 5.  Nevertheless, in the instant case, the assignment itself

11    still took place after the Notice of Default was issued, and Plaintiff alleges the foreclosing parties

12    had no actual authority to foreclose.  *See Robinson v. Countrywide Home Loans, Inc.*, 199

13    Cal.App.4th 42, 46 (2011) (holding that while a borrower may not preemptively challenge the

14    standing of a foreclosing entity, "a borrower who believes that the foreclosing entity lacks standing

15    to do so . . . can seek to enjoin the trustee's sale or to set the sale aside"); *Cf. Selby v. Bank of*

16    *America, Inc.*, No. 09cv2079 BTM(JMA), 2010 WL 4347629, at *4 (S.D. Cal. Oct. 27, 2010)

17    (granting motion to dismiss where the plaintiff's only claim was that the foreclosing party did not

18    have a recorded assignment in place under § 2932.5, which the court found inapplicable, but where

19    the plaintiff "does not allege that the Bank of New York was not actually the beneficiary, nor does

20    the FAC allege that Aztec was not an authorized agent of the beneficiary or trustee.").

21

22

23    [13]  Defendants argue in their supplemental briefing that Plaintiff does not allege any backdating.  However, Plaintiff does allege that "US Bank recorded a Notice of Default . . . before it had the legal right to do so."  FAC ¶ 65.  Plaintiff alleges that the Notice is consequently invalid. This is sufficient to raise a question as to the validity of the assignment and the notion that the foreclosing parties did not have authority to issue the Notice.

24

25

26    [14]  In addition, Suntrust's subsequent representations to both Plaintiff and the Court that Wells Fargo owns her Note, *see* Docket No. 11, Ex. 8 (Suntrust's March 30, 2011 letter to Plaintiff), coupled with US Bank's alleged representations to Plaintiff that it did *not* own her loan, *see* FAC ¶ 63; Tamburri Decl., Docket No. 11, ¶ 13, despite the fact that it is recorded as the assignee and listed on the Notice of Default as the entity to contact to avoid foreclosure, raise questions as to whether the current recorded Substitution of Trustee and Assignment of Deed is up-to-date.

27

28

**United States District Court**
For the Northern District of California

1    In its supplemental brief, Defendants now claim that Recontrust, in issuing the Notice of

2   Default, was merely acting as agent for MERS, the beneficiary at the time the Notice was issued.

3   Def's Supp. Memo at 1-2.  Thus, according to Defendants, Recontrust issued the Notice of Default

4   in its capacity as agent for MERS rather than as Trustee, and later acted as Trustee after it was so

5   substituted.  *Id.*  However, Defendants' proffered explanation ignores the fact that US Bank appears

6   to be listed as the beneficiary on the Notice, despite the fact that US Bank did not yet have any

7   interest in the deed.  Indeed, the Notice instructed Plaintiff to contact US Bank to arrange for

8   payment, despite the fact that US Bank apparently (and as alleged) had no right to such payment.

9   Thus, assuming Recontrust was acting as an agent, it is unclear on behalf of what entity it was acting

10   and whether said entity had any interest in the property.

11    To the extent that it may be plausible that US Bank was a lender or loan servicer, rather than

12   a beneficiary, US Bank has explicitly denied such a role.  *See* Joinder, Docket No. 35, at 1 ("U.S.

13   Bank has neither acted as lender or loan servicer with respect to plaintiff's loan.").  Indeed, it also

14   appears to be contrary to US Bank's Joinder to the motion to dismiss which, while not entirely clear,

15   appears to accept Plaintiff's allegation that it – US Bank – initiated the notice of default.  *See*

16   Joinder at 2-3.

17    US Bank takes issue with Plaintiff's contention that MERS could not assign the loan to US

18   Bank, but it does not dispute her contention that US Bank did in fact act as the beneficiary in issuing

19   the Notice of Default along with Recontrust.  *See id.* ("On June 8, 2010, MERS substituted

20   ReconTrust as Trustee . . . [and] assigned beneficial interest in the Deed of Trust to [US Bank].  That

21   same day, after ReconTrust had been substituted as trustee by MERS, ReconTrust recorded a notice

22   of default.  Here, plaintiff is attacking MERS' ability to assign her loan to U.S. Bank.").[15]  In

23   addition, while the Notice does list MERS, it is unclear whether it lists MERS as the current

24   beneficiary or merely as the original beneficiary under the Deed of Trust, as a way of describing the

25   original deed under which the foreclosing parties are acting.  The Notice makes no explicit

26

27    [15]  As noted above, US Bank's chronology appears to be incorrect because the documents
28   indicate that the Notice of Default was actually issued before the assignment and substitution, not
after.

United States District Court
For the Northern District of California

1   representation that MERS was still the current beneficiary under which Recontrust acted as agent.[16]

2   Thus, on the basis of the current record, Defendants' new argument fails to render the Notice of

3   Default sufficiently clear to defeat as a matter of law Plaintiff's claim that the wrong party initiated

4   foreclosure, and that US Bank wrongfully asserted an interest in the property which it did not have.

5   Any claim that Recontrust and US Bank were operating as authorized agents of the appropriate

6   parties would require a factual inquiry not suited for a 12(b)(6) motion.  *See, e.g.*, *Castillo v. Skoba*,

7   No. 10cv1838 BTM, 2011 WL 92991, at *1 (S.D. Cal. Jan. 7, 2011) (discussing party's claim that it

8   was an authorized agent pursuant to a master servicing agreement with the lender, but concluding

9   that "[w]ithout a copy of this agreement, the Court is unwilling to definitively conclude that Aurora

10  was an authorized agent of the mortgagee and thus had authority to enter the Notice of Default at

11  issue in this case").

12       Assuming the wrong party initiated foreclosure, Defendants nonetheless contend that

13  Plaintiff fails to state a claim because she cannot demonstrate prejudice.  *See* Def's Supp. Memo at

14  6-8.  Defendants' prejudice claim largely amounts to a restatement of its tender arguments, which

15  the Court has already rejected.  In addition, the cases on which Defendants rely involve claims to set

16  aside a foreclosure that has already occurred.  While Defendants challenge the notion that procedural

17  defects should derail a foreclosure, California law requires strict compliance with non-judicial

18  foreclosure statutes.  *Ung v. Koehler*, 135 Cal.App.4th 186, at 202-03 (2005) ("The statutory

19  requirements must be strictly complied with, and a trustee's sale based on statutorily deficient notice

20  of default is invalid.").  California courts have acknowledged that notices of default serve a vital

21  purpose as the "crucial first step in the foreclosure process."  *Mabry v. Superior Court*, 185

22  Cal.App.4th 208, 221 (2010).  Thus, assuming prejudice is required, the threat of foreclosure by the

23  wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is

24  no power of sale without a valid notice of default.  *Castillo v. Skoba*, 2010 WL 3986953 at*2 ("The

25  power of sale in a nonjudicial foreclosure may only be exercised when a notice of default has first

26  _____

27  [16]  Indeed, as Plaintiff points out, while the second page of the Notice describes MERS as the beneficiary that was recorded on 12/20/2006, the final page of the Notice refers to a "present beneficiary," thus arguably implying that the original beneficiary may not be the same entity as the

28  current beneficiary.  *See* Pl's Supp. Memo at 5-6; *see also* Docket No. 11, Ex. 6.

1   been recorded. . . . [A]ny foreclosure sale based on a void notice of default is also void.") (citing

2   Cal. Civ. Code § 2924; 5-123 California Real Estate Law & Practice § 123.01).

3        Accordingly, the Court finds that Plaintiff has stated a claim for wrongful foreclosure.

4   Regardless of whether § 2932.5 applies, a party may not foreclose without the legal power to do so.

5   Plaintiff alleges that the wrong parties issued the Notice of Default.  At the 12(b)(6) stage, given the

6   factual uncertainties underlying the parties' arguments, Plaintiff's claim is sufficient to withstand a

7   motion to dismiss.

8        Accordingly, the Court **DENIES** the motion to dismiss the wrongful foreclosure claim

9   insofar as it is based on Plaintiff's allegations that the wrong party initiated foreclosure without any

10  interest in the subject property.  However, the Court **GRANTS** the motion to dismiss in part insofar

11  as it is predicated on Defendants' not physically producing the note.

12       7.    <u>Quiet Title – Cal. Code Civ. P. § 761.020</u>

13       California Code of Civil Procedure § 761.020 provides that a quiet title complaint must be

14  verified and include each of the following:

15       (a)    A description of the property that is the subject of the
16       action. . . .

16       (b)    The title of the plaintiff as to which a determination under this
17       chapter is sought and the basis of the title. . . .

18       (c)    The adverse claims to the title of the plaintiff against which a
19       determination is sought.

20       (d)    The date as of which the determination is sought.  If the
         determination is sought as of a date other than the date the complaint
21       is filed, the complaint shall include a statement of the reasons why a
         determination as of that date is sought.

22       (e)    A prayer for the determination of the title of the plaintiff
23       against the adverse claims.

24  Cal. Code Civ. Proc. § 761.020.  The purpose of a quiet title action is to determine "all conflicting

25  claims to the property in controversy, and to decree to each such interest or estate therein as he may

26  be entitled to."  *Newman v. Cornelius*, 3 Cal. App. 3d 279, 284 (1970).

27       In her complaint, Ms. Tamburri seeks to quiet title in her name "[d]ue to the confusion over

28  who exactly holds the Note."  FAC ¶¶ 58-61.  Defendants argue that she fails to state a claim for this

United States District Court

For the Northern District of California

1  cause of action because she does not identify which Defendant failed to produce the note, there is no

2  requirement that a trustee produce the note to foreclose, she has not alleged tender, she has not

3  alleged the date on which she seeks to quiet title, and the complaint is not verified.  Mot. to Dismiss

4  at 14-15.  Defendants appear to have abandoned their arguments regarding the verified complaint

5  and the date allegation based on Plaintiff's opposition pointing out that these requirements have

6  been satisfied by the FAC.  *See* Opp. at 19-21.

7        Defendants' most central argument is that Plaintiff's cause of action fails because she fails to

8  allege that she has satisfied her payment obligations pursuant to the Deed of Trust, or that she has

9  the ability to satisfy those obligations.  *See Kelley*, 642 F.Supp.2d at 1057 ("Plaintiffs have not

10  alleged that they are the rightful owners of the property, i.e. that they have satisfied their obligations

11  under the Deed of Trust. As such, they have not stated a claim to quiet title."); *Lee v. Aurora Loan*

12  *Services*, No. C 09-4482 JF (HRL), 2010 WL 1999590, at *5 (N.D. Cal. May 18, 2010) ("A basic

13  requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the

14  property, i.e., that they have satisfied their obligations under the Deed of Trust.'") (quotations

15  omitted); *Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) ("It is settled in California that a

16  mortgagor cannot quiet his title against the mortgagee without paying the debt secured.").  Plaintiff's

17  response is that *Shimpones* did not deal with a problem of a purported mortgagee who actually had

18  no valid right to the property, whereas here "Wells Fargo has no right to initiate nonjudicial

19  foreclosure proceedings against the plaintiff."  Opp. at 20.

20        The problem with Plaintiff's argument is that, even if the proper party did not initiate

21  foreclosure, Plaintiff does not allege that she is the rightful owner as she admits that she is in default.

22  She also fails to specify what adverse claims, and by which Defendants, she seeks to quiet title

23  against.  Indeed, while she asserts that Wells Fargo (who is not a party to this motion to dismiss) has

24  no right to her property, and that US Bank initiated foreclosure before it had authority to do so, she

25  does not allege that US Bank or any other Defendant currently has no valid interest in the property.

26  Accordingly, the Court GRANTS Defendants' motion to dismiss the quiet title claim with leave to

27  amend.

28        8.      <u>Negligence</u>

24

**United States District Court**
For the Northern District of California

Ms. Tamburri's negligence claim is predicated on the following allegations: (1) that Suntrust and Wells Fargo failed to explore options with her to avoid foreclosure as required by California Civil Code § 2923.5, *see* FAC ¶ 68; (2) that all Defendants failed to "respond to numerous written requests made by the plaintiff concerning her loans, *see id.* ¶ 68; and (4) that Recontrust breached a duty as trustee to verify that Suntrust or Wells Fargo had complied with § 2923.5. *See id.* ¶ 69.

In the motion to dismiss, Defendants argue that the negligence claim should be dismissed because Plaintiff has failed to sufficiently allege a duty or breach, and she has failed entirely to allege causation or damages. Mot. to Dismiss at 17-18.

As Defendants point out, one of the essential elements of a negligence claim is a duty of care, *see Wiener v. Southcoast Childcare Centers, Inc.*, 32 Cal. 4th 1138, 1142 (2004) (stating that, "'[t]o prevail on [an] action in negligence, plaintiff[s] must show that defendants owed [them] a legal duty, that they breached the duty, and that the breach was a proximate or legal cause of [their] injuries'"), and it is a general rule that "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savs. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991). "Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Id.*; *see also Tina v. Countrywide Home Loans, Inc.*, No. 08 CV 1233 JM (NLS), 2008 U.S. Dist. LEXIS 88302, at *10 (S.D. Cal. Oct. 30, 2008) ("Defendant Countrywide, as the mortgage lender, has no fiduciary duty to Plaintiffs. 'A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.' The same principle applies 'to the relationship between a bank and its loan customers.'") (quoting *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989)). Plaintiff makes no allegations that would suggest any of Defendants have gone beyond this usual role. *Cf. Ansanelli v. JPMorgan Chase Bank, N.A.*, No. C 10-03892 WHA, 2011 U.S. Dist. LEXIS 32350, at *21-22 (N.D. Cal. Mar. 28, 2011) (concluding that there were allegations that defendant went beyond the domain of the usual money lender by agreeing to place plaintiffs on a trial modification plan).

1       Plaintiff argues that she can allege a duty of care based on the statutes to which Plaintiff's

2   allegations refer.  As noted above, one of the allegations in the negligence claim is that Defendants

3   failed to explore options with her to avoid foreclosure as required by California Civil Code § 2923.5.

4   The other refers to 12 U.S.C. § 2605, Defendants' purported requirement to respond to Plaintiff's

5   QWRs.  Under California law, a duty of care may arise through a statute.  *See Greystone Homes,*

6   *Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1215 (2008) (noting that "'[a] duty of care may arise

7   through statute, contract, the general character of the activity, or the relationship between the

8   parties'").

9       Nonetheless, to the extent that Ms. Tamburri argues a duty of care based on § 2923.5, she is

10  really bringing a claim for violation of § 2923.5, and a failure to comply with § 2923.5 does not give

11  rise to any damages remedy – only a remedy of a delay in foreclosure.  *See Mabry v. Superior Court,*

12  185 Cal. App. 4th 208, 214 (2010).  Thus, it does not appear that Ms. Tamburri can allege damages

13  under this theory.  *See Ottolini v. Bank of Am.*, No. C–11–0477 EMC, 2011 WL 3652501, at *5

14  (N.D. Cal. Aug. 19, 2011) ("To allow § 2923.5 to serve as a statutory basis for a negligence claim

15  would circumvent the limited scope of relief provided by the statute.").  In addition, even if

16  permitted, Ms. Tamburri has not alleged any damages resulting from Defendants' purported

17  violation of § 2923.5.  Moreover, with respect to § 2605, for the reasons discussed above, Ms.

18  Tamburri has not alleged damages stemming from any failure to respond to her QWRs.  Finally, to

19  the extent Plaintiff alleges any damages, as Defendants point out, a negligence claim is generally not

20  viable in California absent allegations of physical, rather than purely economic, damage.  *See Yang*

21  *v. Sun Trust Mortg., Inc.*, No. 1:10-CV-01541 AWI SKO, 2011 WL 902108,  at *7 (E.D. Cal. March

22  15, 2011).

23      Accordingly, the Court **GRANTS** the motion to dismiss the negligence claim. The dismissal

24  is without prejudice.

25      9.      Accounting

26      "A cause of action for an accounting requires a showing that a relationship exists between

27  the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that

28

26

**United States District Court**

For the Northern District of California

can only be ascertained by an accounting."[17]  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009).  The main problem with Plaintiff's accounting claim is that she is not asking for an accounting based on money owed to her.  *See* FAC ¶ 71 (requesting an accounting to determine "the exact amount of plaintiff's outstanding balance"); *Ricon v. Recontrust Co.*, No. 09cv937 - IEG - JMA, 2009 U.S. Dist. LEXIS 67807, at *18 (S.D. Cal. Aug. 4, 2009) (noting that, "while Plaintiff allegedly owes Defendants an amount past due on the underlying mortgage, Defendants do not allegedly owe Plaintiff any money"; adding that "[t]his failure to plead 'some balance is due the plaintiff' is fatal to Plaintiff's claim"); *Consumer Solutions v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (dismissing accounting claim on same basis).  Accordingly, the Court **GRANTS** the motion to dismiss the accounting claim without prejudice.

> 10.    Declaratory Relief

Plaintiff includes a claim for declaratory relief in her FAC.  *See* FAC ¶¶ 73-74.  However, Plaintiff's only statement in that section is a request for an injunction, rather than a declaration.  In addition, she requests only a "declaration that Plaintiff is the prevailing party" in her prayer section.  FAC at 14.  Thus, Defendants are correct that Plaintiff's cause of action is "duplicative" and unnecessary, and the **GRANTS** the motion to dismiss this claim without prejudice.

> 11.    Cal. Bus. & Prof. Code § 17200

California Business & Professions Code § 17200 prohibits unfair competition, which is defined as, inter alia, "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Plaintiff asserts claims under § 17200 for (1) Suntrust and Recontrust's violation of § 2923.5; (2) Suntrust, Wells Fargo, MERS, and US Bank's violation of § 2605; (3) Suntrust's forcing of Plaintiff to "send in a plethora of different documents and speak to countless representatives, none of whom provided the plaintiff with any helpful information regarding her

---

[17]  Contrary to what Defendants argue, a fiduciary relationship is not necessarily required.  *See* 5 Witkin Cal. Proc. Plead § 820 (stating that, "[t]o state a cause of action [for an accounting], only the simplest pleading is required: (1) The fiduciary relationship or other circumstances appropriate to the remedy [and] (2) A balance due from the defendant to the plaintiff that can only be ascertained by an accounting"; adding that "a complaint does not state a cause of action for an accounting where it shows on its face that none is necessary; *i.e.*, where the plaintiff alleges a right to recover a sum certain or a sum that can be made certain by calculation").

United States District Court

For the Northern District of California

1    alternatives in avoiding foreclosure"; and (4) Wells Fargo's denial that it is the holder of Plaintiff's

2    loan.  The Court does not consider (4) herein as Wells Fargo has not joined in the motion to dismiss,

3    and it does not consider any claim against Recontrust pursuant to its unopposed statement of

4    nonmonetary status.  Docket No. 39.

5           Defendants make two primary challenges to the § 17200 claim as pled in the FAC.  As a

6    preliminary matter, Defendants argue that Ms. Tamburri lacks standing to bring the claim.  Mot. to

7    Dismiss at 11.  Under § 17204 of the Code, only "a person who has suffered injury in fact and has

8    lost money or property as a result of the unfair competition" has standing to bring suit.  *Id.* § 17204.

9    However, "[i]t is undisputed that foreclosure proceedings were initiated which put Ms. Tamburri's

10   interest in the property in jeopardy; this fact is sufficient to establish standing as this Court has

11   previously held."  *Clemens v. J.F. Morgan Chase Nat. Corporate Services, Inc.*, No. C-09-3365

12   EMC, 2009 WL 4507742, at *7 (N.D. Cal. Dec. 1, 2009) (citing *Sullivan v. Washington Mut. Bank,*

13   *FA*, No. C-09-2161 EMC, 2009 U.S. Dist. LEXIS 104074, at *13 (N.D. Cal. Oct. 23, 2009).

14   Defendants' claim that Plaintiff cannot establish a causal connection between any unlawful activity

15   and her harm presupposes that Defendants prevail on Plaintiff's substantive claims, which is

16   inappropriate for purposes of a 12(b)(6) analysis.

17          Second, Defendants argue that Plaintiff fails to plead facts with the requisite particularity to

18   state a UCL claim.  Mot. to Dismiss at 10-11.  "A plaintiff alleging unfair business practices under

19   [17200] must state with reasonable particularity the facts supporting the statutory elements of the

20   violation."  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Indeed, insofar

21   as the claims sound in fraud, they are subject to the heightened pleading standards of Rule 9(b).  *See*

22   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

23          To the extent that Plaintiff asserts unlawful claims based on the statutes described above –

24   claims (1) and (2) above – these claims rise and fall with the substantive causes of action already

25   discussed.  Accordingly, while Plaintiff's claim under § 2923.5 survives, her claim under § 2605

26   does not.  The third potential claim – that Plaintiff was essentially given the run-around from

27   Suntrust when she attempted to get information about her loan – is insufficient to allege any separate

28   claim for unfair business practices.  *See Cel-Tech Comms., Inc. v. Los Angeles Cellular Telephone*

28

*Co.*, 20 Cal.4th 163, 186-87 (1999) ("[A]ny finding of unfairness to competitors under section 17200 [must] be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."); *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999) ("The test of whether a business practice is unfair involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer.") (internal quotations omitted).  With more detail, however, such a claim may be sufficient if, for example, Plaintiff provided more context as to the number of times she attempted to contact Suntrust and supplied additional information as to the content of her communications with them.

        In addition, Plaintiff argues that her allegations about US Bank's refusal to communicate with her and denial that it owned her loan is sufficient to state an "unfair" claim.  Opp. at 23.  This is a closer call.  If, as noted above, US Bank was not her loan servicer, there does not appear to be any requirement under § 2605 that it respond to her letters.  However, since US Bank is listed on her Notice of Default as the entity she should contact to avoid foreclosure, and Plaintiff alleges that US Bank "had denied owning her loan," FAC ¶ 63, such conduct may constitute an unfair business practice as it misled Plaintiff regarding the status of her loan and precluded her from gaining the requisite information as to how she could avoid foreclosure.  Plaintiff's FAC is currently insufficient to make out such a claim, however, as she does not provide any context such as when and how US Bank made such a representation to support a conclusion that, at a minimum, US Bank made such a representation after it gained an interest in the loan in June of 2010.

        Accordingly, the Court **DENIES** the motion to dismiss Plaintiff's § 17200 claim insofar as it is predicated on alleged violations of § 2923.5.  The Court **GRANTS** the motion to dismiss without prejudice insofar as it is predicated on other theories against the moving Defendants.

B.      Motion to Strike

        Defendants also move to strike Plaintiff's request for punitive damages.  Mot. to Dismiss at 20.  Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. F. 12(f).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being

**United States District Court**

For the Northern District of California

1  pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks

2  omitted), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  As indicated

3  by the language of the rule, "'[t]he function of a 12(f) motion to strike is to avoid the expenditure of

4  time and money that must arise from litigating spurious issues by dispensing with those issues prior

5  to trial. . . .'"  *Id.*  When ruling on a motion to strike, a court views the pleading under attack in the

6  light most favorable to the nonmoving party.  *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp.

7  2d 556, 561 (C.D. Cal. 2005).  Courts generally disfavor motions to strike because striking is such a

8  drastic remedy.  *See Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (stating that

9  "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that

10  'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently

11  granted'").

12         The proper medium for challenging the sufficiency of factual allegations in a complaint is

13  through Rule 12(b)(6), not Rule 12(f). *See Parker v. Fidelity Security Life Ins. Co.*, No. CIV F 06-

14  654 AWI DLB, 2006 WL 2190956, at *5 (E.D.Cal. Aug. 1, 2006); *Paul v. Gomez*, 190 F.R.D. 402,

15  404 (W.D.Va.2000); *Outen v. Baltimore County*, 177 F.R.D. 346, 348 (D.Md.1998). However,

16  where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule

17  12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6)

18  motion. *See Parker*, 2006 WL 2190956, at *5 (converting a 12(f) motion to strike a punitive

19  damages claim into a 12(b)(6) motion).

20         Defendants claim Plaintiff has not alleged sufficient facts to support a basis for punitive

21  damages.  In evaluating Defendants' argument, the Court looks first to California Civil Code § 3294,

22  which defines when punitive damages are available for a violation of state law.  The statute states in

23  relevant part:

24              (a)     In an action for the breach of an obligation not arising from
              contract, where it is proven by clear and convincing evidence that the
25              defendant has been guilty of oppression, fraud, or malice, the plaintiff,
              in addition to the actual damages, may recover damages for the sake of
26              example and by way of punishing the defendant.
              (b)     An employer shall not be liable for damages pursuant to
27              subdivision (a), based upon acts of an employee of the employer,
              unless the employer had advance knowledge of the unfitness of the
28              employee and employed him or her with a conscious disregard of the

United States District Court

For the Northern District of California

1          rights or safety of others or authorized or ratified the wrongful conduct
for which the damages are awarded or was personally guilty of
2          oppression, fraud, or malice.  With respect to a corporate employer,
the advance knowledge and conscious disregard, authorization,
3          ratification or act of oppression, fraud, or malice must be on the part of
an officer, director, or managing agent of the corporation.

4

5   Cal. Civ. Code § 3294.

6         In the instant case, Plaintiff includes no specific allegations supporting punitive damages.

7   While she does assert a fraud claim, as discussed above, that cause of action is severely lacking in

8   detail.  Furthermore, Plaintiff has made no assertions to satisfy (b)'s requirements regarding

9   employers.

10        Because the Court has granted the motion to dismiss the fraud claim, the motion to strike is

11   **GRANTED**.  If Plaintiff files an amended complaint that properly alleges a fraud claim, she may re-

12   assert her claim for punitive damages.

13   C.   <u>Motion to Set Aside Default</u>

14        In the instant case, default has been entered against Wells Fargo, but there is no default

15   judgment as of yet.  Ms. Tamburri has filed a motion for default judgment; Wells Fargo opposes the

16   motion and also asks that the Court set aside the entry of default.

17        Under Federal Rule of Civil Procedure 55(c), a "court may set aside an entry of default for

18   good cause."  Fed. R. Civ. F. 55(c).  Under Ninth Circuit case law, a court considers three factors in

19   determining whether there is good cause:  (1) whether the defendant engaged in culpable conduct

20   that led to the default; (2) whether the defendant had a meritorious defense; or (3) whether reopening

21   the default judgment would prejudice the plaintiff.  *See Franchise Holding II, LLC. v. Huntington*

22   *Rest.'s Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).  A court may grant or deny a motion to set

23   aside a default on the basis of *any* of the three factors.  *See id.* at 926 (emphasizing that the factors

24   are disjunctive).  The defendant bears the burden of showing that any of the factors favors setting

25   aside the default.  *See id.*  Underlying the above analysis is the fact that there is a strong public

26   policy in favor of resolving a case on its merits.  *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d

27   811, 814 (9th Cir. 1985) (noting that default judgments are generally disfavored so that, "[w]henever

28   it is reasonably possible, cases should be decided upon their merits").

United States District Court

For the Northern District of California

1.      Culpable Conduct

With respect to the first factor, the Ninth Circuit has emphasized that a defendant's conduct is culpable, as opposed to excusable, only where is an intentional failure to answer.  *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001).

> "Intentional" in many legal contexts means an act or omission taken by an actor knowing what the likely consequence will be.  So one might think, reading this standard out of context, that a litigant who receives a pleading, reads and understands it, and takes no steps to meet the deadline for filing a responsive pleading acted intentionally in failing to answer, without more, and therefore cannot meet the culpability standard.
>
> . . . .
>
> Our cases, however, have not used the term "intentional" in [the usual] sense [*i.e.*, resulting from a conscious choice].  Instead, what we have meant is something more like, in the words of a recent Second Circuit opinion addressing the same issue, "willful, deliberate, or evidence of bad faith."  Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not "intentional" under our default cases, and is therefore not *necessarily* – although it certainly may be, once the equitable factors are considered – culpable or inexcusable.

*Id.* at 697-98 (emphasis in original).  The Ninth Circuit has "typically held that a defendant's conduct was culpable . . . where there is *no* explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond."  *Id.* at 698 (emphasis added).

In the instant case, Plaintiff raises a valid suspicion as to how Wells Fargo could have failed to learn of this case given that it received both written and telephonic notice numerous times since the litigation began.  *See* Schabert Decl. ¶¶ 5-6 (declaration of licensed private investigator describing the two times he personally served Wells Fargo through its registered agent for service of process); Goodell Decl. ¶¶ 2-9 (describing Plaintiff's counsel's numerous attempts to contact Wells Fargo regarding the litigation).  Notwithstanding Wells Fargo's clear mistake here, however, it has met its burden of showing that it did not engage in culpable conduct.  Wells Fargo admits that it was in fact served with Plaintiff's complaint and other related documents.  Reply at 1-2; Krause Decl. ¶ 2.  However, pursuant to an agreement with Suntrust as the Servicer-in-Fact of Plaintiff's loan, Wells Fargo's Corporate Trust Services department had tendered all documents to Suntrust and was

United States District Court

For the Northern District of California

1  under the belief that Suntrust was defending the action on its behalf.  Reply at 3; Krause Decl. ¶¶ 4-

2  7; Krause Decl. Ex. A (letter to Suntrust attaching complaint and stating, "Pursuant to the governing

3  documents of the securitization that contains this loan, your company must provide defense of this

4  claim and pay all expenses associated with the enclosed claim.").  Wells Fargo's legal department

5  did not learn of the litigation until after default was entered.  Krause Decl. ¶ 8.

6          In light of this explanation, there is nothing to suggest that Wells Fargo's decision not to

7  answer the complaint, even if conscious, was "designed to obtain strategic advantage in the

8  litigation." *TCI Group Life Ins.*, 244 F.3d at 698.  Plaintiff attempts to conjure a bad faith motive

9  behind Wells Fargo's conduct by describing the negotiations between counsel regarding a potential

10 dismissal before Wells Fargo appeared.  *See* Opp. at 5-6.  However, this Court has previously held

11 that an attempt to settle in lieu of appearing in litigation does not constitute culpable conduct.  *See*

12 *Hunter v. TBDC, LLC*, No. C-08-4158 EMC, 2009 WL 224958, at *4 (N.D. Cal. Jan. 29, 2009)

13 ("TBDC's nonappearance appears to have been a result of trying to settle the case without having to

14 engage in litigation. No doubt TBDC's decision to do so entailed a fair amount of risk, but again

15 there is nothing to show that TBDC was trying to 'manipulate the legal system' to its advantage.")

16 (quoting *TCI Group Life Ins.*, 244 F.3d at 699).  Wells Fargo has provided a credible explanation for

17 its neglect sufficient to negate Plaintiff's arguments that it has acted in bad faith.

18          Accordingly, the Court concludes that Wells Fargo has not engaged in culpable conduct.

19          2.      Meritorious Defense

20          As to the second factor, most courts have indicated that the issue here is "not whether there is

21 a likelihood that the defaulting party will prevail on the defense, but rather whether a defense is

22 proposed that is legally cognizable and, if proved at trial, would constitute a complete defense to the

23 claims." 55 Moore's Fed. Prac. – Civ. § 55.70[2][d].  *See, e.g.*, *Enron Oil Corp. v. Diakuhara*, 10

24 F.3d 90, 98 (2d Cir. 1993) ("The test of such a defense is measured not by whether there is a

25 likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would

26 constitute a complete defense."); *Berthelsen v. Kane*, 907 F.2d 617, 621-22 (6th Cir. 1990)

27 ("Resolving the ambiguous evidence in favor of the defendant, he has stated a meritorious defense.

28 Likelihood of success on the merits is not the measure of whether the defendant presents a

**United States District Court**
For the Northern District of California

1    meritorious defense.  If he 'states a defense good at law, then a meritorious defense has been

2    advanced.'"); *Coon v. Grenier*, 867 F.2d 73, 77 (1st Cir. 1989) ("The 'meritorious defense'

3    component of the test for setting aside a default does not go so far as to require that the movant

4    demonstrate a likelihood of success on the merits.  Rather, a party's averments need only plausibly

5    suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.");

6    *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) ("The showing of a

7    meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial,

8    would constitute a complete defense to the action.'").

9        Under this standard, this factor weighs in Wells Fargo's favor.  Wells Fargo claims it has no

10   ownership interest in the loan, which would constitute a defense to many of Plaintiff's claims.

11   Krause Decl. ¶ 7; s*ee Hunter*, 2009 WL 224958 at *4 ("If the loan were in fact made to Wade

12   Summers, and not to TBDC, then TBDC would have a complete defense to the action.").  Instead,

13   Wells Fargo claims it is the master servicer of the loan, which may open it up to some liability (*e.g.*,

14   potential liability under § 2605).  However, as Wells Fargo points out and the Court's conclusions

15   above regarding the motion to dismiss indicates, there are numerous weaknesses in Plaintiff's

16   complaint as alleged, and Wells Fargo would likely prevail on many of Plaintiff's claims.  *See* Mot.

17   to Set Aside at 7-8 (summarizing defenses against Plaintiff).  Accordingly, the Court concludes that

18   the second factor weighs in favor of setting aside default.

19       3.   Prejudice to Plaintiff

20       As for the third factor, *i.e.*, prejudice to the plaintiff, the Ninth Circuit has stated that "the

21   setting aside of a judgment must result in greater harm than simply delaying resolution of the case.

22   Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered'" -- *e.g.*,

23   "'the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery,

24   or greater opportunity for fraud or collusion.'"  *Id.* at 701.  The court explained:

25              It should be obvious why merely being forced to litigate on the
            merits cannot be considered prejudicial for purposes of lifting a
26          default judgment.  For had there been no default, the plaintiff would of
            course have had to litigate the merits of the case, incurring the costs of
27          doing so. A default judgment gives the plaintiff something of a
            windfall by sparing her from litigating the merits of her claim because
28          of her opponent's failure to respond; vacating the default judgment

United States District Court

For the Northern District of California

1    merely restores the parties to an even footing in the litigation.

2    *Id.*  In the instant case, Plaintiff argues that setting aside the default would be prejudicial to her

3    because of the delay and cost it has imposed.  Opp. at 9.  But, as noted above, the Ninth Circuit has

4    expressly held that being forced to litigate on the merits cannot be considered prejudicial.  In

5    addition, the case is still in the early stages.

6         However, given the cost that Wells Fargo has needlessly caused Plaintiff, the Court does

7    have the authority to impose certain conditions for the setting aside of a default.  In *Nilsson,*

8    *Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538 (9th Cir. 1988),

9    the Ninth Circuit expressly addressed the issue of conditioning, stating as follows:

10        In discussing the conditioning of defaults, we have noted that other
11        circuits have held that Fed. R. Civ. P. 60(b) allows district courts to
          impose such conditions on relief from judgment of default. .

12             By conditioning the setting aside of a default, any prejudice
13        suffered by the non-defaulting party as a result of the default and the
          subsequent reopening of the litigation can be rectified.  According to
14        Wright, Miller & Kane, the most common type of prejudice is the
          additional expense caused by the delay, the hearing on the Rule 55(c)
15        motion, and the introduction of new issues.  Courts have eased these
          burdens by requiring the defaulting party to provide a bond to pay
16        costs, to pay court costs, or to cover the expenses of the appeal.  The
          use of imposing conditions can serve to "promote the positive
17        purposes of the default procedures without subjecting either litigant to
          their drastic consequences."

18             In *Thorpe*, it was noted that the "philosophy of modern federal
19        procedure favors trials on the merits, and default judgments should
          generally be set aside where the moving party acts with reasonable
20        promptness, alleges a meritorious defense to the action, and where the
          default has not been willful."  Moreover, reasonable conditions may be
          imposed in granting a motion to vacate a default judgment.  The
21        condition most commonly imposed is that the defendant reimburse the
          plaintiff for costs incurred because of the default.  In some cases, it
22        may also be appropriate for the defendant to be required to post bond
          to secure the amount of the default judgment pending a trial on the
23        merits.

24             By setting aside the default with conditions, the district court
25        judge in the instant case was attempting to facilitate discovery and was
          protecting the non-defaulting party by not requiring the plaintiff to pay
          for its costs.  We find this behavior appropriate and not an abuse of
26        discretion.  Accordingly, we now hold that it is appropriate to
          condition setting aside a default upon the payment of a sanction.

27

28   *Id.* at 1546-47; *see also* 55 Moore's Fed. Prac. – Civ. § 55.70 ("A court may use [its] inherent power

35

United States District Court

For the Northern District of California

1  [to impose reasonable conditions in order to avoid undue prejudice to the nondefaulting party] to

2  require a party to post security for payment of all or part of an eventual judgment.  Another

3  condition a court may impose is the payment of reasonable attorney's fees and costs incurred by the

4  opposing party because of the default.").

5       In the instant case, Plaintiff's counsel states that he has spent 7.4 hours on this issue and

6  anticipates an additional 1.5 hours at a billing rate of $200/hour.  Goodell Decl. ¶ 11. The Court

7  finds that these fees are appropriate, and orders Wells Fargo to pay the $1780 in costs Plaintiff has

8  reasonably incurred as a result of Wells Fargo's default.

9       With these conditions, the Court **GRANTS** Wells Fargo's motion to set aside default.

10  D.     Motion for Default Judgment

11       Because the Court has granted Wells Fargo's motion to set aside default, the motion for

12  default judgment is **DENIED** as moot.

13                     **III.   CONCLUSION**

14       For the foregoing reasons, the Court hereby orders:

15  (1)     Defendants Suntrust and MERS's motion to dismiss Plaintiff's claim under Cal. Civ. Code §

16  2923.5 is DENIED.

17  (2)     Defendants Suntrust, MERS, and US Bank's motion to dismiss Plaintiff's claim under

18  RESPA, 12 U.S.C. § 2605, is GRANTED without prejudice.

19  (3)     Defendants Suntrust and US Bank's motion to dismiss Plaintiff's Fraud claim is GRANTED

20  without prejudice.

21  (4)     Defendants Suntrust, MERS, and US Bank's motion to dismiss Plaintiff's Wrongful

22  Foreclosure claim is DENIED insofar as it is based on Plaintiff's allegations that the wrong party

23  initiated foreclosure without any interest in the subject property, and GRANTED with prejudice

24  insofar as it is predicated on Defendants' not physically producing the note.

25  (5)     Defendants Suntrust, MERS, and US Bank's motion to dismiss Plaintiff's Quiet Title claim

26  is GRANTED without prejudice.

27  (6)     Defendants Suntrust, MERS, and US Bank's motion to dismiss Plaintiff's Negligence claim

28  is GRANTED without prejudice.

(7)   Defendants Suntrust and US Bank's motion to dismiss Plaintiff's Accounting claim is GRANTED without prejudice.

(8)   Defendants Suntrust, MERS, and US Bank's motion to dismiss Plaintiff's Declaratory Relief claim is GRANTED without prejudice.

(9)   Defendants Suntrust, MERS, and US Bank's motion to dismiss Plaintiff's claim under Cal. Bus. & Prof. Code § 17200 claim is DENIED insofar as it is predicated on alleged violations of § 2923.5, and GRANTED without prejudice as to all other theories.

(10)   Defendants Suntrust, MERS, and US Bank's motion to strike is GRANTED.

(11)   Defendant Wells Fargo's motion to set aside default is GRANTED.

(12)   Defendant Wells Fargo is ordered to pay $1780 in legal fees and costs Plaintiff.

(13)   Plaintiff's motion for default judgment is DENIED.

This order disposes of Docket Nos. 31, 54, 57.

IT IS SO ORDERED.

Dated:  December 15, 2011

EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California

37