NELSON W. GOODELL, ESQ., SBN 264734
The Goodell Law Firm
5 Third Street, Suite 1100
San Francisco, CA 94103
(415) 495-3950 (office)
(415) 495-6900 (fax)

DEBORAH TAMBURRI,

Plaintiff,

v.

SUNTRUST MORTGAGE, INC.; WELLS FARGO BANK, N.A.; U.S. BANK NATIONAL ASSOCIATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., RECONTRUST COMPANY, N.A.; and DOES 1-20;

Defendants.

Case No: 3:11-CV-02899-EMC

Hon. Judge Edward M. Chen

**PLAINTIFF'S NOTICE OF OPPOSITION AND OPPOSITION TO DEFENDANTS' SUNTRUST MORTGAGE, INC., MORTGAGE ELECTRONIC REGISTRATIONS SYSTEM, INC'S , WELLS FARO BANK N.A.'S, and U.S. BANK NATIONAL ASSOCIATIONS'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; [PROPOSED ORDER]**

Hearing Date: May 18, 2012
Time: 1:30 p.m.
Location: 450 Golden Gate Avenue, San Francisco, CA
Courtroom: 5 – 17th Floor

First Amended Complaint Filed: June 10, 2011
Trial Date: Not Set

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 18, 2012 at 1:30 p.m. or as soon thereafter as may be heard, in Courtroom 5 on the 17th floor of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Deborah Tamburri ("Plaintiff") will oppose the Motion to Dismiss the Plaintiff's First Amended Verified Complaint made by defendants Suntrust Mortgage, Inc. ("Suntrust"), Mortgage Electronic Registration Systems, Inc.

- 1 -

("MERS"), U.S. Bank National Association ("US Bank"), and Wells Fargo Bank, N.A. ("Wells Fargo").

The opposition will be based upon this Notice and accompanying Memorandum of Points and Authorities, all papers on file with this Court, and any oral argument that may be presented at the hearing on this motion.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I. INTRODUCTION**

Defendants, Suntrust Mortgage, Inc., Mortgage Electronic Registration Systems, Inc., U.S. Bank, N.A., and Wells Fargo's motion to dismiss does not even address significant portions of plaintiff's factual allegations in her second amended complaint, but rather appears to be based nearly in whole on their claim that the plaintiff was not prejudiced by their repeated misrepresentations regarding the ownership of plaintiff's loan and that plaintiff has not plead, and cannot prove, damages. While this Court already denied the defendants' motion to dismiss on the causes of action for "wrongful foreclosure" and "violation of California Civil Code section 2923.5" and rejected defendants' arguments that plaintiff could not demonstrate prejudice and ruled that "California law requires strict compliance with non-judicial foreclosure statutes", the plaintiff has indeed plead prejudice.

As the plaintiff alleges in her complaint, as a result of being constantly misled over the owner of her loan (and therefore not being able to speak to said entity about avoiding foreclosure) she has endured "substantial emotional anguish" and "deep-seated emotional harm", which has "caused her to become depressed, suicidal and physically ill.",Indeed, it is a well-settled principle of California tort law, which includes the "wrongful foreclosure" cause of action and other causes of action pertaining to the "illegal, fraudulent or willfully oppressive sale of

property under a power of sale contained n a deed of trust" that "the measure of damages for a wrong other than breach of contract will be an amount sufficient to compensate the plaintiff for all detriment, foreseeable or otherwise, proximately occasioned by the defendant's wrong." *Munger v. Moore*, 170 Cal.App.3d 1,7, 11 (citing Cal. Civ. Code § 3333). Furthermore, emotional distress damages have long been considered damages encompassed within the purview of California Civil Code section 3333, which is the fundamental statutory provision governing tort damages in California. *Pintor v. Ong*, 211 Cal.App.3d 837, 842 (1989) (citing California Civil Code section 3333 as part of a holding that "the general rule of tort damages" is "that all detriment proximately caused by breach of a legal duty is compensable, including damages for emotional distress."); *Young v. Bank of America* (1983) 141 Cal.App.3d 108, 113.

Moreover, as the plaintiff alleges in her complaint, she was unable to discuss *any* options regarding avoiding foreclosure with SunTrust, and was repeatedly told by SunTrust that they had no authority to offer any sort of assistance whatsoever. Thus, the plaintiff was indeed prejudiced by not being able to speak to the entity who actually had the legal authority to provide her with a loan modification or other argument to avoid foreclosure, which SunTrust steadfastly refused to do.

Finally, the defendants continue to speciously argue that the plaintiff is acting in bad faith in an attempt to simply delay the inevitable foreclosure in order to live in the property for free, which is simply factually false because (as the defendants are fully aware) the plaintiff has been making $2,000 monthly payments to this Court as a condition of the preliminary injunction remaining in place. Despite the fact that the plaintiff has substantial evidentiary support for her claims (which were put before the Court in her motion for a preliminary injunction, which was granted), all that is issue in the instant motion is whether or not the plaintiff has properly pleaded

facts sufficient to state a claim for each of her eight causes of action. *Bell Atlantic v. Twombly*, 550 U.S. 544, (2007). The plaintiff has easily met this standard for all of her causes of action.

## II. FACTUAL BACKGROUND

Plaintiff Deborah Tamburri purchased the subject property in 1983 along with her former husband. Citation. She has never previously been in foreclosure proceedings before the events described in this lawsuit. The Plaintiff signed a Note and Deed of Trust on December 12, 2006 in favor of Suntrust Mortgage, Inc. In the Deed of Trust, MERS is identified as the beneficiary, the plaintiff is the trustor, and Jackie Miller is the beneficiary.

Shortly after the transaction was consummated, the plaintiff's loan was securitized and placed into a trust. Pursuant to the terms of the trust, SunTrust was the servicer and Wells Fargo was the master servicer. The terms of the pooling and servicing agreement of the trust provide for substantial compensation for SunTrust and Wells Fargo when borrowers default on their loans. This compensation scheme disincentives SunTrust and Wells Fargo to provide a loan modification or other alternative to avoid foreclosure to borrowers, but rather encourages them to extend the process as long as possible as they earn additional compensation through such a delay.

Due to the global recession that began in 2008, the plaintiff lost her job and, consequently, fell into default on this loan in the summer of 2008. The plaintiff contacted Suntrust on September 13, 2008 and spoke with Christina Reyes in collections, and the plaintiff requested a forbearance plan. Ms. Reyes simply instructed her to fax in a letter with some information. The plaintiff did send in the fax, but was told on several occasions by Suntrust that they did not receive. However, SunTurst never, in person or by telephone, spoke with the plaintiff about her options to avoid foreclosure.

On April 21, 2009, Suntrust recorded a Notice of Default with the Contra Costa County Recorder's Office. In the Notice of Default, an entity named Trustee Corps asserted that the "present beneficiary" under the Deed of Trust had delivered to it the Deed of Trust "evidencing

- 4 -

the obligations secured thereby" and declared the plaintiff in default. A Substitution of Trustee was recorded on October 22, 2009 that appeared backdated, as the date on the document is July 22, 2009.  Moreover, Trustee Corps subsequently recorded a Notice of Trustee's Sale in October 2009, in which they scheduled a sale date of November 17, 2009 and declared that Suntrust was the beneficiary in the Deed of Trust.  However, no Substitution of Trustee had been recorded as of this date.  Furthermore, no assignment had been recorded assigning the Deed of Trust from MERS to Suntrust as the beneficiary, and the plaintiff submits that no assignment was ever executed because the plaintiff had been repeatedly told by Suntrust prior to this date that Wells Fargo owned her loan.  Very suspiciously, this Notice of Trustee's Sale was removed from the Contra Costa County Recorder's Office and is no longer part of the public record.

After receiving the Notice of Default, the plaintiff immediately contacted Suntrust to see if she could obtain a loan modification. The plaintiff was repeatedly asked to send the same documents and the same information to Suntrust, presumably because Suntrust had lost, misplaced or threw away the previous information she had sent.  *Id.*  Frustrated with Suntrust's sloppiness, the plaintiff sent a qualified written request to Suntrust in November 2009 asking them to verify the amount that she owed. In response, the plaintiff received a letter detailing information for another individual's loan, not hers.

The foreclosure sale was originally scheduled for November 17, 2009, but was postponed.  Shortly afer the postponement, the plaintiff's son came home from school and saw a notice of the sale posted to the door.  The plaintiff was horrified and humiliated that her son had seen a document indicating that the family home would be sold.  The previously-recorded Notice of Default was rescinded on January 13, 2010.  However, the plaintiff was informed by Suntrust on February 16, 2010 that her home was scheduled to be sold the next day.  Thus, the plaintiff went to the Contra Costa County Recorder's Office and stood there all day to ensure that her home would not be sold.

Feeling frustrated by her inability to get any meaningful information on her loan or alternatives to foreclosure from Suntrust, and having been told on numerous occasions that Wells Fargo owned her loan, the plaintiff sent a qualified written request to Wells Fargo in February 2010. Wells Fargo responded by sending the plaintiff a letter in which is stated that it was "unable to confirm" the plaintiff's name "as an active borrower." *Id*. Moreover, Wells Fargo stated that it was "unable to verify active mortgage on the property address or loan number" applicable to the plaintiff. *Id.* Furthermore, the plaintiff contacted Wells Fargo telephonically around this time to see if anything could be done to save her home, but was told by a Wells Fargo representative that Wells Fargo had no ownership interest in plaintiff's loan, despite Suntrust's repeated assertions that Wells Fargo owned her loan. Thus, the plaintiff received conflicting information regarding the vital piece of information as to which entity actually held the subject promissory note, which was secured by her home.

Between January and June 2010, the plaintiff repeatedly contacted Suntrust in an attempt to discuss her options to avoid foreclosure. However, the Suntrust representatives that the plaintiff spoke with were unresponsive, and she was never informed of her options to prevent the loss of her home. *Id.* Indeed, Suntrust representatives told the plaintiff that they had no control over whether or not to grant the plaintiff a loan modification, but Nonetheless, Suntrust recorded another Notice of Default on June 9, 2010, in which a purported Suntrust representative (identified by defendant's counsel in the defendants' opposition to the plaintiff's request for preliminary injunctive relief as Margaret Shaw, although her signature is illegible and the Declaration does not contain her printed name) falsely claimed in a form Declaration of Compliance that the "Servicer" had contacted the plaintiff to explore her options to avoid foreclosure. However, despite the plaintiff's repeated attempts to discuss her options to avoid foreclosure telephonically, Suntrust representatives were non-responsive and simply asked her to send in the same documents again and again.

On June 21, 2010, Recontrust, N.A. recorded an Assignment of the Deed of Trust and Substitution of Trustee at issue in this action in the Contra Costa County Recorder's Office naming Mortgage Electronic Registration Systems, Inc. as grantor and the plaintiff and U.S. Bank as grantee. Recontrust Company, N.A. was also substituted in as trustee under the subject Deed of Trust, vis-à-vis this document. The document stated that "[t]o find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any othr ereason, contact U.S. BANK NATIONAL ASSOCIATION . . ."

This document was backdated. While the date on the document is June 8, 2010, it was not recorded until June 21, 2010 and the notary public signature date is June 10, 2010, the day after the Notice of Default was recorded. Thus, as this Court previously noted in its last order denying the defendants' motion to dismiss on the plaintiff's "wrongful foreclosure" cause of action, neither US Bank nor Recontrust had the authority to record this document on the day of recordation. Thus, the Notice of Default is invalid. Furthermore, this document is signed by "T. Sevillano" who has signed documents on behalf of MERS, Bank of America, N.A. and Recontrust recently. Thus, the plaintiff questions the authority of "T.Sevillano" to sign documents on behalf of MERS.

After receiving the Notice of Default in the mail, the plaintiff looked up her mortgage on the electronic registry for MERS. The plaintiff typed in her name and mortgage identification number into the MERS registry, and the MERS registry indicated that the plaintiff's loan was owned by UBS Real Estate Securities, Inc. The plaintiff was driven to contact the owner of her loan, as Suntrust had repeatedly told her that they had no independent authority to affect any decision regarding her mortgage. When the plaintiff contacted UBS, she was referred to an individual named John Rand. Mr. Rand informed the plaintiff that UBS had not owned any

mortgages in a year, and that all of their previously-owned mortgages were bundled, securitized and sold. Mr. Rand referred the plaintiff to Mr. David Stack at PHH Mortgage, the Vice President of the mortgage division for UBS. However, Mr. Stack was also not able to provide assistance to the plaintiff, as he could not find any record of PHH Mortgage or UBS having ever owned her mortgage. As a result, the plaintiff felt utterly helpless, as she had been desperately trying to speak to someone with authority to provide her with an option to avoid foreclosure such as a loan modification.

On December 15, 2010, a Notice of Trustee's Sale was recorded with the Contra Costa County Recorder's Office with a scheduled sale date of January 7, 2011. The plaintiff filed a voluntary chapter 7 bankruptcy petition in order to stop this unlawful foreclosure sale, and to discharge her unsecured debts. On March 10, 2011, the plaintiff submitted a third qualified written request on Suntrust, Mortgage Electronic Registration Systems and US Bank. Only Suntrust responded, and they asserted that Wells Fargo owned the plaintiff's loan in their response. The plaintiff received her bankruptcy discharge on April 6, 2011. She filed the instant action on April 13, 2011 shortly after receiving her discharge.

On the morning of April 14, 2011, Suntrust pushed back the foreclosure sale until June 15, 2011 at 10 a.m. Therefore, the plaintiff did not proceed with the hearing scheduled for that date, because the relief sought therein was moot (there was no longer a foreclosure sale to enjoin and no irreparable harm). With one last hope that the current dispute could be resolved out of court, the plaintiff submitted documentation for a loan modification to the defendants. Just as they had done before, Suntrust simply informed the plaintiff to submit documentation for a loan modification, and never verbally discussed plaintiff's options to avoid foreclosure, as required by California Civil Code 2923.5. The plaintiff's counsel was informed that the plaintiff was denied

for a loan modification on June 8, 2011. The plaintiff decided to amend her complaint to add Mortgage Electronic Registration Systems as a defendant, and to make the argument that California Civil Code Section 2932.5 requires that a lender have recorded a valid assignment of a Deed of Trust before foreclosing. A First Amended Complaint was filed on June 10, 2011, and served that same day on all of the defendants in this action.

On June 13, 2011, the plaintiff's counsel gave notice to all of the defendants to this action that the plaintiff would be moving ex parte for a temporary restraining order on June 14, 2011, in order to enjoin the foreclosure sale scheduled for 10:00 a.m. on June 15, 2011. On June 14, 2011, Suntrust removed this action to federal court. Later that day, the plaintiff moved in this Court for a temporary restraining order, which was granted, and an order to show cause hearing why a preliminary injunction should not issue was scheduled for June 28, 2011. Suntrust and MERS filed oppositions to the order to show cause, and this Court granted the plaintiff's motion for a preliminary injunction at the hearing (with a formal order issued on July 6, 2011).

At the hearing on the motion for the preliminary injunction, in a response to an inquiry from the Court, Suntrust's counsel stated that Wells Fargo owned the plaintiff's loan and was the current beneficiary under the Deed of Trust. Notwithstanding this representation, moving defendants subsequently claimed that US Bank was the owner of the plaintiff's loan in their motion to dismiss the plaintiff's first amended complaint, which was heard on October 28, 2011. On December 15, 2011, the Court denied the defendants' motion to dismiss the plaintiff's complaint for her causes of action for violation of California Civil Code section 2923.5 and for wrongful foreclosure, and sustained with leave to amend her remaining causes of action. The plaintiff filed her second amended complaint on March 27, 2012.

### III. LEGAL STANDARDS

The only salient issue before a federal district court in a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure is whether a complaint contains "sufficient factual matter, *accepted as true*, to 'state a claim for relief that is plausible on its face.' A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

As the Supreme Court held in *Iqbal* and *Twombly*, motions to dismiss a claim for failure to state a claim upon which relief may be granted are reserved for situations in which plaintiffs have failed to state facts (facts are automatically assumed to be true for the purpose of this motion) that lead to any "cognizable legal theory." *Id*. ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the ASSUMPTION THAT ALL THE allegations in the complaint are true") (emphasis in original); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"), *Scheuer v. Rhodes*, 416 U.S. 232, 236 (a properly pleaded complaint may proceed even if appears that is factual basis is so weak "that a recovery is remote and very unlikely."); *al-Kidd v. Ashcroft*, 2009 WL 2836448 (Sept. 4, 2009) ( "[W]e proceed as we must in a review of *all* Rule 12(b)(6) motions, accepting as true *all* facts alleged in the complaint, and drawing *all reasonable inferences in favor of the plaintiff*") (emphasis added); *Balistreri v. Pacifica Police Department* , 901 F.2d 696, 699 (9th Cir. 1988).

Finally, in the even that a Court does find that a complaint does not properly allege facts that give rise to liability for some of the causes of action, the policy of granting leave to amend a complaint, rather than outright dismissing a case, is extremely liberal. *Foman v. Davis*, 371 U.S. 178, 182 (1961).

### IV. ARGUMENT

**A. The FAC Pleads Facts Sufficient to State All Eight Causes of Action**

### 1. Neither the Plaintiff's Claims for Violation of Civil Code section 2923.5 and 2924 are Pre-Empted

The defendants spend three pages arguing that the National Bank Act pre-empts the plaintiff's claim for violation of California Civil Code section 2923.5. Nonetheless, the defendants only cite *one* case that has come to this conclusion, *Acosta v. Wells Fargo Bank, N.A.* No. C 10-991 JF (PVT) 2010 U.S. Dist. LEXIS 50602, at *23-25. However, the plaintiff respectfully submits that the reasoning contained in *Acosta* is erroneous and inapposite to the Ninth Circuit's holding in *Agayo v. U.S. Bank, N.A.*, 653 F.3d 912 (2011). In *Acosta*, the Court ruled that the National Bank Act, 12 U.S.C. § 21, *et seq.*, contained "nearly identical language" of the relevant regulatory language pertaining to the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages", as the relevant regulatory language of the Home Owners' Loan Act, 12 U.S.C. § 1641. *See also* 12 C.F.R. § 34.4(a)(10). Thus, the Court found that, since other district courts had found that California Civil Code section 2923.5 is pre-empted by the Home Owners' Loan Act, the statute must pre-empted by the National Bank Act as well.

However, the Court in *Acosta* failed to consider the primary difference between the two statutory schemes, namely that the Home Owners Loan Act pre-empts the entire field of banking as it pertains federal savings association but that federal laws and regulation pertaining to national banking associations, which are governed by the National Bank Act, do not enjoy the same field preemption status. As the Ninth Circuit ruled in *Aguayo*, "the language employed by the OCC in its regulations and interpretive letters evidences that application of a more narrow preemption analysis is more appropriate than [the OTS preemption analysis] applied in *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) where the OTS had 'specifically defined a

proper preemption test to be employed.'" 653 F.3d at 922. Indeed, the relevant regulatory language for HOLA explicitly states that the entire field of laws pertaining to "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" are entirely preempted by HOLA and its implementing regulations. 12 C.F.R. 560.2(a) (2010). Notably, as the Ninth Circuit observed in *Aguayo*, the relevant regulations for the National Bank Act do not have language giving the Office of the Comptroller of the Currency field preemptive power, as was given to the Office of Thirft Supervision in the Home Owners Loan Act. *Id*. at

Further, the Fourth Circuit ruled in *Epps v. JPMorgan Chase Bank*, 2012 WL 1134065 that a Maryland state law repossession notice requirement is not preempted by the National Bank Act, as the action in question is debt collection and not related to lending. Similarly, California Civil Code section 2923.5 does not mandate any substantive requirements on the lending of secured loans, but rather only regulates the portion of the debt collection process of a Deed of Trust in this state.

Consequently, California Civil Code section 2923.5 is not preempted by the National Bank Act, and the defendants have only cited one case to come to a contrary conclusion. Finally, it is important to note that the preemption defense would only apply to US Bank and Wells Fargo, as Suntrust and MERS are not national banking associations.

Furthermore, the defendants' cursory argument that the applicable California foreclosure statutes are preempted are wholly without merit, and the defendants do not cite a single case in which a federal court has made such a ruling. Following the defendant's logic, the entirety of foreclosure laws throughout the Nation would be pre-empted under this approach, and it is well-settled that foreclosure law had long been considered within the province of state police power. *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 542 (1994)

("the States have created diverse networks of judicially and legislatively crafted rules governing the foreclosure process."). As the Supreme Court held in *Rapanos v. U.S.*, it is well-settled that it takes a "clear and manifest statement from Congress to authorize an unprecedented intrustion into traditional state authority" of areas like the regulation of foreclosure. 126 S.Ct. 2208, 2224 (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994)).

### 2. The Plaintiff Has Alleged Facts Sufficient to State a Cause of Action for a Violation of California Civil Code Section 2923.5

While the Court has already denied the defendants' motion to dismiss on substantive grounds, the plaintiff addresses the defendants' contentions briefly, as they are without merit. The plaintiff does *not* allege in her complaint that she discussed her options to avoid foreclosure with *any* defendant prior to receiving the Notice of Default in June 2010. The plaintiff alleges that she attempted to discuss said options with a Suntrust representative and that *she* requested a forbearance plan, but that she was told to fax in paperwork. The plaintiff did fax in the requisite paperwork, but was informed by SunTrust that they did not receive. However, the plaintiff has never had any sort of discussion regarding her options to avoid foreclosure, and she alleges precisely the opposite in her SAC (stating that SunTrust repeatedly told her that they had no authority to offer any alternative to avoid foreclosure, and that the other defendants wholly disavowed having any interest in her loan).

The defendants reliance on *Hutchful v. Wells Fargo Bank, N.A.* is therefore misplaced. No. 11-55664, at 3 (9th Cir. Mar. 12, 2012). In that case, the Ninth Circuit affirmed a district court's denial of a plaintiff's motion for preliminary injunction when faced with a record that demonstrated that the plaintiff had "extensive discussions" with the defendants regarding alternatives to foreclosure. No such "extensive discussions" are alleged here, nor was any

evidence of said discussions presented at the evidentiary hearing on the plaintiff's motion for a preliminary injunction. Consequently, the Court should reject the defendants' contentions out of hand.

### 3. The Plaintiff Has Properly Alleged Facts To Support a violation of RESPA Against Suntrust and Wells Fargo

In the plaintiff's complaint, she duly alleges that she submitted a "qualified written requests" to Suntrust (on two occasions), MERS, Wells Fargo, and US Bank. FAC 25, 28, 36 and 37. Moreover, the plaintiff also alleges that Suntrust responded to her first letter to them by referencing another individual's loan, and not her. In the second letter sent by the plaintiff to Suntrust, the plaintiff explicitly states "that until a written response is given, Client disputes the amount owing because there are or may be charges, fees, costs, or other line items for which Client is unaware of contractual or legal authority." Indeed, such a suspicion was well-founded, as Suntrust responded with a letter that states that Wells Fargo, N.A. owns her loan (despite the fact that US BANK is the last recorded assignee of the Deed of Trust, a fact admitted by Suntrust in this letter and by its counsel on the record at the hearing on the motion). Furthermore, this letter is reproduced almost verbatim in one of the leading treatises on California foreclosure law. *See* 1 Roger Bernhardt, *California Mortgages, Deeds of Trust, and Foreclosure Litigation*, § 7.30 (4th ed. 2011).

The defendants' take issue with one of the letters sent by the plaintiff, which was sent by her counsel, See Defendant's Opposition, pg. 8, and cursorily argue that it does not suffice to be a "qualified written request" under RESPA. Under 12 USC 2605(e)(1)(b), all that is required for a correspondence to be considered a "qualified written request" is that the correspondence be in writing; it cannot be written on a payment coupon; it includes, or provides a manner by which the servicer can identify, the name and account of the borrower and a statement of the reasons for

the borrower's belief that the account is in error or *sufficient detail regarding other information sought by the borrower.* (emphasis added). The second letter that the plaintiff sent to Sunturst (which was sent by her counsel) explicitly requested that Suntrust "provide us with documents and documentation supporting your collection and enforcement efforts, including, without limitation, all documents and documentation in support of the enforcement of the Promissory Note . . . and all of those documents and disclosures made or presented to or signed by Client or any other party to the transaction at the time of making of the Note and Deed of Trust *and the names of the original lender and all assignees*, as well as any reporting of the account internally and to credit bureaus."

This letter explicitly states that it is asking for "documentation" supporting the "enforcement of the Promissory Note", and asks for the names of "all assignees" (and such a request is eminently important and reasonable considering the vast confusion and discrepancies displayed by the different defendants in this case regarding the ownership of her loan). Indeed, the plaintiff alleges in the FAC that she has been harmed by not knowing the true owner of her loan as well as whether her payments were properly applied, both of which suffice to allege harm for this cause of action. Thus, the cases cited by the defendants in which the plaintiffs failed to identify any harm to them by not receiving a proper response to a qualified written request are utterly distinct from the situation at bar.

Finally, the defendants argue that the plaintiff has not properly alleged damages in the SAC for her RESPA claim. However, the plaintiff clearly states that she has been harmed by "incurring additional late payment penalties, an increased loan balance, damaged credit, and being forced to file bankruptcy by not being provided accurate information regarding the owner of her loan whom she could negotiate an alternative to avoid foreclosure." *See Second Amended*

*Complaint paragraph 5 of RESPA Cause of Action.* Moreover, the plaintiff has endured severe emotional distress by not being provided with accurate information from these defendants. *Id.* In *Milyakov v. JPMorgan Chase, N.A., et al.*, Case No. 11-cv-02066, Dkt. 20 (N.D. Cal. Sep. 2, 2011), Judge Alsup denied a defendant's motion to dismiss a plaintiff's RESPA claim with similar allegations of damages. Thus, the Court should not deny the defendant's motion to dismiss son this ground.

### 4. The Plaintiff Has Properly Alleged a Wrongful Foreclosure Claim and Violations of California Civil Code § 2932.5

This Court, in a lengthy decision, has already rejected the defendants' motion to dismiss this cause of action, yet the defendants persist on making the same arguments that California foreclosure laws may be violated with impunity unless the plaintiff can prove all of the elements of fraud. However, the defendants are dead wrong: the tort of "wrongful foreclosure" is *not* analogous to "fraud". Rather, all that the plaintiff has to allege is that there has been, or that a plaintiff has been threatened with, an "illegal" or "willfully oppressive" sale under a Deed of Trust. *Munger v. Moore*, 11 Cal.App.3d 1, 7 (1970). Indeed, in *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 329, a jury awarded the plaintiff punitive damages in a wrongful foreclosure case where the plaintiff alleged that the defendant's initiation of foreclosure was wrongful. In that case, the jury did *not* find that all of the elements of fraud were met, and it is apparent from the Court's opinion that there was no reliance on anything that the defendants did (as the plaintiff challenged the defendants right to foreclose from the beginning). *Id.* While the jury ruled that the foreclosure was "fraudulent", the use of this term was used in the context of California Civil Code 3294 which, as explained in detail in the plaintiff's opposition to the motion to strike, does not have a "reliance" prong. *Id.* The Second District affirmed in full the jury verdict, including the award for punitive damages. *Id.*

This Court already rejected the defendants' reliance on *Gomes v. Countrywide Home Loans,* Inc., 192 Cal.App.4th 1149, 1152 (Feb. 18, 2011), and the *Gomes* Court itself distinguished situations like the one at bench from the one before it (Court found that allegations of backdating is an "infirmity" in the foreclosure process). Moreover, Judge Jeffrey White affirmed this Court's ruling only three weeks ago in *Makreas v. First Naitonal Bank of Northern California, et al.*, 2012 WL 1144275 (N.D. Cal. Apr. 4, 2012). Indeed, as this is a matter of state law, there is binding California appellate precedent that clearly holds that a "borrower who believes that a foreclosing entity lacks standing to do so . . . can seek to enjoin the sale or to set the aside the sale." *Robinson v. Countrywide Home Loans, Inc.*, 199 Cal.App.4th 42, 46 n. 5.

Furthermore, the defendants reliance on another California appellate case also fails to support their arguments. In *Fontentot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, the First District of the California Court of Appeal explicitly distinguished the numerous cases cited by the Court in its previous order denying the defendants' motion to dismiss from the one before the Court of Appeal. *Id.* at 268 (distinguishing *Sacchi v. Mortgage Electronic Registration Systems, Inc.*, 2011 WL 2533029, at *9-10 (C.D. Cal. June 24, 2011); *Ohlendorf v. Am. Home Mortg.*, No. Civ. S-09-2081k LKK/EFB, 2010 U.S. Dist. LEXIS 21098, at *21-24; *Castillo v. Skoba*, No. 10cv1838 BTM, 2010 WL 3986953, at *2 (S.D. Cal. Oct. 8, 2010).

In sum, the defendants present no new persuasive arguments, but continue to make their claim that a bank may run roughshod over California foreclosure laws and a plaintiff may not come into Court to seek redress for these wrongs. While such a proposition runs afoul of perhaps one of the most well-established principles of American jurisprudence (for every wrong, there is a remedy, *see Marbury v. Madison*, 5 U.S. 137 (1803)), it is also not true that the plaintiff has not been prejudice. As this Court previously noted, "the threat of foreclosure by the

wrong party would certainly be prejudice to the homeowner." *Tamburri v. Suntrust Mortgage, Inc.*, 2011 WL 6294472 at *14 (N.D. Cal. Dec. 15, 2011). Moreover, the plaintiff's second amended complaint is filled with the amount of emotional anguish she has endured as a result of the unlawful foreclosure proceedings commenced against her. As stated earlier, the plaintiff is entitled to receive monetary damages for that harm through this action. *Munger v. Moore*, 170 Cal.App.3d 1,7, 11 (citing Cal. Civ. Code § 3333).

Finally, the Court's analysis of California Civil Code section 2932.5 is discussed in detail in its previous order. While the defendants cite cases coming to contrary rulings, it is important to note that the California Supreme Court has not weighed in on this matter at this time.

### 5. The Plaintiff Has Properly Plead "Fraud" and "Unfair Business Practices" Claims

While the plaintiff provides very precise details over the dates, names and documents that provided materially false information to the plaintiff, the defendant claims that the plaintiff has not made such allegations with the requisite specificity for either common law fraud or violations of the California Business and Professions Code section 17200, et seq. However, the plaintiff explicitly recounts specific conversations, identities and dates in which she was told by Suntrust that Wells Fargo owned her loan, and also specific letters and conversations with Wells Fargo in which they disavowed having any interest in her loan. Moreover, the plaintiff alleges that both parties made said statements maliciously in order to obtain additional compensation pursuant to the pooling and servicing agreement, in which the plaintiff's loan was placed in. Furthermore, the plaintiff alleges that she relied upon these statements by not seeking out to the true owner of her loan options to avoid the foreclosure of her home. Finally, the plaintiff chronicles in detail the emotional distress and other harm she suffered as a result of the fraudulent statements.

Likewise, the plaintiff provides the same specificity with her violations of California Business and Professions Code section 17200 claim. Moreover, Judge White in *Makreas* ruled that wrongfully backdating of a substitution of trustee was sufficient to state a viable cause of action for violation of Business and Professions Code section 17200 claim, which is identical to the plaintiff's allegations in this case. *Makreas*, 2012 WL 144275.

### 6. The Plaintiff Has Properly Plead "Quiet Title" and "Declaratory Relief" Claim

Both of these causes of action purport to address the status of title for plaintiff's home following judgment of this action. As the plaintiff pleads in her complaint, the plaintiff is not seeking a windfall of a free house, but wishes to quiet title subject to the "valid encumbrances" on her home. In *Dimock v. Emerald Properties*, 81 Cal.App.4th 868, 876 (2000), the California Court of Appeal set aside a foreclosure sale and quieted title subject to the valid encumberances that existed on the property prior to the sale. The plaintiff seeks to only quiet title against lien that is found to be invalid in the situation at bench, which is what the plaintiff seeks in her declaratory relief cause of action as well (as well as a judgment pertaining to the various unlawful foreclosure documents filed in this case) .

### 7. The Plaintiff Has Properly Plead "Quiet Title" and "Declaratory Relief" Claim

In the Court's previous order, it noted that a duty may arise through statute, such as California Civil Code section 2923.5, but that it is necessary to demonstrate damages. In the plaintiff's second amended complaint, she chronicles in detail the emotional harm she has suffered by not being provided with the options required by law that could help her save her home.

**Date: April 24, 2012**

1
2
          */s/ Nelson W. Goodell*
          NELSON W. GOODELL
          The Goodell Law Firm