**United States District Court**
For the Northern District of California

1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                        NORTHERN DISTRICT OF CALIFORNIA

7

8    DEBORAH TAMBURRI,                              No. C-11-2899 EMC

9                  Plaintiff,

10         v.                                        **ORDER GRANTING IN PART AND
                                                     DENYING IN PART DEFENDANTS'
11   SUNTRUST MORTGAGE, INC., *et al.*,             MOTION TO DISMISS**

12                 Defendants.                       **(Docket No. 95)**
     _____/
13

14

15         Plaintiff Deborah Tamburri initiated this lawsuit in state court, asserting claims for, *inter*

16   *alia*, violation of California Civil Code § 2923.5, violation of the Real Estate Settlement Procedures

17   Act ("RESPA"), unfair business practices, and wrongful foreclosure.  Defendant Suntrust Mortgage,

18   Inc. removed the case to federal court, and the next day Ms. Tamburri moved for a temporary

19   restraining order to enjoin the foreclosure sale of her home.  This Court granted the motion and, after

20   holding a hearing on June 28, 2010, granted a preliminary injunction enjoining Defendants from

21   foreclosing on her home and requiring Plaintiff to post monthly bond payments.  Docket No. 33.  All

22   Defendants besides Wells Fargo and Recontrust then moved to dismiss Plaintiff's complaint.  Wells

23   Fargo did not appear in this matter and default was entered against it on September 6, 2011.  Docket

24   No. 45.  Plaintiff moved for default judgment against Wells Fargo, but the Court later granted Wells

25   Fargo's motion to set aside default.  Docket No. 82.

26         The Court previously granted in part and denied in part Defendants Suntrust, MERS, and

27   U.S. Bank's motion to dismiss Plaintiff's First Amended Complaint.  Docket No. 82; *Tamburri v.*

28   *Suntrust Mortg., Inc.*, C-11-2899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011).  Now pending

before the Court is Defendants' (including Wells Fargo) motion to dismiss Plaintiff's Second Amended Complaint ("SAC").  Docket No. 95.  The Court concludes, as explained below, that Plaintiff's only federal cause of action is deficient.  However, the Court finds it appropriate to exercise supplemental jurisdiction over Plaintiff's remaining claims.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's RESPA claim, and **GRANTS in part** and **DENIES in part** Defendants' motion with respect to Plaintiff's remaining state law claims.

## I.   DISCUSSION

A.   Motion to Dismiss

   1.   Legal Standard

   Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Id.*

   2.   Real Estate Settlement Procedures Act ("RESPA") – 12 U.S.C. § 2605

   Ms. Tamburri alleges that Defendants SunTrust and Wells Fargo violated 12 U.S.C. § 2605(e) either by failing to properly respond to Plaintiff's Qualified Written Requests ("QWRs") (in the case of Suntrust), or by denying it has an interest in the loan (in the case of Wells Fargo).  SAC at 23-24.

2

As the Court explained in its prior order, "Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process." *Schuetz v. Banc One Mortg. Corp.*, 292 F.3d 1004, 1008 (9th Cir. 2002). It sought to implement significant reforms in the real estate settlement process which "are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601. RESPA applies not only to the actual settlement process, however, but also to the servicing of federally related mortgage loans. *See, e.g.*, *id.* § 2605(e) (imposing requirements on servicers of federally related mortgage loans).

Section 2605(e) is titled "[d]uty of loan servicer to respond to borrower inquiries." It provides in relevant part as follows:

> (1) Notice of receipt of inquiry
>
> > (A) In general. If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period.
> >
> > (B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –
> >
> > > (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> > >
> > > (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e). The terms "servicer" and "servicing" are defined in § 2605(i). "The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *Id.* § 2605(i)(2). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the

United States District Court
For the Northern District of California

1  amounts received from the borrower as may be required pursuant to the terms of the loan." *Id*. §

2  2605(i)(3).

3      Under § 2605(e), a loan servicer has an obligation to act when it receives a QWR from the

4  borrower or borrower's agent "for information relating to the servicing of [the] loan." 12 U.S.C. §

5  2605(e)(1)(A).  Because RESPA does not provide for injunctive relief, *see Rivera v. BAC Home*

6  *Loans Serv., L.P.*, No. C 10-02439 RS, 2010 U.S. Dist. LEXIS 80294, at *12-13 (concluding that

7  RESPA claims could not stop a foreclosure because RESPA did not have as a remedy injunctive

8  relief), actual damages and, in the case of a pattern or practice, statutory damages, are the only

9  remedies available when a servicer violates the above provisions. *See* 12 U.S.C. § 2605(f)(1).

10     Plaintiff alleges she sent the following QWRs to Defendants:

11  (1)    On November 25, 2009, seven months after receiving a Notice of Default, Plaintiff sent a

12  QWR to SunTrust "in an attempt to gather additional information regarding her loan."  SAC ¶ 50.

13  SunTrust did not respond until 27 days later, and its response referenced the wrong borrower's loan.

14  *Id*. ¶¶ 50-51; *see* Docket No. 11, Ex. 4 (letter from SunTrust).

15  (2)    On February 9, 2010, Plaintiff sent a QWR to Wells Fargo.  Wells Fargo responded by

16  stating that it was "[u]nable to confirm name(s) provided as an active borrower," nor was it able to

17  "verify active mortgage on property address or loan number supplied."  SAC  ¶ 58.

18  (3)    On March 10, 2011, after receiving a Notice of Trustee's Sale, Plaintiff sent QWRs to

19  SunTrust, MERS, and U.S. Bank.[1]  SAC ¶ 69.  MERS and U.S. Bank never responded.  *Id*. ¶ 70.

20  SunTrust responded that Wells Fargo owned Plaintiff's loan, and that SunTrust was the servicer on

21  the loan.  *Id*.; Docket No. 11, Ex. 8 (letter from SunTrust).  However, U.S. Bank was listed as the

22  owner/beneficiary on the recorded assignment in the County Recorder's Office.  When Plaintiff

23  contacted U.S. Bank by telephone, U.S. Bank denied owning her loan.  SAC ¶ 70.

24     The Court previously dismissed Plaintiff's RESPA claim as alleged in the First Amended

25  Complaint for failure to allege damages.  Defendants, as they argued previously, contend that

26  Plaintiff's claim as alleged in the SAC should be dismissed for the same reasons.  First, they argue

27  _____

28     [1]  Plaintiff names neither U.S. Bank nor MERS in her SAC for RESPA violations.
Accordingly, the Court does not address these purported QWRs.

1   that Plaintiff's SAC still fails to allege any damages as a result of Defendants' purported RESPA

2   violations.  Second, Defendants again claim that Plaintiff's letters are not QWRs because they do not

3   relate to the servicing of the loan as required under § 2605; rather, they merely ask for

4   documentation as to who owns the loan.

5          Although Plaintiff has added new allegations of harm to her RESPA claim, the Court finds

6   that Plaintiff has still not alleged any actual, cognizable damages *resulting from Defendants' failure*

7   *to respond to QWRs*.  As the Court previously explained, Plaintiff's "statement that she was harmed

8   by not knowing the true owner of Note and 'whether her payments have been properly applied,'

9   FAC ¶ 47, is insufficient to allege the pecuniary harm required by the statute."  Docket No. 82 at 12;

10  *Tamburri*, 2011 WL 6294472 at *8; *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218,

11  1223 (E.D. Cal. 2010) ("[T]he Court rejects, as a matter of law, Plaintiffs' argument that they were

12  harmed by not being able to name the real party of interest in this suit. Under RESPA, a borrower

13  may not recover actual damages for nonpecuniary losses.")); *Ash v. OneWest Bank, FSB*,

14  2:09-CV-00974FCD/DAD, 2010 WL 375744, at *6 (E.D. Cal. Jan. 26, 2010) ("[P]laintiffs' vague

15  claim that they suffered harm because they were unable to name the real party in interest to this suit

16  is insufficient to demonstrate that they suffered actual damages as a result of defendant's failure to

17  respond to the QWR."); *Fullmer v. JPMorgan Chase Bank, NA*, 2:09-CV-1037 JFM, 2010 WL

18  95206, at *6 (E.D. Cal. Jan. 6, 2010) (same).

19         Plaintiff's allegations in the SAC, while more detailed, still relate solely to Plaintiff's desire

20  to "obtain information of the ownership of her loan."  SAC ¶ 4; *see also id.* ¶ 5.  As the Court has

21  already found, such allegations are insufficient to state a claim for damages caused by Defendants'

22  purported RESPA violations because such damages are outside the scope of RESPA.  Any damages

23  – whether monetary or emotional – purportedly resulting from Plaintiff's lack of knowledge as to the

24  owner of her loan are not plausibly related to her RESPA claim, because § 2605 relates only to the

25  *servicing* of a loan, not to its ownership or validity.  Docket No. 82 at 12-13; *Tamburri*, 2011 WL

26  6294472 at *8; *see Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal.

27  2009) ("That a QWR must address the servicing of the loan, and not its validity, is borne out by the

28  fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan.").

**United States District Court**
For the Northern District of California

1    Because RESPA is not designed to cover disputes over the ownership and validity of a loan,

2    Plaintiff's purported damages arising from such disputes are not cognizable under RESPA.

3    　　　　In contrast, cases in which courts have found properly alleged damages involve concrete

4    harm caused by the RESPA violation itself, not harm generally resulting from a plaintiff's default

5    and foreclosure process.  For example, in *Johnson v. HSBC Bank USA, Nat. Ass'n*,

6    3:11-CV-2091-JM-WVG, 2012 WL 928433 (S.D. Cal. Mar. 19, 2012), the plaintiff alleged, *inter*

7    *alia*, that a new servicer had refused to honor a loan modification plan adopted by the previous

8    servicer, failed to "properly credit payments [plaintiff] has made on the mortgage and [] incorrectly

9    calculated interest," and failed to "provide a substantive response" to plaintiff's QWR attempting to

10   verify the debt owed pursuant to the new loan modification plan.  Given the confusion over how

11   much the plaintiff actually owed given those circumstances, defendant's failure to respond to the

12   QWR plausibly caused harm.  Similarly, in *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d

13   374, 382-83 (D.N.J. 2006), plaintiffs adequately alleged damages under RESPA where they alleged

14   that defendants continued to report late payments to credit bureaus and failed to respond to their

15   QWRs even after the debt had been discharged in bankruptcy, thus damaging plaintiffs' credit and

16   precluding them from obtaining other loans.  *See also Yulaeva v. Greenpoint Mortgage Funding,*

17   *Inc.*, 2009 U.S. Dist. LEXIS 79094, at *44 (E.D. Cal. Sept. 3, 2009) (plaintiff adequately plead

18   damages where she alleged that she was made to pay a referral fee that was prohibited by RESPA).

19   　　　　Unlike these cases, Plaintiff has not alleged harm that derives from any failure to respond to

20   the QWRs, rather than from her own default or from disputes over the loan's ownership or validity.

21   *See Allen v. United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009)

22   (dismissing RESPA claim with prejudice where plaintiff had "not actually attempted to show that

23   the alleged RESPA violations caused any kind of pecuniary loss (indeed, his loss of property

24   *appears to have been caused by his default*)") (emphasis added).  As with her FAC, Plaintiff's SAC

25   has not alleged, *e.g.*, "that she attempted to make a payment that was not properly credited, thus

26   leading to Plaintiff's default."  Docket No. 82 at 13; *Tamburri*, 2011 WL 6294472 at *8.  Indeed,

27   Plaintiff could not so allege because she admits that she sent the QWRs only *after* she had missed

28   payment(s) and had received a Notice of Default.  *See* SAC ¶¶ 44, 46, 50-51, 58, 69-70.  Because

1   the SAC's "allegations indicate that [Plaintiff sent [the QWR] after she had already defaulted on her

2   loan . . . [it] fail[s] to allege facts plausibly showing that any claimed damages for fees, interest, and

3   penalties incurred because of her default were the consequence of any alleged RESPA violation."

4   *Obot v. Wells Fargo Bank, N.A.*, C11-00566 HRL, 2011 WL 5243773 (N.D. Cal. Nov. 2, 2011);

5   *Durland v. Fieldstone Mortg. Co.*, 10CV125 JLS CAB, 2011 WL 805924 (S.D. Cal. Mar. 1, 2011)

6   ("Without more, allegations of fees assessed, negative credit reporting, and emotional distress are

7   insufficient to state a claim. Plaintiff fails to establish any causal relation between the alleged

8   pecuniary losses and Litton's failure to respond to his informational requests.") (internal citations

9   omitted).  Plaintiff does not allege that her QWRs sought information about such alternatives to

10  foreclosure and so there is no claim of harm related to foreclosure that is plausibly and proximately

11  caused by Defendant's failure to respond.  *See* Docket No. 11, Ex. 7 (March 11, 2012 QWR

12  requesting information about "documents and documentation supporting [] collection and

13  enforcement efforts," including "documents in support of the enforcement of [Ms. Tamburri's]

14  Promissory Note . . . and the Deed of Trust").

15          Therefore, the Court finds that Plaintiff's SAC is as deficient as her FAC with respect to her

16  RESPA claim.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's RESPA

17  cause of action.  Because Plaintiff has already had a chance to amend her complaint to cure the exact

18  deficiency described above, the dismissal is with prejudice.

19          3.      Supplemental Jurisdiction

20          Plaintiff's RESPA claim was her only federal cause of action alleged in the SAC.  However,

21  the Court exercises supplemental jurisdiction over her remaining state law claims.  28 U.S.C. §

22  1367(c)(3).  Given the multiple rounds of briefing the Court has already entertained in this matter

23  and the fact that it has already been pending for approximately one year, the Court finds that remand

24  at this stage in the litigation would not serve the principles of "judicial economy, convenience,

25  fairness, and comity," and therefore exercises its discretion to entertain Plaintiff's state law claims.

26  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

27  ///

28  ///

**United States District Court**
For the Northern District of California

a.     Preemption

i.     NBA vs. HOLA Preemption

In this round of 12(b)(6) briefing, Defendants make the new argument that Plaintiff's state law claims are preempted under the National Bank Act ("NBA"), 12 U.S.C. § 21.  12 C.F.R. § 34.4, promulgated by the Office of Comptroller of Currency ("OCC"), contains a preemption provision. That provision states:

> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers do not apply to national banks. Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning:
> . . .
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 34.4(a)(10).  The regulation also contains an exception clause, which states,

> State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:
>
> (1) Contracts;
>
> (2) Torts;
>
> (3) Criminal law;
>
> (4) Homestead laws specified in 12 U.S.C. 1462a(f);
>
> (5) Rights to collect debts;
>
> (6) Acquisition and transfer of real property;
>
> (7) Taxation;
>
> (8) Zoning; and
>
> (9) Any other law the effect of which the OCC determines to be incidental to the real estate lending operations of national banks or otherwise consistent with the powers and purposes set out in § 34.3(a).

12 C.F.R. § 34.4(b).  As the Supreme Court has explained, "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with

United States District Court

For the Northern District of California

1  the letter or the general purposes of the NBA." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11

2  (2007).  The preemption provision thus embodies conflict, not field, preemption.

3       Defendants cite to only one case holding that the NBA has preemptive effect over certain

4  California laws relating to foreclosure.  *See Acosta v. Wells Fargo Bank, N.A.*, C 10-9910JF (PVT),

5  2010 WL 2077209 (N.D. Cal. May 21, 2010).  In *Acosta*, Judge Fogel analogized the NBA to the

6  Home Owners' Loan Act ("HOLA"), which some courts have found to preempt state laws relating

7  to federal savings banks.  *Id*. at *8 (finding that the NBA preempted § 2923.5 because "several

8  district courts within the Ninth Circuit have determined that the Home Owners' Loan Act

9  ("HOLA"), 12 U.S.C. § 1464-which contains the nearly identical language at 12 U.S.C. §

10  1464(b)(10)-preempts Section 2923.5").

11       However, the analogy between the NBA and HOLA is flawed.  Unlike the NBA, which

12  contains only a conflict preemption clause, HOLA contains a broad field preemption clause.

13  Specifically, 12 C.F.R. § 560.2(a) provides, in relevant part,

14       To enhance safety and soundness and to enable federal savings
         associations to conduct their operations in accordance with best
15       practices (by efficiently delivering low-cost credit to the public free
         from undue regulatory duplication and burden), [the Office of Thrift
16       Supervision ("OTS")] *hereby occupies the entire field of lending
         regulation for federal savings associations*. OTS intends to give
17       federal savings associations maximum flexibility to exercise their
         lending powers in accordance with a uniform federal scheme of
18       regulation. Accordingly, federal savings associations may extend
         credit as authorized under federal law, including this part, without
19       regard to state laws purporting to regulate or otherwise affect their
         credit activities, except to the extent provided in paragraph (c) or §
20       560.10[2] of this part.

21  12 C.F.R. § 560.2(a) (emphasis added).  In addition, § 560.2(b) provides,

22       Except as provided in § 560.110 of this part, the types of state laws
         preempted by paragraph (a) of this section include, *without limitation*,
23       state laws purporting to impose requirements regarding:
         ...
24       (10) Processing, origination, servicing, sale or purchase of, or
         investment or participation in, mortgages.

25

26  12 C.F.R. § 560.2(b)(10) (emphasis added).  Section 560.2(c) provides a savings clause:

27  _____

28       [2] This section concerns the "Most favored lender usury preemption."

9

United States District Court

For the Northern District of California

> State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
> ...
> (1) Contract and commercial law;
>
> (2) Real property law;
>
> …
> (4) Tort law;
> ...
> (6) Any other law that OTS, upon review, finds:
>
>> (i)  Furthers a vital state interest; and
>>
>>> (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

In order to determine whether a claim is preempted under HOLA, OTS prescribes the following process:

> When analyzing the status of state laws under § 560.2, *the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted.* If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. *Any doubt should be resolved in favor of preemption.*

*Parcray v. Shea Mortg. Inc.*, CV-F09-1942OWW/GSA, 2010 WL 1659369, at *7-8 (E.D. Cal. Apr. 23, 2010) (quoting OTS, Final Rule, 61 Fed.Reg. 50951, 50966-50967 (Sept. 30, 1996) (emphasis added)).  Thus, the savings clause comes into play only if the law at issue is not listed in the preemption section.

Such broad preemption language is absent from the NBA.  In contrast to 12 C.F.R. § 502.2(b) of the OTS/HOLA regulations which broadly declares categories of state law that are preempted *per se*, 12 C.F.R. § 34.4(b) declares categories that are *not* preempted if they have an incidental effect on bank's lending powers.  Indeed, the Ninth Circuit has concluded that, while the OTS/HOLA regulations described above permit a court to consider the savings clause of § 560.2(c) only if the law at issue does not fall within the express preemption provisions of § 560.2(b), the

United States District Court

For the Northern District of California

1   OCC/NBA regulations "require[] the court to consider both the express preemption and savings

2   clauses *together*" in the first instance. *Aguayo v. U.S. Bank*, 653 F.3d 912, 922 (9th Cir. 2011)

3   (emphasis added) (internal citations omitted).

4       As the Ninth Circuit held in *Aguayo v. U.S. Bank*, "while the OTS [HOLA] and the OCC

5   [NBA] regulations are similar in many ways, the OCC has explicitly avoided full field preemption in

6   its rulemaking and has not been granted full field preemption by Congress." 653 F.3d at 921-22

7   (internal citations omitted). "Because of this difference in field preemption, courts have been

8   cautious in applying OTS analysis to OCC regulations." *Id.* at 922 (internal citations omitted).

9   HOLA's strict field preemption analysis therefore bears little relation to the NBA's more flexible

10  conflict preemption analysis. *See also Gerber v. Wells Fargo Bank, N.A.*, CV 11-01083-PHX-

11  NVW, 2012 WL 413997 (D. Ariz. Feb. 9, 2012) ("[T]he [NBA] rule *only* preempts the types and

12  features of state laws pertaining to making loans and taking deposits that are *specifically listed* in the

13  regulation.") (quoting OCC Interpretive Letter No. 1005, 2004 WL 3465750 (June 10, 2004)

14  (emphasis added); citing *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir.

15  2010) ("The [NBA] (and OCC regulations thereunder) does not 'preempt the field' of banking.")).

16      The distinction between HOLA's field preemption, on the one hand, and NBA's mere

17  conflict preemption, on the other, renders cases construing HOLA preemption inapposite to the

18  question of whether NBA preemption applies. It is likely for this reason that almost no courts have

19  addressed NBA preemption in the context of foreclosure litigation, despite the growing body of

20  foreclosure cases circulating through the state and federal court systems.

21      Aside from the one case Defendants cite which, in this Court's view, erroneously applies the

22  HOLA preemption analysis in the context of the NBA, Defendants provide no other authority for the

23  proposition that Plaintiff's state law claims, including § 2923.5, are preempted by the NBA. The

24  few courts that have examined the NBA's application to state foreclosure laws have concluded that

25  "state laws regulating foreclosure are [] not preempted by NBA." *Gerber v. Wells Fargo Bank,*

26  *N.A.*, CV 11-01083-PHX-NVW, 2012 WL 413997, at *8 (D. Ariz. Feb. 9, 2012). *Gerber* reached

27  this conclusion after an extensive analysis of the NBA's preemption provisions, and concluded that

28  "there has never been a federal presence [] sufficient to displace the various types of state statutes

11

United States District Court
For the Northern District of California

1    governing foreclosure procedures.  Indeed, foreclosure practices govern 'acquisition and transfer of

2    property,' an area which the Supreme Court has already confirmed lies within states' presumed

3    powers to regulate."  *See id.* at *5 (quoting *Watters*, 550 U.S. at 11) (addressing NBA preemption

4    and concluding that banks remain subject to state laws regarding, *e.g.*, "acquisition and transfer of

5    property").  *Gerber* also concluded that "foreclosure" was not among the NBA's expressly

6    preempted state laws in 12 C.F.R. § 34.4(a).  Although the regulation listed "servicing," the court

7    found that "foreclosure" was not sufficiently related to "servicing" because "[t]he OCC went to the

8    trouble of specificity concerning other phases of the loan's existence (*e.g.*, 'processing,'

9    'origination') but did not list 'foreclosure,' and it is therefore difficult to assume that it meant to

10   include it within a 'servicing' catch-all."  *Id.* at *8.  The court noted that such a reading would create

11   the implausible result of "bring[ing] down . . . probably every state's laws regarding foreclosure."

12   *Id. See also Loder v. World Savings Bank, N.A.*, No. C11-00053 TEH, 2011 WL 1884733, at *7

13   (N.D. Cal. May 18, 2011) (expressing concern, in the context of a HOLA preemption argument, that

14   "a broad interpretation of what it means to 'service' or 'participate in' a mortgage could operate to

15   preempt most all California foreclosure statutes where the foreclosing entity is a national lender").

16          The Court finds *Gerber* persuasive and adopts its reasoning with respect to Plaintiff's state

17   law claims asserted here, including under § 2923.5.  As the Supreme Court has explained, the NBA

18   leaves national banks "subject to the laws of the State," and banks "are governed in their daily

19   course of business far more by the laws of the State than of the nation."  *Atherton v. FDIC*, 519 U.S.

20   213, 222 (1997) (quoting *Nat'l Bank v. Commonwealth*, 75 U.S. 353, 362 (1869)).  The Supreme

21   Court has also noted the states' longstanding interest in regulating the foreclosure process, and has

22   imposed a clear statement rule on any statutes that could potentially be construed to impinge on that

23   interest.  *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541-44 (1994) (describing long history

24   of state regulation of the foreclosure process and declining to read a provision of the Bankruptcy

25   Code as disrupting "the ancient harmony that foreclosure law and fraudulent conveyance law . . .

26   have heretofore enjoyed").

27          The OCC itself has confirmed that state foreclosure laws are not generally within the scope

28   of NBA preemption.  *See* Bank Activities and Operations; Real Estate Lending and Appraisals, 69

**United States District Court**
For the Northern District of California

1    Fed. Reg. 1904-01, at 1912 & n.59 (Jan. 23, 2004) (OCC final rule describing state foreclosure laws

2    as generally among laws that "do not attempt to regulate the manner or content of national banks'

3    real estate lending, but that instead form the legal infrastructure that makes it practicable to exercise

4    a permissible Federal power").

5          If there were any doubt as to whether preemption under HOLA was equivalent to preemption

6    under the NBA, the recent Dodd-Frank legislation lays such doubt to rest.  The Dodd-Frank Act

7    changed the above-described HOLA preemption analysis and mandates that HOLA preemption

8    would now follow the more lenient NBA conflict preemption standard.  *See Settle v. World Sav.*

9    *Bank, F.S.B.*, ED CV 11-00800 MMM, 2012 WL 1026103, at *13 (C.D. Cal. Jan. 11, 2012) ("The

10   Dodd-Frank Act provides that HOLA does not occupy the field in any area of state law and that

11   preemption is governed by the standards applicable to national banks.") (quoting *Davis v. World*

12   *Savings Bank, FSB*, 806 F. Supp. 2d 159, 166 n.5 (D.D.C. 2011); citing Pub. L. No. 111-203, 2010

13   HR 4173 § 1046 ("Any determination by a court or by the Director or any successor officer or

14   agency regarding the relation of State law to a provision of this chapter or any regulation or order

15   prescribed under this chapter shall be made in accordance with the laws and legal standards

16   applicable to national banks regarding the preemption of State law.... Notwithstanding the

17   authorities granted under sections 4 and 5, this Act does not occupy the field in any area of State

18   law.").  Thus, not only is HOLA preemption inapplicable to NBA cases, it is no longer applicable at

19   all to any post-Dodd-Frank transactions.

20                          ii.      No Conflict Preemption

21          Under NBA conflict preemption, Plaintiff's § 2923.5 claim does not impose any constraints

22   on banks' lending or servicing powers.  Rather, it "only incidentally affect[s] the exercise of national

23   banks' real estate lending powers" by requiring certain procedural hurdles before a bank may

24   foreclose on real property and transfer said property to a new owner.  *See* 12 C.F.R. § 34.4(b)

25   (exempting from NBA preemption any state laws that incidentally affect banks and concern, *inter*

26   *alia,* contracts, torts, rights to collect debts, or acquisition and transfer of real property); *Mabry v.*

27   *Superior Court*, 185 Cal. App. 4th 208, 231 (2010) (finding that § 2923.5 does not create a right to

28

**United States District Court**
For the Northern District of California

1    loan modification and that failure to comply with its requirements can only result in a delay in

2    foreclosure).

3         Other cases are in accord and confirm that Plaintiff's state common law claims are similarly

4    outside the scope of NBA preemption. *See, e.g.*, *Lucia v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d

5    1059, 1065-66 (N.D. Cal. 2011) (White, J.) (finding that UCL, state contract, and Rosenthal Act

6    claims arising out of failed modifications of home mortgage loans under HAMP were not preempted

7    because the "theories upon which the claims are based do not necessarily impinge upon the bank's

8    obligations under the NBA" because they are "state laws of general application"); *Sutcliffe v. Wells*

9    *Fargo Bank, N.A.*, C-11-06595 JCS, 2012 WL 1622665, at *23 (N.D. Cal. May 9, 2012) (same); *see*

10   *also Gutierrez v. Wells Fargo & Co.*, C07-05923 WHA, 2010 WL 1233885 (N.D. Cal. Mar. 26,

11   2010) (finding that UCL claims based on banks' alleged deceptive business practices related to fees

12   and other servicing conduct are not preempted when they do not challenge "a bank's right to

13   establish a fee," but rather challenge, *e.g.*, "a bank's right to deceive or unfairly induce customers

14   into paying them") (citing *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir.

15   2010) ("State laws of general application, which merely require all businesses (including national

16   banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's

17   ability to exercise its [federally-authorized] powers.")).[3]

18        Indeed, as noted above, if the Court accepted Defendant's arguments, it would be

19   questionable whether any of California's (or other states') foreclosure laws could avoid preemption.

20   Yet federal law provides no legal framework for foreclosure. *Mabry*, 185 Cal. App. 4th at 231.

21   Thus, Defendant essentially asks the Court to eviscerate decades of state foreclosure regulation. The

22   Court finds no authority to do so.

23        Accordingly, the Court **DENIES** the motion to dismiss on the basis of NBA preemption.

24

25   _____

26        [3]  Moreover, even if the broader HOLA preemption applied, some courts have concluded that
     "section 2923.5 is not preempted by federal banking regulations because it is, or can be construed to
     be, very narrow." *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 231 (2010); *Pey v. Wachovia*
27   *Mortg. Corp.*, No. 11-2922 SC, 2011 WL 5573894 (N.D. Cal. Nov. 15, 2011) (applying *Mabry*'s
     narrow construction to find § 2923.5 not preempted by HOLA); *Shaterian v. Wells Fargo Bank,*
28   *N.A.*, No. C-11-920 SC, 2011 WL 2314151 (N.D. Cal. June 10, 2011) (same).

b.     Cal. Civ. Code § 2923.5 (Against Suntrust, Wells Fargo, MERS, and
       Recontrust)

California Civil Code § 2923.5(a)(1) provides that "[a] mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days *after* initial contact is made as required by paragraph (2) or 30 days *after* satisfying the due diligence requirements as described in subdivision (g)." Cal. Civ. Code § 2923.5(a)(1) (emphasis added). Under paragraph (2), "[a] mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." *Id.* § 2923.5(a)(2). Under subdivision (g), "[a] notice of default may be filed . . . when a mortgagee, beneficiary, or authorized agent has *not* contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent." *Id.* § 2923.5(g) (emphasis added).

In the instant case, Ms. Tamburri asserts that Defendants violated § 2923.5(a)(1) because they failed to contact her prior to filing the notice of default on June 9, 2010. SAC at 20, ¶ 2. Defendants again argue that Ms. Tamburri has failed to state a claim under this cause of action because the SAC's allegations demonstrate that SunTrust complied with the statute. Mot. to Dismiss at 7-9. However, Defendants' motion to dismiss is foreclosed by two of this Court's prior rulings: its order granting a preliminary injunction, *see* Order Granting PI, Docket No. 33, at 4-6, and its order denying Defendants' previous motion to dismiss this same claim, Docket No. 82 at 9. In its Order Granting PI, the Court held that "Ms. Tamburri has raised at least a serious question whether Suntrust violated § 2923.5." Docket No. 33 at 5. That there are competing declarations on the merits of whether Defendants complied with § 2923.5, *see id.* at 5 ("Here, the Court is faced with two competing declarations – one from Ms. Tamburri and one from Suntrust/Defendants – as to whether Suntrust in fact contacted Ms. Tamburri as required by § 2923.5."), does not establish that Plaintiff has failed to state a claim. *Id.* ("[C]ontrary to what Suntrust contends, the fact of such a declaration (even one signed under oath), while perhaps fulfilling one of the statutory requirements

under § 2923.5, does not bar the homeowner from disputing the facts asserted in the declaration."). Rather, under 12(b)(6) standards, taking Plaintiff's allegation as true, Defendants' motion to dismiss should be denied.

In addition, that the SAC contains allegations that Plaintiff attempted to contact Suntrust numerous times about her alternatives to foreclosure and certain personnel recommended she send a hardship letter does not negate her claim. *See* SAC ¶¶ 44-45, 59; Mot. to Dismiss at 8. Plaintiff's allegations – that she attempted to seek a loan modification or other alternative, and that Suntrust was nonresponsive and simply gave her the run-around – do not differ substantially from her FAC's allegations as they relate to this claim. *Compare* FAC ¶ 30, *with* SAC ¶ 59 (both alleging that Plaintiff was "passed along between different representatives, none of which informed her of her options"). Similarly, the unpublished Ninth Circuit memorandum disposition to which Defendants cite, *Hutchful v. Wells Fargo Bank, N.A.*, 11-55664, 2012 WL 767607, at *1 (9th Cir. Mar. 12, 2012), does not call this Court's previous order into doubt because it conducted only a "limited and deferential review" of the district court's order denying a preliminary injunction. Moreover, it provided almost no factual background from which to compare *Hutchful* to the instant case, as the court merely concluded without further explanation that "the district court properly construed the notice requirement of California Civil Code § 2923.5 as having been met by Hutchful's extensive discussions with Wells Fargo regarding loan modification." *Id*. There are thus no changed circumstances that would warrant revisiting the Court's prior orders.

Accordingly, the Court **DENIES** Defendant's motion to dismiss this claim.

c.     Fraud (Against Suntrust and Wells Fargo)

The Court previously dismissed Plaintiff's fraud claim with leave to amend, finding that she had failed to satisfy the Rule 9(b) requirement that "a party must state with particularity the circumstances constituting fraud or mistake." Defendants now renew their motion to dismiss with respect to the SAC, arguing that Plaintiff still has not adequately alleged damages, that some allegations in her FAC contradict those in her SAC, that she fails to meet the particularity requirements, and that she cannot demonstrate Defendants had exclusive knowledge of the information at issue. Mot. to Dismiss at 17-19.

16

United States District Court

For the Northern District of California

"[T]he required elements for claims for fraud [are]: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008) (internal quotation marks omitted).

Plaintiff's SAC contains far more detail than her FAC. The FAC included only two substantive paragraphs regarding the fraud allegations. It pointed only to general assertions that Suntrust has made in "numerous documents" regarding its purported ownership of Plaintiff's Note, and later Wells Fargo's purported ownership of the loan, which seemed at odds with other information in Plaintiff's possession regarding the latest assignment of the loan to US Bank. FAC ¶ 56. The only other allegations in the fraud section of the FAC related to Plaintiff's claimed detrimental reliance, FAC ¶ 57 (alleging reliance based on Plaintiff continuing to contact Suntrust with questions about her loan, rather than contacting Wells Fargo and/or US Bank), and harm, *id.* (alleging harm if Wells Fargo or US Bank holds the Note because Plaintiff has been unable to speak with them about her options to avoid foreclosure). The Court held that such allegations were insufficient to describe any elements of fraud. Docket No. 82 at 14.

Plaintiff's SAC now provides significant detail as to Defendants' purported misrepresentations, including dates, the names of persons with whom Plaintiff spoke, and the content of their communications. *See* SAC at 29-32. Specifically, Plaintiff asserts that Suntrust employees repeatedly told her (*e.g.*, on February 19, 2009, April 11, 2011, and April 15, 2011) that Wells Fargo owned her loan. SAC at 29 ¶ 3, 31 ¶ 9. In addition, Suntrust's counsel continued to assert that Wells Fargo owned the loan at the hearing on the motion for a preliminary injunction. *Id.* at 31 ¶ 9; *see* Transcript, Docket No. 34, at 21. Plaintiff asserts that Suntrust also recorded a false Notice of Default and Notice of Trustee's Sale in 2009, in which it claimed that it – as opposed to Wells Fargo – was the beneficiary under Plaintiff's Deed of Trust, thereby adding to Plaintiff's confusion as to who to contact regarding alternatives to foreclosure. SAC at 30-31 ¶ 7.

In contrast, Plaintiff alleges that Wells Fargo repeatedly denied any interest in her loan (*e.g.*, in a January 2010 letter). *Id.* at 29 ¶ 4. However, Wells Fargo was the master servicer on her loan

1   and Plaintiff alleges, on information and belief, that Wells Fargo was attempting to foreclose on her

2   home while it represented to her that it had no interest in her loan.  *Id.* at 31-32 ¶¶ 8-10.

3           Plaintiff asserts that both Defendants' statements were false, as Wells Fargo is not the owner

4   of her loan, but it is the master servicer of the loan.  *Id.* at 60 ¶ 6.  Plaintiff further asserts that each

5   entity misrepresented who owned her loan in an attempt to deceive her because they could thereby

6   collect "additional compensation pursuant to the terms of the pooling and servicing agreement in

7   which plaintiff's loan is placed."  *Id.* at 30 ¶¶ 5-6; *see also id.* ¶¶ 24-29, 42 (alleging that servicers

8   derive greater fees from defaulted loans and delays in the loan modification and foreclosure process

9   than they do if they grant loan modification).  She claims that she suffered emotional and economic

10  damages because she had no accurate information as to who she should contact to avoid foreclosure,

11  and merely got the "brush-off" from Suntrust when she attempted to negotiate with it.  *See id.* at 31-

12  32 ¶¶ 7-10.

13          To the extent Defendants argue Plaintiff's FAC conflicts with her SAC, and therefore the

14  Court should disregard portions of the SAC, such an argument does not have merit.  Defendants

15  contend that while the SAC states Suntrust represented that Wells Fargo owned Plaintiff's loan, the

16  FAC states that Suntrust held itself out as the owner of the loan.  Mot. to Dismiss at 17-18; FAC ¶

17  56; SAC at 29 ¶ 3.  However, there is no conflict between the two complaints because each asserts

18  that Suntrust made both of those statements; *i.e.*, that Suntrust sometimes held itself out as the owner

19  of the loan, and that at other times it said Wells Fargo was the owner.  *Compare* FAC ¶ 56

20  ("Suntrust has repeatedly asserted that they are the holders of the plaintiff's Note, . . . [h]owever,

21  less than three months ago, Suntrust stated that Wells Fargo was the holder of the plaintiff's Note."),

22  *with* SAC at 29-31 ¶¶ 3, 7, 9 (juxtaposing the same contradictory facts).

23          With respect to Defendant Suntrust, Plaintiff's SAC meets the particularity requirement as

24  she now alleges "the who, what, when, where, and how of the misconduct charged."  *Kearns v. Ford*

25  *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quotations omitted).  In addition, she offers general

26  allegations that point to scienter, such as Suntrust's purported incentive to increase its own fees by

27  obstructing Plaintiff's efforts to salvage her home and loan.

28

18

1    Although it is a close call, in this case, Plaintiff has alleged a plausible theory that Suntrust,

2    through its misrepresentations, repeatedly gave Plaintiff the run-around such that there was no

3    available servicer (or other entity) with whom she could explore options to avoid foreclosure.  For

4    example, Plaintiff alleges that Suntrust repeatedly told her it had no control over whether or not to

5    grant her a loan modification, and that it was up to Wells Fargo to make such a decision.  SAC ¶ 59.

6    In that scenario, knowing what entity did actually have control over the decision (whether that entity

7    was the servicer, the owner, or something else) would be useful to a homeowner, and it would be

8    reasonable for a homeowner to rely on the servicer's statements that it did not have the power to

9    offer the relief sought.  Indeed, Plaintiff asserts that she repeatedly contacted Wells Fargo based on

10   Suntrust's representations, and that Wells Fargo's statements that it had no interest in her loan left

11   her without recourse or information as to what courses of action might be open to her. *Id*.  Taking

12   the pleadings as true at this stage, Plaintiff has alleged a plausible fraud claim.

13   As for Defendant Wells Fargo, some of Plaintiff's allegations appear less plausible.

14   Specifically, Plaintiff provides little factual support for her claim that Wells Fargo was, on

15   information and belief, attempting to foreclose on her home despite its representations that it had no

16   interest in said loan.  *See* SAC at 31 ¶ 9.  There is no indication in the SAC that Wells Fargo had any

17   involvement in the foreclosure process.  Plaintiff provides no facts to indicate when, where, how,

18   and through whom Wells Fargo somehow acted to exercise the power of sale over her home.

19   Plaintiff's allegations that Wells Fargo falsely denied an interest in her loan despite its status as the

20   master servicer, on the other hand, is sufficient to state a fraud claim along the lines described above

21   with respect to Suntrust.

22   Accordingly, the Court **GRANTS** with leave to amend Defendants' motion to dismiss

23   Plaintiff's fraud claim to the extent it is based on a claim that Wells Fargo fraudulently attempted to

24   foreclose on her property, and **DENIES** the motion to dismiss as to all other bases for Plaintiff's

25   fraud claims.

26          d.    Wrongful Foreclosure (Against All Defendants)

27   This Court has already denied Defendants' previous motion to dismiss Plaintiff's wrongful

28   foreclosure claim, except to the extent that it was predicated on Defendants' purported failure to

United States District Court
For the Northern District of California

produce the original note.  Docket No. 82 at 23 ("[T]he Court DENIES the motion to dismiss the wrongful foreclosure claim insofar as it is based on Plaintiff's allegations that the wrong party initiated foreclosure without any interest in the subject property.  However, the Court GRANTS the motion to dismiss in part insofar as it is predicated on Defendants' not physically producing the note.").  Defendants' new motion to dismiss largely re-hashes their old arguments that a recorded assignment is not required, that Plaintiff cannot show Defendants lacked authority to initiate foreclosure, and that Plaintiff has not adequately pled prejudice.  *See* Mot. to Dismiss at 9-12.  The Court has already rejected these claims.  Docket No. 82 at 20-22 (rejecting argument relating to recording assignment because Plaintiff adequately alleged that parties initiating foreclosure had no authority to foreclose); *id.* at 22-23 (rejecting prejudice argument).[4]

Defendants' additional argument that Plaintiff must plead her wrongful foreclosure claim with particularity is unsupported, as they provide no authority for such a proposition.  Indeed, courts typically apply Rule 8 to wrongful foreclosure claims.  *See, e.g.*, *Makreas v. First Nat. Bank of N. California*, --- F. Supp. 2d. ----, C 11-02234 JSW, 2012 WL 1144275, at *1-2 (N.D. Cal. Apr. 4, 2012); *Ohlendorf v. Am. Home Mortg.*, No. Civ. S-09-2081 LKK/EFB, 2010 U.S. Dist. LEXIS 31098, at *21-24 (E.D. Cal. March 31, 2010).  In any event, Plaintiff provides extensive detail as to

---

[4]  Defendants' Notice of Recent California Court of Appeal Authority, Docket No. 110, does not change the Court's previous analysis in its prior Order.  *Herrera v. Fed. Nat. Mortg. Assn.*, 205 Cal. App. 4th 1495 (2012), is distinguishable from the instant case on at least two bases.  First, it concerned a claim to set aside a foreclosure sale that had already occurred and was based on a faulty claim that MERS lacked authority to foreclose.  *Id.* at *6 (holding that plaintiffs' allegations that MERS lacked authority to foreclose because it had no explicit agency relationship with the lender did not "defeat the foreclosure sale because plaintiffs agreed in the DOT that MERS had the right to exercise all rights of the lender, including foreclosing on and selling plaintiffs' property").  Thus, *Herrera* simply held that under the facts of that case, the plaintiffs had failed to allege that the sale was invalid and failed to demonstrate any prejudice therefrom.  In contrast, this Court has already found Plaintiffs have stated a claim in this case.  *Tamburri*, 2011 WL 6294472 at *9-14.  In addition, *Herrera*'s holding that § 2932.5 does not apply to deeds of trust does not require the Court to revisit its prior holding, as it adds no new reasoning to warrant revisiting the Court's prior analysis on the subject.  *Herrera*, 205 Cal. App. 4th at *10 (stating § 2932.5 does not apply to deeds of trust and citing to cases already distinguished in this Court's prior order); *Tamburri*, 2011 WL 6294472 at *10-11 (explaining split in authority regarding § 2932.5's applicability to deeds of trust).  In addition, even if *Herrera* conclusively established said principle as a matter of law, the Court has previously held Plaintiff had stated a wrongful foreclosure claim independently of § 2932.5. *Tamburri*, 2011 WL 6294472 at *11 ("Regardless of whether § 2932.5 applies, Plaintiff may still assert that only an authorized entity may initiate foreclosure.").  Thus, Defendants' newly cited authority offers no basis to revisit the Court's prior order.

the documents, parties, and dates at issue with respect to her claim which, as the Court has already

held, raises sufficient questions to survive a motion to dismiss.

Defendants raise one new argument that warrants further analysis.  Specifically, Defendants

argue that Plaintiff's claim as against MERS specifically fails.  *See* Mot. to Dismiss at 9.

Defendants are correct that Plaintiff's SAC does not state a wrongful foreclosure claim as against

MERS because there is no plausible allegation that MERS either initiated foreclosure or lacked

authority to do so, as MERS was the original beneficiary under the Deed of Trust.  *See* Docket No.

82 at 20-21; SAC ¶ 39 (MERS was listed as the beneficiary on the Deed of Trust), ¶ 60 (Notice of

Default issued by US Bank and Recontrust), ¶ 61 (MERS purportedly assigned its interest to US

Bank).  Thus, while other entities may have wrongfully initiated foreclosure, there are no allegations

that MERS acted when it lacked authority to do so.  Accordingly, Plaintiff's wrongful foreclosure

claim as against MERS is dismissed.

Accordingly, the Court **GRANTS** without prejudice the motion to dismiss Plaintiff's

wrongful foreclosure claim as against Defendant MERS and **DENIES** the motion as to all other

Defendants.

e.   Quiet Title – Cal. Code Civ. P. § 761.020 (Against All Defendants)

The Court previously dismissed Plaintiff's quiet title claim with leave to amend, finding that

she had failed to allege "allege that she is the rightful owner as she admits that she is in default," she

"fail[ed] to specify what adverse claims, and by which Defendants, she seeks to quiet title against,"

and she failed to allege "that US Bank or any other Defendant currently has no valid interest in the

property."  Docket No. 82 at 24.  Plaintiff's SAC is nearly identical to the FAC with respect to the

quiet title claim; the only difference is that the SAC seeks to quiet title "subject to the valid existing

encumbrances that are on the property."  SAC at 32 ¶ 2.

Plaintiff's cited authority, *Dimock v. Emerald Properties LLC*, does not mandate otherwise.

81 Cal. App. 4th 868, 878-79 (2000) ("Because Dimock was not required to rely upon equity in

attacking the deed, he was not required to meet any of the burdens imposed when, as a matter of

equity, a party wishes to set aside a voidable deed. . . .  [T]he trial court is instructed to enter

judgment quieting title in favor of Dimock subject to such encumbrances as existed at the time of the

United States District Court
For the Northern District of California

foreclosure sale.").  *Dimock* is largely inapposite because it addressed a case in which the void foreclosure sale had already taken place, unlike in this case.  Because the foreclosure sale has not yet taken place in the case at bar, and because Plaintiff has still not alleged what specific adverse interests each Defendant claims and how they have no current interest in the property, the Court **GRANTS** Defendants' motion to dismiss this claim with prejudice.  *See Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1168 (S.D. Cal. 2009) (dismissing quiet title action because "[t]he recorded foreclosure Notices do not affect Plaintiffs' title, ownership, or possession in the Property.").

f.    Negligence (Against All Defendants)

The Court previously dismissed Plaintiff's negligence claim on the grounds that Plaintiff failed to allege a viable duty of care and failed to allege physical damages.  Docket No. 82 at 26. Plaintiff's SAC is identical to her FAC with respect to the negligence claim, and her allegations regarding emotional damages do not address the Court's concern that physical damages were required.  *Id.*  Accordingly, the Court **GRANTS** the motion to dismiss this claim with prejudice.

g.    Declaratory Relief (Against All Defendants)

The Court previously dismissed Plaintiff's declaratory relief claim as duplicative because it merely requested an injunction and a "declaration that Plaintiff is the prevailing party."  FAC at 14; Docket No. 82 at 27.  However, Plaintiff's SAC includes substantial additions, including a claim under Cal. Code Civ. P. § 1060 for a declaration of the parties' rights and duties under the deed of trust.  SAC at 34.  Specifically, Plaintiff seeks a declaration that the substitutions, notices of default, and notices of trustee's sale are invalid, and that Defendants have no legal right to institute foreclosure proceedings.  SAC at 35.  Thus, with this additional detail, Plaintiff has stated a valid declaratory relief claim.

Defendants' claim that because Plaintiff has defaulted, her declaratory relief claim fails as a matter of law, is without merit.  *See* Mot. to Dismiss at 23.  That Plaintiff has defaulted does not answer the question of whether *these* Defendants have any valid interest in the property conferring upon them the right to institute foreclosure.  Defendants also appear to assert that there is no current controversy between the parties, despite the fact that they dispute Plaintiff's allegations as to their

United States District Court

For the Northern District of California

1    lack of authority to foreclose.  Indeed, Defendants assert in the alternative that the declaratory relief

2    claim is duplicative, which would seem to indicate that a controversy exists between the parties as

3    covered by other claims in this action.  Moreover, as Plaintiff points out, Cal. Code Civ. P. § 1062

4    specifically allows for declaratory relief as a cumulative remedy.

5           Accordingly, the Court **DENIES** the motion to dismiss this claim.

6           h.      Cal. Bus. & Prof. Code § 17200 (Against All Defendants)

7           The Court previously denied Defendants' motion to dismiss Plaintiff's § 17200 claim insofar

8    as it was based on her § 2923.5 claim, and granted the motion as to any other bases for the claim.

9    Docket No. 82 at 29.  However, the Court noted that Plaintiff may be able to amend her complaint to

10   state a claim based on, *e.g.*, Plaintiff's allegation that she "was essentially given the run-around from

11   Suntrust when she attempted to get information about her loan."  *Id*. at 28-29.  Plaintiff's SAC

12   alleges a UCL claim against all Defendants based on the following conduct: (1) Suntrust and Wells

13   Fargo's misstatements regarding the owner of her loan and what entity would be responsible for

14   negotiating any potential loan modification; (2) MERS, US Bank, and Recontrust's backdating of

15   the Notice of Default and Substitution of Trustee to purportedly give US Bank the authority to

16   initiate foreclosure; and (3) Recontrust's continual advertising of Plaintiff's foreclosure after this

17   Court's preliminary injunction went into effect.

18          The Court has already rejected Defendants' arguments that Plaintiff lacks standing to assert a

19   UCL claim because she is unable to establish causation or damages.  *See* Docket No. 82 at 28.

20   Accordingly, the Court does not revisit these arguments here except with respect to Plaintiff's new

21   allegation regarding Recontrust, addressed below.

22          As discussed above regarding Plaintiff's fraud claim, Plaintiff's SAC provides significantly

23   more detail with respect to her communications with Suntrust and its allegedly fraudulent conduct.

24   In addition, unlike her fraud claim, a UCL claim based on the same conduct need not allege that

25   Suntrust's statements were "actually false, known to be false by the perpetrator [or] reasonably

26   relied upon by a victim who incurs damages."  *Makreas v. First Nat. Bank of N. California*, --- F.

27   Supp. 2d. ----, C 11-02234 JSW, 2012 WL 1144275, at *4 (N.D. Cal. Apr. 4, 2012) (quoting *In re

28   Tobacco II Cases*, 46 Cal.4th 298, 312 (2009)).  Instead, Plaintiff need only allege that "members of

**United States District Court**

For the Northern District of California

1  the public are likely to be deceived" by Suntrust's conduct.  *Id.*  Thus, according to the above

2  analysis, Plaintiff has adequately stated a claim under the UCL based on Suntrust's alleged

3  misleading statements as to who owned her loan, who had the power to determine whether Plaintiff

4  could receive a loan modification, and what Plaintiff needed to do to obtain such a loan modification

5  (*i.e.*, Suntrust's allegedly misleading and deceptive conduct in continuing to request the same

6  documents from Plaintiff over and over, with no intention of substantively addressing her requests).

7  Plaintiff's allegations with respect to Wells Fargo's statements are similarly specific and likewise

8  state a claim.

9         Plaintiff's second UCL theory, Defendants' improper backdating of the Substitution of

10  Trustee to give US Bank apparent authority to foreclose, states a claim for the same reason that

11  Plaintiff's wrongful foreclosure claim survives dismissal.  *See Makreas*, 2012 WL 1144275 at *4

12  ("Plaintiff alleges that the substitution of trustee was wrongfully backdated.  If true, recording [a]

13  document with falsified information on it, is sufficient to state a claim under the fraudulent prong of

14  Section 17200.").

15         However, Plaintiff's third UCL theory, Recontrust's continual advertising of Plaintiff's

16  foreclosure after this Court's preliminary injunction went into effect, is flawed because it is unclear

17  what damage such conduct caused Plaintiff.  While she alleges emotional damages, she does not

18  allege any loss of money or property – either threatened or realized – as a result of Recontrust's

19  advertising.  *See* Cal. Bus. & Prof. Code § 17204 (requiring a private litigant to have "suffered

20  injury in fact and [] lost money or property as a result of the unfair competition" in order to bring a

21  UCL claim); *Cf. Sullivan v. Washington Mut. Bank, FA*, C-09-2161 EMC, 2009 WL 3458300, at *4

22  (N.D. Cal. Oct. 23, 2009) (finding standing where "foreclosure proceedings have been initiated

23  which puts her interest in the property in jeopardy").  Accordingly, the Court will dismiss this UCL

24  claim.

25         In conclusion, the Court **GRANTS** with leave to amend the motion to dismiss Plaintiff's

26  UCL claim to the extent it is based on Recontrust's post-injunction advertising, and **DENIES** the

27  motion to dismiss as to Plaintiff's remaining UCL theories.

28

**United States District Court**
For the Northern District of California

1    B.      Motion to Strike

2           Defendants also renew their motion to strike Plaintiff's request for punitive damages.  The

3    Court previously granted the motion to strike because it had dismissed Plaintiff's fraud claim.

4    Docket No. 82 at 31.

5           As noted in the Court's order, California Civil Code § 3294 defines when punitive damages

6    are available for a violation of state law.  The statute states in relevant part:

7                   (a)     In an action for the breach of an obligation not arising from
                    contract, where it is proven by clear and convincing evidence that the
8                   defendant has been guilty of oppression, fraud, or malice, the plaintiff,
                    in addition to the actual damages, may recover damages for the sake of
9                   example and by way of punishing the defendant.

10                  (b)     An employer shall not be liable for damages pursuant to
                    subdivision (a), based upon acts of an employee of the employer,
11                  unless the employer had advance knowledge of the unfitness of the
                    employee and employed him or her with a conscious disregard of the
12                  rights or safety of others or authorized or ratified the wrongful conduct
                    for which the damages are awarded or was personally guilty of
13                  oppression, fraud, or malice.  With respect to a corporate employer,
                    the advance knowledge and conscious disregard, authorization,
14                  ratification or act of oppression, fraud, or malice must be on the part of
                    an officer, director, or managing agent of the corporation.
15

16   Cal. Civ. Code § 3294.

17          In the instant case, as noted above, Plaintiff has stated a claim for fraud which would, if

18   successful, support her request for punitive damages.  Although Plaintiff has not plead facts to

19   support § 3294(b), courts have held that such pleading is not required in federal court.  *See Taheny v.*

20   *Wells Fargo Bank, N.A.*, CIV. S-10-2123-LKK, 2011 WL 1466944, at *4 (E.D. Cal. Apr. 18, 2011)

21   ("Although Section 3294 provides the governing substantive law for punitive damages, California's

22   heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of

23   Civil Procedure – the provisions governing the adequacy of pleadings in federal court.") (quoting

24   *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000)).  In addition, as the *Taheny*

25   court noted, the Ninth Circuit has held that a claim for consequential damages is neither immaterial

26   nor impertinent, and should not be stricken on a Rule 12(f) motion.  *See id.* (citing *Whittlestone, Inc.*

27   *v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) ("The claim for damages is not immaterial,

28   because whether these damages are recoverable relates directly to the plaintiff's underlying claim for

relief ... the claim for damages is not impertinent, because whether these damages are recoverable pertains directly to the harm being alleged.") (internal citations omitted)).  Treating the motion to strike as a motion to dismiss does not help Defendants because, as discussed above, Plaintiff provides allegations that would support a finding of fraud or malice.  *Cf. Parker v. Fid. Sec. Life Ins. Co.*, CIV. F 06-654 AWI DL, 2006 WL 2190956, at *6 (E.D. Cal. Aug. 1, 2006) (dismissing prayer for punitive damages under 12(b)(6) standard "because the complaint is devoid of factual allegations that show oppression, fraud, and/or malice").  Accordingly, striking or dismissing Plaintiff's punitive damages claim is not warranted.  Defendants' motion to strike is **DENIED**.

## II.    CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

(1)    Defendants' motion to dismiss Plaintiff's RESPA claim is **GRANTED** with prejudice.

(2)    Defendants' motion to dismiss Plaintiff's § 2923.5 claim is **DENIED**.

(3)    Defendants' motion to dismiss Plaintiff's fraud claim is **GRANTED** without prejudice to the extent it is based on a claim that Wells Fargo fraudulently attempted to foreclose on her property, and **DENIED** as to all other bases for Plaintiff's fraud claims.

(4)    Defendants' motion to dismiss Plaintiff's wrongful foreclosure claim is **GRANTED** without prejudice as against Defendant MERS and **DENIED** as to all other Defendants.

(5)    Defendants' motion to dismiss Plaintiff's quiet title claim is **GRANTED** with prejudice.

(6)    Defendants' motion to dismiss Plaintiff's negligence claim is **GRANTED** with prejudice.

(7)    Defendants' motion to dismiss Plaintiff's declaratory relief claim is **DENIED**.

///
///
///
///
///
///
///
///

(8)     Defendants' motion to dismiss Plaintiff's UCL claim is **GRANTED** without prejudice to the extent it is based on Recontrust's post-injunction advertising, and **DENIED** as to Plaintiff's remaining UCL theories.

(9)     Defendants' motion to strike is **DENIED**.

        This Order disposes of Docket No. 95.


        IT IS SO ORDERED.


Dated:  June 21, 2012


                                        _____
                                        EDWARD M. CHEN
                                        United States District Judge