UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH TAMBURRI, | No. C 11-02899 JST (DMR) |
| Plaintiff(s), | **ORDER RE JOINT DISCOVERY LETTER OF FEBRUARY 6, 2013 [DOCKET NO. 169] AND JOINT DISCOVERY LETTER OF FEBRUARY 12, 2013 [DOCKET NO. 175]** |
| v. | |
| SUNTRUST MORTGAGE INC, | |
| Defendant(s). | |

Before the court are the parties' joint discovery letters of February 8, 2013 [Docket No. 169] and February 12, 2013 [Docket No. 175]. The February 8th letter concerns Plaintiff Deborah Tamburri's objection to the subpoena that Defendants Wells Fargo Bank, N.A., U.S. Bank, N.A., Mortgage Electronic Registration Systems, Inc. and SunTrust Mortgage, Inc. served on Plaintiff's physician, Dr. Jeffrey Riopelle, for all of Plaintiff's medical and psychiatric records from 2007 through the present. Plaintiff contends that the subpoena's breadth violates the plaintiff-physician privilege and requests that the court limit the scope of discoverable information to protect Plaintiff's privacy. The February 12th letter concerns Defendants' request for Plaintiff to submit to an independent mental examination. Plaintiff contends that Defendants have not demonstrated good cause pursuant to Fed. R. Civ. P. 35 for the requested independent mental examination, and that such an examination would impinge on her right to privacy under the California Constitution.

1  The court held a hearing on March 7, 2013. This order memorializes the rulings made at the
2  hearing.

## I. BACKGROUND

In her Third Amended Complaint [Docket No. 146], Plaintiff brings four state law causes of action against Defendants: violation of California Civil Code § 2923.5, for failing to notify Plaintiff 30 days before filing a notice of default; violation of California Civil Code § 2924, wrongful foreclosure; violation of California Business and Professions Code § 17200, the unfair competition law; and fraud. (*See* 3d Am. Compl. ¶¶ 78-122.) Plaintiff also requests declaratory relief. Because her claims lie in California state law, California law on privilege governs discovery as well. Fed. R. Evid. 501.

In her causes of action, Plaintiff has claimed that Defendants' improper foreclosure proceeding against her home has caused her "severe emotional distress." (3d Am. Compl. ¶¶ 39, 108-09, 120.) She has made no statement that she has sought medical or mental health treatment as a consequence, however. Plaintiff has characterized her alleged emotional injuries as follows:

> [D]eep-seated emotional harm has permanently impacted Plaintiff's capacity to obtain income, caused her to become severely depressed. Plaintiff has endured severe and enduring emotional harm. Ultimately, it affected the degree of esteem she held from her sons [sic] as they watched her emotional and physical wellbeing [sic] deteriorate and as they watched her humiliation. It has affected her relationships with friends and neighbors, isolating her from support and companionship. She has had to endure public harassment and humiliation from realtors, posting of notifications on her home and in the media. The constant barrage of mail announcing "SHORT SALE" and "FORECLOSURE", along with the real estate agents at the door, or driving by taking photographs, have caused Plaintiff to become afraid to leave her home for any amount of time other than short errands. She began to feel under siege in her own home.

(3d Am. Compl. ¶ 39.)

> Facing the imminent foreclosure of her home caused Plaintiff to endure severe emotional distress, including many sleepless nights, disruption in the relationships between her sons and herself, disruption in other relationships, isolation, seriously damaged credit, late payment penalties, and loss of income caused by her feeling of being incapacitated by the fear of the loss of her long-time home.

(3d Am. Compl. ¶ 120.) Moreover, during the course of discovery, Plaintiff has stated that she

> endured substantial emotional anguish by being in fear of losing her home, which has resulted in <u>physical harm to the plaintiff</u> . . . plaintiff has suffered <u>cracked teeth from stress associated with foreclosure</u>; endured severe headaches; lost mental clarity to perform simple functions; had her mental well-being so impaired that it has made it

2

> very difficult for her to look for employment . . . suffered . . . other mental conditions that have caused the plaintiff to even consider <u>end-of-life options</u>.

[Docket No. 169 at 4 (ellipses in original) (citation omitted).] Plaintiff also stated that

> [a]s a focused, driven and determined provider for her family the Plaintiff has suffered substantial mental, emotional and physical trauma. This trauma has manifested in a myriad of ways from simply having all of her teeth crack and need replacement from the grinding of her jaws to constant chest pains and completely blinding and debilitating headaches which are so frightening in their intensity that her personal physician of ten years has refused to treat her further without health insurance. As a result of the stress and constant pain she has lost the mental clarity to perform simple tasks. The stress and emotional anguish has significantly affected the plaintiff's ability to obtain employment . . . . She has come close to end of life solutions, paranoia, has become increasingly isolated . . . .

[Docket No. 175 at 2-3 (quoting Pl.'s Resp. to Wells Fargo's Interrog. No. 7).]

In her prayer for relief, Plaintiff requests "general and specific damages according to proof." (3d Am. Compl. at 32.)

## II. DEFENDANTS' SUBPOENA TO DR. RIOPELLE

On December 17, 2012, Defendants served a subpoena on Dr. Riopelle, requesting "ALL MEDICAL RECORDS," "ALL BILLING RECORDS," "ALL PSYCHIATRIC, PSYCHOLOGICAL, AND/OR COUNSELING RECORDS," AND "ALL PSYCHIATRIC AND/OR PSYCHOLOGICAL TESTING RESULTS AND/OR REPORTS" concerning Plaintiff "from 2007-present." [Docket No. 169 Ex. A at 1.] Defendants assert that the records are "highly relevant" to their case because "that Plaintiff saw Dr. Riopelle for other medical issues may have served as a separate and independent stressor upon her emotional health," and may point to other causes for the severe emotional distress claimed by Plaintiff in this suit. [Docket No. 169 at 3.]

California Evidence Code § 917 provides that "[i]f a privilege is claimed on the ground that the matter sought to be disclosed is a communication made in confidence in the course of the . . . physician-patient [or] psychotherapist-patient . . . , the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish that the communication was not confidential." Cal. Evid. Code § 917(a). The privilege encompasses "any information that these doctors obtained as a result of communicating with or examining these patients during their treatments or consultations," *Hurvitz v. Hoefflin*, 84 Cal. App. 4th 1232, 1239 (2000), and applies unless it is waived or subject to a statutory exemption, *Koshman*

3

*v. Super. Ct.*, 111 Cal. App. 3d 294, 297 (1980). In the case of physician-patient and psychotherapist-patient communications, California law provides such a statutory exemption. California Evidence Code § 996 states, in relevant part, that "[t]here is no privilege . . . as to a communication relevant to an issue concerning the condition of the patient if such issue as been tendered by: (a) The patient." Cal. Evid. Code § 996. A court will find that a patient has "tendered" an issue "'[w]hen the patient h[er]self discloses those ailments by bringing an action in which they are in issue.'" *Koshman*, 111 Cal. App. 3d at 298 (quoting *In re Lifschutz*, 2 Cal. 3d 415, 434 (1970)); *accord Britt v. Super. Ct.*, 20 Cal. 3d 844, 864 (1978) (holding that patient "may not withhold information which relates to *any physical or mental condition* which they have put in issue") (emphasis added). Nevertheless, the court must "liberally construe[]" the privilege in favor of the patient, and "even when the balance tips in favor of disclosure, constitutional concerns require a strict circumscription of the scope of the disclosure." *People v. Wharton*, 53 Cal. 3d 522, 554 (2000) (citations and quotation marks omitted). In particular, when the exemption applies because a patient has put her medical condition at issue, she remains "entitled to retain the confidentiality of all unrelated medical or psychotherapeutic treatment they may have undergone in the past." *Britt*, 20 Cal. 3d at 864.

Plaintiff alleges that Defendants' actions have caused her severe emotional distress that has manifested in symptoms such as suicidal ideation, paranoia, chest pains, blinding and debilitating headaches that are "frightening in their intensity," multiple cracked teeth from jaw grinding, and loss of mental clarity. Plaintiff has thus tendered her psychological and physical condition, and activated the patient privilege exemption in California Evidence Code § 996(a). That she has not alleged that she sought out treatment for this emotional distress is of no moment. Defendants therefore are entitled to discover certain of Plaintiff's medical records. Such records may serve to verify the existence and severity of Plaintiff's symptoms, and may provide evidence pointing to causes other than Defendants' actions.

However, discovery shall be limited to records that concern the types of mental or emotional distress that Plaintiff specifically has put at issue, and their accompanying mental and physical symptoms, manifestations and effects. Furthermore, at oral argument, Plaintiff's counsel

4

represented that Plaintiff's emotional distress began in Fall 2008 and continues to this day. Medical records from significantly before August 2008 are therefore of limited relevance. Defendants' subpoena shall be restricted to Dr. Riopelle's records from January 2008 until the present.

The parties indicated that both Plaintiff and Defendant Wells Fargo possess full copies of the records produced by Dr. Riopelle in response to the subpoena. Wells Fargo represented that it has not reviewed the documents, pending the court's order on this dispute. Wells Fargo is now ordered to send the documents to Plaintiff without reviewing them. By no later than March 13, 2013, Plaintiff shall produce the documents responsive to Defendants' subpoena, and may redact records in a manner consistent with this order. Plaintiff shall concurrently produce a privilege log. The documents shall be subject to a protective order, which the parties are directed to prepare and present to this court for signature.

## III.  DEFENDANTS' REQUEST FOR INDEPENDENT MENTAL EXAMINATION

Defendants request that Plaintiff submit to an independent mental examination. Federal Rule of Civil Procedure 35 provides that, for good cause shown, the court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(A). These requirements for a Rule 35 examination are met where the party seeking the examination makes an affirmative showing that each condition as to which the examination is sought is really and genuinely in controversy, and that good cause exists for ordering the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 108 (1964).

Defendants bear the burden of demonstrating that the conditions for which they seek an examination are in controversy. Plaintiff contends that she alleges mere "garden variety" emotional distress. Generally, courts have held that for a plaintiff's mental status to be in controversy, she must allege more than "garden variety" emotional distress. *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal. 1995). "Courts will order plaintiffs to undergo mental examinations where the cases involve, in addition to a claim of emotional distress, one or more of the following: (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) the plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) the plaintiff's

concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)." *Id.* at 95.

At the hearing, Plaintiff's counsel represented that Plaintiff will not introduce expert testimony regarding her alleged emotional distress. However, as set forth above, Plaintiff has alleged specific and severe physical and mental symptoms and injuries. Plaintiff does not claim mere "garden variety" emotional distress. *See, e.g. Greenhorn v. Marriott International, Inc.*, 216 F.R.D. 649, 651 (D. Kan. 2003) (Rule 35(a) mental examination permitted where the plaintiff alleges that the defendants' conduct has caused her to suffer suspiciousness, social discomfort, low self-esteem, insomnia, depression, avoidance, suicidal ideation, and withdrawal). Plaintiff has thus placed the existence and extent of her claimed symptoms and injuries in controversy.[1]

Defendants have not provided this court with enough information to determine whether there is good cause for its proposed mental examination, as required by Fed. R. Civ. P. 35. *See Schlagenhauf,* 379 U.S. 104 at 118-19 ("The specific requirement of good cause [under Rule 35] would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b) . . . . This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination . . . . It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule."). Defendants have not addressed, for example, whether they are

---

[1] Plaintiff also argues that Defendants' request for her to submit to an independent mental examination violates her right to privacy under the California Constitution. Article I, section 1 of the California Constitution provides that all people have certain inalienable rights, and among these are "pursuing and obtaining safety, happiness, and privacy." *Binder v. Superior Court*, 196 Cal. App. 3d 893, 901 (1987). Though she does not explicitly so state, Plaintiff appears to assert this state constitutional right as a state law privilege. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Vinson v. Superior Court,* 43 Cal.3d 833 (1987) (analyzing plaintiff's assertion of her California Constitutional right to privacy as a discovery shield against mental examination sought by defendant).

However, a party may implicitly waive this right to privacy by bringing suit. *Vinson,* 43 Cal.3d at 842. Here, Plaintiff has implicitly waived her right to privacy under the California Constitution placing her mental and physical condition at issue. However, this does not mean that Plaintiff has opened the door to any mental examination requested by Defendants. An implicit waiver of a party's constitutional rights encompasses only discovery directly relevant to Plaintiff's claim and essential to the fair resolution of the lawsuit. *Id.*

able to obtain the desired information by other means. *Id.* at 118 ("The ability of the movant to obtain the desired information by other means is also relevant [to determining whether good cause exists].") The information they seek may be in the medical records which this court has directed Plaintiff to produce by March 13, 2013.

Defendants request for this court to order Plaintiff to submit to an independent mental examination is therefore denied without prejudice. Should Defendants determine upon review of the medical records that there is in fact good cause for the independent mental examination, they shall meet and confer with Plaintiff before submitting any renewed request.

IT IS SO ORDERED.

Dated: March 11, 2013

DONNA M. RYU
United States Magistrate Judge