UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH TAMBURRI, | No. C-11-02899 JST (DMR) |
| Plaintiff, | **ORDER RE JOINT DISCOVERY LETTER OF FEBRUARY 27, 2013 [DOCKET NO. 182] AND JOINT DISCOVERY LETTER OF MARCH 22, 2013 [DOCKET NO. 205]** |
| v. | |
| SunTrust MORTGAGE INC, et al. | |
| Defendants. | |
| _____/ | |

Before the court is the February 27, 2013 joint discovery letter filed by Plaintiff Deborah Tamburri ("Plaintiff") and Defendants SunTrust Mortgage, Inc. ("SunTrust"), Wells Fargo Bank, N.A. ("Wells Fargo"), U.S. Bank National Association ("U.S. Bank"), and Mortgage Electronic Registration Systems, Inc. ("MERS"). ["Feb. 27 Letter," Docket No. 182.][1]

Also before the court is the March 22, 2013 joint discovery letter filed by Plaintiff and Defendant ReconTrust Company, N.A. ("ReconTrust"). ["Mar. 22 Letter," Docket No. 205.]

---

[1] The letter corrects and supplants an earlier letter which was missing a page. [Docket No. 179.] Plaintiff attached a three-page "Supplement to Plaintiff's Position" to the joint discovery letter, making it thirteen pages long. Plaintiff did not seek leave of the court to exceed the 10-page limit on joint discovery letters, as required by the court's Standing Order. This is the second time that Plaintiff has attempted to "supplement" her position after the parties have submitted a joint discovery letter. [*See* Docket No. 192.] The court strikes the "Supplement to Plaintiff's Position" and reminds the parties that their submissions must comply with the Standing Order.

In both letters, Plaintiff moves to compel Defendants to produce witnesses in response to deposition notices issued pursuant to Federal Rule of Civil Procedure 30(b)(6). For the reasons stated below, as well as at the April 11, 2013 hearing, Plaintiff's motions are granted.

## I. BACKGROUND

This case stems from Plaintiff's August 2008 default on a mortgage secured by a Deed of Trust on her home in San Ramon, California. Plaintiff's Third Amended Complaint ["TAC," Docket No. 146] contains detailed allegations regarding improprieties in the assignment and transfer of rights, and exercise of power of sale. It describes misrepresentations made to Plaintiff about who owned the loan and had the power to negotiate a loan modification through which Plaintiff could avoid foreclosure. The TAC also alleges that the loan securitization and the accompanying pooling and servicing agreement ("PSA") provided servicers with a monetary incentive to conceal the ownership of the loan so that Plaintiff would be more likely to find herself facing foreclosure. According to Plaintiff, a foreclosure generated higher payments to the servicers under the PSA than if Plaintiff had been permitted to modify her loan.

Plaintiff alleges that SunTrust, Wells Fargo, and U.S. Bank are lenders and/or loan servicers who, at various points, may have owned the mortgage. *See* TAC at ¶¶ 7-9; 44, 60 (SunTrust informed Plaintiff that Wells Fargo was the owner of the mortgage); 73 (recorded assignment showed U.S. Bank as having been assigned all beneficial interest); 84 ("[T]here is a serious question over which entity actually owns Plaintiff's loan"). MERS is a business that provides an electronic registry of mortgage loans. *Id.* at ¶ 10. MERS was listed as the original beneficiary under the Deed of Trust. *Id.* at ¶ 40. On June 21, 2010, an Assignment of the Deed of Trust was recorded in the Contra Costa County Recorder's office naming MERS as grantor and Plaintiff and U.S. Bank as grantees, and substituting ReconTrust, a trustee and conductor of non-judicial foreclosure sales, as the trustee. *Id.* at ¶¶ 11, 63.

Plaintiff initiated this lawsuit in California state court. SunTrust removed the case to federal court, and the next day Plaintiff moved for a temporary restraining order to enjoin the foreclosure

sale of her home. Judge Chen[2] granted the motion and subsequently granted a preliminary injunction enjoining Defendants from foreclosing on her home and requiring Plaintiff to post monthly bond payments. All Defendants besides Wells Fargo and ReconTrust moved to dismiss Plaintiff's First Amended Complaint ("FAC"). Judge Chen granted in part and denied in part the first motion to dismiss with leave to amend certain of Plaintiff's claims. Plaintiff then filed a Second Amended Complaint ["SAC," Docket No. 91]. Wells Fargo filed a second motion to dismiss. Judge Chen granted this motion in part and denied it in part, again with leave to amend certain claims. Plaintiff then filed the TAC on January 8, 2013.

In the TAC, Plaintiff brings the four state law causes of action that have survived the two motions to dismiss: (1) violation of California Civil Code § 2923.5, for failing to notify Plaintiff thirty days before filing a notice of default (against SunTrust, Wells Fargo, MERS, and Recontrust); (2) wrongful foreclosure (against all Defendants); (3) violation of California Business and Professions Code § 17200 (against all Defendants); and (4) fraud (against SunTrust and Wells Fargo). TAC at ¶¶ 78-122. Plaintiff also requests declaratory relief and punitive damages. *Id.* at ¶ 30-32.

## II. DEPOSITION NOTICES

In January 2013, Plaintiff served deposition notices with accompanying requests for production of documents on SunTrust, Wells Fargo, MERS, and U.S. Bank pursuant to Federal Rule of Civil Procedure 30(b)(6). On February 6, 2013, Plaintiff served a similar notice on ReconTrust.

While not identical, the deposition notices list similar topics, with approximately 50 topics identified in each. At first blush, the number of topics raises the question of whether the notices are unduly burdensome. Upon closer examination, the large number of topics results from the fact that Plaintiff was quite specific in her topic descriptions. Plaintiff could have grouped them into a smaller number of topics while still meeting her duty under Rule 30(b)(6) to describe the areas of

---

[2] This case subsequently was reassigned to Judge Tigar.

3

testimony with reasonable particularity.[3] The deposition notices are not unduly burdensome, oppressive or harassing based on the number of identified topic areas.

Each Defendant served timely objections. Defendants SunTrust, Wells Fargo, MERS, and U.S. Bank objected generally that the requests are burdensome, oppressive, and harassing, because they "seek to require Defendants to produce a witness capable of authenticating hundreds of documents while sitting for a deposition." *See, e.g.* Feb. 27 Letter at 6 and Ex. 7 at 2. These Defendants also object because "the Notice are not specifically tailored to each corporate entity[;] instead they are virtually identical as to all Defendants even though they each had different functions." *Id.* at 7.

These Defendants also offered three specific objections to the deposition topics:

- The request "elicits evidence regarding securitization of the [mortgage note] . . . [which] is irrelevant";
- The request "addresses matters protected by attorney-client privilege and/or work product doctrine";
- The request "call[s] for information that constitutes confidential trade secrets."

*See, e.g., id.* Ex 7 at 5.

ReconTrust responded that the deposition topics were objectionable for one or more of the following reasons: it was vague, unclear, and not reasonably calculated to lead to the discovery of admissible evidence; it sought to discover "any communications" between ReconTrust and another entity, and was therefore not a valid deposition topic; it called for confidential, proprietary, and/or trade secret information; it was harassing and unduly burdensome because "ReconTrust played no role in" the event about which Plaintiff sought discovery; and it did not describe with reasonable particularity the matters upon which examination is sought. *See* Mar. 22 Letter, Ex. C at 2-21. ReconTrust also objected to topics 35 and 36, which call for information about two named individuals.

---

[3] For example, topics 8 through 13 in the SunTrust notice call for testimony regarding "any communications that YOU have had with WELLS FARGO regarding the LOAN, the SECOND FORECLOSURE, the FIRST FORECLOSURE, the SECOND NOTICE OF RESCISSION, the FIRST NOTICE OF RESCISSION, and this ACTION. Topics 14 through 18 call for nearly identical information with respect to communications with U.S. BANK.

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998); *see also* Fed. R. Civ. P. 26(b)(1) ("[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). The party resisting discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining and supporting its objections. *Id*. Federal Rule of Civil Procedure 26 also provides that a party withholding information under a claim that it is privileged must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A).

Federal Rule of Civil Procedure 30(b)(6) governs depositions of organizations. A party may name a corporation or other organizational entity as a deponent. The notice of deposition must describe the topics for examination with reasonable particularity. *Id.* "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Fed. R. Civ. P. 30(b)(6). "A corporate designee need not have personal knowledge of the topics at issue but must be sufficiently prepared on the topics such to be able to provide knowledgeable and binding testimony." *GE Co. v. Wilkins,* Case No. 10-CV-00674 LJO JLT, 2012 WL 2376940, at *11 (E.D. Cal. June 22, 2012) (citing *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 534, 539 (D. Nev. 2008). A company "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . . The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *In re JDS*

*Uniphase Corp. Sec. Litig.*, Case No. 02-CV-1486 CW (EDL), 2007 WL 219857 (N.D. Cal. Jan. 29, 2007).

## IV. DISCUSSION

The court now addresses Defendants' objections to the deposition topics.

### A. Securitization

SunTrust, Wells Fargo, MERS, and U.S. Bank object to the deposition notice to the extent it seeks testimony or documents relating to securitization of the mortgage note ("Note"). These Defendants assert that whether or not the Note was securitized is "irrelevant to the claims and defenses in the matter and Plaintiff has no standing to question or challenge this process." Feb. 27 Letter at 7. They cite to several cases in which courts have held that plaintiff mortgagors did not have standing to challenge the validity of the securitization of the loan. *See Bascos v. Fed. Home Loan Mortg. Corp.*, Case No. 11-CV-3968-JFW, 2011 WL 3157063 at *4 (C.D. Cal. July 22, 2011); *Junger v. Bank of Am., N.A.*, Case No. 11-CV-10419 CAS, 2012 WL 603262 at *3 (C.D. Cal. Feb. 24, 2012).

However, in this case, Plaintiff does not challenge the validity of the securitization agreement, nor does Plaintiff allege that Defendants failed to comply with the terms of the securitization agreement. Rather, Plaintiff seeks discovery regarding the securitization of the Note in order to prove elements of her fraud and unfair business practices claims. Feb. 27 Letter at 5; *see, e.g.,* TAC at ¶ 105-06 ("SunTrust and Wells Fargo attempted to conceal the true owner of Plaintiff's loan form [sic] her in order to receive higher compensation pursuant to the terms of the Pooling and Servicing Agreement . . . which compensates them more if her loan is in default."). In the order denying Defendants' motion to dismiss the SAC, Judge Chen noted that Plaintiff had alleged that Defendants SunTrust and Wells Fargo intended to misrepresent the owner of Plaintiff's loan "in an attempt to deceive her because they could thereby collect 'an additional compensation pursuant to the terms of the pooling and serving agreement in which plaintiff's loan is placed.'" Docket No. 115 at 18 (quoting SAC at 30 ¶¶ 5-6). Judge Chen also noted that the SAC alleged that servicers derive greater fees from defaulted loans and delays in the loan modification and foreclosure process than they do if they grant loan modifications. *Id.* ("[Plaintiff] offers general allegations that point to

6

scienter, such as SunTrust's purported incentive to increase its own fees by obstructing Plaintiff's efforts to salvage her home loans."). Judge Chen denied Defendants' motion to dismiss with regard to the fraud claim against SunTrust.[4]

Discovery regarding securitization and the PSA is therefore relevant to Plaintiff's claims. Plaintiff may elicit testimony and seek documents relating to securitization of her loan.

### ii. ReconTrust's Objections to Topics 35 and 36

ReconTrust objects to topics 35 and 36. Topic 35 is "Tina Sevillano's employment history for YOU." Mar. 22 2013 Letter, Ex. C at 14. Topic 36 is "The business relationship that YOU have had with Mr. Ahmad Afzal, the notary who purportedly notarized the ASSIGNMENT." *Id.* Plaintiff alleges that the June 21, 2010 Assignment of the Deed of Trust that purported to substitute ReconTrust as trustee was improperly backdated and furthermore was signed by an individual named "T. Sevillano" who did not have authority to assign the deed on behalf of MERS. *Id.* at ¶¶ 63-65; 85-86; 91. Plaintiff argues that topic 35 is proper because if Sevillano "has a history of malfeasance, or of not signing documents properly or backdating documents, such information would be highly relevant to this case." Mar. 22 2013 Letter at 3. Plaintiff asserts that topic 36 is proper because counsel for ReconTrust has previously informed Plaintiff's counsel that "Mr. Afzal was a contractor with Recontrust [], which shows that there was an ongoing business relationship. If [he] was terminated or if he was accused of wrongdoing in the past relating to notarizations, such information would be relevant and/or reasonably calculated to lead to the discovery of admissible evidence." *Id.* at 3. ReconTrust objects that the deposition topic is improper because Plaintiff can seek information regarding Sevillano and Afzal's employment history directly from those individuals.[5] *Id.* at 7. However, it is reasonable that the employer may have different knowledge about the existence of malfeasance than the employee or contractor herself. Accordingly, inquiry into these topics is permitted.

---

[4] Judge Chen granted the motion to dismiss the fraud claim against Wells Fargo with leave to amend. Plaintiff then filed the TAC, which augments the allegations related to the fraud claim against Wells Fargo. [Docket No. 146 at ¶¶ 199-122.] The TAC is the operative complaint.

[5] Indeed, at the hearing on these motions, ReconTrust's counsel, who is also counsel to Sevillano and Afzal, stated that Plaintiff has now deposed both of these individuals.

7

### iii. Defendants' Other Objections to Deposition Notices

As to the remainder of Defendants' specific objections to the deposition notices, boilerplate assertions of privilege or trade secrets do not meet the requirements for a party withholding information under a claim that it is privileged. *See* Fed. R. Civ. P. 26(b)(5)(A). Defendants may, of course, make well-founded objections on the basis of attorney-client or work product privilege during the deposition, or in response to the requests for production.[6] With respect to trade secrets, the parties informed the court that they have completed negotiations on a proposed protective order. The court finds that a protective order is adequate to meet the concerns raised by the elicitation of proprietary information through the course of discovery.

Defendants also argue that they should not have to provide discovery with respect to transactions in which they claim they played no role, or subjects about which they claim they have no knowledge. *See, e.g.*, Feb. 27 Letter at 7-9 and Mar. 22 Letter, Ex. C at 3, 15 ("Topics relating to MERS' role in the STARM TRUST are objectionable . . . because MERS is not a party to the STARM TRUST"; "Topics relating to MERS' role . . . [in] the FIRST FORECLOSURE are irrelevant because MERS had no role in the first foreclosure"; "Topics relating to any other entity's role in the STARM TRUST . . . are objectionable . . . because MERS cannot speak for another entity and their respective roles about anything"; "The designated corporate representative for each defendant will not testify on behalf of other entities, nor will the witness testify as topics that they . . . have no knowledge of . . . ."; ReconTrust "played no role in the first foreclosure;" "as loan Trustee, [ReconTrust] does not engage in loan modification consideration.").

The court begins by noting that SunTrust, Wells Fargo, MERS, and U.S. Bank did not make these objections and assertions in their responses to the discovery requests; they raise them only in their arguments in the Feb. 27 Letter. The court may ignore the objections as to those Defendants on that basis alone. Moreover, Plaintiff alleges that Defendants misrepresented their involvement in various transactions. *See e.g.,* TAC at ¶¶ 14 (Defendants were agents, co-conspirators, alter egos of one another); 43 (PSA compensation scheme "incentivized SunTrust and Wells Fargo to

---

[6] If Defendants withhold any documents on the basis of privilege, they must promptly produce a privilege log that comports with this court's Standing Order.

intentionally conceal the fact that neither entity actually owned her loan"); 44 (SunTrust stated that Wells Fargo was the owner of the loan); 60-61 (Wells Fargo disavowed having any ownership interest in the loan); 66 (according to MERS online registry, loan was owned by UBS Real Estate Securities, Inc.); 68-69 (UBS representative informed Plaintiff that UBS had no record of ever owning her mortgage and that all previously owned mortgages owned by UBS had been bundled, securitized, and sold). The parties' roles continue to be at issue. At the oral argument, various Defendants argued that their clients played no part in particular events. Plaintiff disagreed, highlighting documentary evidence that suggested otherwise. Given that Defendants' roles and participation in various transactions are hotly debated, Plaintiff may seek sworn and binding testimony on these subjects. Plaintiff need not rely on the representations of counsel. *See, e.g.*, *Makreas v. First National Bank*, Case No. 11-CV-2234 JST (KAW), Docket No. 120 (N.D. Cal. Feb. 23, 2013) at 2 ("[Defendant] further argues that it told Plaintiff during the meet and confer process that it cannot produce a witness with knowledge of what was told to the purchaser, because it was not involved in the sale. But a representation by an attorney during the meet and confer process is not sworn testimony that is binding on the company.").

Furthermore, to the extent that Defendants object to Plaintiff seeking discovery on issues about which a Defendant claims to have no knowledge, or about transactions that allegedly do not involve a particular Defendant, that objection is not a basis for precluding a deposition. The witness can always testify to the Defendant's lack of knowledge or involvement. The 30(b)(6) topics are properly exploratory. For example, Plaintiff requests MERS produce a witness who can testify to "[MERS'] role, *if any*, in the FIRST FORECLOSURE." Feb. 27 Letter Ex. 8 at 18 (emphasis added). The way this request is phrased does not require MERS to produce a witness knowledgeable about MERS role in the FIRST FORECLOSURE if, in fact, it did not play any role.

During the hearing, the court modified topic 53 in the SunTrust deposition notice as follows: "All DOCUMENTS and COMMUNICATIONS REFERRING TO the LOAN origination or the period of time between the LOAN origination and Plaintiff's default." This modification applies to this topic to the extent it appears in any other deposition notice. Although the lawsuit does not

challenge the loan origination itself, the initiation of the loan and the period of time leading up to default is important background information, and is therefore relevant and discoverable.

At the conclusion of the hearing, the court ordered the parties to meet and confer in the courthouse to further narrow topics 6 and 7 in the SunTrust notice (and all corresponding topics in other notices), to agree on a deposition schedule, and to make agreements about the scope of attorney-client privilege regarding communications after commencement of this lawsuit. After completing their meet and confer session, the parties reported to the court that they had resolved all issues but one. The court heard the outstanding matter, which is described as follows: Wells Fargo's 30(b)(6) deposition had commenced, but was suspended pending the court's ruling on the present motions. Wells Fargo argued that the remaining questions involve transactions about which Wells Fargo had no knowledge, and requested that it be allowed to respond to those questions through sworn interrogatory responses. As discussed above, given the ongoing disputes about the roles of various parties in the relevant events, the court denies the request. Wells Fargo's deposition should resume with a live 30(b)(6) witness, so that Plaintiff may ask appropriate follow-up questions.

## V. CONCLUSION

The discovery cutoff of March 15, 2013, has already passed. However, per Judge Tigar's scheduling order [Docket No. 204], the parties are permitted to conduct the discovery that is the subject of this order. The parties are ordered to complete these depositions and the accompanying document productions forthwith, pursuant to the agreed-upon deposition schedule that they set in the courthouse meet and confer session.

IT IS SO ORDERED.

Dated: April 15, 2013

DONNA M. RYU
United States Magistrate Judge