# EXHIBIT B

Page 1

1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF CALIFORNIA

3

4    DEBORAH TAMBURRI,                     )

5                    Plaintiff,            )

          vs.                             ) No. 11-cv-02899-JST

6    SUNTRUST MORTGAGE, INC.;              )

7    WELLS FARGO BANK, N.A.;               )

8    U.S. BANK NATIONAL                    )

     ASSOCIATION, as TRUSTEE for           )

9    STARM 2007-2; MORTGAGE                )

10   ELECTRONIC REGISTRATION               )

11   SYSTEMS, INC., and                    )

     RECONTRUST COMPANY, N.A.;             )

12   and DOES 1-20,                        )

13                    Defendants.          )

14

15

16          VIDEOTAPED DEPOSITION OF THOMAS A. COX

17               San Francisco, California

18               Monday, June 10, 2013

19                    Volume I

20

21   Reported by:

22   SUZANNE F. BOSCHETTI

     CSR No. 5111

23   Job No. 1680812

24

25   PAGES 1 - 147

**Page 2**

```
1          UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF CALIFORNIA
3
     _____
4    DEBORAH TAMBURRI,          )
5            Plaintiff,  )
             vs.         ) No. 11-cv-02899-JST
6    SUNTRUST MORTGAGE, INC.;   )
7    WELLS FARGO BANK, N.A.;    )
8    U.S. BANK NATIONAL         )
     ASSOCIATION, as TRUSTEE for )
9    STARM 2007-2; MORTGAGE     )
10   ELECTRONIC REGISTRATION    )
11   SYSTEMS, INC., and         )
     RECONTRUST COMPANY, N.A.;  )
12   and DOES 1-20,             )
13           Defendants.  )
     _____)
14
15
16       Videotaped deposition of THOMAS A. COX,
17   Volume I, taken on behalf of Defendant ReconTrust
18   Company, at 101 Second Street, Suite 1800, San
19   Francisco, California, beginning at 11:21 a.m. and
20   ending at 3:51 p.m., on Monday, June 10, 2013,
21   before SUZANNE F. BOSCHETTI, Certified Shorthand
22   Reporter No. 5111.
23
24
25
                                          Page 2
```

**Page 3**

```
1    APPEARANCES:
2
3    For Plaintiff:
4
5    THE GOODELL LAW FIRM
6    BY:  NELSON W. GOODELL, ESQ.
7    1750 Montgomery Street, Suite 129
8    San Francisco, California 941111
9    (415) 954-7151
10   goodelllawfirm@gmail.com
11
12   THE STURDEVANT LAW FIRM
13   BY: JAMES C. STURDEVANT, ESQ.
14   354 Pine Street, Fourth Floor
15   San Francisco, California 95104
16   (415) 477-2410
17   jsturdevant@sturdevantlaw.com
18
19
20
21
22
23
24
25
                                          Page 3
```

**Page 4**

```
1    APPEARANCES (Continued):
2
3    For Defendant ReconTrust Company, N.A.:
4
5    REED SMITH LLP
6    BY:  DAVID S. REIDY, ESQ.
7    BY:  JOHN D. PINGEL, ESQ.
8    101 Second Street, Suite 1800
9    San Francisco, California 94105
10   (415) 659-5933
11   dreidy@reedsmith.com
12   jpingel@reedsmith.com
13
14   For Defendants SunTrust Mortgage, Inc.; Wells Fargo
15   Bank, N.A.; U.S. Bank National Association as
16   Trustee for STARM 2007-2:
17
18   MORRISON & FOERSTER LLP
19   BY:  ANGELA E. KLEINE, ESQ.
20   425 Market Street
21   San Francisco, California 94105-2482
22   (415) 268-6214
23   akleine@mofo.com
24
25
                                          Page 4
```

**Page 5**

```
1    APPEARANCES (Continued):
2
3    For Defendant Mortgage Electronic Registration
4    Systems, Inc.
5
6    MORGAN, LEWIS & BOCKIUS LLP
7    BY:  ELIZABETH A. FROHLICH, ESQ.
8    One Market, Spear Street Tower
9    San Francisco, California 94105
10   (415) 442-1352
11   efrohlich@morganlewis.com
12
13   Videographer:
14     CASSIA LEET, Veritext
15
16
17
18
19
20
21
22
23
24
25
                                          Page 5
```

Pages 2 to 5

Veritext National Deposition & Litigation Services
866 299-5127

INDEX

WITNESS:       EXAMINATION       PAGE
THOMAS A. COX
Volume I
  BY MR. REIDY                        10
  BY MS. FROHLICH                     87
  BY MS. KLEINE                      123
  BY MS. FROHLICH                    144

EXHIBITS
NUMBER         DESCRIPTION        PAGE
Exhibit 405  Notice of Taking of        43
    Deposition of Thomas A.
    Cox and Request for
    Production of Documents
Exhibit 406  Exhibit C, Declaration of    43
    Mortgage Electronic
    Registration Systems, Inc.
Exhibit 407  Memorandum to ULC Study      43
    Committee on Mortgage
    Foreclosure Procedures,
    January 10, 2012; 19 pages
Exhibit 408  Expert Report Prepared for   44
    Plaintiff Deborah
    Tamburri, May 15, 2013
Exhibit 409  California Civil Code        59
    Statute Section 1185; 3
    pages
Exhibit 410  Excerpt of Uncertified      117
    Rough Draft transcript of
    Brian Blake, page 53

Page 6

INDEX (Continued):

PREVIOUSLY MARKED EXHIBITS (Not attached)
NO.                    PAGE
Exhibit 2              52
Exhibit 28             62

Page 7

San Francisco, California; Monday, June 10, 2013

11:21 a.m.

---o0o---

VIDEO OPERATOR:  Good morning.  We're on the record at 11:21 a.m. on June 10th, 2013.  This   11:21:17 is the video recorded deposition of Thomas A. Cox.  My name is Cassia Leet, here with our court reporter Suzanne Boschetti.  We are here from Veritext Legal Solutions at the request of counsel for defendant.

This deposition is being held at Reed Smith   11:21:37 LLP, 101 Second Street, Suite 1800, in San Francisco, California.  The caption of this case is Deborah Tamburri versus SunTrust Mortgage Inc., et al., in the United States District Court, Northern District of California, Case   11:21:56 No. 3:11-cv-02899 EMC.

Please note that the audio and video recording will take place unless all parties agree to go off the record.  Microphones are sensitive and may pick up whispers, private conversations and cell   11:22:14 phone interference.

I am not related to any party in this action nor am I financially interested in the outcome in any way.

At this time will counsel and all present   11:22:25

Page 8

please identify themselves for the record.

MR. REIDY:  David Reidy, Reed Smith for defendant ReconTrust.

MR. PINGEL:  John Pingel, also with Reed Smith for defendant ReconTrust.   11:22:37

MS. KLEINE:  Angela Kleine for defendant SunTrust Mortgage Inc., Wells Fargo Bank N.A., and U.S. Bank National Association as Trustee for STARM 2007-2.

MS. FROHLICH:  Elizabeth Frohlich, Morgan   11:22:49 Lewis, for defendant MERS.

MR. STURDEVANT:  Jim Sturdevant of the Sturdevant Law Firm for the plaintiff Deborah Tamburri.  And just so that the video record is correct, this case is no longer pending before Judge   11:23:01 Edward Chen, it is now pending before Jon Tigar.

VIDEO OPERATOR:  Thank you.  The witness will be sworn in and counsel may begin the examination.

11:23:11

THOMAS A. COX, having been administered an oath, was examined and testified as follows:

VIDEO OPERATOR:  Please begin.   11:23:24

Page 9

Veritext National Deposition & Litigation Services
866 299-5127

|  |  |
|---|---|
| 1      EXAMINATION | 1   A  When the FDIC closed down some banks, |
| 2  BY MR. REIDY: | 2  litigation developed around trust department |
| 3    Q  Good morning.  Can you state your full name | 3  operations and whether bank trustees had acted -- |
| 4  for the record, please. | 4  had been acting properly. |
| 5    A  Thomas A. Cox.       11:23:29 | 5    Q  Do you remember whether there was specific 11:25:40 |
| 6    Q  Mr. Cox, I understand you're an attorney; | 6  banks involved in that litigation? |
| 7  is that correct? | 7    A  There were specific banks.  I don't |
| 8    A  That's correct. | 8  remember which one was involved in that case. |
| 9    Q  And where are you currently licensed? | 9    Q  Did you end up testifying at trial? |
| 10    A  State of Maine, Commonwealth of    11:23:34 | 10    A  No.       11:26:02 |
| 11  Massachusetts. | 11    Q  Is that because the case didn't go to |
| 12    Q  So have you had your deposition taken | 12  trial? |
| 13  before? | 13    A  As far as I know. |
| 14    A  Many years ago. | 14    Q  So you weren't excluded from testifying as |
| 15    Q  How long ago was that?     11:23:40 | 15  an expert based on any motion or --   11:26:14 |
| 16    A  I'm going to guess 20 to 25 years ago is | 16    A  Not that I'm aware of. |
| 17  the last time. | 17    Q  Okay.  You referenced a second deposition. |
| 18    Q  And what was the circumstance of the | 18  Was that during the same timeframe? |
| 19  deposition? | 19    A  Yes. |
| 20    A  My best recollection, I testified in a  11:23:51 | 20    Q  Can you give me a general description of 11:26:27 |
| 21  couple of cases involving the FDIC during the S&L | 21  your role in the case when you gave that deposition? |
| 22  crisis. | 22    A  It's going to be all guesswork, all |
| 23    Q  Were you designated as an expert witness? | 23  speculation. |
| 24    A  I think in one of them I was. | 24    Q  And I don't want you to guess.  If you |
| 25    Q  Let me -- let me back up. You say one of 11:24:06 | 25  don't know, that's okay.     11:26:48 |
| Page 10 | Page 12 |
| 1  the cases? | 1    A  I don't know. |
| 2    A  Yes. | 2    Q  We're going to move -- we're going to move |
| 3    Q  Was there one deposition? | 3  pretty quickly, so -- is it fair to assume that in |
| 4    A  Two depositions involving the FDIC that I | 4  your career as a lawyer you've taken depositions as |
| 5  recall.       11:24:21 | 5  well?       11:26:58 |
| 6    Q  In the one where you were designated as an | 6    A  Yes, I have. |
| 7  expert, who was the party that retained you; do you | 7    Q  Okay.  So I probably don't need to go over |
| 8  remember? | 8  all the ground rules with you.  I'm sure -- |
| 9    A  I believe it would have been the FDIC. | 9    A  I hope you won't. |
| 10    Q  And what -- what was the subject matter of 11:24:33 | 10    Q  Okay.  I'm sure we do it here just like in 11:27:07 |
| 11  your designation? | 11  Maine or Massachusetts, but you understand that |
| 12    A  I wish I could remember.  I tried | 12  you're under oath? |
| 13  remembering on the way out here, and I can't | 13    A  I do. |
| 14  remember. | 14    Q  I understand you traveled in recently.  Is |
| 15    Q  If you were to describe it    11:24:43 | 15  there any reason that you can think of that you  11:27:20 |
| 16  conversationally, what would you say? | 16  can't give us your best testimony today? |
| 17    A  It could have been regarding matters | 17    A  No. |
| 18  relating to trust apartment operations.  It could | 18    Q  You've been designated as an expert witness |
| 19  have been a matter relating to a foreclosure, but I | 19  in the case, the Tamburri versus SunTrust, et al., |
| 20  think I testified in a fact matter relating to  11:25:04 | 20  case. You understand that?    11:27:35 |
| 21  foreclosure, so I'm -- but I just don't have a | 21    A  I do understand that. |
| 22  memory of the other one, but I suspect it would have | 22    Q  And you understand that I represent |
| 23  been a trust related matter. | 23  ReconTrust, which is one of the defendants in that |
| 24    Q  When you say trust, what specifically are | 24  case? |
| 25  you talking about?     11:25:17 | 25    A  I do.       11:27:41 |
| Page 11 | Page 13 |

Pages 10 to 13

Veritext National Deposition & Litigation Services
866 299-5127

Page 14

1    Q   In your report you list a series of
2  documents that you reviewed in preparing your
3  opinion testimony.  I can show you a copy of your
4  report if you don't have it.  Is that a full list of
5  the materials that you reviewed in preparing your   11:28:06
6  opinions as they're expressed in the report?
7    A   The only other thing I reviewed is I
8  brought with me because Jim couldn't find his --
9  I'll find -- a MERS form of corporate resolution.
10  I've seen discussion in this case about a corporate   11:28:24
11  resolution from MERS in favor of ReconTrust
12  employees.  And I dug the document that I gave to
13  you out of my own files so I would have one to refer
14  to.
15    Q   Okay.  Can you give me a sense of when you   11:28:39
16  first referred to this document?
17    A   It would -- I referred to it in connection
18  with the work on the -- on the expert witness
19  report.
20    Q   You did.  So you had looked at it before   11:28:51
21  you prepared the report?
22    A   Yes.
23    Q   Okay.  Aside from the -- the MERS document
24  that you've just given us, which we'll get into
25  later, and what's listed in the report, have you   11:29:04

Page 15

1  reviewed anything else since you prepared the report
2  before your deposition today?
3    A   I don't believe so.  Whoops, I take that
4  back.  Mr. Sturdevant just handed me a rough draft
5  of the testimony of Mr. Afzal from last week, I   11:29:22
6  guess it was, and I looked at pages 20 through 22 or
7  3 in this morning just before coming over here
8  this morning.
9    Q   And is that Mr. Afzal?
10    A   Yes.                        11:29:36
11    Q   The notary, right?
12    A   Yes, right.
13    Q   And I think your report reflected that you
14  had reviewed the prior session of his testimony?
15    A   I did.                      11:29:41
16    Q   Did what you reviewed this morning change
17  any of your opinions as they're expressed in the
18  report?
19    A   No.
20    Q   So preparing for today, did you review any   11:30:00
21  other materials that you -- that we haven't
22  discussed or that are not listed in your report?
23    A   At some point in working on the expert
24  witness report, I looked at the California statutes
25  regarding notaries.  I think that's the only   11:30:20

Page 16

1  California statutes that I looked at.
2    Q   Let me just break this up into two parts.
3  Up to the time that you've signed and delivered your
4  report, you had reviewed the materials that are
5  listed on page 2, and those are the Third Amended   11:30:50
6  Complaint, Judge Chen's order -- orders of
7  August 2012 and June 2012, the deposition of Ahmad
8  Afzal, part 1, Mr. Afzal's notary journal, the
9  deposition transcript of Tina Seviallano, 30(b)(6),
10  deposition transcripts of Wells Fargo deponent John   11:31:17
11  Hyle, ReconTrust deponent Flor Valerio, MERS
12  deponent Brian Blake, and SunTrust deponent Beverly
13  Dumas.  It also states that you reviewed California
14  Secretary of State's documents which I presume are
15  the documents that relate to Mr. Afzal, the notary?   11:31:37
16    A   Yes.
17    Q   In addition to those documents, you said
18  that you also reviewed this MERS document that
19  you've just handed to us?
20    A   Yes.                        11:31:48
21    Q   And California statutes regarding notaries?
22    A   Yes.
23    Q   Okay.  Do you recall what statutes you
24  looked at?
25    A   No, I don't.               11:31:58

Page 17

1    Q   Do you recall whether you cited those
2  statutes in your report?
3    A   I think one of them is cited at the end of
4  the report, and I think it's mis-cited at the end of
5  the report.                      11:32:18
6    Q   Are you referring to government code
7  section 118?
8    A   Yes.
9    Q   Am I right in assuming that you intended to   11:32:29
10  reference Penal Code 118?
11    A   I think it was Civil Code 1185(a) is my
12  memory.
13    Q   Okay.  And what does that statute say just
14  from your recollection?
15    A   That's the requirement that a witness or   11:32:46
16  individual whose oath is being taken by the notary
17  appear before the notary to swear.
18    Q   Well, I'll state -- I'll represent to you
19  for the record that Penal Code 118 defines perjury
20  in the State of California.  Is that -- did you   11:33:06
21  intend to rely on that statute in any way?
22    A   No.
23    Q   Okay.  And government code 118, which I
24  don't know, deals with maritime law or something.
25    A   No.                        11:33:17

Pages 14 to 17

| | |
|---|---|
| 1  Q   We're not talking about that, right? | any other state apart from those two? |
| 2  A   No. | 2  A   No. |
| 3  Q   Okay.  Did you review any other California | 3  Q   Do you know personally the plaintiff in |
| 4  statutes -- | this case, Deborah Tamburri? |
| 5  A   Not that I can recall.        11:33:30 | 5  A   No.                 11:35:48 |
| 6  Q   Prior to preparing your report? | 6  Q   Have you ever met her? |
| 7  A   Not that I recall. | 7  A   No. |
| 8  Q   And since you prepared the report? | 8  Q   Do you know Mr. Sturdevant personally? |
| 9  A   None that I recall. | 9  A   Not before this case, no. |
| 10 Q   Have you reviewed the report of Professor 11:33:37 | 10 Q   And what about other plaintiff's counsel, 11:35:5[5] |
| 11 Levitin, who is also designated as an expert for the | 11 Nelson Goodell? |
| 12 plaintiff? | 12 A   No. |
| 13 A   Yes. | 13 Q   Have you ever been retained by either of |
| 14 Q   Did you review that before you prepared | 14 them before for another case? |
| 15 your report?             11:33:47 | 15 A   No.                 11:36:04 |
| 16 A   No. | 16 Q   Besides your law license, do you hold any |
| 17 Q   Have you reviewed the report of Martin | 17 other professional licenses? |
| 18 McGuinn who was designated as a rebuttal by the | 18 A   No. |
| 19 defense? | 19 Q   Have you ever held any other professional |
| 20 A   Part of it.            11:33:58 | 20 licenses?              11:36:15 |
| 21 Q   So in reviewing the Levitin and McGuinn | 21 A   No. |
| 22 reports after you delivered your report, did either | 22 Q   I'm not going to go through 40 years of |
| 23 of those reports change your opinion on any of the | 23 your practice, so we'll try to sum it up if we can. |
| 24 material issues that you expressed in your report? | 24     Would you characterize your legal |
| 25 A   No.                 11:34:18 | 25 practice -- well, let me ask you this:  Did you -- 11:36:35 |
| Page 18 | Page 20 |

| | |
|---|---|
| 1  Q   Okay.  You testified that you are currently | did you practice in private practice your whole |
| 2  licensed to practice law in Maine and Massachusetts. | career? |
| 3  Did I get that right? | 3  A   Until about the year 2000. |
| 4  A   My Massachusetts license I think is | 4  Q   So you were -- were you ever -- up to 2000, |
| 5  probably inactive.          11:34:39 | 5  were you ever in-house counsel at a private company 11:36:5[4] |
| 6  Q   Maine is active? | 6  or -- |
| 7  A   Yes. | 7  A   No. |
| 8  Q   When were you first licensed to practice in | 8  Q   So you always worked at a firm or in -- |
| 9  Maine? | 9  A   That's right. |
| 10 A   19- -- 1970.            11:34:45 | 10 Q   -- in a law office?          11:37:02 |
| 11 Q   And you've been continuously licensed since | 11 A   Yes. |
| 12 then in Maine? | 12 Q   Did that change in 2000? |
| 13 A   Yes. | 13 A   2000 -- around 2000 I left the practice of |
| 14 Q   Have you ever been disciplined by the Maine | 14 law. |
| 15 state bar?               11:34:58 | 15 Q   And what did you do then?        11:37:12 |
| 16 A   No. | 16 A   I dealt with some health issues for a |
| 17 Q   Suspended, anything like that? | 17 while, and then I ended up doing some business |
| 18 A   No. | 18 activities. |
| 19 Q   When were you first licensed in | 19 Q   Have you ever worked for a governmental |
| 20 Massachusetts?            11:35:09 | 20 entity?                11:37:24 |
| 21 A   1969. | 21 A   No. |
| 22 Q   And when did that license become inactive? | 22 Q   Do you currently practice law? |
| 23 A   I'm not sure.  It would have been more than | 23 A   Yes. |
| 24 ten years ago, but I'm not sure. | 24 Q   Roughly when did that start up again? |
| 25 Q   Have you ever been licensed to practice in 11:35:2[8] | 25 A   Two thousand -- April of 2008.     11:37:38 |
| Page 19 | Page 21 |

Veritext National Deposition & Litigation Services
866 299-5127

1    Q    And was there an event that triggered that?

2    A    I went back into the Volunteer Lawyer

3    Project office in Portland.

4    Q    And that's when you got involved in dealing

5    with foreclosure issues?                    11:37:51

6    A    Yes.

7    Q    Is it fair to say that your practice before

8    2000 was different than the practice once you got

9    into the volunteer legal services in 2008?

10   A    A significant part of my practice in    11:38:02

11   private practice years did focus on foreclosure

12   issues for a certain time but on the other side of

13   the table.

14   Q    So you represented lenders or other --

15   A    Yes.                                     11:38:16

16   Q    Did you ever represent ReconTrust?

17   A    No.

18   Q    Bank of America?

19   A    No.  Well, I represented Fleet Bank for a

20   period, and that was acquired by Bank of America, I  11:38:28

21   believe.  I don't believe I actually worked for the

22   Bank of America.

23   Q    That was before the Fleet acquisition?

24   A    Yes.

25   Q    Did you ever represent MERS?         11:38:38

Page 22

1    California?

2    A    No.

3    Q    Were you ever retained -- prior to 2008,

4    were you ever retained to litigate any issues

5    arising from a California mortgage or a California   11:39:51

6    foreclosure?

7    A    I don't believe so.

8    Q    As part of your practice, and I'm talking

9    about up to today, have you ever drafted or

10   contributed to any amicus briefs at any court of    11:40:10

11   appeal or supreme court, state or federal?

12   A    Yes.

13   Q    How many times would you say prior to 2008

14   you contributed to or drafted an amicus brief or a

15   friend of the court brief over your career?      11:40:26

16   A    I only recall one before 2008, and I'm

17   not -- don't recall even the case name.

18   Q    Do you remember when?

19   A    25, 30 years ago.

20   Q    Okay.  Do you have any recollection of what  11:40:53

21   the issue was?

22   A    I believe it related to bank foreclosure

23   related activity, but I -- sorry, I don't recall.

24   Q    And would that have been foreclosure

25   related activity in Maine?                11:41:06

Page 24

1    A    No.

2    Q    Do you understand when I say MERS what I

3    mean?

4    A    I do.

5    Q    Mortgage Electronic Registration Systems,   11:38:45

6    Inc. as I think is accurate?

7    A    Right, right.

8    Q    Okay.  I'm going to say MERS today.

9    A    That's fine.

10   Q    Did you ever represent U.S. Bank?    11:38:53

11   A    No.

12   Q    Wells Fargo?

13   A    No.

14   Q    SunTrust?

15   A    No.                                  11:39:01

16   Q    Prior to 2000, was your practice a

17   litigation practice?

18   A    A significant part of it was.

19   Q    And were you -- were you ever admitted pro

20   hac vice in another state as a part of a case that  11:39:27

21   you handled?

22   A    Yes.

23   Q    You understand what I mean by --

24   A    I do.

25   Q    Were you ever admitted pro hac vice in   11:39:35

Page 23

1    A    No, that would have been in Massachusetts.

2    Q    Is Massachusetts a judicial foreclosure

3    state?

4    A    No.

5    Q    Is Maine a judicial foreclosure state?   11:41:15

6    A    Yes.

7    Q    What's the foreclosure system in

8    Massachusetts, if you can give me just a general

9    description?

10   A    It's a nonjudicial process where a notice   11:41:24

11   of default is served, filed, and the case goes to a

12   sale without any judicial intervention.

13   Q    Is there also a procedure in Massachusetts

14   for judicial foreclosure?

15   A    I believe there is.  Maine also has a    11:41:42

16   judicial process.

17   Q    But --

18   A    I'm sorry.  Maine also has a nonjudicial

19   process.

20   Q    Maine does as well?                  11:41:53

21   A    Yes.

22   Q    So both states have both systems?

23   A    Yes.

24   Q    And in your experience, starting with

25   Maine, is nonjudicial foreclosure the primary   11:42:00

Page 25

Veritext National Deposition & Litigation Services
866 299-5127

1  mechanism by which residential foreclosures are
2  conducted in Maine?
3     A   In Maine nonjudicial foreclosure is not
4  permitted for residential cases.
5     Q   Okay. So for purposes of today's        11:42:13
6  testimony, you can assume that when I talk about
7  mortgages, I'm -- I'm talking about residential
8  mortgages. So for residential, effectively Maine is
9  a judicial foreclosure state?
10    A   That's right.                            11:42:26
11    Q   And what about Massachusetts?
12    A   I believe it's entirely nonjudicial.
13    Q   For residential as well?
14    A   I believe, but I'm not certain of that.
15    Q   Okay. In the amicus brief that you      11:42:36
16  contributed to in the Massachusetts case, do you
17  recall whether that had anything to do with a
18  residential mortgage?
19    A   It's likely that it did not, but I don't
20  recall.                                        11:42:56
21    Q   Is it fair to say that your practice prior
22  to 2000 -- to the extent it dealt with foreclosures
23  was concerned with commercial real estate?
24    A   Not entirely, but that was the predominant
25  part of it.                                    11:43:11

Page 26

1     Q   When you say "predominant," can you put a
2  percentage on it?
3     A   No, not today I can't.
4     Q   More or less than 75 percent?
5     A   I would say more -- the majority of my work  11:43:21
6  in private practice focused on commercial mortgages.
7  That's the best that I can do.
8     Q   Did you have occasion to litigate issues
9  concerning residential foreclosures?
10    A   Yes.                                     11:43:43
11    Q   Can you give me an example of a case or a
12  circumstance where you would be litigating issues
13  starting with Maine relating to residential
14  foreclosure?
15    A   When the savings and loan crisis came in  11:43:54
16  the late '80s, my work was focused almost entirely
17  on foreclosures both in commercial and residential
18  properties.
19    Q   And were those claims brought against the
20  savings and loans?                             11:44:10
21    A   We didn't bring the claims in Maine because
22  we're judicial. My clients -- the homeowners were
23  the defendants. The banks were the plaintiffs.
24    Q   So you were representing banks or savings
25  and loans in foreclosure related activities?   11:44:24

Page 27

1     A   Yes.
2     Q   And why did that -- strike that.
3         Did that type of litigation spike up during
4  the savings and loan?
5     A   Yes.                                     11:44:37
6     Q   Why?
7     A   Well, a lot of small business owners
8  guaranteed their small businesses debts, and a lot
9  of those guarantees were backed up by mortgages on
10 the small business owners' homes.               11:44:51
11    Q   So if a savings and loan fails, loans go
12 into default?
13    A   When the FDIC closes a bank, all demand
14 loans were called in at that time.
15    Q   Okay. And you represented the side        11:45:03
16 demanding the payment of the loans?
17    A   Yes.
18    Q   So in Maine you would have been dealing
19 both with judicial and nonjudicial foreclosures?
20    A   Yes.                                     11:45:29
21    Q   Were you ever retained to conduct a
22 nonjudicial foreclosure?
23    A   I wasn't the auctioneer running the sale,
24 but yes, I was involved in the process.
25    Q   And the reason I ask is because -- and    11:45:43

Page 28

1  we'll get to the California process -- but I'm
2  trying to get an understanding of what the role of a
3  lawyer would be in a nonjudicial foreclosure in
4  Maine.
5     A   My memory is that when I was involved in   11:46:04
6  those cases, I was involved in drafting the default
7  notices, the notices of sales, and I believe I was
8  also involved in bringing in the auctioneers.
9     Q   For the -- for the cases in Massachusetts,
10 was your practice substantially different in any   11:46:28
11 way?
12    A   I only practiced in Massachusetts for a
13 year after law school.
14    Q   Okay. So when we talk about pre 2000 on
15 these foreclosure cases, on the savings and loans   11:46:40
16 cases, is it fair to say that that was almost all or
17 all in Maine?
18    A   Yes.
19    Q   How does a -- how does a mortgage work
20 in -- in Maine? What's the -- what's the nature of  11:46:56
21 the security that secures the obligation?
22    A   Maine is a title theory state, and a
23 mortgage is a conveyance of title to the lender
24 subject to a reserved equity of redemption in the
25 mortgagor. There's no trustee involved. There's no  11:47:16

Page 29

Pages 26 to 29

Veritext National Deposition & Litigation Services
866 299-5127

| | |
|---|---|
| 1 separate beneficiary involved. | 1   A   I don't teach any law school classes. |
| 2   Q   So the parties to the note would be the | 2   Q   Do you currently teach any kind of classes? |
| 3 borrower and the lender? | 3   A   You have my CV there which shows a series |
| 4   A   Yes. | 4 of seminars I've taught at. |
| 5   Q   And then there's a mortgage that's a   11:47:27 | 5   Q   On foreclosure-related issues?   11:49:54 |
| 6 security interest conferred by the borrower to the | 6   A   Yes. |
| 7 lender? | 7   Q   So with regard to this case, you understand |
| 8   A   That's right. | 8 that you've been identified and designated as an |
| 9   Q   So it's a straight exchange? | 9 expert witness in this case? |
| 10   A   Right, unless you want to throw MERS in the  11:47:37 | 10   A   Yes.   11:50:15 |
| 11 mix? | 11   Q   All right.  Your report doesn't specify the |
| 12   Q   We'll get to MERS later, but your -- your | 12 scope of your designation.  Do you have any kind of |
| 13 answer anticipated my question which went to | 13 agreement or written communication between you and |
| 14 trustees.  Are you familiar that -- with | 14 counsel that lists the scope of what they want you |
| 15 California's Deed of Trust system?   11:47:56 | 15 to cover?   11:50:29 |
| 16   A   Yes.  I'm not familiar like you are, but | 16   A   No. |
| 17 I'm generally familiar. | 17   Q   Did you have communications with Mr. |
| 18   Q   So in Maine there's no trustee? | 18 Sturdevant or Mr. Goodell in which they explained to |
| 19   A   That's correct. | 19 you what they wanted you to talk about? |
| 20   Q   And so there's no third party that's --  11:48:06 | 20   A   Yes.   11:50:39 |
| 21 that's, you know, drafting and performing the | 21   Q   So what was your understanding when you |
| 22 ministerial functions that a trustee would perform | 22 started about the scope of your designation? |
| 23 here? | 23   A   I think the focus of it was the June 2010 |
| 24   A   That's correct. | 24 Substitution of Trustee and Assignment of Mortgage, |
| 25   Q   When you say that you've developed some   11:48:23 | 25 and the factors and activities relating to that.   11:51:00 |
| Page 30 | Page 32 |
| 1 familiarity with California's system, when did you | 1   Q   Did that designation change or evolve over |
| 2 first become familiar with California's nonjudicial | 2 time? |
| 3 foreclosure system?  And I'm talking residential. | 3   A   Not really. |
| 4   A   It would have been during the last five | 4   Q   And with regard to the substitution and |
| 5 years.   11:48:37 | 5 assignment, what did they ask you to give an opinion  11:51:17 |
| 6   Q   And how did you come in contact with -- | 6 about? |
| 7   A   There's a LISTSERV out here of foreclosure | 7   A   They were looking for my views about the |
| 8 defense lawyers whose name I can't recall.  And I am | 8 process that was used to create that document and |
| 9 a subscriber to that LISTSERV, so I follow a lot of | 9 whether I thought the procedures that were followed |
| 10 the postings that go on there.  The acronym is CMF  11:48:55 | 10 were proper.   11:51:40 |
| 11 something, and I don't remember the last two | 11   Q   And when you say whether the procedures |
| 12 alphabetical letters in the acronym. | 12 were proper, were you applying any kind of standard |
| 13   Q   But this is an online discussion forum that | 13 of care to those procedures? |
| 14 you follow updates of what's happening in | 14   A   I'm not sure I know how to answer that |
| 15 California?   11:49:13 | 15 question.   11:52:04 |
| 16   A   Yes. | 16   Q   Let me -- let me ask it this way:  When you |
| 17   Q   And is that part of your overall effort to | 17 say "proper," what do you mean? |
| 18 stay current on what's happening in foreclosure | 18   A   What I mean is what I understood the |
| 19 generally? | 19 question to be is did the individual who signed that |
| 20   A   I was initially asked to participate, to   11:49:25 | 20 document, the entity on whose behalf she was   11:52:17 |
| 21 contribute to it. | 21 purporting to act, and the notary, act properly. |
| 22   Q   And have you contributed to it? | 22   Q   And again, I'm trying to get your sense of |
| 23   A   Occasionally. | 23 what the word properly or what proper means as you |
| 24   Q   Do you teach any classes, any law classes | 24 use it.  You're evaluating this document.  You said |
| 25 or banking or any kind of classes?   11:49:42 | 25 the individual who signed, the entity on whose   11:52:49 |
| Page 31 | Page 33 |

Veritext National Deposition & Litigation Services
866 299-5127

1  behalf she claimed to sign it, and the notary.  Were
2  you evaluating their conduct against some standard
3  that you formulated?
4      A  Again, I'm not sure I know how to answer
5  that.                              11:53:20
6      Q  Well, let me ask it this way:  What were
7  you looking for?
8      A  I guess I was looking with respect to the
9  individual who signed the document, whether she knew
10  what she was doing, whether she was acting honestly,  11:53:36
11  whether she had the authority from the entity on
12  whose behalf she was signing to act on its behalf.
13  I'm looking at the notary to see whether the
14  individual who signed the deposition actually
15  appeared before him and said what she was required  11:54:03
16  to say.
17      Q  In determining what you felt she was
18  required to say, was that when you referred to the
19  California statute that we talked about earlier?
20      A  I think my principal focus was on the jurat  11:54:23
21  that the notary placed on the document.
22      Q  You said jurat.  That's j-u-r-a-t?
23      A  Yes, notary certificate, whatever you'd
24  like to call it.
25      Q  Right.  We'll get to your opinions on those  11:54:40

1  subjects later.  I'm just trying to get a sense of
2  the scope here.
3          Were you asked to give an opinion on any
4  other subject?
5      A  That generally covers it, to my memory.     11:54:57
6      Q  Were you asked to give an opinion on any
7  subject that you declined to give an opinion about?
8      A  No.
9      Q  Were you asked about any topics that you
10  did not feel you were qualified to cover?        11:55:18
11      A  Not that I recall.
12      Q  Apart from the case that we talked about
13  where you testified for the FDIC, have you ever been
14  designated as an expert witness in any other case?
15      A  I -- within the last year or two I         11:55:41
16  submitted an affidavit in a New Jersey case where I
17  assume I may have been designated as an expert for
18  that purpose.  Much more recently I submitted an
19  affidavit in a Maine case, similar -- similar type.
20      Q  In residential foreclosures, do you know   11:56:10
21  whether New Jersey is a judicial foreclosure state
22  or a nonjudicial foreclosure state?
23      A  I believe that they're a form of judicial
24  foreclosure state.
25      Q  Did you give depositions in either of those  11:56:25

1  cases?
2      A  No.
3      Q  And presumably you didn't testify at trial?
4      A  No.
5      Q  In either of those cases or in any other    11:56:32
6  mortgage-related case, were you ever designated as
7  an expert only to be disqualified for some reason?
8      A  No.
9      Q  So as far as you recall, you've been
10  designated as an expert three times?             11:56:45
11      A  I think that's right.
12      Q  Okay.  Prior to being contacted by Mr.
13  Sturdevant, had you ever conducted any research or
14  study of California's nonjudicial foreclosure
15  system?                                          11:57:22
16      A  No.
17      Q  Have you ever litigated any issues
18  concerning California's nonjudicial foreclosure
19  system?
20      A  No.                          11:57:38
21      Q  Have you ever litigated any issues
22  concerning the MERS system?
23      A  Yes.
24      Q  Do you understand what I mean when I say
25  the MERS system?                    11:57:50

1      A  Yes.
2      Q  Can you explain in your words what you
3  think that means?
4      A  The name of the company is Mortgage
5  Electronic Registration System, which is a company  11:57:59
6  that holds interest in mortgages that are granted to
7  them by borrowers.
8      Q  And do you understand when we talk about
9  the MERS system that MERS is a nominee of the -- of
10  the beneficiary?                    11:58:17
11      A  Yes.
12      Q  So that MERS appears on the documents?
13      A  Well, I don't know.  In this case I see
14  that MERS claims to be the beneficiary.
15      Q  Let -- let me ask you this:  You said      11:58:25
16  you've litigated issues concerning MERS; is that
17  right?
18      A  Yes.
19      Q  Have you litigated any of those issues in
20  the last five years?                11:58:37
21      A  Yes.
22      Q  Anytime before the last five years?
23      A  No.
24      Q  And what kinds of issues have you
25  litigated?                          11:58:46

**Page 38**

1    A   You have one of them, Maine Supreme Court
2  case cited in my CV.  Issues related to MERS come up
3  frequently in many foreclosure cases.
4    Q   In the Maine Supreme Court case, can you
5  just summarize what the issue was in that case?   11:59:03
6    A   The main issue was whether MERS as a
7  nominee for lender had the right to conduct a named
8  judicial foreclosure in its own name.
9    Q   And what was the outcome on that issue?
10    A   That they did not have that right.    11:59:20
11    Q   Have you conducted any research or inquiry
12  as to whether that issue has ever been adjudicated
13  by a California Court of Appeals or Supreme Court?
14    A   I have not.
15    Q   Your CV lists the Attorneys Saving Homes   12:00:05
16  program?
17    A   Yes.
18    Q   What is that program?
19    A   It's a joint project of Pine Tree Legal
20  Assistance in the Maine Volunteer Lawyers Project   12:00:20
21  that trains private attorneys to handle residential
22  foreclosure cases and that receives and screens
23  homeowner referrals into the system and refers those
24  cases out to those private lawyers.
25    Q   And these would be judicial foreclosure   12:00:39

**Page 39**

1  cases in Maine --
2    A   Yes.
3    Q   -- in which the borrower is the defendant?
4    A   Yes.
5    Q   Your CV also states or maybe it's stated in   12:00:50
6  the body of your report that you act as a -- and
7  this is a quote:
8        "Consultant to lawyers nationally
9    regarding residential foreclosure defenses
10    and litigation practices."   12:01:01
11        My question is:  Have you ever acted as a
12  consultant to any California lawyers concerning
13  California nonjudicial foreclosures?
14        MR. STURDEVANT:  Do you mean before this
15  case?               12:01:17
16  BY MR. REIDY:
17    Q   Before this case.
18    A   I -- I am a participant in a number of
19  LISTSERVS, the one here in California that I
20  mentioned to you; several other national LISTSERVS.   12:01:36
21  Periodically I have spoken with and communicated
22  with California lawyers about their cases.
23    Q   Have you ever consulted on the documents or
24  steps required to conduct a nonjudicial foreclosure
25  in California?               12:02:00

**Page 40**

1    A   I don't believe so.
2    Q   Are you aware that there are both judicial
3  and nonjudicial foreclosure systems available for
4  residential mortgages in California?
5    A   I don't think I knew that.  I take that   12:02:29
6  back.  I did know that.
7    Q   But you're aware that California has a
8  nonjudicial foreclosure system for residential
9  mortgages?
10    A   Yes, I am.               12:02:45
11    Q   Have you ever spoken on any panels or
12  conferences that addressed California's nonjudicial
13  foreclosure system?
14    A   No.
15    Q   Do you consider yourself an expert on   12:02:56
16  California's nonjudicial foreclosure system?
17    A   No.
18    Q   Are you aware that there is a statutory
19  framework that regulates California's nonjudicial
20  foreclosure system?               12:03:12
21    A   Yes.
22    Q   When did you first become aware of that
23  statutory framework?
24    A   During the last five years I've seen it
25  discussed.               12:03:23

**Page 41**

1    Q   Have you ever reviewed those statutes?
2    A   Other than in the review that I did for
3  this case, I don't believe I did, and I don't -- no,
4  I don't believe I did.
5    Q   You just referenced a review that you did   12:03:43
6  for this case.
7    A   Right.
8    Q   What statutes did you review for this case?
9  You referenced a provision of the Civil Code
10  concerning notaries.               12:04:00
11    A   I think the only California statutes that I
12  reviewed in connection with this case were the ones
13  pertaining to notaries.
14    Q   So if I told you that California Civil Code
15  2924 and, you know, sequential statutes comprise the   12:04:13
16  nonjudicial foreclosure system in California, have
17  you ever reviewed those statutes before?
18    A   No.
19    Q   Are you aware that those statutes
20  constitute a comprehensive framework for nonjudicial   12:04:31
21  foreclosures in California?
22        MR. STURDEVANT:  Objection to the
23  characterization as comprehensive.
24        THE WITNESS:  I saw in the report of your
25  expert an explanation of that.               12:04:44

Veritext National Deposition & Litigation Services
866 299-5127

**Page 42**

BY MR. REIDY:

1  Q  Do you have any reason to dispute that
2  characterization?
3  A  No.
4  Q  Do you -- would you agree with the          12:05:00
5  statement that nonjudicial foreclosure is a private
6  procedure involving private parties in California?
7  A  I have no basis to agree or disagree with
8  that.
9  Q  Do you understand that a nonjudicial          12:05:16
10  foreclosure in California occurs pursuant to a power
11  of sale contained in a Deed of Trust?
12  A  Yes.
13  Q  Would you consider that Deed of Trust a
14  private contract between parties?          12:05:28
15  A  Well, it's recorded as far as I know, so I
16  don't know if you call that private.
17  Q  Would you -- do you have an opinion about
18  whether the California nonjudicial foreclosure
19  process constitutes a state action or a private          12:05:53
20  action?
21  MR. STURDEVANT:  Objection.  Calls for a
22  legal conclusion.
23  THE WITNESS:  There's some controversy
24  around that, and I don't have an opinion on that.          12:06:05

**Page 43**

BY MR. REIDY:

1  Q  Do you believe that a borrower in a
2  California nonjudicial foreclosure is protected by
3  the due process limits of the federal or state
4  constitutions?          12:06:18
5  A  Possibly.
6  MR. STURDEVANT:  A good time to take a
7  five-minute break, Counsel?
8  MR. REIDY:  Yes.
9  VIDEO OPERATOR:  Going off the record.  The  12:06:32
10  time is 12:06.
11  (Lunch recess.)
12  VIDEO OPERATOR:  Back on the record.  The
13  time is 1:03.  Please continue.
14  MR. REIDY:  We're going to mark a few          01:03:48
15  documents as exhibits.
16  Actually, can we go off the record for a
17  second?
18  VIDEO OPERATOR:  Off the record.  The time
19  is 1:03.          01:04:04
20  (Deposition Exhibit 405 marked by the court
21  reporter.)
22  (Deposition Exhibit 406 marked by the court
23  reporter.)
24  (Deposition Exhibit 407 marked  01:06:08

**Page 44**

1  reporter.)
2  (Deposition Exhibit 408 marked by the court
3  reporter.)
4  VIDEO OPERATOR:  Back on the record.  The
5  time is 1:07.  Please continue.          01:07:04
6  BY MR. REIDY:
7  Q  Mr. Cox, can you take a look at the
8  document that's been marked Exhibit 405.
9  A  Yes.
10  Q  This is your deposition notice for today.  01:07:15
11  A  Yes.
12  Q  Have you reviewed this before today?
13  A  Yes.
14  Q  The document requests -- the notice
15  requests a series of documents and document requests  01:07:24
16  1 through 11.
17  A  Yes.
18  Q  I'll note for the record that your counsel
19  served some objections to those requests, but I just
20  want to ask you if you reviewed those before today.  01:07:36
21  MR. STURDEVANT:  Let me just state that I'm
22  not his counsel.  I'm counsel for the plaintiff in
23  the case.
24  BY MR. REIDY:
25  Q  Okay.  Counsel for the plaintiff submitted  01:07:45

**Page 45**

1  some objections to the notice.
2  A  Yes.  Was that a question to me?  I
3  understand he said he did.  I haven't seen those.
4  Q  Okay.  I'm asking you if you've reviewed
5  those document requests.          01:07:57
6  A  I have.
7  Q  And with the exception of draft reports and
8  communications with plaintiff's counsel concerning
9  the drafts, have you provided copies of all the
10  documents that you had responsive to those requests?  01:08:10
11  A  I relied upon plaintiff's counsel to
12  produce everything that went back and forth between
13  us.
14  Q  Okay.  You mentioned earlier that you don't
15  have an engagement letter that describes your          01:08:20
16  services for the plaintiff?
17  A  I do not.
18  Q  Do you have a compensation arrangement with
19  plaintiff's counsel?
20  A  That I would be paid my hourly rate of $350  01:08:29
21  an hour.
22  Q  Did you provide them with any parameters
23  around how or when you would bill plaintiffs for
24  the --
25  A  No.          01:08:50

Pages 42 to 45

1    Q   Have you billed them yet?
2    A   I have not.
3    Q   Was your intention to provide one bill at
4    the end of the case?
5    A   I haven't even thought that far ahead.     01:08:57
6    Q   Are you providing any portions of your
7    services to the plaintiff pro bono?
8    A   No.
9    Q   Can you take a look at the document that's
10   been marked 406.  This is a document that you     01:09:17
11   brought with you and produced today.  And my
12   question for you is:  What -- what is this document,
13   as far as you understand, and where did you get it?
14   A   Well, the front of it says that it's a
15   Declaration of Mortgage Electronic Registration     01:09:46
16   Systems.  And I can see, and I don't know why, it's
17   got Pacer numbers, it looks like to me at the top,
18   so I suspect that I downloaded it off the Pacer
19   system in some litigation matter involving MERS.  I
20   don't know what case it was at this point.     01:10:03
21   Q   But as far as you know, this corporate
22   resolution was not submitted in connection with this
23   case?
24   A   That's correct.
25   Q   Do you have any information about whether     01:10:10

Page 46

1    this corporate resolution related to ReconTrust in
2    any way?
3    A   There was extensive testimony about a MERS
4    corporate resolution to ReconTrust by the 30(b)(6)
5    witness for MERS.     01:10:34
6    Q   Are you talking about testimony in this
7    case?
8    A   Yes.
9    Q   Did you review that corporate resolution?
10   A   I did not.     01:10:42
11   Q   Do you know whether it is the same as this
12   one in substance, the language?
13   A   I've seen many, many MERS corporate
14   resolutions that are most -- the only variation I've
15   seen is when they've changed the form.  I think     01:10:54
16   was in 2009 or 2010.  And Hultman stopped signing
17   them.
18   Q   Did you rely on this document in any way to
19   form the opinions expressed in your report?
20   A   I relied upon my knowledge about the MERS     01:11:25
21   manner of operation, including my knowledge about
22   this form.
23   Q   And how would you describe your knowledge
24   of the MERS operation?
25   A   Well, I was involved as counsel for a party     01:11:48

Page 47

1    who litigated against them to the Maine Supreme
2    Court.  I have been involved in a number of cases
3    where MERS has been involved.  I've spoken at
4    seminars about MERS operations.  I've tried to make
5    myself as knowledgeable and conversant with MERS as     01:12:1
6    I'm able to do.
7    Q   Can you take a look at the document that's
8    been marked Exhibit 407?
9    A   Yes.
10   Q   And this is a document that you brought     01:12:31
11   with you today?
12   A   I think I might have sent it out in the
13   last few days.
14   Q   Your counsel -- counsel for the plaintiff
15   provided this to us today.     01:12:41
16   A   Yes.
17   Q   Can you just tell me what this is?
18   MR. STURDEVANT:  Let me just state, Mr.
19   Reidy, that I provided you with a copy of what's
20   been marked as Exhibit 407 this morning.  I think it     01:12:49
21   may have been produced previously, but I wasn't sure
22   about that, so I brought it to make sure that you
23   have it.
24   MR. REIDY:  Okay.
25   BY MR. REIDY:     01:13:02

Page 48

1    Q   Can you tell us what it is?  Did you author
2    this document?
3    A   Yes.
4    Q   And just briefly describe for us what this
5    is.     01:13:09
6    A   It's a memorandum to a uniform law study --
7    law -- to a Uniform Law Commission study committee
8    on mortgage foreclosure procedures that I wrote on
9    December 7, 2011.
10   Q   And were you invited to submit this     01:13:23
11   memorandum?
12   A   I was participating in the study
13   committee's work as an observer.
14   Q   It references on the first line of the
15   introduction the JEBURPA, all caps, letter to the     01:13:35
16   ULC Committee.  What does that refer to?
17   A   I don't remember what the acronym stands
18   for.  It's another Uniform Law Commission committee
19   dealing with real estate law to my memory.
20   Q   And lastly, just to authenticate these, can     01:14:06
21   you take a look at the document that's been marked
22   as Exhibit 408?
23   A   Yes.
24   Q   Can you confirm that that's a copy of the
25   report that you prepared for this case?     01:14:14

Page 49

Pages  46 to 49

1    A  Yes. It looks like it.
2    Q  Do you understand that in California
3  nonjudicial foreclosures, the mortgages at issue
4  involve Deeds of Trust --
5    A  Yes.                          01:14:52
6    Q  -- as opposed to mortgages as we talked
7  about?
8    A  Yes.
9    Q  Do you have an understanding of who the
10  parties are to a Deed of Trust?          01:14:59
11    A  I think so.
12    Q  Can you explain your understanding of that?
13    A  There's the lender who lent the money to
14  the borrower; there's the borrower who borrowed the
15  money; and there's a trustee who has involvement in  01:15:13
16  the sale of the property and in the handling of
17  notices of default, those kinds of activities.
18    Q  And what's that knowledge based on?
19    A  I don't know how to describe it other than
20  what I've learned over the last five years following  01:15:32
21  the LISTSERVS I spoke about this morning, reading
22  the materials in this case.
23    Q  Do you agree that trustees under a
24  California Deed of Trust have a clearly defined and
25  limited role?                        01:15:53

Page 50

1    A  That is my understanding.
2    Q  Would you describe that role as purely
3  ministerial?
4    A  I don't think I have the capacity to
5  describe it that way.                 01:16:10
6    Q  What do you mean?
7    A  They're obligated to do what the
8  instruments and the statutes require them to do.  I
9  guess ministerial is your characterization of it.
10    Q  Would you agree that a foreclosure trustee  01:16:24
11  in California is not a true trustee?
12    A  Not a -- it is not a trustee in the sense
13  of a trustee in a bank trust department.  I agree
14  with that.
15    Q  Do you agree that a foreclosure trustee has  01:16:38
16  no fiduciary obligations?
17    A  I don't have a basis to agree or disagree
18  with that.
19    Q  So you don't know?
20    A  I do not know.                 01:16:51
21    Q  Are you aware of the steps that need to be
22  taken for a judicial foreclosure -- I'm sorry, a
23  nonjudicial foreclosure to occur in California?
24    A  I'm aware of some of the steps.
25    Q  Can you articulate your understanding of  01:17:25

Page 51

1  the steps?
2    A  Well, I'm aware that a Notice of Default is
3  required to be sent to the borrower and I believe
4  recorded.  And then the matter proceeds to a trustee
5  sale.                               01:17:46
6    Q  Do you have an understanding of whether the
7  contents of the Notice of Default are governed by
8  statute?
9    A  I do not.
10    Q  Do you have any understanding of the rules  01:18:01
11  governing how foreclosure trustees are compensated
12  in California?
13    A  No.
14    Q  Do you have an opinion about who has
15  authority to issue a Notice of Default in a      01:18:19
16  California nonjudicial foreclosure sale?
17    A  No.
18    Q  I'm going to hand you what's been
19  previously marked as Exhibit 2 in the deposition of
20  Tamburri and that she identified as the Deed of    01:18:55
21  Trust on her mortgage loan, the loan that's at issue
22  in this case.
23        (Previously marked Exhibit 2 was presented
24        to the witness.)
25  BY MR. REIDY:                        01:19:07

Page 52

1    Q  Do you recognize that document?
2    A  I've seen it.
3    Q  Did you review this in preparing your
4  report in this case?
5    A  Yes.                          01:19:20
6    Q  Do you have an opinion about whether a
7  foreclosure trustee in California is protected from
8  liability in connection with the nonjudicial
9  foreclosure?
10        MR. STURDEVANT:  Could I have the question  01:19:58
11  read back, please?
12        (Record read as follows:
13        "QUESTION:  Do you have an opinion
14        about whether a foreclosure trustee in
15        California is protected from liability in  01:20:11
16        connection with the nonjudicial
17        foreclosure?")
18        THE WITNESS:  No.
19  BY MR. REIDY:
20    Q  You don't know?                 01:20:14
21    A  I don't have an opinion about it.
22    Q  Do you have an opinion about whether a
23  trustee in a California nonjudicial foreclosure is
24  entitled to rely in good faith on representations
25  made to the trustee by the beneficiary or the      01:20:34

Page 53

Pages  50 to 53

Veritext National Deposition & Litigation Services
866 299-5127

**Page 54**

1  servicer?
2      A  No.
3      Q  Do you have an understanding when a trustee
4  prepares a Notice of Default in a California
5  nonjudicial foreclosure, do you have an          01:20:50
6  understanding about where the trustee gets the
7  information that goes into that Notice of Default?
8      A  My understanding is the information comes
9  from the lender.
10     Q  Do you have an opinion as to whether a      01:21:11
11 foreclosure trustee in a California nonjudicial
12 foreclosure has an independent obligation to
13 investigate or verify the information provided by
14 the lender?
15     A  No.  I don't have -- I do not have an      01:21:25
16 opinion.
17     Q  Do you believe that a party initiating
18 foreclosure in California needs to be in possession
19 of the original note?
20     A  I recall seeing case law suggesting that -- 01:21:41
21 that the party need not be in possession of the
22 note.
23     Q  Need not be?
24     A  Yes.
25     Q  Do you intend to offer any opinion on      01:21:58

**Page 55**

1  securitization of mortgage obligations in this case?
2      A  No.
3      Q  Do you consider yourself an expert on
4  securitization?
5      A  No.                                        01:22:13
6      Q  Do you consider yourself an expert on
7  robo-signing?
8      A  I don't even know what that word means.
9      Q  Can you turn your attention to Exhibit 408,
10 That's your report.                                01:22:49
11     A  Yes.
12     Q  On page 1, halfway down the page, can you
13 read the paragraph that starts with the words "I
14 helped"?
15     A  I said:                                    01:23:04
16        "I helped to expose the foreclosure
17 'robo-signing' scandal with the deposition
18 that I took of GMAC Mortgage's 'limited
19 signing officer,' Jeffery Stephan, in 2010,
20 and my subsequent successful efforts to        01:23:16
21 force GMAC to halt its improper foreclosure
22 practices."
23     Q  Did you draft this section of the report?
24     A  Yes.
25     Q  And when you used the term "robo-signing"  01:23:26

**Page 56**

1  in the report, what did you mean?
2      A  It's -- the word's in quotes because it's
3  not my word.  It's a word that's been coined.  My --
4  I don't use the word generally.  What I refer to is
5  people who sign affidavits and other documents that  01:23:45
6  are either false, where they have no knowledge of
7  the contents of those documents, or the
8  notarizations are false.
9      Q  And do any of those circumstances apply in
10 your view to the mortgage, the foreclosure documents  01:24:21
11 of Ms. Tamburri in this case?
12     A  Yes.
13     Q  And are you referring to the substitution
14 and assignment?
15     A  Yes.                                       01:24:31
16     Q  Are you referring to any other documents?
17     A  No.
18     Q  Just that one?
19     A  Yes.
20     Q  So as far as you know, the Notice of       01:24:36
21 Default that was issued is not improper in your
22 opinion?
23     A  I didn't make an evaluation of it.
24     Q  Did you make an evaluation as to whether
25 ReconTrust was authorized to issue that Notice of    01:24:46

**Page 57**

1  Default?
2      A  No.
3      Q  Did you make an evaluation of the order in
4  which the documents were signed?  And the documents
5  I'm referring to are, one, the Notice of Default;   01:24:57
6  and two, the substitution and assignment?
7      A  No.
8      Q  You have no opinion about the order in
9  which those documents were signed?
10     A  I did not form an opinion about that.      01:25:06
11     Q  So if I told you that the Notice of Default
12 was signed first and the sub-assignment was signed
13 second, you would have no basis to disagree with
14 that statement?
15     A  The facts are what the facts are.  I don't  01:25:17
16 know what order they were signed in.
17     Q  Okay.  Do you believe that a Notice of
18 Default or a substitution and assignment in
19 California is required to be supported by competent
20 and reliable evidence?                             01:25:36
21     A  Would you ask that again?
22     Q  Do you believe that a Notice of Default or
23 a substitution and assignment in California is
24 required to be supported by competent and reliable
25 evidence?                                          01:25:55

Pages 54 to 57

1      A   I believe that there has to be a basis for
2   the Substitution of Trustee and Assignment.
3      Q   Do you draw any distinction between that
4   basis and the phrase competent and reliable evidence
5   or competent evidence?                    01:26:29
6      A   I think the phrase competent and reliable
7   evidence as used in my report is referring to my
8   view that somebody signing a document on behalf of a
9   corporation has got to have a valid basis to believe
10  that he or she has the right to act on behalf of the 01:26:56
11  corporation and the act is an appropriate one for
12  the corporation.
13     Q   Can you look at paragraph 8 of your report?
14  Is that the provision you're --
15     A   Yes.                            01:27:22
16     Q   -- referring to?
17     A   Yes.
18     Q   So does that go to the issue of whether Ms.
19  Sevillano in this case was authorized to sign that
20  document on behalf of MERS?  Is that --      01:27:35
21          MR. STURDEVANT:  Objection.  Vague and
22  ambiguous.  Does what go?
23          BY MR. REIDY:
24     Q   Do you understand the question?
25     A   I don't think I do.                01:27:43

                                            Page 58

1      Q   Okay.  Your -- your previous testimony was
2   that the phrase competent and reliable evidence as
3   used in your report means that somebody signing on
4   behalf of a corporation has to have some valid basis
5   to believe they're authorized to sign for that   01:27:59
6   corporation.  And I'm asking you if that's what
7   paragraph 8 in your report refers to, that issue?
8      A   In part.
9      Q   What else does paragraph 8 refer to?
10     A   Well, in my view, the Sevillano document   01:28:30
11  was not accurate in suggesting that MERS in its own
12  name had the power to substitute a trustee or to
13  assign the note.  That wasn't accurate in its
14  implication that MERS actually had any interest in
15  the note that it could assign.                01:28:51
16          MR. REIDY:  Let's go off the record for a
17  second.
18          VIDEO OPERATOR:  Going off the record.  The
19  time is 1:29.
20          (Discussion off the record.)          01:32:53
21          (Deposition Exhibit 409 marked by the court
22  reporter.)
23          VIDEO OPERATOR:  Back on the record.  The
24  time is 1:33.  Please continue.
25          BY MR. REIDY:                        01:33:10

                                            Page 59

1      Q   Mr. Cox, we've handed you a number of
2   documents, so let's just do some housekeeping.  Do
3   you have in front of you the document that's been
4   marked Exhibit 409?  It's a California --
5      A   I do.                            01:33:21
6      Q   -- statute.
7      A   Yes.
8      Q   Can you confirm that that's the statute
9   that you meant to refer to in your report?
10     A   Yes.                            01:33:30
11          MR. STURDEVANT:  Take a moment and look at
12  it, because the document that they've marked is a
13  statute that became effective January 1, 2011.
14          THE WITNESS:  Okay.
15          Are you representing, Mr. Reidy, that this 01:33:41
16  is the current version of the statute without
17  amendments?
18          BY MR. REIDY:
19     Q   I believe it is.  I -- I hadn't noticed
20  that issue before.  I don't know if there was a   01:33:58
21  different version in effect prior to 2011.
22          But let me ask you, Mr. Cox, do you recall
23  what the source was for the version of 1185 that you
24  reviewed?  And I'm referring to Civil Code Section
25  1185.                                01:34:15

                                            Page 60

1      A   My memory is that I looked at it on Lexis.
2      Q   Do you believe you were looking at the
3   version that's in effect today?
4      A   I think so.
5      Q   I presume that, like me, you don't know   01:34:26
6   whether this version was in effect prior to
7   January 1st, 2011?
8      A   I don't.
9      Q   Okay.
10          In your report on page 2, paragraph 2, you 01:34:44
11  discuss the Assignment of Deed of Trust and
12  Substitution of Trustee.  And I've been referring to
13  that document as the substitution and assignment or
14  the substitution.
15     A   Okay.                            01:35:01
16     Q   Do you understand that that's the document
17  that I'm referring to?
18     A   Yes.
19     Q   You state that in paragraph 2 that the date
20  on the document is June 8 and the notarization date 01:35:08
21  is June 10th, but the document was not recorded
22  until June 21st, 2010.  I'm reading from paragraph
23  2.
24          I've handed you a copy of what was
25  previously marked as Tamburri Exhibit 28.  Can you 01:35:25

                                            Page 61

**Page 62**

1　take a look at that and confirm that that's the
2　substitution you were looking at?
3　　　(Previously marked Exhibit 28 was presented
4　　　to the witness.)
5　　　THE WITNESS: It is.　　　01:35:39
6　BY MR. REIDY:
7　　Q　Do you have an opinion about when that
8　document was signed?
9　　A　No.
10　　Q　Have you reviewed the testimony of Tina　01:35:43
11　Sevillano stating that she signed it on June 10,
12　2010?
13　　A　I think my memory of her testimony is
14　different.
15　　Q　What's your memory of her testimony?　01:35:57
16　　A　That she didn't have a specific memory of
17　signing this document.
18　　Q　Do you have any reason to believe that she
19　did not sign it on June 10?
20　　A　Yes.　　　01:36:14
21　　Q　And what's the -- what's your belief?
22　　A　It's dated June 8th.
23　　Q　Have you reviewed the testimony in this
24　case that the document was printed on June 8th but
25　signed on June 10th?　　　01:36:26

**Page 63**

1　　A　I've seen that testimony.
2　　Q　Do you have any reason to believe that that
3　testimony is not true?
4　　A　To the extent that the person signing it
5　says she doesn't remember signing it, that's what　01:36:40
6　would cause me to doubt that.
7　　Q　Independent of her memory of signing it,
8　I'm focused on the testimony that the foreclosure
9　documents were printed on June 10, but that the
10　sub-assignment was executed on June -- I'm sorry,　01:36:58
11　printed on June 8th but signed on June 10. Are you
12　aware of that testimony?
13　　A　I don't think I'm understanding. What I'm
14　seeing is a document that is dated June 8. It has a
15　signature on it. There's a notary certificate that　01:37:19
16　has a date of June 10th on it, but there's nothing
17　there that tells me that the person who signed this
18　signed this on June 10th.
19　　Q　Are you aware of the testimony that the
20　June 8th date appears on the document because that's　01:37:37
21　when the documents were printed?
22　　A　I'm aware of that.
23　　　MR. STURDEVANT: Objection. Asked and
24　answered.
25　　　THE WITNESS: I'm aware of that testimony.　01:37:44

**Page 64**

1　BY MR. REIDY:
2　　Q　Do you have any reason to believe that that
3　testimony is not true?
4　　A　No.
5　　Q　So according to the testimony, the document　01:37:54
6　was printed on June 8th and signed sometime after
7　that?
8　　　MR. STURDEVANT: Objection. Which
9　testimony are you referring to, Counsel?
10　BY MR. REIDY:　　　01:38:05
11　　Q　Is that your understanding of the
12　testimony?
13　　　MR. STURDEVANT: Objection. Which
14　testimony are you referring to?
15　　　MR. REIDY: The testimony in the case.　01:38:08
16　　　MR. STURDEVANT: Which testimony?
17　　　MR. REIDY: The witness referred to
18　testimony that he has reviewed of Tina Sevillano.
19　　　MR. STURDEVANT: Well, I believe that
20　-- I believe that your question is not referring　01:38:16
21　specifically to the testimony of Ms. Sevillano.
22　　　MR. STURDEVANT: Okay.
23　　　MR. STURDEVANT: If it is, I think you
24　should make the record clear and say so.
25　　　MR. REIDY: And you're entitled to state　01:38:25

**Page 65**

1　your objections for the record. I'm not going to
2　get into speaking objections.
3　　　THE WITNESS: I think you better ask it
4　again.
5　BY MR. REIDY:　　　01:38:35
6　　Q　I'm trying to get an understanding of what
7　you're prepared to express an opinion about and what
8　you're not expressing an opinion about. So let me
9　just break this down into two pieces. The first
10　piece is whether you have any reason to dispute that　01:38:46
11　the document was printed on June 8th and signed on
12　June 10?
13　　　MR. STURDEVANT: Objection. That question
14　has been asked and answered.
15　　　MR. REIDY: Okay.　　　01:38:58
16　BY MR. REIDY:
17　　Q　The second piece -- and I believe you said
18　you didn't have any basis to disagree with that; is
19　that right?
20　　　MR. STURDEVANT: Objection. He said that　01:39:05
21　there's no information on this document that
22　indicates when it was printed.
23　　　MR. REIDY: Jim, I don't need your
24　testimony. I don't need your testimony. You can
25　state your objections for the record, but I'm not　01:39:14

Veritext National Deposition & Litigation Services
866 299-5127

1   going to argue --
2        MR. STURDEVANT:  You are misstating his
3   prior testimony.
4        MR. REIDY:  Then the objection is misstates
5   the prior testimony.  The witness can clarify.  So   01:39:21
6   we're not going to do this.
7   BY MR. REIDY:
8        Q   Go ahead.
9        A   I saw testimony stating that the document
10  was printed on June 8th by Ms. -- I think that was   01:39:34
11  Ms. Sevillano's testimony, although I don't think
12  she knew who printed it or when it was printed.  She
13  didn't say that she did.  And I see a notary
14  certificate on this document that dated
15  June 10th, and I see testimony from the notary       01:39:51
16  saying that that date isn't right.
17       Q   And what testimony are you referring to?
18       A   The testimony that I was provided this
19  morning from I believe that notary's testimony last
20  week.                                                01:40:08
21       Q   Did you bring a copy of that with you?
22       A   We did.  We had it here on the table
23  earlier this morning.
24       Q   Can you take a look at the document you're
25  holding and tell me where in that testimony the      01:40:26

Page 66

1   the first time this morning, that the witness
2   appeared to be stating that his notary certificate
3   was signed by him on June 11th rather than
4   June 10th.
5   BY MR. REIDY:                                        01:42:14
6        Q   So is it your testimony that based on your
7   review, that there's some uncertainty as to whether
8   the document was signed on June 10th or June 11th;
9   is that correct?
10       MR. STURDEVANT:  Objection.  Vague and           01:42:23
11  ambiguous as to the phrase "some uncertainty."  It's
12  vague as to time.
13       THE WITNESS:  And I'm sorry, I'm not clear.
14  Whose signature are you talking about?
15  BY MR. REIDY:                                        01:42:39
16       Q   I'm talking about the date on which the
17  notary acknowledged Tina Sevillano's signature.  Is
18  it your testimony that that may have occurred on
19  June 11th as opposed to June 10th?
20       A   I -- I have no basis to know what that       01:42:52
21  gentleman did.  All I can do is read his testimony
22  like you can.
23       Q   You testified before that your
24  understanding was that Tina Sevillano didn't know
25  who printed the document and didn't know when it was 01:43:17

Page 68

1   notary states that he did not execute the signature
2   on June 10?
3        MR. STURDEVANT:  Why don't we take a couple
4   of minutes for Mr. Cox to review it because we only
5   got it this morning.                                 01:40:42
6        MR. REIDY:  Yes.
7        MS. FROHLICH:  We can stay on the record.
8        MR. STURDEVANT:  Excuse me.
9        MS. FROHLICH:  I don't need a break or
10  anything.  I was just going to say I'm fine with     01:40:49
11  staying on the record.
12       THE WITNESS:  I'm looking at page -- I
13  guess it's page 22.  I'm confused where the page
14  numbers are.  Page -- I'm looking at page 21, line
15  25.                                                  01:40:59
16       MR. STURDEVANT:  All right.  Just take a
17  moment to read it to yourself so that you can answer
18  Mr. Reidy's question.
19       THE WITNESS:  Okay.  I take the question
20  and answers -- it looks like the question and        01:41:24
21  answers begin on the bottom of page 20 and carry
22  through to page 23, a series of questions and
23  answers about when the various entries in the
24  notary's journal were made.  And it was my
25  understanding from his testimony, having seen it for 01:41:40

Page 67

1   printed.  Is that an accurate characterization of
2   your testimony?
3        A   Her testimony is going to have to speak for
4   itself.  My reading of it was that she was
5   interpreting the date of June 8th to tell her that   01:43:37
6   somebody else generated the document on June 8th.
7        Q   And that it was signed by her subsequently
8   on June 10th?
9        A   That's not what I understood her testimony
10  to be.  I understood her testimony to be that she    01:43:50
11  didn't remember signing this document.
12       Q   And that based on the testimony of Mr.
13  Afzal, you believe that she may have signed it on
14  June 10th or June 11th, that the notary record is
15  unclear?                                             01:44:08
16       MR. STURDEVANT:  Objection.  Vague and
17  ambiguous.
18       THE WITNESS:  I don't understand that Mr.
19  Afzal's testimony says -- states when she signed the
20  document.                                            01:44:18
21  BY MR. REIDY:
22       Q   Mr. Cox, the notary stamp states when she
23  signed the document.
24       A   I disagree with you.
25       Q   So you disagree that the stamp on the       01:44:31

Page 69

Pages 66 to 69

```
 1    document in front of you states June 10th?
 2         MR. STURDEVANT:  Which document are you
 3    talking about, Mr. Reidy?
 4         MR. REIDY:  We've been talking about the
 5    Substitution of Assignment.              01:44:41
 6         MR. STURDEVANT:  Well, you've been talking
 7    about a number of documents, so I just wanted to be
 8    clear.
 9         THE WITNESS:  The notary certificate does
10    not state what date Ms. Sevillano signed the     01:44:48
11    document.
12    BY MR. REIDY:
13         Q   Can you look at the document that's been
14    marked as Exhibit 409?  That's the statute.
15         A   Yes.                           01:45:12
16         Q   Is it your opinion that the acknowledgment
17    on the sub-assignment does not comply with this
18    statute?
19         A   I don't know whether Ms. Sevillano appeared
20    before the notary and acknowledged the document.  I  01:45:33
21    think there's significant doubt whether she did.
22         Q   Do you have any doubt as to whether Mr.
23    Afzal knew Tina Sevillano?
24         A   I have no doubt about that.  He says he
25    did.                                    01:45:53
                                              Page 70
```

```
 1         Q   Are you prepared to express an opinion as
 2    part of your designation in this case as to whether
 3    Mr. Afzal's conduct complied or did not comply with
 4    Civil Code Section 1185?
 5         A   To the extent that the facts show that Ms.  01:46:23
 6    Sevillano did not appear before him to acknowledge
 7    the document, then I don't believe he complied with
 8    the statute.
 9         Q   Do you believe the facts show that?
10         A   The facts are not clear about that.    01:46:33
11         Q   So are you prepared to express an opinion
12    that the conduct of Mr. Afzal in connection with the
13    substitution and assignment did not comply with
14    1185?
15         A   If the facts show that she did not appear  01:46:48
16    before him, then he didn't comply.
17         Q   Mr. Cox, you've reviewed the evidence and
18    issued a report.  When we talked earlier you said
19    that you intended in your report to cite Section
20    Civil Code 1185.  I'm asking you, based on the    01:47:04
21    record that you've reviewed up to today, whether
22    you're prepared to express an opinion on that issue
23    today?
24         A   I have no way of expressing it beyond that
25    which I've already expressed.           01:47:17
                                              Page 71
```

```
 1         Q   Can you turn to page 3 of your report,
 2    paragraph 3.  In the middle of the paragraph there's
 3    a sentence that begins "It appears."  Do you see
 4    that?
 5         A   Yes.                           01:48:04
 6         Q   Could you read that for the record, please?
 7         A   "It appears that Mr. Afzal has
 8    willfully kept public records from review,
 9    presumably due to the fact that his many
10    notary journals contain other evidence of     01:48:14
11    similar unlawful acts."
12         Q   When you use the phrase "presumably due to
13    the fact that his many notary journals contain other
14    evidence of similar unlawful acts," do you know why
15    Mr. Afzal kept his notary journals from the public  01:48:33
16    record?
17         A   I do not know beyond whatever testimony
18    exists in the case.
19         Q   So when you say that it's presumably based
20    on evidence of similar unlawful acts, would you     01:48:45
21    agree that that's speculation?
22         A   It's a presumption, yes.
23         Q   Do you consider yourself a handwriting
24    expert?
25         A   No.                            01:49:07
                                              Page 72
```

```
 1         Q   Do you intend to give testimony in this
 2    case on handwriting issues?
 3         A   I do not intend to offer expert testimony
 4    on handwriting analysis.
 5         Q   The next sentence in your report states    01:49:25
 6    that Mr. Afzal's signatures appear to vary, you say
 7    "vary dramatically."
 8         A   Yes.
 9         Q   Do you have any experience or
10    qualifications as a handwriting analyst to testify   01:49:42
11    about handwriting issues as they pertain to Mr.
12    Afzal's signature?
13         A   I cannot offer expert testimony on
14    handwriting analysis.  When I look at his first
15    application to be a notary and I look at his    01:49:56
16    purported signature on Exhibit 28, they vary
17    dramatically.
18         Q   Are you basing any of the opinions in this
19    case on that variation?
20         A   It appears -- I think that variation is    01:50:26
21    part of a pattern upon which my opinions are based.
22         Q   And what's the pattern?
23         A   The pattern of very sloppy conduct at
24    ReconTrust dealing with the execution of documents
25    such as this and their notarizations.   01:50:43
                                              Page 73
```

Veritext National Deposition & Litigation Services
866 299-5127

**Page 74**

```
 1      Q   Okay.  So the issue that we're focused on,
 2   though, is not that -- well, let me ask you:  Are
 3   you focused on the question of whether there was
 4   somebody else signing for Mr. Afzal?
 5      A   I have no basis to believe that.        01:50:56
 6      Q   Okay.  Look at -- look at paragraph 4, if
 7   you will, please.  Can you read the first two
 8   sentences of that paragraph, please?
 9      A   Would you pronounce her name for me so I
10   don't abuse it for the rest of the deposition?    01:51:45
11      Q   It's Sevillano.
12      A   "Ms. Sevillano testified at her
13   deposition that she had no knowledge
14   regarding the factual information presented
15   in the Assignment.  For example, Ms.          01:51:56
16   Sevillano testified that she had never seen
17   Ms. Tamburri's Promissory Note and Deed of
18   Trust at issue in this case, but yet she
19   was signing a document that purported to
20   transfer the beneficial interest in both    01:52:10
21   documents."
22      Q   Do you believe that Ms. Sevillano was
23   required to review the Note and Deed of Trust before
24   signing a document that purported to transfer the
25   beneficial interest?                 01:52:30
```

**Page 75**

```
 1      A   Restate the question again, please.
 2      Q   Do you believe that Ms. Sevillano was
 3   required to review the Note and Deed of Trust before
 4   signing a document that purported to transfer the
 5   beneficial interest?                 01:52:46
 6      A   No.
 7      Q   Do you believe that Ms. Sevillano had to
 8   have knowledge of whether MERS received anything of
 9   value from U.S. Bank for the assignment?
10      A   Yes.                     01:53:26
11      Q   And what's the basis on which you make that
12   assessment?  What's the basis for your opinion?
13      A   Ms. Sevillano is purporting to act for MERS
14   and signing a document containing statements made on
15   behalf of MERS.  And it's my opinion that she has a  01:53:48
16   duty to have a basis to believe the truth of those
17   statements.
18      Q   What's the source of that duty in your
19   opinion?
20      A   She's an officer of MERS.  She owes a duty  01:54:09
21   to MERS to do that.
22      Q   Do you have any knowledge of whether MERS
23   is challenging this assignment?
24      A   I do not.
25      Q   Is it your opinion that the assignment  01:54:28
```

**Page 76**

```
 1   assigned interest in both the Note and the Deed of
 2   Trust?
 3      A   The document says that the undersigned
 4   hereby grants and assigns and conveys to U.S. Bank
 5   all beneficial interest under that certain Deed of  01:54:44
 6   Trust together with a note.
 7      Q   Do you believe that Ms. Sevillano was
 8   prevented from signing as an assistant vice
 9   president of MERS by virtue of the fact that she
10   hadn't spoken to anyone else at MERS?        01:55:15
11      A   I don't -- I don't understand the question
12   the way you phrased it.
13      Q   Your report says in paragraph 5 that:
14      "Ms. Sevillano...testified that she
15   has never spoken to any other employee or  01:55:26
16   officer of MERS."
17      Do you think that she was required to do
18   that in order to be designated an Assistant Vice
19   President of MERS?
20      MR. STURDEVANT:  Objection to the -- to the  01:55:40
21   characterization of paragraph 5.  You quoted only a
22   single clause.
23      THE WITNESS:  I think you have to state it
24   again.  I'm sorry.
25   BY MR. REIDY:                    01:55:56
```

**Page 77**

```
 1      Q   Well, I'm looking at the first sentence in
 2   paragraph 5.  Do you see that?
 3      A   Yes.
 4      Q   And it states that:
 5      "Ms. Sevillano, who is identified as    01:56:06
 6   an Assistant Vice President of MERS," that
 7   she "testified that she has never spoken to
 8   any other employee or officer of MERS, yet
 9   she was given the prominent title of
10   Assistant Vice President of MERS and the    01:56:21
11   significant authority to transfer security
12   interests in residential real property
13   loans."
14      MR. STURDEVANT:  Objection, Counsel.  You
15   have misquoted the provision you wish to ask a    01:56:31
16   question about several times
17   BY MR. REIDY:
18      Q   Looking at the first sentence of paragraph
19   5, what's the significance in your mind of the fact
20   that Ms. Sevillano "has never spoken to any other  01:56:50
21   employee or officer of MERS"?
22      A   I think it's -- in my opinion, it's
23   inappropriate for a person to act as an officer of a
24   corporation about which that person has no knowledge
25   and no specific authority.            01:57:05
```

Pages  74  to  77

Veritext National Deposition & Litigation Services
866 299-5127

1  Q  Inappropriate according to what standard?
2  A  Corporate law standards.
3  Q  In California?
4  A  I can't speak to specific California case
5  law. As a matter of general corporate law, I don't  01:57:17
6  think it's appropriate for somebody to purport to
7  act as an officer of a corporation about which that
8  person knows nothing and has no knowledge of what
9  the scope of his or her ability to act is.
10  Q  Is it your understanding that Ms. Sevillano  01:57:33
11  testified that she had no knowledge of her scope of
12  what she was authorized to do?
13  A  My memory of her testimony is that when she
14  began working for ReconTrust, she was told by some
15  person at Recon that she could sign documents for  01:57:48
16  MERS, but that she had not seen any document that
17  gave her that authority. My memory is also that she
18  testified that at some later point she saw a
19  document from MERS that had her listed as a signing
20  officer. But I don't recall that she testified that  01:58:07
21  she had any knowledge of the content of that
22  document.
23  Q  Do you believe the substitution and
24  assignment was necessary to initiate foreclosure
25  proceedings against Ms. Tamburri?  01:58:20

Page 78

1  A  I don't know that.
2  Q  We've been talking about the document to
3  the extent that it purports to assign a beneficial
4  interest. The document also purports to substitute
5  ReconTrust as trustee. Would you agree with that  01:58:57
6  assessment?
7  A  Yes.
8  Q  That characterization?
9  A  I'm sorry, say it again?
10  Q  There are two aspects to the document.  01:59:07
11  A  Right, right.
12  Q  And we've been talking about the assignment
13  aspect.
14  A  Yes, yes.
15  Q  I was going to ask you about the  01:59:13
16  Substitution of Trustee.
17  A  Yes.
18  Q  Do you, as part of your opinions in this
19  case, take any issue with the mechanism by which
20  ReconTrust was substituted in as trustee?  01:59:22
21  A  Yes.
22  Q  And is that based on your misgivings about
23  Ms. Sevillano and her authority to sign for MERS?
24  A  Not entirely.
25  Q  What else is it based on?  01:59:38

Page 79

1  A  Exhibit 28 is signed by and purports to be
2  done on behalf of Mortgage Electronic Registration
3  Systems, Inc. apparently in its corporate capacity.
4  There's no mention in the document of it acting in
5  its nominee capacity for the lender. I don't see  01:59:57
6  any evidence in the case that MERS in its corporate
7  capacity or outside of its nominee capacity had the
8  power to substitute a trustee in this case.
9  Q  Do you believe that a trustee named in a
10  recorded Substitution of Trustee like this one is  02:00:19
11  deemed to be authorized to act as the trustee?
12  A  I don't think I understand your question.
13  Q  Just on the face of the document, do you
14  believe that the substitution itself cannot serve as
15  conclusive evidence of the authority of the  02:00:38
16  substituted trustee?
17  A  I don't know that.
18  Q  Do you have an opinion about that one way
19  or the other?
20  A  No.  02:00:46
21  Q  Do you understand that ReconTrust was not a
22  loan servicer in this case?
23  A  I do understand that.
24  Q  That it was only acting as a foreclosure
25  trustee?  02:01:10

Page 80

1  A  I'm not sure I know exactly what it was
2  doing, but I've been told that it was not a
3  servicer.
4  Q  Are your opinions in this case based on the
5  presumption that Ms. Tamburri was in default under  02:01:28
6  her loan, or do you dispute that?
7  A  I haven't made any analysis of that at all.
8  Q  Is it your opinion that the Deed of Trust
9  that she signed securing the loan that's at issue
10  here, is it your opinion that that Deed of Trust  02:01:54
11  conferred a right to foreclose?
12  A  It appears to.
13  Q  Do you have an opinion as to who held that
14  right?
15  A  Paragraph 22 of the document says that that  02:02:26
16  right is the lender's right. It says that the
17  lender may invoke the power of sale and all other
18  remedies permitted by applicable law.
19  Q  Do you believe that that applies to agents
20  of the lender?  02:02:51
21  A  I don't know that.
22  Q  Do you have an opinion as to what entities
23  in California are entitled to conduct a trustee's
24  sale in a nonjudicial foreclosure?
25  A  The document provides that the trustee may  02:03:07

Page 81

Pages 78 to 81

**Page 82**

```
1    execute a written notice of occurrence --
2        (Reporter clarification.)
3        Document says that the trustee may execute
4    a written notice of the occurrence of the event of
5    the default and of the lender's election to cause    02:03:22
6    the properties to be sold.  The document provides
7    that the trustee shall give public notice of the
8    sale and provides that the trustee shall sell the
9    property and deliver the proceeds to the lender.
10       Q  Apart from your review of the Deed of       02:03:44
11   Trust, do you have any independent opinion on who in
12   a California nonjudicial foreclosure sale, who is
13   entitled to conduct the sale?
14       A  No.
15       MR. REIDY:  Let's go off the record.          02:04:40
16       VIDEO OPERATOR:  This marks the end of
17   volume 1, media No. 1 of the deposition of Thomas A.
18   Cox.  The time is 2:04 p.m.  We're off the record.
19       (Recess.)
20       VIDEO OPERATOR:  We are back on the record   02:22:51
21   at 2:22 p.m.  This marks the beginning of volume 1,
22   media No. 2 of the deposition of Thomas A. Cox.
23   Please continue.
24   BY MR. REIDY:
25       Q  Mr. Cox, can you take a look at paragraph 7 02:23:08
```

**Page 83**

```
1    of your report.  The first sentence references
2    "borrowers," plural.  Do you see that?
3        A  I do.
4        Q  What -- does that include Ms. Tamburri?
5        A  Yes.                                        02:23:50
6        Q  Actually, for -- let's do this for the
7    record.  Could you read that first sentence in its
8    entirety, please?
9        A  "Thus, Mrs. Sevillano attempted to
10       transfer title as an officer of MERS, with     02:23:59
11       dubious authority, and with this improper
12       transfer of title, initiated foreclosure
13       proceedings against unsuspecting,
14       vulnerable borrowers, many of whom almost
15       certainly had neither knowledge or the         02:24:17
16       resources to challenge said improprieties."
17       Q  I want to break that down.  We've talked
18   about -- well, we've touched on the authority issue.
19   Is that which you were referring to when you said
20   "dubious authority"?                               02:24:35
21       MR. STURDEVANT:  Objection.  Vague and
22   ambiguous.
23   BY MR. REIDY:
24       Q  Were you referring to whether Ms. Sevillano
25   had authority to execute the sub-assignment for    02:24:43
```

**Page 84**

```
1    MERS?
2        A  Yes.
3        Q  That's what dubious authority --
4        A  Yes.
5        Q  -- means?                                   02:24:56
6        A  Yes.
7        Q  Is it your opinion that she had no
8    authority to sign for MERS or just that the
9    authority was in question?
10       A  It's my understanding that MERS had no      02:25:14
11   interest in the note so that Ms. Sevillano had no
12   authority to transfer the note.
13       Q  And I'm referring to her authority to sign
14   as an officer of MERS.
15       A  I guess you have to ask a question.         02:25:44
16       Q  Do you understand the distinction?
17       A  I don't even know -- you've totally lost
18   me.  Would you start over?
19       Q  Okay.  Let me start over.  I don't want to
20   lose you.                                          02:25:55
21       You just referred to the question of
22   whether MERS had any interest in the note.  Assume
23   for the purpose of this question that MERS did have
24   an interest.  Are you prepared to express an opinion
25   that Ms. Sevillano, the individual, was authorized  02:26:1?
```

**Page 85**

```
1    to execute documents on behalf of MERS?
2        MR. STURDEVANT:  Objection.  That -- that
3    question assumes facts not in evidence.
4        THE WITNESS:  I think -- it's my opinion
5    that Ms. Sevillano's authority to act as an officer 02:26:28
6    of MERS was dubious.
7    BY MR. REIDY:
8        Q  Are you prepared to say that she had no
9    authority to act for MERS or just that her authority
10   was questionable or dubious, as you put it?        02:26:46
11       A  Dubious or questionable is the way I would
12   put it.
13       Q  Further down you refer to "vulnerable
14   borrowers," plural.  Apart from Ms. Tamburri, did
15   you review the loan files or the foreclosure files 02:27:0?
16   of any other borrowers for whom ReconTrust acted as
17   a foreclosure trustee?
18       A  I did not.
19       Q  So the rest of the sentence says, quote:
20       "...many of whom almost certainly had         02:27:1?
21       neither the knowledge nor the resources to
22       challenge said improprieties."
23       Do you see that?
24       A  I do see that.
25       Q  Is it fair to say that that's speculation? 02:27:28
```

Pages 82 to 85

Page 86

1    A  No, it's not fair to say that.
2    Q  Even though you didn't review any other
3 ReconTrust borrowers in connection with your
4 opinions?
5    A  Ms. Sevillano testified that on a daily    02:27:38
6 basis she was signing multiple documents for
7 multiple entities without knowing the content of the
8 documents, without knowing the extent of her
9 authority, and for that reason she described a
10 practice that I described as injuring vulnerable    02:27:59
11 borrowers.
12    Q  Do you have an opinion as to whether the
13 issues that you've identified with respect to the
14 substitution assignment prejudiced Ms. Tamburri in
15 any way?    02:28:24
16    A  I've heard a tale of harm to her family. I
17 focused on one part of the documents here. To the
18 extent that what happened with respect to the
19 Substitution and Assignment of Trust is a part of
20 the course of conduct that injured that family,    02:28:59
21 that's all I can -- that's what I -- that's what I
22 would have to refer to.
23    MR. REIDY: Mr. Cox, I don't have any
24 further questions on behalf of ReconTrust. We're
25 going to switch over. Some of the other parties    02:29:17

Page 86

Page 88

1 BY MS. FROHLICH:
2    Q  So I wanted to go back just to a couple of
3 follow-up questions that I had on background and
4 then get right into the opinions that you have
5 relating to MERS.    02:38:46
6    A  Yeah.
7    Q  So what -- we talked some about your
8 background, but what specific areas of your
9 background make you qualified to offer the opinions
10 that you've offered against MERS in this case?    02:38:54
11    A  I think it's everything in my CV that you
12 have.
13    Q  Okay. So can you -- so it's -- it's
14 suing -- suing MERS primarily or reading -- reading
15 the articles that you talked about, being active in    02:39:10
16 the LISTSERV; am I remembering those correctly?
17    A  That's correct. It's everything --
18 everything in the CV, I think.
19    Q  So when was it that Mr. Sturdevant first
20 contacted you regarding this case?    02:39:27
21    A  Sometime in March of this year.
22    Q  In March. And did he tell you anything
23 about the case that you relied upon?
24    A  He sent me a copy of the Third Amended
25 Complaint. That's what I remember today. He    02:39:40

Page 88

Page 87

1 have questions for you. But thank you.
2    THE WITNESS: Okay. Thank you.
3    MR. REIDY: We'll go off the record for a
4 few minutes.
5    VIDEO OPERATOR: Going off the record. The    02:29:24
6 time is 2:29.
7    (Recess.)
8    VIDEO OPERATOR: We're back on the record.
9 The time is 2:38. Please continue.
10    02:38:14
11    EXAMINATION
12 BY MS. FROHLICH:
13    Q  Good afternoon, Mr. Cox. I was going to
14 start with a wisecrack about Boston University
15 School of Law being second tier to Harvard across    02:38:15
16 the river, but then I realized because it's my alma
17 mater too, I probably shouldn't.
18    A  Thank you. They would appreciate that.
19    MR. STURDEVANT: I thought it was actually
20 second tier to Boston College --    02:38:28
21    MS. FROHLICH: Oh, definitely not.
22    THE WITNESS: There you go.
23    MR. STURDEVANT: -- which was my alma
24 mater.
25    THE WITNESS: Start the subway wars.    02:38:33

Page 87

Page 89

1 described verbally a lot of content of that.
2    Q  Described the Third Amended Complaint?
3    A  Yes.
4    Q  And did you rely on that description in
5 issuing your opinion?    02:39:55
6    A  As far as facts are concerned.
7    Q  How -- how was it described to you?
8    A  I don't recall what Mr. Sturdevant said to
9 me other than what is contained in the Third Amended
10 Complaint.    02:40:05
11    Q  But you relied upon it, but you just don't
12 remember today what those statements were?
13    A  I'm sorry. You and I are misunderstanding
14 each other.
15    Q  Okay.    02:40:14
16    A  I'm referring to the Third Amended
17 Complaint --
18    Q  All right.
19    A  -- and the information in there.
20    Q  I'm asking about anything that Mr.    02:40:18
21 Sturdevant told you in a conversation that you
22 relied upon in issuing your opinions.
23    A  Fair enough. I don't believe so.
24    Q  Okay. And did you have any assistance in
25 preparing your report?    02:40:35

Page 89

Pages 86 to 89

Veritext National Deposition & Litigation Services
866 299-5127

1    A    No.
2    Q    Do you know Mr. Levitin?
3    A    I've met Mr. Levitin.
4    Q    When did you meet him?
5    A    I've met him several times over the last   02:40:45
6    five years.
7    Q    Okay.  Have you spoken with him in
8    connection with this case?
9    A    No.
10   Q    Do you know Mr. McGuinn?         02:40:52
11   A    I do not.
12   Q    Okay.  Do you know him by reputation?
13   A    No.
14   Q    You mentioned at the beginning of your
15   report that you reviewed the deposition of MERS'   02:41:03
16   30(b)(6) deponent, Mr. Brian Blake.  Is that right?
17   A    I did.
18   Q    Did you read the whole transcript?
19   A    I believe that I did.
20   Q    So I'd like to start with a baseline of   02:41:19
21   identifying the opinions that you are offering that
22   have to do with MERS in this case.  So if we can
23   just -- this is the painstaking part, and then we'll
24   take those -- we'll take those in turn.  But let's
25   open up the report, and tell me page and paragraph   02:41:34

Page  90

1    number, what are the portions of your opinion that
2    relate to MERS?
3    A    I think the document speaks for itself.
4    It's whatever is in the document.
5    Q    Well, you're -- you're here to define and   02:41:46
6    testify about your opinions.  I mean, I can give you
7    some suggestions and ask you if that's all, but if
8    you define it, we might have a better list.  Would
9    you rather I --
10   A    I've tried to set forth in the report my   02:42:01
11   views about this case as it relates to the work that
12   I was asked to do, and that's what I've done.
13   Q    Well, I'll just take them in turn, then.
14        So the first one was on page 3 in paragraph
15   5.  And I'll -- I'll ask you whether this was an   02:42:16
16   opinion or not, but I'm referring specifically to
17   the portion of your report where it says that:
18        "Ms. Sevillano...testified that she
19        has never spoken to any employee or officer
20        of MERS."                   02:42:37
21        Is that an opinion or are you just reciting
22   her testimony?
23   A    That was her testimony as I recall it.
24   Q    Okay.  Do you have a copy of the deposition
25   transcript with you today of Ms. Sevillano?   02:42:48

Page  91

1    A    I have one in my computer.
2    Q    Okay.  We don't have any paper one that we
3    can pass around, I guess.  Let's -- let's pull up
4    what you have to rely on, 'cause I think the
5    deposition testimony is a little different, and I   02:43:02
6    just want to get your thoughts on that.
7        Do you?  We may have a paper copy.
8    A    You say you do have one?
9    Q    Sounds like we do.
10   A    Should I not bother with this now?   02:43:24
11        MR. STURDEVANT:  Can you share it with us,
12   John?
13        THE WITNESS:  Well, maybe I ought to get
14   this up here just so --
15        MS. FROHLICH:  One copy.  Or maybe he -- I   02:43:32
16   thought he'd bring with him the things that he
17   relied upon, but --
18        MR. PINGEL:  Do you want to make copies off
19   the record or do you want to give --
20        MS. KLEINE:  I don't -- I don't need a   02:43:43
21   copy.
22        MS. FROHLICH:  No, we can just pass this
23   one over.
24   BY MS. FROHLICH:
25   Q    Maybe we'll both and we'll see how it   02:43:57

Page  92

1    goes.  So let's -- let's try it with the computer
2    one.  Well, or we have a paper one.  What would you
3    prefer, Mr. Cox?
4    A    Why don't we go with paper.
5    Q    Okay.  So for this statement you had cited   02:44:14
6    to page 42 of Ms. Sevillano's deposition transcript,
7    lines 23 to 25.  And as --
8    A    Okay.  I had thought we were looking at her
9    30(b)(6) deposition, but we're not.
10   Q    Well, this is Ms. Sevillano.         02:44:32
11   A    Okay.  All right.
12   Q    All right.  So if you could read the
13   question and answer at pages 23 to -- or lines 23 to
14   25 of page 42, please.
15   A    "Have you" -- question -- line 23:   02:44:53
16        "QUESTION:  Have you ever spoken with
17   anyone who works for MERS?"
18        "ANSWER:  No."
19   Q    Okay.  Do you know whether MERS has any
20   employees?                   02:45:04
21   A    Just so we're all clear, there are two MERS
22   entities.  There's Mortgage Electronic Registration
23   Systems, Inc. and there's MERS Corp Holdings, Inc.
24   Q    That's true.  I'm referring to MERS as
25   defined in your report.         02:45:20

Page  93

Pages  90  to  93

**Page 94**

```
1       A   Okay.  MERS --
2       Q   And in your -- go ahead.
3       A   And I think we began the deposition that
4    way.  That MERS so far throughout today, to my
5    understanding, refers to Mortgage Electronic        02:45:28
6    Registration Systems, Inc., and it's my
7    understanding that that entity has no employees.
8       Q   Yes.  So are you offering any opinion
9    regarding whether Ms. Sevillano could have or should
10   have spoken with anyone who, quote, "works for MERS" 02:45:43
11   as she testified?
12      A   Mr. Blake, the MERS 30(b)(6) witness,
13   testified that he's general counsel for MERS Corp
14   Holdings, Inc., and as such, he also serves as
15   counsel for MERS.  Similarly, it's my understanding   02:46:03
16   of Ms. Sevillano's testimony that she has not spoken
17   with anyone at either of the MERS entities.
18          MS. FROHLICH:  May I have the question read
19   back, please?
20          (Record read as follows:             02:46:30
21          "QUESTION:  So are you offering any
22      opinion regarding whether Ms. Sevillano
23      could have or should have spoken with
24      anyone who, quote, 'works for MERS' as she
25      testified?")
```

**Page 95**

```
1          THE WITNESS:  Sorry.  I lost it.  Would you
2    say it again?
3          (Record read as follows:
4          "QUESTION:  So are you offering any
5      opinion regarding whether Ms. Sevillano      02:46:54
6      could have or should have spoken with
7      anyone who, quote, 'works for MERS' as she
8      testified?")
9          THE WITNESS:  I guess there's two
10   questions.  There's could have and should have.  She 02:46:55
11   could have spoken to someone for MERS Corp Holdings
12   who was responsible for the MERS entity.  It's my
13   opinion that she should not have taken any action as
14   a purported officer of MERS without speaking to
15   someone responsible for the operation of that        02:47:17
16   corporation.
17   BY MS. FROHLICH:
18      Q   So it -- so it is your opinion that she
19   should have spoken with someone at MERS before she
20   executed this document; is that right?             02:47:29
21          MR. STURDEVANT:  Objection.  Asked and
22   answered.
23          THE WITNESS:  She should have spoken with
24   someone or had clear information and instructions on
25   how she was to fulfill her duties as an assistant    02:47:40
```

**Page 96**

```
1    secretary of MERS.
2    BY MS. FROHLICH:
3       Q   And where does the source of that duty come
4    from in your opinion?
5       A   Her responsibilities as a purported officer 02:47:50
6    of the entity.
7       Q   Why is that a responsibility -- what -- for
8    example, what law or what other rules or procedures
9    require her to do so?
10      A   I think the common law would say that an    02:48:06
11   officer of a corporation has a duty of loyalty and
12   good faith in its conduct or purporting to conduct
13   the business in a corporation for whom she's acting.
14      Q   This is a California action.  What
15   California law are you aware of that would say that  02:48:24
16   someone who is a signing officer for MERS has to
17   speak to someone at MERS before they execute a
18   document?
19          MR. STURDEVANT:  Objection.
20   Mischaracterizes, misstates his testimony.          02:48:33
21          THE WITNESS:  It's my opinion that as a
22   simple matter of corporate governance, that is
23   required of corporate officers.
24   BY MS. FROHLICH:
25      Q   Under California law?                  02:48:45
```

**Page 97**

```
1       A   I have no specific knowledge of California
2    case law.
3       Q   Would you agree that California law applies
4    here?
5       A   Yes.                            02:48:51
6       Q   And you have no knowledge of California law
7    or how it would apply to this question; is that
8    right?
9       A   I do not.
10      Q   Later in that same paragraph you note that 02:49:03
11   Ms. Sevillano was given the, quote, "prominent title
12   of Assistant Vice President" of "MERS."  Are you
13   offering an opinion that Ms. Sevillano's position is
14   one that is, quote, "prominent"?
15      A   You mentioned assistant vice president.  I  02:49:24
16   think she's identified to the -- line 6 refers to
17   assistant secretary.  She purports to be an officer
18   of the corporation with authority to act on behalf
19   of the corporation.
20      Q   So, sir, my question is whether you're    02:49:42
21   offering an opinion as to whether that title is
22   prominent.
23      A   Yes.
24      Q   Okay.  And on what basis are you qualified
25   as an expert to speak as to whether that title is   02:49:52
```

Veritext National Deposition & Litigation Services
866 299-5127

1  prominent?
2      A   My knowledge of corporate functioning, my
3  knowledge of real estate transactions.
4      Q   Do you have the same expertise in this area
5  as anyone else who has knowledge of corporate          02:50:08
6  functioning?
7      A   I guess everybody's knowledge is different
8  to one degree or another, so I don't know how to
9  answer that.
10     Q   So your opinion is not based on anything        02:50:17
11 specific to MERS or the context of this case, it's
12 based instead on a general feeling that Assistant
13 Vice President is a prominent title; is that right?
14         MR. STURDEVANT:  Objection.
15 Mischaracterizes his testimony.  He never used the     02:50:29
16 word "feeling."
17         THE WITNESS:  We referred earlier today to
18 an exhibit that I brought, Exhibit 406, which is a
19 form of MERS corporate resolution.  There's a lot of
20 testimony about there being a similar resolution in    02:50:58
21 this case.  I have not seen that MERS resolution to
22 ReconTrust, but if it is like Exhibit 406, there's
23 seven paragraphs of responsibilities delineated
24 there which are substantial responsibilities.
25 BY MS. FROHLICH:                        02:51:28

Page 98

1      Q   You testified earlier, however, that you
2  have no idea whether this exact form of corporate
3  resolution is the one that applied in this case; is
4  that right?
5      A   That is correct.                 02:51:38
6      Q   So in that same paragraph where you say
7  that Ms. Sevillano was given, quote, "significant
8  authority," is it based on that same feeling that if
9  the duties as described in the corporate resolution
10 that you brought today were granted to her that she    02:51:56
11 — I'm sorry, I think we're —
12         (Interruption.)
13         (Mr. Goodell enters room.)
14         MR. STURDEVANT:  Let the record reflect
15 that Nelson Goodell, co-counsel for the plaintiff in   02:52:11
16 the case, has just come into the deposition.
17         Are you finished with your question?
18 MS. FROHLICH:  I'm not.  I'll start over.
19         MR. STURDEVANT:  Thank you.
20 BY MS. FROHLICH:                        02:52:23
21     Q   So Mr. Cox, your statement in that same
22 paragraph of your report that the authority that Ms.
23 Sevillano had was, quote/unquote, "significant," is
24 that also based on, as you described for the — for
25 the previous question, your understanding of general   02:52:38

Page 99

1  corporate function?
2      A   I —
3      Q   I can ask that one cleanly.
4      A   I apologize, but I just don't think I'm
5  understanding.  I thought I answered that with         02:52:53
6  reference to the corporate resolution, but maybe --
7      Q   Well, I'm asking — I'm asking a different
8  question.  I'll ask it more cleanly.
9      A   Okay.
10     Q   Are you offering an opinion as an expert as    02:53:00
11 to whether the authority that was granted to Ms.
12 Sevillano was, quote/unquote, "significant"?
13     A   In my opinion it was significant.
14     Q   And what is the basis for your expertise to
15 offer that opinion beyond anyone else?                 02:53:14
16     A   I've specialized in bank transactions, real
17 estate transactions, corporate transactions for most
18 of my career.  For the last five years I focused to
19 a great extent on foreclosure matters and to -- in
20 -- as a subpart of that on the conduct of MERS.  And   02:53:35
21 I believe that collective background qualifies me to
22 offer the opinion that I did.
23     Q   And the opinion is just that it's -- that
24 it's significant in your view?
25     A   That's what you asked me.  Yes.    02:53:47

Page 100

1      Q   All right.  From page 3 over to page 4 in
2  that same paragraph 5, you state that Ms. Sevillano
3  is transferring interests for a company that, quote,
4  "she knows nothing about."  There's no citation to
5  her deposition testimony there.  What is the basis    02:54:11
6  for your conclusion that Ms. Sevillano knows, quote,
7  "nothing about" MERS?
8      A   I can't -- in the absence of my having put
9  page numbers in my report, I don't think without
10 taking a lot of time I can go dig it out.  But my      02:54:26
11 memory of her deposition was that she didn't talk to
12 anybody about what her responsibilities were, she
13 didn't talk to anybody from MERS about what her
14 responsibilities were, she received no instructions
15 on how to exercise those responsibilities from MERS,   02:54:44
16 and she didn't seem to think it was her job to have
17 any idea of the content of the documents that she
18 was purporting to sign for MERS.
19     Q   Mr. Cox, that's a slightly different
20 statement than what you made here.  Your statement     02:55:00
21 here was that she knew, quote, "nothing about" MERS.
22 And your report is supposed to state all bases for
23 your opinions.  Is there a basis for that opinion?
24         MR. STURDEVANT:  Objection.  Asked and
25 answered.                               02:55:13

Page 101

Pages  98 to 101

**Page 102**

1    THE WITNESS:  The facts that I've just
2  stated about her testimony.
3  BY MS. FROHLICH:
4    Q   Can you please -- let's -- let's take a
5  minute and let's stay on the record.  If you could    02:55:18
6  look through and try to find the deposition
7  testimony that you're relying on that she knows,
8  quote, "nothing about" MERS.
9    A   It's collective testimony over quite a
10  number of pages.    02:55:28
11    Q   If you could, please -- we're entitled to
12  know the basis for your opinions.  If you could
13  please take some time to do that.  It should have
14  been in your report.
15    THE WITNESS:  Do you want to do that, Jim?    02:55:39
16    MR. STURDEVANT:  We can do that.  We can go
17  off the record.
18    MS. FROHLICH:  Let's do it on the record.
19  We just took a break.
20    MR. STURDEVANT:  Let's go off the record    02:55:46
21  and do it.
22    MS. FROHLICH:  There's no reason to go off
23  the record.
24    THE WITNESS:  Well, let me say on the
25  record, I'm going to have to read from start to    02:55:53

**Page 103**

1  finish.  To satisfy you today, I'm going to have to
2  read 138 pages -- 141 pages of testimony to be sure
3  I nail down every single page that you're looking
4  for.
5  BY MS. FROHLICH:    02:56:05
6    Q   Well, let me -- let me -- are you saying
7  that there is no particular point where she says she
8  knows nothing about MERS.
9    A   I agree with that statement.  She does not
10  make that statement.    02:56:12
11    Q   Okay.  Well, that makes it much easier.
12    A   Okay.
13    Q   Now, this is an opinion that you talked
14  about some in your previous testimony, but I'd like
15  to go back to it.  On page 4, paragraph 7, you state    02:56:30
16  that Ms. Sevillano had, quote, dubious authority to
17  transfer title as an officer of MERS.
18    Now, I believe you testified that there
19  were two parts to that.  One was because MERS had no
20  interest in the note.  Correct me if I'm wrong.  But    02:56:52
21  then the second part had to do with the phrase
22  "dubious authority" as a separate ground.  Am I
23  stating that correctly?
24    A   Yes.
25    Q   Okay.  So let's talk about the second one    02:57:05

**Page 104**

1  first.  Why -- what is the basis for your opinion
2  that Ms. Sevillano had dubious authority to transfer
3  title as an officer of MERS?
4    A   My memory of the testimony, and it may be
5  the MERS 30(b)(6) testimony, but I'm not certain    02:57:25
6  without digging it out, was that the corporate
7  resolution purporting to give her signing authority
8  was signed by William C. Hultman.  I've seen many
9  corporate resolutions by Mr. Hultman, all of which
10  say, as Exhibit 406 does, that the foregoing is a    02:57:48
11  true copy of a resolution duly adopted by the Board
12  of Directors of said corporation.
13    I've read testimony of Mr. Hultman, of Mr.
14  R.K. Arnold, I've seen various documents relating to
15  MERS corporate resolutions.  To my knowledge, there    02:58:13
16  was no resolution of MERS granting Hultman -- sorry.
17  To my knowledge, there was no board -- there are no
18  Board of Directors' resolutions appointing MERS
19  signing officers.
20    Q   So let me back up on this because I think    02:58:39
21  you're referring to documents here that are not
22  cited in your report; is that right?
23    A   Right.
24    Q   So you're offering an opinion now based
25  on -- say it again, please, the testimony that you    02:58:53

**Page 105**

1  said you reviewed in other cases?
2    A   I didn't --
3    MR. STURDEVANT:  Why don't we just have the
4  record read back with what his testimony was.
5  BY MS. FROHLICH:    02:59:03
6    Q   Well, let me start over and do this more
7  methodically.
8    Okay, so we have an opinion that there was
9  dubious authority for Ms. Sevillano to sign this.
10  Was this opinion based in part on documents?    02:59:14
11    A   I did not review the various MERS documents
12  that I referred to moments ago in preparing my
13  testimony here.  I'm familiar with those documents
14  from having looked at them a number of times over
15  the last five years.    02:59:37
16    Q   They are a basis for your opinion --
17    A   Yes.
18    Q   -- correct?  The documents that you just
19  referenced?
20    A   Yes.    02:59:52
21    Q   The testimony of Mr. Hultman, you said; is
22  that right?
23    A   I testified in my previous answer that I
24  have reviewed a number of documents, deposition
25  testimony and the like.  That's what my answer was.    03:00:04

Pages 102 to 105

Page 106

1    Q   All right. So we're entitled to know the
2    basis for the opinion if it's based in documents, so
3    I'm just trying to get a sense of what those
4    documents are. So the documents are the testimony
5    of Mr. Hultman, yes?                    03:00:19
6    A   The MERS corporate bylaws, MERS
7    organizational documents -- I don't know whether
8    they call it a Certificate of Incorporation anymore
9    or what Delaware calls it; MERS Board of Directors'
10   resolutions; and MERS documents such as the MERS    03:00:46
11   membership bylaws and terms and conditions. I'm
12   familiar with all of those documents in a general
13   sense.
14   Q   All right. In addition to that, the
15   testimony of Mr. Hultman in several proceedings; is    03:01:08
16   that right?
17   A   I believe that I've seen two depositions of
18   Hultman.
19   Q   What are those cases?
20   A   I don't know.                    03:01:20
21   Q   And I believe you also said the testimony
22   of Mr. Arnold, is that correct?
23   A   Mr. R.K. Arnold. I don't believe Arnold's
24   testimony bears on this issue.
25   Q   Okay.                          03:01:36

Page 107

1    A   It's possible, but I don't think it does.
2    Q   Are those all the documents on which you're
3    basing your opinion that Ms. Sevillano's testimony
4    was dubious -- or her authority, rather, was
5    dubious?                          03:01:47
6    A   That's all I can think of right now.
7    Q   Is your opinion that Ms. Sevillano's
8    authority was dubious also based in part on any
9    conversations?
10   A   With whom?                     03:02:15
11   Q   You tell me.
12   A   I've talked to many lawyers over the last
13   five years about MERS. To the extent that any of
14   those conversations informed me, then perhaps, but I
15   can't give you specifics.               03:02:30
16   Q   So we don't know who they were with or when
17   they took place?
18   A   That's correct.
19   Q   Okay. Is your opinion that Ms. Sevillano's
20   testimony or her -- rather, her authority was    03:02:38
21   dubious based in part on a review of literature?
22   A   Yes.
23   Q   What literature?
24   A   Can't tell you specifically. I read a
25   number of law review articles about MERS.    03:02:57

Page 108

1    Q   What did those law review articles tell you
2    relevant to this opinion?
3    A   Much of the -- it goes to much of the same
4    information that I've already given you.
5    Q   Humor me. Tell me what these articles    03:03:12
6    said. Since we don't know what they were, if you
7    can tell me the substance.
8    A   At least one of them is referred to in
9    Professor Levitin's list of materials he looked at,
10   articles by Christopher Peterson.          03:03:24
11   Q   Mm-hmm.
12   A   I don't know what other ones I've looked
13   at.
14   Q   Is that all -- that's all you recall about
15   the literature right now?               03:03:38
16   A   Yes.
17   Q   Is your opinion that Ms. Sevillano's
18   authority was dubious based in part on testimony in
19   this case?
20   A   Yes.                          03:03:50
21   Q   What testimony?
22   A   Her testimony that when she first started
23   signing documents for MERS, she didn't have any
24   communication with MERS, she was simply told by an
25   employee of ReconTrust that she could sign the    03:04:05

Page 109

1    documents; that she made no effort to identify the
2    content of the document that she was signing or its
3    correctness; that she didn't know when she was
4    signing a document purporting to convey a note, that
5    MERS had no interest in the note.          03:04:25
6    Q   Is that the only testimony in this case on
7    which your opinion is based?
8    A   That's all I can recall right now.
9    Q   Is your opinion that Ms. Sevillano's
10   authority to execute the document was dubious based    03:04:38
11   on any legal cases or other law?
12   A   I don't think so.
13   Q   Have you reviewed any cases regarding the
14   validity of the MERS system?
15       MR. STURDEVANT:  Objection. Vague and    03:05:12
16   ambiguous as to the validity of the MERS system.
17       THE WITNESS:  There's -- there's hundreds
18   of cases about MERS. I've read many of them.
19   BY MS. FROHLICH:
20   Q   Have you ever read a case challenging the    03:05:25
21   validity of the MERS system that held that the MERS
22   system was indeed valid?
23   A   A case that jumps to my mind that went the
24   other way is In Re Agard out of New York. I don't
25   think there are many cases that I've read that go    03:05:47

Pages 106 to 109

1  directly to the validity of the MERS system. Most
2  of the cases that I've seen deal with the power of
3  MERS to conduct foreclosures, to make assignments,
4  and to perform those kinds of activities.
5      Q  Have you reviewed any California cases or   03:06:08
6  other law regarding the validity of the MERS system?
7      A  I believe that I have.
8          MR. STURDEVANT:  Can I have a continuing
9  objection to the phrase, quote, "the validity of the
10  MERS system"?                                03:06:27
11         MS. FROHLICH:  Well, we're hearing it now,
12  so it's on the record now.
13         MR. STURDEVANT:  Well, can I have a
14  continuing one if you ask more questions using that
15  phrase?                                      03:06:36
16         MS. FROHLICH:  If I ask more questions, you
17  can -- you can state it.
18         MR. STURDEVANT:  Sure.
19         THE WITNESS:  But I can't identify the
20  cases for you today.                         03:06:42
21  BY MS. FROHLICH:
22      Q  I'm sorry, you did -- you did review
23  California cases or you did not?
24      A  It sticks in my mind that I have read some
25  California cases, but I'm unable to identify the   03:06:50

Page 110

1  names of them for you today.
2      Q  Okay.  Do you remember the holdings of
3  those cases?
4      A  I do not.
5      Q  Do you remember the years in which those   03:06:57
6  cases were decided?
7      A  I do not.
8      Q  Is your opinion that Ms. Sevillano's
9  testimony -- authority was dubious based in part on
10  any assumptions?                             03:07:15
11     A  Beyond what I have said about her
12  testimony, I don't believe so.
13     Q  Is your opinion that Ms. Sevillano's
14  authority is dubious based on any other independent
15  investigation or research that you've performed?   03:07:45
16     A  No.
17     Q  Are there any other factual bases for that
18  opinion other than those that you've just
19  identified?
20     A  I don't believe so.                     03:08:07
21     Q  So taking those factual bases, what
22  reasoning or analysis led you to your opinion based
23  on the factors that you've reviewed that Ms.
24  Sevillano's authority was dubious?
25     A  That I think I've answered.             03:08:22

Page 111

1      Q  We've -- we've laid them all out now.  We
2  hadn't done that before.  We have your
3  identification of the things that you relied on.
4  What's your reasoning as to why their authority was
5  dubious?                                     03:08:36
6          MR. STURDEVANT:  Objection.  Asked and
7  answered.
8          THE WITNESS:  I think the authority of the
9  MERS Board of Directors to delegate to Hultman the
10  power to appoint 23,000 plus vice presidents and   03:08:54
11  assistant secretaries is contrary to the bylaws of
12  MERS and is dubious.  I think the hundreds, if not
13  thousands of corporate resolutions that Hultman did,
14  stating that these people, such as Ms. Sevillano,
15  were appointed by resolutions adopted by the Board   03:09:14
16  of Directors are false.  I believe that people such
17  as Mrs. Sevillano, who had no connection whatsoever
18  with MERS other than being given a title, left them
19  with no ability to act with loyalty or good faith
20  for the corporate purposes of MERS.          03:09:48
21         In this particular instance, we have Ms.
22  Sevillano's testimony that she didn't -- she started
23  signing documents for MERS just by somebody saying
24  that she could sign for MERS.  There's no testimony
25  that she knew anything about the scope of her   03:10:03

Page 112

1  authority under the corporate resolution.  I don't
2  think that she acted within the scope of the
3  corporate resolution.
4  BY MS. FROHLICH:
5      Q  How did she not act within the scope of the   03:10:23
6  corporate resolution?
7      A  The only part of the corporate resolution
8  that I can see that might apply to her was paragraph
9  7, which says that the listed individuals who were
10  being given signing authority were authorized to,   03:10:40
11  quote:
12         "Take any such actions and execute
13         such documents as may be" reasonably
14         "necessary to fulfill the Member's
15         servicing obligations to the beneficial   03:10:54
16         owner of such mortgage loan."
17         My understanding is that the corporate
18  resolution in this case was from MERS to ReconTrust.
19  My understanding is that Recon is not even a
20  servicer.  I don't see that Sevillano made any   03:11:16
21  effort to determine whether what she did in signing
22  the substitution document fit within the phrase:
23         "...as may be necessary to fulfill the
24         Member's servicing obligations to the
25         beneficial owner."                      03:11:41

Page 113

Veritext National Deposition & Litigation Services
866 299-5127

1   Q   And as you're reading that phrase there,
2   you're reading from the corporate resolution that
3   you pulled from another case; is that right?
4       A   This is not from another case.  This was a
5   document put into evidence in the court case by   03:11:52
6   Mortgage Electronic Registration Systems, Inc.
7   itself.
8       Q   Well, but you don't --
9       A   I downloaded it off the Pacer system from a
10  case in which MERS was a party.       03:12:06
11      Q   And you've not provided any authenticating
12  testimony with it; this is just the pages standing
13  alone.  Is that right?
14      A   I don't know what you mean.
15      Q   I mean usually these are submitted as a   03:12:15
16  declaration where someone swears under penalty of
17  perjury that the attachment is what they say it is,
18  and we have no such authenticating testimony here.
19      A   We don't have it in this table.  It exists
20  in that case.       03:12:26
21      Q   You have not provided us with the basis for
22  your opinion in terms of authenticating testimony
23  for this document; is that right?
24      A   Not on this table.
25      Q   This is page what, 192, I think it says, of   03:12:33

Page 114

1   A   I do not.
2       Q   Okay.  And you do not -- you have not seen
3   and do not know anything about this specific
4   corporate resolution that lists Ms. Sevillano in
5   this case, correct?       03:13:29
6       A   That's correct.
7       Q   And you do -- you have not performed an
8   analysis under California law whether the corporate
9   resolution would have been valid; is that right?
10      A   That's correct.       03:13:39
11      Q   Okay.  We started talking about your
12  opinion regarding, quote, "dubious authority" by
13  talking about the portion that we just talked about,
14  the dubious authority, but I believe you testified
15  that there was a second part to that, and that you   03:14:05
16  were basing your opinion on testimony that MERS
17  never had an interest in the note.  Is that correct?
18  The testimony of Mr. Blake, to be specific?
19      A   Yes.
20      Q   Okay.  Do you have Mr. Blake's deposition   03:14:21
21  with you?
22      A   It's in my computer.
23      Q   Okay.  This one I do have a printout of.  I
24  should.  And I believe you've cited page 53, lines
25  16 to 19 for that proposition; is that right?   03:14:43

Page 116

1   a document that we don't have the whole document
2   for; is that right?
3       MR. STURDEVANT:  Counsel, it's a MERS
4   document produced in a case naming MERS as a party
5   whom you represent.       03:12:44
6       MS. FROHLICH:  I have a pending question.
7   Do you have an objection, Jim?
8       MR. STURDEVANT:  I just stated it.
9       MS. FROHLICH:  What is your objection?
10  Misstates the testimony?       03:12:49
11      MR. STURDEVANT:  My objection is you have
12  equal if not greater access to this document.
13  BY MS. FROHLICH:
14      Q   So my question is, is this not page 192 --
15  Exhibit C is -- is designated page 192 of a   03:12:59
16  document, and we don't have the rest of the
17  document; is that right?
18      A   It's page 192 of a declaration of Mortgage
19  Electronic Registration Systems, Inc. in a federal
20  case.       03:13:11
21      Q   Okay.  A federal case, but do you know
22  anything more about the case other than it's a
23  federal case?
24      A   Not as I sit here at this table.
25      Q   Do you know if it's a California case?   03:13:18

Page 115

1   A   What paragraph in my statement are you
2   referring to?
3       Q   This is in paragraph 9 of page 5.
4       MS. FROHLICH:  Can I have this marked,
5   please?       03:14:54
6       (Deposition Exhibit 410 marked by the court
7       reporter.)
8       (Discussion off the record.)
9   BY MS. FROHLICH:
10      Q   So let me direct you first to your report,   03:15:17
11  page 5, paragraph 9 where you say that:
12      "MERS' 30(b)(6) witness testified that
13      MERS," quote, "never had an interest in the
14      Promissory Note...and, therefore, did not
15      have an interest in the Note to assign."   03:15:36
16      Is that right?
17      A   Yes.
18      Q   Okay.  And you've -- you've testified that
19  that's part of the factual basis underlying your
20  opinion that Ms. Sevillano had dubious authority; is   03:15:45
21  that right?
22      A   If you want to take a couple of minutes,
23  there's a -- there's considerably more testimony by
24  Mr. Blake about MERS not having an interest in the
25  loan.  Do you want me to dig that out?       03:15:56

Page 117

Pages 114 to 117

## Page 118

1    Q   I'm asking you about what you've cited as
2    the basis for it right now.  Can we look at this?
3    A   I did cite page 53, line 16 to 19.
4    Q   Okay.  Would you please read that section
5    into the record.                    03:16:10
6        MR. STURDEVANT:  And then feel free, Mr.
7    Cox, to go through other sections of the deposition.
8        MS. FROHLICH:  That's not the pending
9    question, Mr. Sturdevant.
10       Please read the question and --    03:16:17
11       MR. STURDEVANT:  I don't think you should
12   interrupt his answer, Ms. Frohlich.
13       MS. FROHLICH:  I interrupted your -- your
14   answer.
15       MR. STURDEVANT:  No, you interrupted him   03:16:22
16   first, and then you interrupted me.
17       MS. FROHLICH:  Could we have the last
18   question read back, please?
19       (Record read as follows:
20       "QUESTION:  Please read the        03:16:26
21   question.")
22   BY MS. FROHLICH:
23   Q   Please read the question and the answer on
24   page 53 at line 16 to 19.
25   A   (Reading):                       03:16:41

## Page 119

1        "Skip number 30, 31, your current
2    ownership interest in the loan.  Does
3    MERS have an interest --"
4        (Reporter clarification.)
5        "Skip number 30, 31, your current   03:16:54
6    ownership interest in the loan.  Does MERS
7    have an ownership interest in the loan?
8        "ANSWER:  No, it doesn't."
9    Q   So, Mr. Cox, in your opinion, does this
10   testimony support the fact that MERS never had an   03:17:09
11   interest in the Promissory Note?
12   A   It supports it in part.  There's more
13   testimony that Mr. Blake gave that also support
14   that.
15   Q   That MERS never -- never had an interest in   03:17:24
16   a Promissory Note?
17   A   I believe his testimony that MERS as an
18   operating practice doesn't take interest in mortgage
19   notes.
20   Q   I understand what you mean now.    03:17:33
21       So this section that relates to a current
22   as a -- a current ownership interest --
23   A   Right.
24   Q   -- and an interest in the loan, not the
25   Promissory Note, just doesn't match up exactly, but   03:17:44

## Page 120

1    there's other testimony that you're relying on for
2    that; is that right?
3    A   There's additional testimony where he says,
4    to my memory, and I can dig it out if you'd like,
5    where he says that MERS does not take interest in   03:17:54
6    notes.
7    Q   In the note.  Okay.  So this is maybe just
8    not exactly the right quote for that proposition,
9    but it's a proposition for which you're still
10   relying on Mr. Blake's --           03:18:05
11       MR. STURDEVANT:  Objection.
12   BY MS. FROHLICH:
13   Q   -- deposition; is that right?
14       MR. STURDEVANT:  Objection.  That
15   mischaracterizes his testimony.  He said that on   03:18:08
16   this page at those line numbers, that supports his
17   opinion in part.  "In part" is in quotes.
18       MS. FROHLICH:  Can I have the question read
19   back, please?
20       (Record read as follows:            03:18:33
21       "QUESTION:  So this is maybe just not
22   exactly the right quote for that
23   proposition, but it's a proposition for
24   which you're still relying on Mr. Blake's
25   deposition; is that right?")          03:18:42

## Page 121

1        THE WITNESS:  Page 53, lines 16 to 19 are
2    part of the support for what I put in my report.
3    Probably would have been better if I put some more
4    citations in.  I can dig those out if you'd like.
5    BY MS. FROHLICH:                     03:18:53
6    Q   So your statement is that MERS never had an
7    interest in the Promissory Note?
8    A   Yes.
9    Q   And this statement is that MERS does not
10   currently have an interest in a loan --   03:19:04
11   A   That's what.
12   Q   -- is that right?
13   A   That's what it says.
14   Q   So they don't match up exactly is my point?
15   A   That's correct.                  03:19:12
16   Q   Okay.  But my point is also you're relying
17   on other portions of the Blake deposition to support
18   your statement that MERS never had an interest in
19   the Promissory Note; is that right?
20   A   Yes.                           03:19:21
21   Q   Okay.  And do you have those?
22   A   If you give me a second, I think I can find
23   them.
24   Q   Okay.  Great.
25   A   On page 67 beginning at line 9:    03:21:12

Veritext National Deposition & Litigation Services
866 299-5127

1    "QUESTION: Did MERS have an interest
2    in the note at the time this document was
3    purportedly executed in June 2010?
4    "ANSWER: No, it didn't."
5    And then there's more.                    03:21:29
6    Q    Got it. I think that does it, though.
7    A    No, there's more.
8    Q    Oh, okay.
9    A    No, I'm not done.
10   Q    Okay. Great.                         03:21:34
11   A    Page 134, beginning on line 9:
12   "ANSWER: First, I've -- as I've
13   testified earlier, MERS does not have an
14   interest in promissory notes, generally
15   speaking, and therefore does not assign    03:22:25
16   notes."
17   Q    Thank you. So I think by going through
18   this, I've -- we've talked about the areas that I
19   believe are your opinions against MERS in your
20   report. Can you -- can you think of any others in  03:22:46
21   your report? Have we covered them all?
22   A    I don't believe there's anything else.
23   Q    Have you prepared any exhibits to support
24   your trial testimony?
25   A    No.                                   03:22:59

Page 122

1    Q    Okay. Do you anticipate doing so?
2    A    I haven't -- I haven't thought about it.
3    Q    Okay.
4    MS. FROHLICH: All right. Angela?
5    MS. KLEINE: I have a few questions. Would  03:23:12
6    you like a break or --
7    THE WITNESS: Let's go.
8    MS. KLEINE: Okay.
9    MS. FROHLICH: All right. Let's switch.
10   MR. PINGEL: Are we off the record?         03:23:23
11   VIDEO OPERATOR: Do you want to go off?
12   (Discussion off the record.)
13
14   EXAMINATION
15   BY MS. KLEINE:                             03:24:10
16   Q    Mr. Cox, I'm the last one you'll be
17   subjected to, I think.
18   A    Okay.
19   Q    Have you ever represented an entity called
20   Crestar in your prior work as an attorney?  03:24:39
21   C-r-e-s-t-a-r?
22   A    No.
23   Q    What about Third National Corporation?
24   A    No.
25   Q    Do you know who the lender is on         03:24:52

Page 123

1    plaintiff's loan in this action?
2    A    SunTrust is my memory, but it's getting
3    late in the day.
4    Q    And do you know who the servicer is on
5    plaintiff's loan in this action?           03:25:07
6    A    I've been told that it's SunTrust.
7    Q    In your report, which is Exhibit 408, do
8    you express any opinions as to the behavior of
9    SunTrust in this action?
10   A    No.                                    03:25:23
11   Q    Do you express any opinions as to the
12   potential liability of SunTrust in this action?
13   A    No.
14   Q    Are you aware of the role, if any, of Wells
15   Fargo in the present action?               03:25:33
16   A    I've been told that they are the master
17   servicer under the Pooling and Servicing Agreement
18   affecting this loan.
19   Q    And in this case, do you offer any opinions
20   as to the behavior of Wells Fargo?         03:25:45
21   A    No.
22   Q    And you don't offer any opinions as to the
23   potential liability of Wells Fargo?
24   A    I do not.
25   Q    Finally, are you aware of the role of U.S.  03:25:54

Page 124

1    Bank in this action?
2    A    I'm not at all clear what their role is.
3    Q    In your report do you express any opinions
4    as to the behavior of U.S. Bank?
5    A    No.                                    03:26:12
6    Q    Do you express any opinions as to the
7    potential liability of U.S. Bank?
8    A    No.
9    Q    In your report do you express any opinions
10   as to plaintiff's alleged damages caused by any of  03:26:24
11   the defendants in this action?
12   A    No.
13   Q    Were you tasked with evaluating the merits
14   of any of plaintiff's claims in her complaint?
15   A    Other than the opinions that I've expressed  03:26:36
16   today, no.
17   Q    Did you review the Pooling and Servicing
18   Agreement, if you know what that is, regarding
19   Ms. Tamburri's loan?
20   A    I did not review this one.             03:26:54
21   Q    Did you review any documents evidencing the
22   securitization of plaintiff's loan in this action?
23   A    No.
24   Q    Did you review any SunTrust policies or
25   procedures in preparing your opinion?       03:27:04

Page 125

Pages 122 to 125

1    A   No.
2    Q   Did you review any Wells Fargo or U.S. Bank
3    policies or procedures in preparing your opinion?
4    A   No.
5    Q   Did you review any servicing notes by any    03:27:11
6    of the defendants in this action?
7    A   No.
8    Q   Did you review any foreclosure notes in
9    preparing your opinion in this action?
10   A   No.    03:27:20
11   Q   Did you review any communications between
12   any of the defendants in this action in preparing
13   your opinion?
14   A   No.
15   Q   Are there any documents that you required    03:27:28
16   to prepare your opinions that you asked counsel for
17   but they were not able to provide?
18   A   The corporate resolution I sought out, but
19   wasn't able to get that.
20   Q   Anything else?    03:27:44
21   A   I don't believe so.
22   Q   Stepping back, would you please remind me,
23   were you formally engaged in this matter?
24   A   What do you mean?
25   Q   Well, you have about three times as many    03:27:58

Page 126

1    years practicing law as I do.  In your experience,
2    what -- what does someone mean by engaging an
3    expert?
4    A   Well, I agreed to the extent that I was
5    able to provide expert testimony.    03:28:11
6    Q   And when did you make that agreement?
7    A   Sometime between the middle of March and
8    May.
9    Q   And it was Mr. Sturdevant who engaged you
10   in this matter; is that right?    03:28:28
11   A   Yes.
12   Q   Do you know how you came into contact with
13   Mr. Sturdevant?
14   A   He got my name from somebody else.
15   Q   Do you know whose name he got -- strike    03:28:35
16   that.
17   A   The lawyer --
18   Q   Do you know who gave him his name?  I said
19   that wrong again.
20   A   Elizabeth --    03:28:45
21   Q   Do you know who gave Mr. Sturdevant your
22   name?
23   A   Elizabeth Letcher comes to my mind, but I
24   don't know if that's right.
25   Q   And have you had any prior contact with Mr.    03:28:52

Page 127

1    Sturdevant before this action?
2    A   No.
3    Q   Would you please turn to your report, which
4    is Exhibit 408.  Directing your attention to
5    paragraph 4, you describe testimony that Ms.    03:29:11
6    Sevillano provided regarding the transfer of
7    interest in Deed of Trust and Note to U.S. Bank from
8    MERS.
9    Do you have an opinion as to whether the
10   beneficial interest under the Tamburri Deed of Trust    03:29:47
11   was transferred to U.S. Bank?
12   A   By Exhibit 28?
13   Q   Let's start with that, yes.
14   A   I don't know.
15   Q   And outside of Exhibit 28, do you have an    03:30:11
16   opinion as to whether the beneficial interest under
17   the Tamburri Deed of Trust was transferred to U.S.
18   Bank?
19   A   No.
20   Q   Do you have any opinion as to whether any    03:30:22
21   consideration was provided to U.S. Bank in
22   connection with the transfer of beneficial interest
23   of the Deed of Trust in this case?
24   A   I have no knowledge of that.
25   Q   Are any of those things something that you    03:30:32

Page 128

1    investigated?
2    A   No.
3    Q   Directing your attention to paragraph 6 on
4    page 4 of Exhibit 408, which is your report in this
5    action.  We've talked a lot today about whether Ms.    03:30:52
6    Sevillano had authority in your opinion in that
7    regard.  I have a few follows-ups.
8    In your experience, whether an individual
9    has the authority to sign a document would depend on
10   the individual facts of the case, right?    03:31:08
11   A   Yes.
12   Q   The applicable written agreements would
13   influence whether an individual would have the
14   authority to sign a particular document?
15   A   Yes.    03:31:19
16   Q   There could be oral agreements between the
17   parties that would affect an individual's authority
18   to sign a document, correct?
19   A   I guess we better start getting clear about
20   parties.  Who are we referring to as parties?    03:31:31
21   Q   Okay.  Well, let's be specific.  In this
22   case we're talking about the authority of Ms.
23   Sevillano to sign the Assignment of Deed of Trust
24   and Substitution of Trustee which is Exhibit 28.  Is
25   it fair to say that there could be oral agreements    03:31:49

Page 129

Pages 126 to 129

Veritext National Deposition & Litigation Services
866 299-5127

1   that would affect Ms. Sevillano's authority to sign
2   Exhibit 28?
3       A   I think that's fair.  There could be.
4       Q   And you don't have any knowledge either way
5   about whether there are any such oral agreements; is   03:32:02
6   that right?
7       A   That's right.
8       Q   Are you familiar with the concept of
9   apparent authority?
10      A   With the conduct of what?   03:32:09
11      Q   The concept of apparent authority?
12      A   Yes.
13      Q   And do you have any opinion as to whether
14  Ms. Sevillano might have had apparent authority to
15  sign Exhibit 28?   03:32:21
16      A   I've not considered that.
17      Q   Are you familiar with the concept of
18  ratification in the context of authority to sign a
19  document?
20      A   Yes.   03:32:28
21      Q   Do you have any opinion as to whether
22  ratification might provide Ms. Sevillano authority
23  to have signed Exhibit 28?
24      A   Anything is possible.
25      Q   You just don't know either way?   03:32:37

Page 130

1       A   I don't know.
2       Q   Did you investigate the laws of California
3   regarding agency in preparing your report?
4       A   No.
5       Q   So it could be that Ms. Sevillano had   03:32:54
6   authority, you just don't know; it that right?
7           MR. STURDEVANT:  Objection.  Misstates his
8   testimony.
9           THE WITNESS:  It's possible, but I don't
10  think she had the authority to sign a document   03:33:20
11  conveying an interest in the note that MERS didn't
12  own.
13          MS. KLEINE:  Move to strike testimony after
14  "It's possible."
15  BY MS. KLEINE:   03:33:39
16      Q   Was one of your assignments to determine
17  whether Ms. Sevillano had authority to sign
18  Exhibit 28, the Substitution of Trustee and
19  Assignment?
20      A   I don't recall it being put to me that way.   03:33:54
21      Q   Did you consider that to be one of your
22  assignments?
23      A   According to my report, yes.
24      Q   And is your report accurate?
25      A   Insofar as the facts upon which it's based   03:34:09

Page 131

1   are accurate, yes.
2       Q   Did you apply any particular methodology to
3   analyze whether Ms. Sevillano had the authority to
4   sign Exhibit 28?
5       A   I can't describe the methodology for you.   03:34:26
6       Q   Was there any empirical basis for your
7   investigation as to whether or not Ms. Sevillano had
8   authority to sign Exhibit 28?
9       A   Not beyond what I've already told you.
10      Q   Do you apply any objective standards to   03:34:39
11  determining whether Ms. Sevillano signed Exhibit 28?
12      A   Not beyond what I've already said.
13      Q   And what -- have you testified as to any
14  empirical bases or objective standards that you
15  applied to determine whether Ms. Sevillano had the   03:34:54
16  authority to sign Exhibit 28?
17      A   Not beyond what I've already testified.
18      Q   Well, humor me.  Of your testimony here
19  today, what portions of that would describe the
20  empirical bases that you had to analyze whether Ms.   03:35:08
21  Sevillano had the authority to sign Exhibit 28?
22      A   I just don't how to answer your question.
23  I've given you my opinions based upon the facts that
24  I'm aware of.  I don't know how to answer it.
25      Q   So it's fair to say that you can't identify   03:35:22

Page 132

1   any empirical basis that you applied to determine
2   whether or not Ms. Sevillano had authority to sign
3   Exhibit 28?
4       A   That's not fair to say.
5       Q   Okay.  Well, what empirical bases were   03:35:31
6   there?
7       A   I told you, I can't describe it the way you
8   put the question.  I've given you my opinions based
9   upon the facts as I've reviewed them.  That's the
10  basis for my opinions.   03:35:40
11      Q   So sitting here right now, you're not able
12  to identify any empirical bases for your conclusion
13  that Ms. Sevillano lacked authority?
14          MR. STURDEVANT:  Objection.  Asked and
15  answered.   03:35:49
16          THE WITNESS:  That's your word, and I don't
17  agree that that's an appropriate word to describe my
18  testimony today.  You can make your own judgment
19  about my testimony and apply your own words to it.
20  I've given you my opinions based upon the facts as I   03:35:59
21  reviewed them.
22  BY MS. KLEINE:
23      Q   So by not an appropriate word, do you mean
24  empirical bases?
25      A   I don't know how to answer your questions.   03:36:05

Page 133

Veritext National Deposition & Litigation Services
866 299-5127

Page 134

1    Q   Is there any way to verify the results of
2  your investigation in which you concluded that Ms.
3  Sevillano lacked authority to sign Exhibit 28?
4    A   You can go back and look at all the
5  documents that I've described.              03:36:23
6    Q   And based on a review of all the facts in
7  the case and all the facts available, is it possible
8  that another person could come to a different
9  conclusion?
10   A   Anything is possible.              03:36:32
11   Q   It's possible that a reasonable jury could
12 come to a different conclusion?
13   A   Anything is possible.
14   Q   It's possible that a judge could come to a
15 different conclusion?              03:36:41
16   A   Anything is possible.
17   Q   Is there any way to determine whose
18 conclusion is more reliable other than your personal
19 opinion?
20   A   I think that's up to the fact finder.   03:36:53
21   Q   Directing your attention to paragraph 8,
22 please, of Exhibit 408.  Paragraph 8 reads:
23       "It appears that Ms. Sevillano
24   reviewed no information before signing said
25   document, and that the document is" quote,   03:37:25

Page 135

1       "not 'accurate and complete and supported
2   by competent and reliable evidence.'"
3       My first question is:  What do you mean by
4  "said document"?
5    A   Exhibit 28.              03:37:42
6    Q   And you provide a quotation that begins
7  with "accurate" and ends with evidence, "accurate
8  and complete and supported by competent and reliable
9  evidence."  Are you quoting something there?
10   A   I don't know where those quotes came from.   03:37:54
11 I don't -- somehow they got there in the give and
12 take between me and Mr. Sturdevant, and I don't know
13 what they're from.
14   Q   So is it -- did you provide the quotation
15 marks that are in paragraph 8?              03:38:05
16   A   I just said that I don't know where they
17 came from.
18   Q   So you don't know whether they came from
19 you or they came from Mr. Sturdevant?
20   A   I just said that I don't know where they   03:38:14
21 came from.
22   Q   Is there anywhere else they could have come
23 from besides you or Mr. Sturdevant?
24   A   I don't think so.
25   Q   Have you ever reviewed the California   03:38:22

Page 136

1  Homeowners Bill of Rights?
2    A   I have.  I referred -- I think I've seen it
3  referred to as the Homeowner Protection Act or
4  something of that sort.
5    Q   Did you review that act in connection with   03:38:41
6  your opinions in this action?
7    A   I'd read it and articles and stories about
8  it well before that.
9    Q   And in preparing your report in this
10 action, did you specifically refer to the act?   03:38:55
11   A   No.
12   Q   The verb that you use in paragraph 8 is
13 "appears."  "It appears that."  What do you mean by
14 "appears"?
15   A   From reading her deposition, it appeared to   03:39:13
16 me that she had not reviewed any information before
17 she signed the document.
18   Q   So it's possible that someone reading the
19 same deposition transcript and other facts in this
20 action could come to a different conclusion?   03:39:27
21   A   As I said, anything is possible, but I
22 don't think it's likely.
23   Q   So it comes down to weighing the facts as
24 you understand them, right?
25   A   No, it comes down to reading her testimony.  03:39:38

Page 137

1    Q   Do you have any specialized education in
2  reading testimony?
3    A   I've been doing it for 40 years.
4    Q   So it's your 40 years of experience as a
5  lawyer that qualifies you to read and interpret her   03:39:49
6  testimony; is that right?
7    A   I read her testimony and my opinion is
8  based upon her testimony.
9    Q   Right.  And my question was do you have any
10 specialized experience in reviewing and interpreting   03:40:02
11 testimony, and I believe you said you've been doing
12 it for 40 years.  So my question was by doing it for
13 40 years, did you mean your 40 years of experience
14 as an attorney?
15   A   Sure.              03:40:14
16   Q   Is there anything else that you meant by
17 that?
18   A   I read her testimony.  That's where I took
19 the facts from.
20   Q   Would you please also direct your attention   03:40:40
21 to Exhibit 28, which you've been discussing --
22   A   Yes.
23   Q   -- and have before you.  What about
24 Exhibit 28 is not accurate and complete in your
25 opinion?              03:40:51

Pages  134  to  137

1    A    I would put into that category the fact
2  that the document purports to be a Substitution of
3  Trustee by MERS acting in its corporate capacity
4  rather than its nominee capacity.
5        I also include within that the fact that    03:41:07
6  the document purports to be MERS assigning an
7  interest in a Promissory Note in which it had no
8  interest; and assigning an interest in the money due
9  and to become due thereon where MERS has testified
10  in other cases it doesn't take interest in notes, it    03:41:26
11  has no right to the receipt of money from notes.
12    Q    Anything else?
13    A    Not that I recall at the moment.
14    Q    Is there anything that would refresh your
15  recollection as to what you believe is inaccurate    03:41:40
16  about Exhibit 28?
17    A    Well, I also believe that it's inaccurate
18  as far as the notary certificate is concerned based
19  upon the testimony of the notary.
20    Q    Anything else?    03:41:50
21    A    No.
22    Q    Are you aware that under the Deed of Trust
23  securing plaintiff's loan that MERS serves as the
24  beneficiary of record as nominee for lender and its
25  successors and assigns?    03:42:11

Page 138

---

1    A    Would you say that again?
2    Q    Sure.  Are you aware that under the Deed of
3  Trust securing Ms. Tamburri's loan that MERS serves
4  as Deed of Trust beneficiary of record as nominee
5  for the lender and its successors and assigns?    03:42:24
6    A    That's what the document says.
7    Q    Do you believe that that's not accurate?
8    A    I don't believe that MERS is a beneficiary.
9    Q    And what is your basis for that belief?
10    A    Various court decisions that I've read.    03:42:39
11    Q    And for the record, are you referring to
12  the Deed of Trust at the moment?
13    A    I'm looking at Exhibit 2.
14    Q    So it's your testimony that under
15  Exhibit 2, as of the time Exhibit 2 was executed in    03:42:51
16  2006, that MERS was not in fact beneficiary under
17  the security instrument?
18    A    I do not believe MERS was the beneficiary.
19    Q    And that's based on the court opinions that
20  you've reviewed; is that right?    03:43:13
21    A    Yes.
22    Q    Is that based on anything else?
23    A    It's based upon my understanding that in a
24  Deed of Trust context the lender is the beneficiary
25  of the Deed of Trust.  I also have a memory of being    03:43:27

Page 139

---

1  told or seeing a document that earlier before --
2  sometime in 2009, SunTrust executed a document
3  claiming that it was a beneficiary under this Deed
4  of Trust.
5    Q    Anything else?    03:43:51
6    A    No.
7    Q    Another opinion that you offer in this
8  matter in paragraph 10 of your report, which is
9  Exhibit 408, is that the document, which is
10  Exhibit 28, is invalid.  Is that right?    03:44:40
11    A    Yes.
12    Q    And did you apply any particular
13  methodology to determine whether Exhibit 28 was
14  valid?
15    A    Not beyond what I've already explained to    03:45:02
16  you in my earlier responses.
17    Q    And what do you mean by valid?
18    A    Well, it was invalid to convey any interest
19  in the note --
20    Q    Well, my --    03:45:16
21    A    -- because MERS had no interest in the
22  note.
23    Q    My question specifically is the term
24  "valid."  What does that mean?  Does that mean
25  illegal or does it mean something else?    03:45:24

Page 140

---

1    A    It was an operative.
2    Q    Operative.
3    A    It didn't work.
4    Q    Didn't work.  Didn't work what, under
5  California law?    03:45:32
6    A    I don't think it's a matter of California
7  law.  It's a matter of general law anywhere in the
8  country.  Somebody can't sell what they don't own.
9    Q    General law anywhere in the country.  Can
10  you be more specific than that?    03:45:43
11    A    No.
12    Q    It's possibly that a reasonable fact finder
13  reviewing the record could determine that the
14  June 2010 assignment was valid?
15    A    Anything is possible.    03:46:02
16        MS. KLEINE:  Are you okay, Mr. Sturdevant?
17        MR. STURDEVANT:  I am.
18  BY MS. KLEINE:
19    Q    Sir, are you aware of any way to test the
20  accuracy of the conclusion regarding the validity of    03:46:14
21  Exhibit 28, the substitution and assignment that you
22  make in Exhibit 402 (sic), your report?
23    A    I suspect that a judge and a jury are going
24  to do that in this case.
25    Q    Are you aware of any error rate that's been    03:46:32

Page 141

Pages 138 to 141

**Page 142**

1   determined when one applies the methodologies that
2   you have applied to determine the validity of the
3   June 2010 assignment in this case?
4     A  No.
5     Q  The methods that you applied in this case,   03:46:44
6   have you ever published them in any peer-reviewed
7   journal?
8     A  No.
9     Q  Did you come up with them on your own or
10   did you derive them from someone else's work?   03:46:52
11     A  I think it's my own work.
12     Q  Have you ever seen a California Deed of
13   Trust before your work in this action?
14     A  Yes.
15     Q  When was that?      03:47:06
16     A  I have no idea.  I think I've seen several
17   of them.
18     Q  Several, but you have no idea when?
19     A  I don't.
20     Q  Have you ever seen an assignment of    03:47:14
21   interest in a note in California before this action?
22     A  I've seen other substitutions in
23   assignments, yes.
24     Q  In California?
25     A  Yes.      03:47:24

**Page 143**

1     Q  And when was that?
2     A  I don't know.
3     Q  Do you have any idea?
4     A  I really don't.  Sometime in the last five
5   years is the best I can give you.    03:47:31
6     Q  So was that in connection with talking with
7   folks on the LISTSERV?
8     A  Yes.
9     Q  Have you reviewed California recorded deeds
10   of trust or assignments or substitutions before this   03:47:41
11   case outside of talking with folks on a LISTSERV?
12     A  I don't believe so.
13     Q  Have you ever been engaged either as an
14   attorney or as an expert to provide opinions about
15   California deeds of trust or assignments or    03:47:56
16   substitutions prior to this case?
17     A  No.
18     Q  Have you estimated what your total billings
19   in this case have been so far?
20     A  No.  I just know what it cost me to get   03:48:32
21   here and back.
22     Q  Did you travel with anyone to come here?
23     A  No.
24     Q  Did you travel by yourself?
25     A  I did.  I left my family home.    03:48:57

**Page 144**

1     Q  Have you finished your work in this matter
2   after this deposition is concluded?
3     A  That's up to Mr. Sturdevant.
4     Q  Are you aware of any work that remains to
5   be done for you or by you?      03:49:11
6     A  Not today, no.
7     Q  Do you have any additional opinions that
8   sitting here today you know that you plan to offer?
9     A  No.
10     MS. KLEINE:  I don't have any further    03:49:25
11   questions.
12     MS. FROHLICH:  I have two quick follow-up
13   questions.
14
15       EXAMINATION      03:49:42
16   BY MS. FROHLICH:
17     Q  So Mr. Cox, looking back at Exhibit 28, am
18   I correct that it's one of your opinions that this
19   substitution was performed by MERS, I believe you
20   said, in its individual corporate capacity, not as   03:50:02
21   nominee; is that's right?
22     A  Yes.
23     Q  What leads to you that conclusion?
24     A  Because it doesn't mention that it's acting
25   in a nominee capacity.      03:50:10

**Page 145**

1     Q  Does it mention it as acting in its
2   individual corporate capacity?
3     A  No, it does not.
4     Q  My second question is I believe you've
5   testified that this document is invalid because it   03:50:20
6   purports to transfer the note, and the note is not
7   something that belonged to MERS?
8     A  Correct.
9     Q  Is that right?  If we take the note out of
10   the equation, do you have any issue with the    03:50:34
11   validity of the transfer of the Deed of Trust under
12   this document?
13     A  Yes.
14     Q  And what is that?
15     A  MERS purports to convey the Deed of Trust   03:50:53
16   in its own name, not in its nominee capacity for
17   SunTrust.
18     Q  Okay.  Is that the only -- the only issue
19   that you would have regarding the validity of the
20   attempt to transfer just the Deed of Trust portion?   03:51:09
21     A  Yes.
22     MS. FROHLICH:  Okay.  I have no further
23   questions.  Do you, John?
24     MR. PINGEL:  No, no further questions.
25     MS. KLEINE:  Thank you, Mr. Cox.    03:51:18

Veritext National Deposition & Litigation Services
866 299-5127

```
 1          VIDEO OPERATOR:  This concludes today's
 2   deposition of Thomas A. Cox.  The time is 3:51 p.m.
 3   We're off the record.
 4          (TIME NOTED: 3:51 p.m.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```
                                        Page 146

```
 1          I, the undersigned, a Certified Shorthand
 2   Reporter of the State of California, do hereby
 3   certify:
 4          That the foregoing proceedings were taken
 5   before me at the time and place herein set forth;
 6   that any witnesses in the foregoing proceedings,
 7   prior to testifying, were duly sworn; that a record
 8   of the proceedings was made by me using machine
 9   shorthand which was thereafter transcribed under my
10   direction; that the foregoing transcript is a true
11   record of the testimony given.
12          I further, certify I am neither financially
13   interested in the action nor a relative or employee
14   of any attorney or party to this action.
15          IN WITNESS WHEREOF, I have this date
16   subscribed my name.
17
18   Dated: 6/13/2013
19
20
21
22
23        _____
24        SUZANNE F. BOSCHETTI
25        CSR No. 5111
```
                                        Page 147

Veritext National Deposition & Litigation Services
866 299-5127

## A

ability 78:9 112:19
able 48:6 126:17,19
  127:5 133:11
absence 101:8
abuse 74:10
access 115:12
accuracy 141:20
accurate 23:6 59:11
  59:13 69:1 131:24
  132:1 135:1,7,7
  137:24 139:7
acknowledge 71:6
acknowledged 68:17
  70:20
acknowledgment
  70:16
acquired 22:20
acquisition 22:23
acronym 31:10,12
  49:17
act 33:21,21 34:12
  39:6 58:10,11 75:13
  77:23 78:7,9 80:11
  85:5,9 97:18 112:19
  113:5 136:3,5,10
acted 12:3 39:11
  85:16 113:2
acting 12:4 34:10
  80:4,24 96:13 138:3
  144:24 145:1
action 8:23 42:20,21
  95:13 96:14 124:1,5
  124:9,12,15 125:1
  125:11,22 126:6,9
  126:12 128:1 129:5
  136:6,10,20 142:13
  142:21 147:13,14
actions 113:12
active 19:6 88:15
activities 21:18 27:25
  32:25 50:17 110:4
activity 24:23,25
acts 72:11,14,20

addition 16:17
  106:14
additional 120:3
  144:7
addressed 40:12
adjudicated 38:12
administered 9:22
admitted 23:19,25
adopted 104:11
  112:15
affect 129:17 130:1
affidavit 35:16,19
affidavits 56:5
afternoon 87:13
afzal 15:5,9 16:8,15
  69:13 70:23 71:12
  72:7,15 74:4
afzals 16:8 69:19
  71:3 73:6,12
agard 109:24
agency 131:3
agents 81:19
ago 10:14,15,16
  19:24 24:19 105:12
agree 8:18 42:5,8
  50:23 51:10,13,15
  51:17 72:21 79:5
  97:3 103:9 133:17
agreed 127:4
agreement 32:13
  124:17 125:18
  127:6
agreements 129:12
  129:16,25 130:5
ahead 46:5 66:8 94:2
ahmad 16:7
akleine 4:23
al 8:14 13:19
alleged 125:10
alma 87:16,23
alphabetical 31:12
ambiguous 58:22
  68:11 69:17 83:22
  109:16

amended 16:5 88:24
  89:2,9,16
amendments 60:17
america 22:18,20,22
amicus 24:10,14
  26:15
analysis 73:4,14 81:7
  111:22 116:8
analyst 73:10
analyze 132:3,20
angela 4:19 9:6 123:4
answer 30:13 33:14
  34:4 67:17 93:13,18
  98:9 105:23,25
  118:12,14,23 119:8
  122:4,12 132:22,24
  133:25
answered 63:24
  65:14 95:22 100:5
  101:25 111:25
  112:7 133:15
answers 67:20,21,23
anticipate 123:1
anticipated 30:13
anybody 101:12,13
anymore 106:8
anytime 37:22
apart 20:1 35:12
  82:10 85:14
apartment 11:18
apologize 100:4
apparent 130:9,11,14
apparently 80:3
appeal 24:11
appeals 38:13
appear 17:17 71:6,15
  73:6
appearances 3:1 4:1
  5:1
appeared 34:15 68:2
  70:19 136:15
appears 37:12 63:20
  72:3,7 73:20 81:12
  134:23 136:13,13

136:14
applicable 81:18
  129:12
application 73:15
applied 99:3 132:15
  133:1 142:2,5
applies 81:19 97:3
  142:1
apply 56:9 97:7 113:8
  132:2,10 133:19
  140:12
applying 33:12
appoint 112:10
appointed 112:15
appointing 104:18
appreciate 87:18
appropriate 58:11
  78:6 133:17,23
april 21:25
area 98:4
areas 88:8 122:18
argue 66:1
arising 24:5
arnold 104:14 106:22
  106:23
arnolds 106:23
arrangement 45:18
articles 88:15 107:25
  108:1,5,10 136:7
articulate 51:25
aside 14:23
asked 31:20 35:3,6,9
  63:23 65:14 91:12
  95:21 100:25
  101:24 112:6
  126:16 133:14
asking 45:4 59:6
  71:20 89:20 100:7,7
  118:1
aspect 79:13
aspects 79:10
assessment 75:12
  79:6
assign 59:13,15 79:3

117:15 122:15
assigned 76:1
assigning 138:6,8
assignment 32:24
   33:5 56:14 57:6,18
   57:23 58:2 61:11,13
   70:5 71:13 74:15
   75:9,23,25 78:24
   79:12 86:14,19
   129:23 131:19
   141:14,21 142:3,20
assignments 110:3
   131:16,22 142:23
   143:10,15
assigns 76:4 138:25
   139:5
assistance 38:20
   89:24
assistant 76:8,18 77:6
   77:10 95:25 97:12
   97:15,17 98:12
   112:11
association 1:8 2:8
   4:15 9:8
assume 13:3 26:6
   35:17 84:22
assumes 85:3
assuming 17:9
assumptions 111:10
attached 7:2
attachment 114:17
attempt 145:20
attempted 83:9
attention 55:9 128:4
   129:3 134:21
   137:20
attorney 10:6 123:20
   137:14 143:14
   147:14
attorneys 38:15,21
auctioneer 28:23
auctioneers 29:8
audio 8:17
august 16:7

authenticate 49:20
authenticating
   114:11,18,22
author 49:1
authority 34:11
   52:15 77:11,25
   78:17 79:23 80:15
   83:11,18,20,25 84:3
   84:8,9,12,13 85:5,9
   85:9 86:9 97:18
   99:8,22 100:11
   103:16,22 104:2,7
   105:9 107:4,8,20
   108:18 109:10
   111:9,14,24 112:4,8
   113:1,10 116:12,14
   117:20 129:6,9,14
   129:17,22 130:1,9
   130:11,14,18,22
   131:6,10,17 132:3,8
   132:16,21 133:2,13
   134:3
authorized 56:25
   58:19 59:5 78:12
   80:11 84:25 113:10
available 40:3 134:7
aware 12:16 40:2,7
   40:18,22 41:19
   51:21,24 52:2 63:12
   63:19,22,25 96:15
   124:14,25 132:24
   138:22 139:2
   141:19,25 144:4

_____

**B**

b 16:9 47:4 90:16
   93:9 94:12 104:5
   117:12
back 10:25 15:4 22:2
   40:6 43:13 44:4
   45:12 53:11 59:23
   82:20 87:8 88:2
   94:19 103:15
   104:20 105:4
   118:18 120:19

126:22 134:4
   143:21 144:17
backed 28:9
background 88:3,8,9
   100:21
bank 1:7,8 2:7,8 4:15
   4:15 9:7,8 12:3
   22:18,19,20,22
   23:10 24:22 28:13
   51:13 75:9 76:4
   100:16 125:1,4,7
   126:2 128:7,11,18
   128:21
banking 31:25
banks 12:1,6,7 27:23
   27:24
bar 19:15
based 12:15 50:18
   68:6 69:12 71:20
   72:19 73:21 79:22
   79:25 81:4 98:10,12
   99:8,24 104:24
   105:10 106:2 107:8
   107:21 108:18
   109:7,10 111:9,14
   111:22 131:25
   132:23 133:8,20
   134:6 137:8 138:18
   139:19,22,23
baseline 90:20
bases 101:22 111:17
   111:21 132:14,20
   133:5,12,24
basing 73:18 107:3
   116:16
basis 42:8 51:17
   57:13 58:1,4,9 59:4
   65:18 68:20 74:5
   75:11,12,16 86:6
   97:24 100:14 101:5
   101:23 102:12
   104:1 105:16 106:2
   114:21 117:19
   118:2 132:6 133:1

133:10 139:9
bears 106:24
began 78:14 94:3
beginning 2:19 82:21
   90:14 121:25
   122:11
begins 72:3 135:6
behalf 2:17 33:20
   34:1,12,12 58:8,10
   58:20 59:4 75:15
   80:2 85:1 86:24
   97:18
behavior 124:8,20
   125:4
belief 62:21 139:9
believe 11:9 15:3
   22:21,21 24:7,22
   25:15 26:12,14 29:7
   35:23 40:1 41:3,4
   43:2 52:3 54:17
   57:17,22 58:1,9
   59:5 60:19 61:2
   62:18 63:2 64:2,19
   64:20 65:17 66:19
   69:13 71:7,9 74:5
   74:22 75:2,7,16
   76:7 78:23 80:9,14
   81:19 89:23 90:19
   100:21 103:18
   106:17,21,23 110:7
   111:12,20 112:16
   116:14,24 119:17
   122:19,22 126:21
   137:11 138:15,17
   139:7,8,18 143:12
   144:19 145:4
belonged 145:7
beneficial 74:20,25
   75:5 76:5 79:3
   113:15,25 128:10
   128:16,22
beneficiary 30:1
   37:10,14 53:25
   138:24 139:4,8,16

139:18,24 140:3
best 10:20 13:16 27:7
143:5
better 65:3 91:8
121:3 129:19
beverly 16:12
beyond 71:24 72:17
100:15 111:11
132:9,12,17 140:15
bill 45:23 46:3 136:1
billed 46:1
billings 143:18
blake 6:24 16:12
90:16 94:12 116:18
117:24 119:13
121:17
blakes 116:20 120:10
120:24
board 104:11,17,18
106:9 112:9,15
bockius 5:6
body 39:6
bono 46:7
borrowed 50:14
borrower 30:3,6 39:3
43:2 50:14,14 52:3
borrowers 37:7 83:2
83:14 85:14,16 86:3
86:11
boschetti 1:22 2:21
8:8 147:24
boston 87:14,20
bother 92:10
bottom 67:21
break 16:2 43:8 65:9
67:9 83:17 102:19
123:6
brian 6:24 16:12
90:16
brief 24:14,15 26:15
briefly 49:4
briefs 24:10
bring 27:21 66:21
92:16

bringing 29:8
brought 14:8 27:19
46:11 48:10,22
98:18 99:10
business 21:17 28:7
28:10 96:13
businesses 28:8
bylaws 106:6,11
112:11

─────── C ───────
c 3:13 6:14 104:8
115:15
california 1:2,17 2:2
2:19 3:8,15 4:9,21
5:9 6:21 8:1,12,15
15:24 16:1,13,21
17:20 18:3 24:1,5,5
29:1 31:15 34:19
38:13 39:12,13,19
39:22,25 40:4,7
41:11,14,16,21 42:7
42:11,19 43:3 50:2
50:24 51:11,23
52:12,16 53:7,15,23
54:4,11,18 57:19,23
60:4 78:3,4 81:23
82:12 96:14,15,25
97:1,3,6 110:5,23
110:25 115:25
116:8 131:2 135:25
141:5,6 142:12,21
142:24 143:9,15
147:2
californias 30:15
31:1,2 36:14,18
40:12,16,19
call 34:24 42:17
106:8
called 28:14 123:19
calls 42:22 106:9
cant 11:13 13:16 27:3
31:8 78:4 101:8
107:15,24 110:19
132:5,25 133:7

141:8
capacity 51:4 80:3,5
80:7,7 138:3,4
144:20,25 145:2,16
caps 49:15
caption 8:12
care 33:13
career 13:4 21:2
24:15 100:18
carry 67:21
case 8:12,15 9:15
12:8,11,21 13:19,20
13:24 14:10 20:4,9
20:14 23:20 24:17
25:11 26:16 27:11
32:7,9 35:12,14,16
35:19 36:6 37:13
38:2,4,5 39:15,17
41:3,6,8,12 44:23
46:4,20,23 47:7
49:25 50:22 52:22
53:4 54:20 55:1
56:11 58:19 62:24
64:15 71:2 72:18
73:2,19 74:18 78:4
79:19 80:6,8,22
81:4 88:10,20,23
90:8,22 91:11 97:2
98:11,21 99:3,16
108:19 109:6,20,23
113:18 114:3,4,5,10
114:20 115:4,20,21
115:22,23,25 116:5
124:19 128:23
129:10,22 134:7
141:24 142:3,5
143:11,16,19
cases 10:21 11:1 26:4
29:6,9,15,16 36:1,5
38:3,22,24 39:1,22
48:2 105:1 106:19
109:11,13,18,25
110:2,5,20,23,25
111:3,6 138:10

cassia 5:14 8:7
category 138:1
cause 63:6 82:5 92:4
caused 125:10
cell 8:20
certain 22:12 26:14
76:5 104:5
certainly 83:15 85:20
certificate 34:23
63:15 66:14 68:2
70:9 106:8 138:18
certified 2:21 147:1
certify 147:3,12
challenge 83:16
85:22
challenging 75:23
109:20
change 15:16 18:23
21:12 33:1
changed 47:15
characterization
41:23 42:3 51:9
69:1 76:21 79:8
characterize 20:24
chen 9:16
chens 16:6
christopher 108:10
circumstance 10:18
27:12
circumstances 56:9
citation 101:4
citations 121:4
cite 71:19 118:3
cited 17:1,3 38:2 93:5
104:22 116:24
118:1
civil 6:21 17:11 41:9
41:14 60:24 71:4,20
claimed 34:1
claiming 140:3
claims 27:19,21 37:14
125:14
clarification 82:2
119:4

clarify 66:5
classes 31:24,24,25
  32:1,2
clause 76:22
cleanly 100:3,8
clear 64:24 68:13
  70:8 71:10 93:21
  95:24 125:2 129:19
clearly 50:24
clients 27:22
closed 12:1
closes 28:13
cmf 31:10
cocounsel 99:15
code 6:21 17:6,10,11
  17:19,23 41:9,14
  60:24 71:4,20
coined 56:3
collective 100:21
  102:9
college 87:20
com 3:10,17 4:11,12
  4:23 5:11
come 31:6 38:2 96:3
  99:16 134:8,12,14
  135:22 136:20
  142:9 143:22
comes 54:8 127:23
  136:23,25
coming 15:7
commercial 26:23
  27:6,17
commission 49:7,18
committee 6:17 49:7
  49:16,18
committees 49:13
common 96:10
commonwealth 10:10
communicated 39:21
communication
  32:13 108:24
communications
  32:17 45:8 126:11
company 1:11 2:11

2:18 4:3 21:5 37:4,5
  101:3
compensated 52:11
compensation 45:18
competent 57:19,24
  58:4,5,6 59:2 135:2
  135:8
complaint 16:6 88:25
  89:2,10,17 125:14
complete 135:1,8
  137:24
complied 71:3,7
comply 70:17 71:3,13
  71:16
comprehensive 41:20
  41:23
comprise 41:15
computer 92:1 93:1
  116:22
concept 130:8,11,17
concerned 26:23 89:6
  138:18
concerning 27:9
  36:18,22 37:16
  39:12 41:10 45:8
concluded 134:2
  144:2
concludes 146:1
conclusion 42:23
  101:6 133:12 134:9
  134:12,15,18
  136:20 141:20
  144:23
conclusive 80:15
conditions 106:11
conduct 28:21 34:2
  38:7 39:24 71:3,12
  73:23 81:23 82:13
  86:20 96:12,12
  100:20 110:3
  130:10
conducted 26:2 36:13
  38:11
conferences 40:12

conferred 30:6 81:11
confirm 49:24 60:8
  62:1
confused 67:13
connection 14:17
  41:12 46:22 53:8,16
  71:12 86:3 90:8
  112:17 128:22
  136:5 143:6
consider 40:15 42:14
  55:3,6 72:23 131:21
considerably 117:23
consideration 128:21
considered 130:16
constitute 41:20
constitutes 42:20
constitutions 43:5
consultant 39:8,12
consulted 39:23
contact 31:6 127:12
  127:25
contacted 36:12
  88:20
contain 72:10,13
contained 42:12 89:9
containing 75:14
content 78:21 86:7
  89:1 101:17 109:2
contents 52:7 56:7
context 98:11 130:18
  139:24
continue 43:14 44:5
  59:24 82:23 87:9
continued 4:1 5:1 7:1
continuing 110:8,14
continuously 19:11
contract 42:15
contrary 112:11
contribute 31:21
contributed 24:10,14
  26:16 31:22
controversy 42:24
conversant 48:5
conversation 89:21

conversationally
  11:16
conversations 8:20
  107:9,14
convey 109:4 140:18
  145:15
conveyance 29:23
conveying 131:11
conveys 76:4
copies 45:9 92:18
copy 14:3 48:19
  49:24 61:24 66:21
  88:24 91:24 92:7,15
  92:21 104:11
corp 93:23 94:13
  95:11
corporate 14:9,10
  46:21 47:1,4,9,13
  78:2,5 80:3,6 96:22
  96:23 98:2,5,19
  99:2,9 100:1,6,17
  104:6,9,15 106:6
  112:13,20 113:1,3,6
  113:7,17 114:2
  116:4,8 126:18
  138:3 144:20 145:2
corporation 58:9,11
  58:12 59:4,6 77:24
  78:7 95:16 96:11,13
  97:18,19 104:12
  123:23
correct 9:15 10:7,8
  30:19,24 46:24 68:9
  88:17 99:5 103:20
  105:18 106:22
  107:18 116:5,6,10
  116:17 121:15
  129:18 144:18
  145:8
correctly 88:16
  103:23
correctness 109:3
cost 143:20
couldnt 14:8

counsel 8:9,25 9:18
  20:10 21:5 32:14
  43:8 44:18,22,22,25
  45:8,11,19 47:25
  48:14,14 64:9 77:14
  94:13,15 115:3
  126:16
country 141:8,9
couple 10:21 67:3
  88:2 117:22
course 86:20
court 1:1 2:1 8:7,14
  24:10,11,15 38:1,4
  38:13,13 43:21,23
  43:25 44:2 48:2
  59:21 114:5 117:6
  139:10,19
cover 32:15 35:10
covered 122:21
covers 35:5
cox 1:16 2:16 6:3,13
  8:6 9:21 10:5,6 44:7
  60:1,22 67:4 69:22
  71:17 82:18,22,25
  86:23 87:13 93:3
  99:21 101:19 118:7
  119:9 123:16
  144:17 145:25
  146:2
create 33:8
crestar 123:20,21
crisis 10:22 27:15
csr 1:22 147:25
current 31:18 60:16
  119:1,5,21,22
currently 10:9 19:1
  21:22 32:2 121:10
cv 32:3 38:2,15 39:5
  88:11,18

        **D**
d 4:7
daily 86:5
damages 125:10
date 61:19,20 63:16

63:20 66:16 68:16
  69:5 70:10 147:15
dated 62:22 63:14
  66:14 147:18
david 4:6 9:2
day 124:3
days 48:13
deal 110:2
dealing 22:4 28:18
  49:19 73:24
deals 17:24
dealt 21:16 26:22
deborah 1:4 2:4 6:19
  8:13 9:13 20:4
debts 28:8
december 49:9
decided 111:6
decisions 139:10
declaration 6:14
  46:15 114:16
  115:18
declined 35:7
deed 30:15 42:12,14
  50:10,24 52:20
  61:11 74:17,23 75:3
  76:1,5 81:8,10
  82:10 128:7,10,17
  128:23 129:23
  138:22 139:2,4,12
  139:24,25 140:3
  142:12 145:11,15
  145:20
deeds 50:4 143:9,15
deemed 80:11
default 25:11 28:12
  29:6 50:17 52:2,7
  52:15 54:4,7 56:21
  57:1,5,11,18,22
  81:5 82:5
defendant 2:17 4:3
  5:3 8:9 9:3,5,6,11
  39:3
defendants 1:13 2:13
  4:14 13:23 27:23

125:11 126:6,12
defense 18:19 31:8
defenses 39:9
define 91:5,8
defined 50:24 93:25
defines 17:19
definitely 87:21
degree 98:8
delaware 106:9
delegate 112:9
delineated 98:23
deliver 82:9
delivered 16:3 18:22
demand 28:13
demanding 28:16
department 12:2
  51:13
depend 129:9
deponent 16:10,11,12
  16:12 90:16
deposition 1:16 2:16
  6:12 8:6,10 10:12
  10:19 11:3 12:17,21
  15:2 16:7,9,10
  34:14 43:21,23,25
  44:2,10 52:19 55:17
  59:21 74:10,13
  82:17,22 90:15
  91:24 92:5 93:6,9
  94:3 99:16 101:5,11
  102:6 105:24
  116:20 117:6 118:7
  120:13,25 121:17
  136:15,19 144:2
  146:2
depositions 11:4 13:4
  35:25 106:17
derive 142:10
describe 11:15 47:23
  49:4 50:19 51:2,5
  128:5 132:5,19
  133:7,17
described 86:9,10
  89:1,2,7 99:9,24

134:5
describes 45:15
description 6:11
  12:20 25:9 89:4
designated 10:23
  11:6 13:18 18:11,18
  32:8 35:14,17 36:6
  36:10 76:18 115:15
designation 11:11
  32:12,22 33:1 71:2
determine 113:21
  131:16 132:15
  133:1 134:17
  140:13 141:13
  142:2
determined 142:1
determining 34:17
  132:11
developed 12:2 30:25
didnt 12:11 27:21
  36:3 56:23 62:16
  65:18 66:13 68:24
  68:25 69:11 71:16
  86:2 101:11,13,16
  105:2 108:23 109:3
  112:22 122:4
  131:11 141:3,4,4
different 22:8 29:10
  60:21 62:14 92:5
  98:7 100:7 101:19
  134:8,12,15 136:20
dig 101:10 117:25
  120:4 121:4
digging 104:6
direct 117:10 137:20
directing 128:4 129:3
  134:21
direction 147:10
directly 110:1
directors 104:12,18
  106:9 112:9,16
disagree 42:8 51:17
  57:13 65:18 69:24
  69:25

disciplined 19:14
discuss 61:11
discussed 15:22
  40:25
discussing 137:21
discussion 14:10
  31:13 59:20 117:8
  123:12
dispute 42:2 65:10
  81:6
disqualified 36:7
distinction 58:3
  84:16
district 1:1,2 2:1,2
  8:14,15
document 14:12,16
  14:23 16:18 33:8,20
  33:24 34:9,21 44:8
  44:14,15 45:5 46:9
  46:10,12 47:18 48:7
  48:10 49:2,21 53:1
  58:8,20 59:10 60:3
  60:12 61:13,16,20
  61:21 62:8,17,24
  63:14,20 64:5 65:11
  65:21 66:9,14,24
  68:8,25 69:6,11,20
  69:23 70:1,2,11,13
  70:20 71:7 74:19,24
  75:4,14 76:3 78:16
  78:19,22 79:2,4,10
  80:4,13 81:15,25
  82:3,6 91:3,4 95:20
  96:18 109:2,4,10
  113:22 114:5,23
  115:1,1,4,12,16,17
  122:2 129:9,14,18
  130:19 131:10
  134:25,25 135:4
  136:17 138:2,6
  139:6 140:1,2,9
  145:5,12
documents 6:14 14:2
  16:14,15,17 37:12

39:23 43:16 44:15
  45:10 56:5,7,10,16
  57:4,4,9 60:2 63:9
  63:21 70:7 73:24
  74:21 78:15 85:1
  86:6,8,17 101:17
  104:14,21 105:10
  105:11,13,18,24
  106:2,4,4,7,10,12
  107:2 108:23 109:1
  112:23 113:13
  125:21 126:15
  134:5
doesnt 32:11 63:5
  119:8,18,25 138:10
  144:24
doing 21:17 34:10
  81:2 123:1 137:3,11
  137:12
dont 11:21 12:7,24,25
  13:1,7 14:4 15:3
  16:25 17:24 22:21
  24:7,17,23 26:19
  31:11 32:1 37:13
  40:1,5 41:3,3,4
  42:17,25 45:14
  46:16,20 49:17
  50:19 51:4,17,19
  53:20,21 54:15 55:8
  56:4 57:15 58:25
  60:20 61:5,8 63:13
  65:23,24 66:11 67:3
  67:9 69:18 70:19
  71:7 74:10 76:11,11
  78:5,20 79:1 80:5
  80:12,17 81:21
  84:17,19 86:23 89:8
  89:11,23 92:2,20,20
  93:4 98:8 100:4
  101:9 105:3 106:7
  106:20,23 107:1,16
  108:6,12 109:12,24
  111:12,20 113:1,20
  114:8,14,19 115:1

115:16 118:11
  121:14 122:22
  124:22 126:21
  127:24 128:14
  130:4,25 131:1,6,9
  131:20 132:22,24
  133:16,25 135:10
  135:11,12,16,18,20
  135:24 136:22
  139:8 141:6,8
  142:19 143:2,4,12
  144:10
doubt 63:6 70:21,22
  70:24
downloaded 46:18
  114:9
draft 6:23 15:4 45:7
  55:23
drafted 24:9,14
drafting 29:6 30:21
drafts 45:9
dramatically 73:7,17
draw 58:3
dreidy 4:11
dubious 83:11,20
  84:3 85:6,10,11
  103:16,22 104:2
  105:9 107:4,5,8,21
  108:18 109:10
  111:9,14,24 112:5
  112:12 116:12,14
  117:20
due 43:4 72:9,12
  138:8,9
dug 14:12
duly 104:11 147:7
dumas 16:13
duties 95:25 99:9
duty 75:16,18,20 96:3
  96:11

          E

e 4:19
earlier 34:19 45:14
  66:23 71:18 98:17

99:1 122:13 140:1
  140:16
easier 103:11
education 137:1
edward 9:16
effect 60:21 61:3,6
effective 60:13
effectively 26:8
effort 31:17 109:1
  113:21
efforts 55:20
efrohlich 5:11
either 18:22 20:13
  35:25 36:5 56:6
  94:17 130:4,25
  143:13
election 82:5
electronic 1:10 2:10
  5:3 6:15 23:5 37:5
  46:15 80:2 93:22
  94:5 114:6 115:19
elizabeth 5:7 9:10
  127:20,23
elses 142:10
emc 8:16
empirical 132:6,14
  132:20 133:1,5,12
  133:24
employee 76:15 77:8
  77:21 91:19 108:25
  147:13
employees 14:12
  93:20 94:7
ended 21:17
ends 135:7
engaged 126:23
  127:9 143:13
engagement 45:15
engaging 127:2
enters 99:13
entirely 26:12,24
  27:16 79:24
entirety 83:8
entities 81:22 86:7

93:22 94:17
entitled 53:24 64:25
  81:23 82:13 102:11
  106:1
entity 21:20 33:20,25
  34:11 94:7 95:12
  96:6 123:19
entries 67:23
equal 115:12
equation 145:10
equity 29:24
error 141:25
esq 3:6,13 4:6,7,19
  5:7
estate 26:23 49:19
  98:3 100:17
estimated 143:18
et 8:14 13:19
evaluating 33:24 34:2
  125:13
evaluation 56:23,24
  57:3
event 22:1 82:4
everybodys 98:7
evidence 57:20,25
  58:4,5,7 59:2 71:17
  72:10,14,20 80:6,15
  85:3 114:5 135:2,7
  135:9
evidencing 125:21
evolve 33:1
exact 99:2
exactly 81:1 119:25
  120:8,22 121:14
examination 6:2 9:19
  10:1 87:11 123:14
  144:15
examined 9:22
example 27:11 74:15
  96:8
exception 45:7
excerpt 6:23
exchange 30:9
excluded 12:14

excuse 67:8
execute 67:1 82:1,3
  83:25 85:1 96:17
  109:10 113:12
executed 63:10 95:20
  122:3 139:15 140:2
execution 73:24
exercise 101:15
exhibit 6:12,14,14,16
  6:19,21,23 7:4,5
  43:21,23,25 44:2,8
  48:8,20 49:22 52:19
  52:23 55:9 59:21
  60:4 61:25 62:3
  70:14 73:16 80:1
  98:18,18,22 104:10
  115:15 117:6 124:7
  128:4,12,15 129:4
  129:24 130:2,15,23
  131:18 132:4,8,11
  132:16,21 133:3
  134:3,22 135:5
  137:21,24 138:16
  139:13,15,15 140:9
  140:10,13 141:21
  141:22 144:17
exhibits 6:10 7:2
  43:16 122:23
exists 72:18 114:19
experience 25:24
  73:9 127:1 129:8
  137:4,10,13
expert 6:19 10:23
  11:7 12:15 13:18
  14:18 15:23 18:11
  32:9 35:14,17 36:7
  36:10 40:15 41:25
  55:3,6 72:24 73:3
  73:13 97:25 100:10
  127:3,5 143:14
expertise 98:4 100:14
explain 37:2 50:12
explained 32:18
  140:15

explanation 41:25
expose 55:16
express 65:7 71:1,11
  71:22 84:24 124:8
  124:11 125:3,6,9
expressed 14:6 15:17
  18:24 47:19 71:25
  125:15
expressing 65:8
  71:24
extensive 47:3
extent 26:22 63:4
  71:5 79:3 86:8,18
  100:19 107:13
  127:4

F

f 1:22 2:21 147:24
face 80:13
fact 11:20 72:9,13
  76:9 77:19 119:10
  134:20 138:1,5
  139:16 141:12
factors 32:25 111:23
facts 57:15,15 71:5,9
  71:10,15 85:3 89:6
  102:1 129:10
  131:25 132:23
  133:9,20 134:6,7
  136:19,23 137:19
factual 74:14 111:17
  111:21 117:19
fails 28:11
fair 13:3 22:7 26:21
  29:16 85:25 86:1
  89:23 129:25 130:3
  132:25 133:4
faith 53:24 96:12
  112:19
false 56:6,8 112:16
familiar 30:14,16,17
  31:2 105:13 106:12
  130:8,17
familiarity 31:1
family 86:16,20

143:25
far 12:13 36:9 42:16
  46:5,13,21 56:20
  89:6 94:4 138:18
  143:19
fargo 1:7 2:7 4:14 9:7
  16:10 23:12 124:15
  124:20,23 126:2
favor 14:11
fdic 10:21 11:4,9 12:1
  28:13 35:13
federal 24:11 43:4
  115:19,21,23
feel 35:10 118:6
feeling 98:12,16 99:8
felt 34:17
fiduciary 51:16
filed 25:11
files 14:13 85:15,15
finally 124:25
financially 8:23
  147:12
find 14:8,9 102:6
  121:22
finder 134:20 141:12
fine 23:9 67:10
finish 103:1
finished 99:17 144:1
firm 3:5,12 9:13 21:8
first 14:16 19:8,19
  31:2 40:22 49:14
  57:12 65:9 68:1
  73:14 74:7 77:1,18
  83:1,7 88:19 91:14
  104:1 108:22
  117:10 118:16
  122:12 135:3
fit 113:22
five 31:4 37:20,22
  40:24 50:20 90:6
  100:18 105:15
  107:13 143:4
fiveminute 43:8
fleet 22:19,23

floor 3:14
flor 16:11
focus 22:11 32:23
   34:20
focused 27:6,16 63:8
   74:1,3 86:17 100:18
foerster 4:18
folks 143:7,11
follow 31:9,14
followed 33:9
following 50:20
follows 9:23 53:12
   94:20 95:3 118:19
   120:20
followsups 129:7
followup 88:3 144:12
force 55:21
foreclose 81:11
foreclosure 6:17
   11:19,21 22:5,11
   24:6,22,24 25:2,5,7
   25:14,25 26:3,9
   27:14,25 28:22 29:3
   29:15 31:3,7,18
   35:21,22,24 36:14
   36:18 38:3,8,22,25
   39:9,24 40:3,8,13
   40:16,20 41:16 42:6
   42:11,19 43:3 49:8
   51:10,15,22,23
   52:11,16 53:7,9,14
   53:17,23 54:5,11,12
   54:18 55:16,21
   56:10 63:8 78:24
   80:24 81:24 82:12
   83:12 85:15,17
   100:19 126:8
foreclosurerelated
   32:5
foreclosures 26:1,22
   27:9,17 28:19 35:20
   39:13 41:21 50:3
   110:3
foregoing 104:10

147:4,6,10
form 14:9 35:23
   47:15,19,22 57:10
   98:19 99:2
formally 126:23
formulated 34:3
forth 45:12 91:10
   147:5
forum 31:13
fourth 3:14
framework 40:19,23
   41:20
francisco 1:17 2:19
   3:8,15 4:9,21 5:9
   8:1,12
free 118:6
frequently 38:3
friend 24:15
frohlich 5:7 6:5,7
   9:10,10 67:7,9
   87:12,21 88:1 92:15
   92:22,24 94:18
   95:17 96:2,24 98:25
   99:18,20 102:3,18
   102:22 103:5 105:5
   109:19 110:11,16
   110:21 113:4 115:6
   115:9,13 117:4,9
   118:8,12,13,17,22
   120:12,18 121:5
   123:4,9 144:12,16
   145:22
front 46:14 60:3 70:1
fulfill 95:25 113:14
   113:23
full 10:3 14:4
function 100:1
functioning 98:2,6
functions 30:22
further 85:13 86:24
   144:10 145:22,24
   147:12

G

general 12:20 25:8

78:5 94:13 98:12
   99:25 106:12 141:7
   141:9
generally 30:17 31:19
   35:5 56:4 122:14
generated 69:6
gentleman 68:21
getting 124:2 129:19
give 12:20 13:16
   14:15 25:8 27:11
   33:5 35:3,6,7,25
   73:1 82:7 91:6
   92:19 104:7 107:15
   121:22 135:11
   143:5
given 14:24 77:9
   97:11 99:7 108:4
   112:18 113:10
   132:23 133:8,20
   147:11
gmac 55:18,21
gmail 3:10
go 8:19 12:11 13:7
   20:22 28:11 31:10
   43:17 58:18,22
   59:16 66:8 82:15
   87:3,22 88:2 93:4
   94:2 101:10 102:16
   102:20,22 103:15
   109:25 118:7 123:7
   123:11 134:4
goes 25:11 54:7 93:1
   108:3
going 10:16 12:22
   13:2,2 20:22 23:8
   43:10,15 52:18
   59:18 65:1 66:1,6
   67:10 69:3 79:15
   86:25 87:5,13
   102:25 103:1
   122:17 141:23
good 8:4 10:3 43:7
   53:24 87:13 96:12
   112:19

goodell 3:5,6 20:11
   32:18 99:13,15
goodelllawfirm 3:10
governance 96:22
governed 52:7
governing 52:11
government 17:6,23
governmental 21:19
granted 37:6 99:10
   100:11
granting 104:16
grants 76:4
great 100:19 121:24
   122:10
greater 115:12
ground 13:8 103:22
guaranteed 28:8
guarantees 28:9
guess 10:16 12:24
   15:6 34:8 51:9
   67:13 84:15 92:3
   95:9 98:7 129:19
guesswork 12:22

H

hac 23:20,25
hadnt 60:19 76:10
   112:2
halfway 55:12
halt 55:21
hand 52:18
handed 15:4 16:19
   60:1 61:24
handle 38:21
handled 23:21
handling 50:16
handwriting 72:23
   73:2,4,10,11,14
happened 86:18
happening 31:14,18
harm 86:16
harvard 87:15
havent 15:21 45:3
   46:5 81:7 123:2,2
health 21:16

heard 86:16
hearing 110:11
hed 92:16
held 8:10 20:19 81:13
109:21
helped 55:14,16
hes 94:13
hold 20:16
holding 66:25
holdings 93:23 94:14
95:11 111:2
holds 37:6
home 143:25
homeowner 38:23
136:3
homeowners 27:22
136:1
homes 28:10 38:15
honestly 34:10
hope 13:9
hour 45:21
hourly 45:20
housekeeping 60:2
hultman 47:16 104:8
104:9,13,16 105:21
106:5,15,18 112:9
112:13
humor 108:5 132:18
hundreds 109:17
112:12
hyle 16:11

I

id 90:20 103:14 136:7
idea 99:2 101:17
142:16,18 143:3
identification 112:3
identified 32:8 52:20
77:5 86:13 97:16
111:19
identify 9:1 109:1
110:19,25 132:25
133:12
identifying 90:21
ill 14:9 17:18,18

44:18 91:13,15,15
99:18 100:8
illegal 140:25
im 10:16 11:21 12:16
13:8,10 19:23,24
20:22 23:8 24:8,16
25:18 26:7,7,14
29:1 30:16,17 31:3
33:14,22 34:4,13
35:1 44:21,22 45:4
48:6 51:22,24 52:2
52:18 57:5 59:6
60:24 61:17,22 63:8
63:10,13,13,22,25
65:1,6,25 67:10,12
67:13,14 68:13,13
68:16 71:20 76:24
77:1 79:9 81:1
84:13 89:13,16,20
91:16 93:24 99:11
99:18 100:4,7,7
102:25 103:1,20
104:5 105:13 106:3
106:11 110:22,25
118:1 122:9 123:16
125:2 132:24
139:13
implication 59:14
improper 55:21
56:21 83:11
improprieties 83:16
85:22
inaccurate 138:15,17
inactive 19:5,22
inappropriate 77:23
78:1
include 83:4 138:5
including 47:21
incorporation 106:8
independent 54:12
63:7 82:11 111:14
index 6:1 7:1
indicates 65:22
individual 17:16

33:19,25 34:9,14
84:25 129:8,10,13
144:20 145:2
individuals 113:9
129:17
influence 129:13
information 46:25
54:7,8,13 65:21
74:14 89:19 95:24
108:4 134:24
136:16
informed 107:14
inhouse 21:5
initially 31:20
initiate 78:24
initiated 83:12
initiating 54:17
injured 86:20
injuring 86:10
inquiry 38:11
insofar 131:25
instance 112:21
instructions 95:24
101:14
instrument 139:17
instruments 51:8
intend 17:21 54:25
73:1,3
intended 17:9 71:19
intention 46:3
interest 30:6 37:6
59:14 74:20,25 75:5
76:1,5 79:4 84:11
84:22,24 103:20
109:5 116:17
117:13,15,24 119:2
119:3,6,7,11,15,18
119:22,24 120:5
121:7,10,18 122:1
122:14 128:7,10,16
128:22 131:11
138:7,8,8,10 140:18
140:21 142:21
interested 8:23

147:13
interests 77:12 101:3
interference 8:21
interpret 137:5
interpreting 69:5
137:10
interrupt 118:12
interrupted 118:13
118:15,16
interruption 99:12
intervention 25:12
introduction 49:15
invalid 140:10,18
145:5
investigate 54:13
131:2
investigated 129:1
investigation 111:15
132:7 134:2
invited 49:10
invoke 81:17
involve 50:4
involved 12:6,8 22:4
28:24 29:5,6,8,25
30:1 47:25 48:2,3
involvement 50:15
involving 10:21 11:4
42:7 46:19
isnt 66:16
issue 24:21 38:5,6,9
38:12 50:3 52:15,21
56:25 58:18 59:7
60:20 71:22 74:1,18
79:19 81:9 83:18
106:24 145:10,18
issued 56:21 71:18
issues 18:24 21:16
22:5,12 24:4 27:8
27:12 32:5 36:17,21
37:16,19,24 38:2
73:2,11 86:13
issuing 89:5,22
ive 14:10 32:4 40:24
47:13,14 48:3,4

50:20 53:2 61:12,24
63:1 71:25 81:2
86:16 90:3,5 91:10
91:12 100:16 102:1
104:8,13,14 106:17
107:12 108:4,12
109:18,25 110:2
111:25 122:12,12
122:18 124:6,16
125:15 130:16
132:9,12,17,23
133:8,9,20 134:5
136:2 137:3 139:10
140:15 142:16,22

**J**

james 3:13
january 6:18 60:13
61:7
jeburpa 49:15
jeffery 55:19
jersey 35:16,21
jim 9:12 14:8 65:23
102:15 115:7
job 1:23 101:16
john 4:7 9:4 16:10
92:12 145:23
joint 38:19
jon 9:16
journal 16:8 67:24
142:7
journals 72:10,13,15
jpingel 4:12
jsturdevant 3:17
judge 9:15 16:6
134:14 141:23
judgment 133:18
judicial 25:2,5,12,14
25:16 26:9 27:22
28:19 35:21,23 38:8
38:25 40:2 51:22
jumps 109:23
june 1:18 2:20 8:1,5
16:7 32:23 61:20,21
61:22 62:11,19,22

62:24,25 63:9,10,11
63:11,14,16,18,20
64:6 65:11,12 66:10
66:15 67:2 68:3,4,8
68:8,19,19 69:5,6,8
69:14,14 70:1 122:3
141:14 142:3
jurat 34:20,22,22
jury 134:11 141:23

**K**

k 104:14 106:23
kept 72:8,15
kind 31:25 32:2,12
33:12
kinds 37:24 50:17
110:4
kleine 4:19 6:6 9:6,6
92:20 123:5,8,15
131:13,15 133:22
141:16,18 144:10
145:25
knew 34:9 40:5 66:12
70:23 101:21
112:25
know 12:13,25 13:1
17:24 20:3,8 30:21
33:14 34:4 35:20
37:13 40:6 41:15
42:16,17 46:16,20
46:21 47:11 50:19
51:19,20 53:20 55:8
56:20 57:16 60:20
61:5 68:20,24,25
70:19 72:14,17 79:1
80:17 81:1,21 84:17
90:2,10,12 93:19
98:8 102:12 106:1,7
106:20 107:16
108:6,12 109:3
114:14 115:21,25
116:3 123:25 124:4
125:18 127:12,15
127:18,21,24
128:14 130:25

131:1,6 132:24
133:25 135:10,12
135:16,18,20 143:2
143:20 144:8
knowing 86:7,8
knowledge 47:20,21
47:23 50:18 56:6
74:13 75:8,22 77:24
78:8,11,21 83:15
85:21 97:1,6 98:2,3
98:5,7 104:15,17
128:24 130:4
knowledgeable 48:5
knows 78:8 101:4,6
102:7 103:8

**L**

l 10:21
lacked 133:13 134:3
laid 112:1
language 47:12
lastly 49:20
late 27:16 124:3
law 3:5,12 9:13 17:24
19:2 20:16 21:10,14
21:22 29:13 31:24
32:1 49:6,7,7,18,19
54:20 78:2,5,5
81:18 87:15 96:8,10
96:15,25 97:2,3,6
107:25 108:1
109:11 110:6 116:8
127:1 141:5,7,7,9
laws 131:2
lawyer 13:4 22:2 29:3
127:17 137:5
lawyers 31:8 38:20
38:24 39:8,12,22
107:12
leads 144:23
learned 50:20
led 111:22
leet 5:14 8:7
left 21:13 112:18
143:25

legal 8:8 20:24 22:9
38:19 42:23 109:11
lender 29:23 30:3,7
38:7 50:13 54:9,14
80:5 81:17,20 82:9
123:25 138:24
139:5,24
lenders 22:14 81:16
82:5
lent 50:13
letcher 127:23
letter 45:15 49:15
letters 31:12
levitin 18:11,21 90:2
90:3
levitins 108:9
lewis 5:6 9:11
lexis 61:1
liability 53:8,15
124:12,23 125:7
license 19:4,22 20:16
licensed 10:9 19:2,8
19:11,19,25
licenses 20:17,20
limited 50:25 55:18
limits 43:4
line 49:14 67:14
93:15 97:16 118:3
118:24 120:16
121:25 122:11
lines 93:7,13 116:24
121:1
list 14:1,4 91:8 108:9
listed 14:25 15:22
16:5 78:19 113:9
lists 32:14 38:15
116:4
listserv 31:7,9 88:16
143:7,11
listservs 39:19,20
50:21
literature 107:21,23
108:15
litigate 24:4 27:8

litigated 36:17,21
  37:16,19,25 48:1
litigating 27:12
litigation 12:2,6
  23:17 28:3 39:10
  46:19
little 92:5
llp 4:5,18 5:6 8:11
loan 27:15 28:4,11
  52:21,21 80:22 81:6
  81:9 85:15 113:16
  117:25 119:2,6,7,24
  121:10 124:1,5,18
  125:19,22 138:23
  139:3
loans 27:20,25 28:11
  28:14,16 29:15
  77:13
long 10:15
longer 9:15
look 44:7 46:9 48:7
  49:21 58:13 60:11
  62:1 66:24 70:13
  73:14,15 74:6,6
  82:25 102:6 118:2
  134:4
looked 14:20 15:6,24
  16:1,24 61:1 105:14
  108:9,12
looking 33:7 34:7,8
  34:13 61:2 62:2
  67:12,14 77:1,18
  93:8 103:3 139:13
  144:17
looks 46:17 50:1
  67:20
lose 84:20
lost 84:17 95:1
lot 28:7,8 31:9 89:1
  98:19 101:10 129:5
loyalty 96:11 112:19
lunch 43:12

**M**

m 2:19,20 8:2,5 82:18

82:21 146:2,4
machine 147:8
main 38:6
maine 10:10 13:11
  19:2,6,9,12,14
  24:25 25:5,15,18,20
  25:25 26:2,3,8
  27:13,21 28:18 29:4
  29:17,20,22 30:18
  35:19 38:1,4,20
  39:1 48:1
majority 27:5
manner 47:21
march 88:21,22
  127:7
maritime 17:24
mark 43:15
marked 7:2 43:21,23
  43:25 44:2,8 46:10
  48:8,20 49:21 52:19
  52:23 59:21 60:4,12
  61:25 62:3 70:14
  117:4,6
market 4:20 5:8
marks 82:16,21
  135:15
martin 18:17
massachusetts 10:11
  13:11 19:2,4,20
  25:1,2,8,13 26:11
  26:16 29:9,12
master 124:16
match 119:25 121:14
mater 87:17,24
material 18:24
materials 14:5 15:21
  16:4 50:22 108:9
matter 11:10,19,20
  11:23 46:19 52:4
  78:5 96:22 126:23
  127:10 140:8 141:6
  141:7 144:1
matters 11:17 100:19
mcguinn 18:18,21

90:10
mean 23:3,23 33:17
  33:18 36:24 39:14
  51:6 56:1 91:6
  114:14,15 119:20
  126:24 127:2
  133:23 135:3
  136:13 137:13
  140:17,24,24,25
means 33:23 37:3
  55:8 59:3 84:5
meant 60:9 137:16
mechanism 26:1
  79:19
media 82:17,22
meet 90:4
members 113:14,24
membership 106:11
memorandum 6:16
  49:6,11
memory 11:22 17:12
  29:5 35:5 49:19
  61:1 62:13,15,16
  63:7 78:13,17
  101:11 104:4 120:4
  124:2 139:25
mention 80:4 144:24
  145:1
mentioned 39:20
  45:14 90:14 97:15
merits 125:13
mers 9:11 14:9,11,23
  16:11,18 22:25 23:2
  23:8 30:10,12 36:22
  36:25 37:9,9,12,14
  37:16 38:2,6 46:19
  47:3,5,13,20,24
  48:3,4,5 58:20
  59:11,14 75:8,13,15
  75:20,21,22 76:9,10
  76:16,19 77:6,8,10
  77:21 78:16,19
  79:23 80:6 83:10
  84:1,8,10,14,22,23

85:1,6,9 88:5,10,14
  90:15,22 91:2,20
  93:17,19,21,23,24
  94:1,4,10,12,13,15
  94:17,24 95:7,11,12
  95:14,19 96:1,16,17
  97:12 98:11,19,21
  100:20 101:7,13,15
  101:18,21 102:8
  103:8,17,19 104:3,5
  104:15,16,18
  105:11 106:6,6,9,10
  106:10 107:13,25
  108:23,24 109:5,14
  109:16,18,21,21
  110:1,3,6,10 112:9
  112:12,18,20,23,24
  113:18 114:10
  115:3,4 116:16
  117:12,13,24 119:3
  119:6,10,15,17
  120:5 121:6,9,18
  122:1,13,19 128:8
  131:11 138:3,6,9,23
  139:3,8,16,18
  140:21 144:19
  145:7,15
met 20:6 90:3,5
methodically 105:7
methodologies 142:1
methodology 132:2,5
  140:13
methods 142:5
microphones 8:19
middle 72:2 127:7
mind 77:19 109:23
  110:24 127:23
ministerial 30:22
  51:3,9
minute 102:5
minutes 67:4 87:4
  117:22
mischaracterizes
  96:20 98:15 120:15

miscited 17:4
misgivings 79:22
misquoted 77:15
misstates 66:4 96:20
 115:10 131:7
misstating 66:2
misunderstanding
 89:13
mix 30:11
mmhmm 108:11
mofo 4:23
moment 60:11 67:17
 138:13 139:12
moments 105:12
monday 1:18 2:20 8:1
money 50:13,15
 138:8,11
montgomery 3:7
morgan 5:6 9:10
morganlewis 5:11
morning 8:4 10:3
 15:7,8,16 48:20
 50:21 66:19,23 67:5
 68:1
morrison 4:18
mortgage 1:6,9 2:6,9
 4:14 5:3 6:15,17
 8:13 9:7 23:5 24:5
 26:18 29:19,23 30:5
 32:24 37:4 46:15
 49:8 52:21 55:1
 56:10 80:2 93:22
 94:5 113:16 114:6
 115:18 119:18
mortgagerelated
 36:6
mortgages 26:7,8
 27:6 28:9 37:6 40:4
 40:9 50:3,6 55:18
mortgagor 29:25
motion 12:15
move 13:2,2 131:13
multiple 86:6,7

## N

n 1:7,11 2:7,11 4:3,15
 9:7
nail 103:3
name 8:7 10:3 24:17
 31:8 37:4 38:6
 59:12 74:9 127:14
 127:15,18,22
 145:16 147:16
named 38:7 80:9
names 111:1
naming 115:4
national 1:8 2:8 4:15
 9:8 39:20 123:23
nationally 39:8
nature 29:20
necessary 78:24
 113:14,23
need 13.7 51:21
 54:21,23 65:23,24
 67:9 92:20
needs 54:18
neither 83:15 85:21
 147:12
nelson 3:6 20:11
 99:15
never 74:16 76:15
 77:7,20 91:19 98:15
 116:17 117:13
 119:10,15,15 121:6
 121:18
new 35:16,21 109:24
nominee 37:9 38:7
 80:5,7 138:4,24
 139:4 144:21,25
 145:16
nonjudicial 25:10,18
 25:25 26:3,12 28:19
 28:22 29:3 31:2
 35:22 36:14,18
 39:13,24 40:3,8,12
 40:16,19 41:16,20
 42:6,10,19 43:3
 50:3 51:23 52:16
 53:8,16,23 54:5,11

81:24 82:12
northern 1:2 2:2 8:15
notaries 15:25 16:21
 41:10,13
notarization 61:20
notarizations 56:8
 73:25
notary 15:11 16:8,15
 17:16,17 33:21 34:1
 34:13,21,23 63:15
 66:13,15 67:1 68:2
 68:17 69:14,22 70:9
 70:20 72:10,13,15
 73:15 138:18,19
notarys 66:19 67:24
note 8:17 30:2 44:18
 54:19,22 59:13,15
 74:17,23 75:3 76:1
 76:6 84:11,12,22
 97:10 103:20 109:4
 109:5 116:17
 117:14,15 119:11
 119:16,25 120:7
 121:7,19 122:2
 128:7 131:11 138:7
 140:19,22 142:21
 145:6,6,9
noted 146:4
notes 119:19 120:6
 122:14,16 126:5,8
 138:10,11
notice 6:12 25:10
 44:10,14 45:1 52:2
 52:7,15 54:4,7
 56:20,25 57:5,11,17
 57:22 82:1,4,7
noticed 60:19
notices 29:7,7 50:17
number 6:11 39:18
 48:2 60:1 70:7 91:1
 102:10 105:14,24
 107:25 119:1,5
numbers 46:17 67:14
 101:9 120:16

## O

o0o 8:3
oath 9:22 13:12 17:16
objection 41:22 42:22
 58:21 63:23 64:8,13
 65:13,20 66:4 68:10
 69:16 76:20 77:14
 83:21 85:2 95:21
 96:19 98:14 101:24
 109:15 110:9 112:6
 115:7,9,11 120:11
 120:14 131:7
 133:14
objections 44:19 45:1
 65:1,2,25
objective 132:10,14
obligated 51:7
obligation 29:21
 54:12
obligations 51:16
 55:1 113:15,24
observer 49:13
occasion 27:8
occasionally 31:23
occur 51:23
occurred 68:18
occurrence 82:1,4
occurs 42:11
offer 54:25 73:3,13
 88:9 100:15,22
 124:19,22 140:7
 144:8
offered 88:10
offering 90:21 94:8
 94:21 95:4 97:13,21
 100:10 104:24
office 21:10 22:3
officer 55:19 75:20
 76:16 77:8,21,23
 78:7,20 83:10 84:14
 85:5 91:19 95:14
 96:5,11,16 97:17
 103:17 104:3
officers 96:23 104:19

Page 13

oh 87:21 122:8
okay 12:17,25 13:7
  13:10 14:15,23
  16:23 17:13,23 18:3
  19:1 23:8 24:20
  26:5,15 28:15 29:14
  36:12 44:25 45:4,14
  48:24 57:17 59:1
  60:14 61:9,15 64:22
  65:15 67:19 74:1,6
  84:19 87:2 88:13
  89:15,24 90:7,12
  91:24 92:2 93:5,8
  93:11,19 94:1 97:24
  100:9 103:11,12,25
  105:8 106:25
  107:19 111:2
  115:21 116:2,11,20
  116:23 117:18
  118:4 120:7 121:16
  121:21,24 122:8,10
  123:1,3,8,18 129:21
  133:5 141:16
  145:18,22
once 22:8
ones 41:12 108:12
online 31:13
open 90:25
operating 119:18
operation 47:21,24
  95:15
operations 11:18
  12:3 48:4
operative 141:1,2
operator 8:4 9:17,25
  43:10,13,19 44:4
  59:18,23 82:16,20
  87:5,8 123:11 146:1
opinion 14:3 18:23
  33:5 35:3,6,7 42:18
  42:25 52:14 53:6,13
  53:21,22 54:10,16
  54:25 56:22 57:8,10
  62:7 65:7,8 70:16

71:1,11,22 75:12,15
75:19,25 77:22
80:18 81:8,10,13,22
82:11 84:7,24 85:4
86:12 89:5 91:1,16
91:21 94:8,22 95:5
95:13,18 96:4,21
97:13,21 98:10
100:10,13,15,22,23
101:23 103:13
104:1,24 105:8,10
105:16 106:2 107:3
107:7,19 108:2,17
109:7,9 111:8,13,18
111:22 114:22
116:12,16 117:20
119:9 120:17
125:25 126:3,9,13
128:9,16,20 129:6
130:13,21 134:19
137:7,25 140:7
opinions 14:6 15:17
34:25 47:19 73:18
73:21 79:18 81:4
86:4 88:4,9 89:22
90:21 91:6 101:23
102:12 122:19
124:8,11,19,22
125:3,6,9,15 126:16
132:23 133:8,10,20
136:6 139:19
143:14 144:7,18
opposed 50:6 68:19
oral 129:16,25 130:5
order 16:6 57:3,8,16
76:18
orders 16:6
organizational 106:7
original 54:19
ought 92:13
outcome 8:24 38:9
outside 80:7 128:15
143:11
overall 31:17

owes 75:20
owner 113:16,25
owners 28:7,10
ownership 119:2,6,7
119:22

**P**

p 2:20 82:18,21 146:2
146:4
pacer 46:17,18 114:9
page 6:2,11,24 7:3
16:5 55:12,12 61:10
67:12,13,13,14,14
67:21,22 72:1 90:25
91:14 93:6,14 101:1
101:1,9 103:3,15
114:25 115:14,15
115:18 116:24
117:3,11 118:3,24
120:16 121:1,25
122:11 129:4
pages 1:25 6:18,22
15:6 93:13 102:10
103:2,2 114:12
paid 45:20
painstaking 90:23
panels 40:11
paper 92:2,7 93:2,4
paragraph 55:13
58:13 59:7,9 61:10
61:19,22 72:2,2
74:6,8 76:13,21
77:2,18 81:15 82:25
90:25 91:14 97:10
99:6,22 101:2
103:15 113:8 117:1
117:3,11 128:5
129:3 134:21,22
135:15 136:12
140:8
paragraphs 98:23
parameters 45:22
part 16:8 18:20 22:10
23:18,20 24:8 26:25
31:17 59:8 71:2

73:21 79:18 86:17
86:19 90:23 103:21
105:10 107:8,21
108:18 111:9 113:7
116:15 117:19
119:12 120:17,17
121:2
participant 39:18
participate 31:20
participating 49:12
particular 103:7
112:21 129:14
132:2 140:12
parties 8:18 30:2 42:7
42:15 50:10 86:25
129:17,20,20
parts 16:2 103:19
party 8:22 11:7 30:20
47:25 54:17,21
114:10 115:4
147:14
pass 92:3,22
pattern 73:21,22,23
payment 28:16
peerreviewed 142:6
penal 17:10,19
penalty 114:16
pending 9:15,16
115:6 118:8
people 56:5 112:14
112:16
percent 27:4
percentage 27:2
perform 30:22 110:4
performed 111:15
116:7 144:19
performing 30:21
period 22:20
periodically 39:21
perjury 17:19 114:17
permitted 26:4 81:18
person 63:4,17 77:23
77:24 78:8,15 134:8
personal 134:18

personally 20:3,8
pertain 73:11
pertaining 41:13
peterson 108:10
phone 8:21
phrase 58:4,6 59:2
   68:11 72:12 103:21
   110:9,15 113:22
   114:1
phrased 76:12
pick 8:20
piece 65:10,17
pieces 65:9
pine 3:14 38:19
pingel 4:7 9:4,4 92:18
   123:10 145:24
place 8:18 107:17
   147:5
placed 34:21
plaintiff 1:5 2:5 3:3
   6:19 9:13 18:12
   20:3 44:22,25 45:16
   46:7 48:14 99:15
plaintiffs 20:10 27:23
   45:8,11,19,23 124:1
   124:5 125:10,14,22
   138:23
plan 144:8
please 8:17 9:1,25
   10:4 43:14 44:5
   53:11 59:24 72:6
   74:7,8 75:1 82:23
   83:8 87:9 93:14
   94:19 102:4,11,13
   104:25 117:5 118:4
   118:10,18,20,23
   120:19 126:22
   128:3 134:22
   137:20
plural 83:2 85:14
plus 112:10
point 15:23 46:20
   78:18 103:7 121:14
   121:16

policies 125:24 126:3
pooling 124:17
   125:17
portion 91:17 116:13
   145:20
portions 46:6 91:1
   121:17 132:19
portland 22:3
position 97:13
possession 54:18,21
possible 107:1 130:24
   131:9,14 134:7,10
   134:11,13,14,16
   136:18,21 141:15
possibly 43:6 141:12
postings 31:10
potential 124:12,23
   125:7
power 42:11 59:12
   80:8 81:17 110:2
   112:10
practice 19:2,8,25
   20:23,25 21:1,1,13
   21:22 22:7,8,10,11
   23:16,17 24:8 26:21
   27:6 29:10 86:10
   119:18
practiced 29:12
practices 39:10 55:22
practicing 127:1
pre 29:14
predominant 26:24
   27:1
prefer 93:3
prejudiced 86:14
prepare 126:16
prepared 6:19 14:21
   15:1 18:8,14 49:25
   65:7 71:1,11,22
   84:24 85:8 122:23
prepares 54:4
preparing 14:2,5
   15:20 18:6 53:3
   89:25 105:12

125:25 126:3,9,12
   131:3 136:9
present 8:25 124:15
presented 52:23 62:3
   74:14
president 76:9,19
   77:6,10 97:12,15
   98:13
presidents 112:10
presumably 36:3
   72:9,12,19
presume 16:14 61:5
presumption 72:22
   81:5
pretty 13:3
prevented 76:8
previous 59:1 99:25
   103:14 105:23
previously 7:2 48:21
   52:19,23 61:25 62:3
primarily 88:14
primary 25:25
principal 34:20
printed 62:24 63:9,11
   63:21 64:6 65:11,22
   66:10,12,12 68:25
   69:1
printout 116:23
prior 15:14 18:6
   23:16 24:3,13 26:21
   36:12 60:21 61:6
   66:3,5 123:20
   127:25 143:16
   147:7
private 8:20 21:1,5
   22:11 27:6 38:21,24
   42:6,7,15,17,20
pro 23:19,25 46:7
probably 13:7 19:5
   87:17 121:3
procedure 25:13 42:7
procedures 6:17 33:9
   33:11,13 49:8 96:8
   125:25 126:3

proceedings 78:25
   83:13 106:15 147:4
   147:6,8
proceeds 52:4 82:9
process 25:10,16,19
   28:24 29:1 33:8
   42:20 43:4
produce 45:12
produced 46:11
   48:21 115:4
production 6:14
professional 20:17,19
professor 18:10
   108:9
program 38:16,18
project 22:3 38:19,20
prominent 77:9
   97:11,14,22 98:1,13
promissory 74:17
   117:14 119:11,16
   119:25 121:7,19
   122:14 138:7
pronounce 74:9
proper 33:10,12,17
   33:23
properly 12:4 33:21
   33:23
properties 27:18 82:6
property 50:16 77:12
   82:9
proposition 116:25
   120:8,9,23,23
protected 43:3 53:7
   53:15
protection 136:3
provide 45:22 46:3
   126:17 127:5
   130:22 135:6,14
   143:14
provided 45:9 48:15
   48:19 54:13 66:18
   114:11,21 128:6,21
provides 81:25 82:6,8
providing 46:6

provision 41:9 58:14
  77:15
public 72:8,15 82:7
published 142:6
pull 92:3
pulled 114:3
purely 51:2
purport 78:6
purported 73:16
  74:19,24 75:4 95:14
  96:5
purportedly 122:3
purporting 33:21
  75:13 96:12 101:18
  104:7 109:4
purports 79:3,4 80:1
  97:17 138:2,6 145:6
  145:15
purpose 35:18 84:23
purposes 26:5 112:20
pursuant 42:11
put 27:1 85:10,12
  101:8 114:5 121:2,3
  131:20 133:8 138:1

**Q**

qualifications 73:10
qualified 35:10 88:9
  97:24
qualifies 100:21
  137:5
question 30:13 33:15
  33:19 39:11 45:2
  46:12 53:10,13
  58:24 64:20 65:13
  67:18,19,20 74:3
  75:1 76:11 77:16
  80:12 84:9,15,21,23
  85:3 93:13,15,16
  94:18,21 95:4 97:7
  97:20 99:17,25
  100:8 115:6,14
  118:9,10,18,20,21
  118:23 120:18,21
  122:1 132:22 133:8

135:3 137:9,12
  140:23 145:4
questionable 85:10
  85:11
questions 67:22
  86:24 87:1 88:3
  95:10 110:14,16
  123:5 133:25
  144:11,13 145:23
  145:24
quick 144:12
quickly 13:3
quite 102:9
quotation 135:6,14
quote 39:7 85:19
  94:10,24 95:7 97:11
  97:14 99:7,23
  100:12 101:3,6,21
  102:8 103:16 110:9
  113:11 116:12
  117:13 120:8,22
  134:25
quoted 76:21
quotes 56:2 120:17
  135:10
quoting 135:9

**R**

r 104:14 106:23
rate 45:20 141:25
ratification 130:18
  130:22
read 53:11,12 55:13
  67:17 68:21 72:6
  74:7 83:7 90:18
  93:12 94:18,20 95:3
  102:25 103:2
  104:13 105:4
  107:24 109:18,20
  109:25 110:24
  118:4,10,18,19,20
  118:23 120:18,20
  136:7 137:5,7,18
  139:10
reading 50:21 61:22

69:4 88:14,14 114:1
  114:2 118:25
  136:15,18,25 137:2
reads 134:22
real 26:23 49:19
  77:12 98:3 100:16
realized 87:16
really 33:3 143:4
reason 13:15 28:25
  36:7 42:2 62:18
  63:2 64:2 65:10
  86:9 102:22
reasonable 134:11
  141:12
reasonably 113:13
reasoning 111:22
  112:4
rebuttal 18:18
recall 11:5 16:23 17:1
  18:5,7,9 24:16,17
  24:23 26:17,20 31:8
  35:11 36:9 54:20
  60:22 78:20 89:8
  91:23 108:14 109:8
  131:20 138:13
receipt 138:11
received 75:8 101:14
receives 38:22
recess 43:12 82:19
  87:7
reciting 91:21
recognize 53:1
recollection 10:20
  17:14 24:20 138:15
recon 78:15 113:19
recontrust 1:11 2:11
  2:17 4:3 9:3,5 13:23
  14:11 16:11 22:16
  47:1,4 56:25 73:24
  78:14 79:5,20 80:21
  85:16 86:3,24 98:22
  108:25 113:18
record 8:5,19 9:1,14
  10:4 17:19 43:10,13

43:17,19 44:4,18
  53:12 59:16,18,20
  59:23 64:24 65:1,25
  67:7,11 69:14 71:21
  72:6,16 82:15,18,20
  83:7 87:3,5,8 92:19
  94:20 95:3 99:14
  102:5,17,18,20,23
  102:25 105:4
  110:12 117:8 118:5
  118:19 120:20
  123:10,12 138:24
  139:4,11 141:13
  146:3 147:7,11
recorded 8:6 42:16
  52:4 61:21 80:10
  143:9
recording 8:18
records 72:8
redemption 29:24
reed 4:5 8:10 9:2,4
reedsmith 4:11,12
refer 14:13 49:16
  56:4 59:9 60:9
  85:13 86:22 136:10
reference 17:10
  100:6
referenced 12:17
  41:5,9 105:19
references 49:14 83:1
referrals 38:23
referred 14:16,17
  34:18 64:17 84:21
  98:17 105:12 108:8
  136:2,3
referring 17:6 56:13
  56:16 57:5 58:7,16
  60:24 61:12,17 64:9
  64:14,20 66:17
  83:19,24 84:13
  89:16 91:16 93:24
  104:21 117:2
  129:20 139:11
refers 38:23 59:7

94:5 97:16
**reflect** 99:14
**reflected** 15:13
**refresh** 138:14
**regard** 32:7 33:4
129:7
**regarding** 11:17
15:25 16:21 39:9
74:14 88:20 94:9,22
95:5 109:13 110:6
116:12 125:18
128:6 131:3 141:20
145:19
**registration** 1:10
2:10 5:3 6:16 23:5
37:5 46:15 80:2
93:22 94:6 114:6
115:19
**regulates** 40:19
**reidy** 4:6 6:4 9:2,2
10:2 39:16 42:1
43:1,9,15 44:6,24
48:19,24,25 52:25
53:19 58:23 59:16
59:25 60:15,18 62:6
64:1,10,15,17,22,25
65:5,15,16,23 66:4
66:7 67:6 68:5,15
69:21 70:3,4,12
76:25 77:17 82:15
82:24 83:23 85:7
86:23 87:3
**reidys** 67:18
**relate** 16:15 91:2
**related** 8:22 11:23
24:22,23,25 27:25
38:2 47:1
**relates** 91:11 119:21
**relating** 11:18,19,20
27:13 32:25 88:5
104:14
**relative** 147:13
**relevant** 108:2
**reliable** 57:20,24 58:4

58:6 59:2 134:18
135:2,8
**relied** 45:11 47:20
88:23 89:11,22
92:17 112:3
**rely** 17:21 47:18
53:24 89:4 92:4
**relying** 102:7 120:1
120:10,24 121:16
**remains** 144:4
**remedies** 81:18
**remember** 11:8,12,14
12:5,8 24:18 31:11
49:17 63:5 69:11
88:25 89:12 111:2,5
**remembering** 11:13
88:16
**remind** 126:22
**report** 6:19 14:1,4,6
14:19,21,25 15:1,13
15:18,22,24 16:4
17:2,4,5 18:6,8,10
18:15,17,22,24
32:11 39:6 41:24
47:19 49:25 53:4
55:10,23 56:1 58:7
58:13 59:3,7 60:9
61:10 71:18,19 72:1
73:5 76:13 83:1
89:25 90:15,25
91:10,17 93:25
99:22 101:9,22
102:14 104:22
117:10 121:2
122:20,21 124:7
125:3,9 128:3 129:4
131:3,23,24 136:9
140:8 141:22
**reported** 1:21
**reporter** 2:22 8:7
43:22,24 44:1,3
59:22 82:2 117:7
119:4 147:2
**reports** 18:22,23 45:7

**represent** 13:22
17:18 22:16,25
23:10 115:5
**representations**
53:24
**represented** 22:14,19
28:15 123:19
**representing** 27:24
60:15
**reputation** 90:12
**request** 6:13 8:9
**requests** 44:14,15,15
44:19 45:5,10
**require** 51:8 96:9
**required** 34:15,18
39:24 52:3 57:19,24
74:23 75:3 76:17
96:23 126:15
**requirement** 17:15
**research** 36:13 38:11
111:15
**reserved** 29:24
**residential** 26:1,4,7,8
26:13,18 27:9,13,17
31:3 35:20 38:21
39:9 40:4,8 77:12
**resolution** 14:9,11
46:22 47:1,4,9
98:19,20,21 99:3,9
100:6 104:7,11,16
113:1,3,6,7,18
114:2 116:4,9
126:18
**resolutions** 47:14
104:9,15,18 106:10
112:13,15
**resources** 83:16
85:21
**respect** 34:8 86:13,18
**responses** 140:16
**responsibilities** 96:5
98:23,24 101:12,14
101:15
**responsibility** 96:7

**responsible** 95:12,15
**responsive** 45:10
**rest** 74:10 85:19
115:16
**restate** 75:1
**results** 134:1
**retained** 11:7 20:13
24:3,4 28:21
**review** 15:20 18:3,14
41:2,5,8 47:9 53:3
67:4 68:7 72:8
74:23 75:3 82:10
85:15 86:2 105:11
107:21,25 108:1
110:22 125:17,20
125:21,24 126:2,5,8
126:11 134:6 136:5
**reviewed** 14:2,5,7
15:1,14,16 16:4,13
16:18 18:10,17 41:1
41:12,17 44:12,20
44:5 60:24 62:10,23
64:18 71:17,21
90:15 105:1,24
109:13 110:5
111:23 133:9,21
134:24 135:25
136:16 139:20
143:9
**reviewing** 18:21
137:10 141:13
**right** 15:11,12 17:9
18:1 19:3 21:9 23:7
23:7 26:10 30:8,10
32:11 34:25 36:11
37:17 38:7,10 41:7
58:10 65:19 66:16
67:16 79:11,11
81:11,14,16,16 88:4
89:18 90:16 93:11
93:12 95:20 97:8
98:13 99:4 101:1
104:22,23 105:22
106:1,14,16 107:6

108:15 109:8 114:3
  114:13,23 115:2,17
  116:9,25 117:16,21
  118:2 119:23 120:2
  120:8,13,22,25
  121:12,19 123:4,9
  127:10,24 129:10
  130:6,7 131:6
  133:11 136:24
  137:6,9 138:11
  139:20 140:10
  144:21 145:9
rights 136:1
river 87:16
robosigning 55:7,17
  55:25
role 12:21 29:2 50:25
  51:2 124:14,25
  125:2
room 99:13
rough 6:23 15:4
roughly 21:24
rules 13:8 52:10 96:8
running 28:23

**S**

s 1:8 2:8 4:6,15 9:8
  10:21 23:10 75:9
  76:4 124:25 125:4,7
  126:2 128:7,11,17
  128:21
sale 25:12 28:23
  42:12 50:16 52:5,16
  81:17,24 82:8,12,13
sales 29:7
san 1:17 2:18 3:8,15
  4:9,21 5:9 8:1,12
satisfy 103:1
saving 38:15
savings 27:15,20,24
  28:4,11 29:15
saw 41:24 66:9 78:18
saying 66:16 103:6
  112:23
says 46:14 63:5 69:19

70:24 76:3,13 81:15
  81:16 82:3 85:19
  91:17 103:7 113:9
  114:25 120:3,5
  121:13 139:6
scandal 55:17
school 29:13 32:1
  87:15
scope 32:12,14,22
  35:2 78:9,11 112:25
  113:2,5
screens 38:22
second 2:18 4:8 8:11
  12:17 43:18 57:13
  59:17 65:17 87:15
  87:20 103:21,25
  116:15 121:22
  145:4
secretaries 112:11
secretary 16:14 96:1
  97:17
section 6:21 17:7
  55:23 60:24 71:4,19
  118:4 119:21
sections 118:7
secures 29:21
securing 81:9 138:23
  139:3
securitization 55:1,4
  125:22
security 29:21 30:6
  77:11 139:17
see 34:13 37:13 46:16
  66:13,15 72:3 77:2
  80:5 83:2 85:23,24
  92:25 113:8,20
seeing 54:20 63:14
  140:1
seen 14:10 40:24 45:3
  47:13,15 53:2 63:1
  67:25 74:16 78:16
  98:21 104:8,14
  106:17 110:2 116:2
  136:2 142:12,16,20

142:22
sell 82:8 141:8
seminars 32:4 48:4
sense 14:15 33:22
  35:1 51:12 106:3,13
sensitive 8:19
sent 48:12 52:3 88:24
sentence 72:3 73:5
  77:1,18 83:1,7
  85:19
sentences 74:8
separate 30:1 103:22
sequential 41:15
series 14:1 32:3 44:15
  67:22
serve 80:14
served 25:11 44:19
serves 94:14 138:23
  139:3
servicer 54:1 80:22
  81:3 113:20 124:4
  124:17
services 22:9 45:16
  46:7
servicing 113:15,24
  124:17 125:17
  126:5
session 15:14
set 91:10 147:5
seven 98:23
seviallano 16:9
sevillano 58:19 59:10
  62:11 64:18,21
  68:24 70:10,19,23
  71:6 74:11,12,16,22
  75:2,7,13 76:7,14
  77:5,20 78:10 79:23
  83:9,24 84:11,25
  86:5 91:18,25 93:10
  94:9,22 95:5 97:11
  99:7,23 100:12
  101:2,6 103:16
  104:2 105:9 112:14
  112:17 113:20

116:4 117:20 128:6
  129:6,23 130:14,22
  131:5,17 132:3,7,11
  132:15,21 133:2,13
  134:3,23
sevillanos 66:11
  68:17 85:5 93:6
  94:16 97:13 107:3,7
  107:19 108:17
  109:9 111:8,13,24
  112:22 130:1
share 92:11
shes 75:20 96:13
  97:16
shorthand 2:21 147:1
  147:9
shouldnt 87:17
show 14:3 71:5,9,15
shows 32:3
sic 141:22
side 22:12 28:15
sign 34:1 56:5 58:19
  59:5 62:19 78:15
  79:23 84:8,13
  101:18 105:9
  108:25 112:24
  129:9,14,18,23
  130:1,15,18 131:10
  131:17 132:4,8,16
  132:21 133:2 134:3
signature 63:15 67:1
  68:14,17 73:12,16
signatures 73:6
signed 16:3 33:19,25
  34:9,14 57:4,9,12
  57:12,16 62:8,11,25
  63:11,17,18 64:6
  65:11 68:3,8 69:7
  69:13,19,23 70:10
  80:1 81:9 104:8
  130:23 132:11
  136:17
significance 77:19
significant 22:10

23:18 70:21 77:11
  99:7,23 100:12,13
  100:24
signing 34:12 47:16
  55:19 58:8 59:3
  62:17 63:4,5,7
  69:11 74:4,19,24
  75:4,14 76:8 78:19
  86:6 96:16 104:7,19
  108:23 109:2,4
  112:23 113:10,21
  134:24
similar 35:19,19
  72:11,14,20 98:20
similarly 94:15
simple 96:22
simply 108:24
single 76:22 103:3
sir 97:20 141:19
sit 115:24
sitting 133:11 144:8
skip 119:1,5
slightly 101:19
sloppy 73:23
small 28:7,8,10
smith 4:5 8:10 9:2,5
sold 82:6
solutions 8:9
somebody 58:8 59:3
  69:6 74:4 78:6
  112:23 127:14
  141:8
sorry 24:23 25:18
  51:22 63:10 68:13
  76:24 79:9 89:13
  95:1 99:11 104:16
  110:22
sort 136:4
sought 126:18
sounds 92:9
source 60:23 75:18
  96:3
speak 69:3 78:4
  96:17 97:25

speaking 65:2 95:14
  122:15
speaks 91:3
spear 5:8
specialized 100:16
  137:1,10
specific 12:5,7 62:16
  77:25 78:4 88:8
  97:1 98:11 116:3,18
  129:21 141:10
specifically 11:24
  64:21 91:16 107:24
  136:10 140:23
specifics 107:15
specify 32:11
speculation 12:23
  72:21 85:25
spike 28:3
spoke 50:21
spoken 39:21 40:11
  48:3 76:10,15 77:7
  77:20 90:7 91:19
  93:16 94:10,16,23
  95:6,11,19,23
stamp 69:22,25
standard 33:12 34:2
  78:1
standards 78:2
  132:10,14
standing 114:12
stands 49:17
starm 1:9 2:9 4:16
  9:8
start 21:24 84:18,19
  87:14,25 90:20
  99:18 102:25 105:6
  128:13 129:19
started 32:22 108:22
  112:22 116:11
starting 25:24 27:13
starts 55:13
state 10:3,10 17:18
  17:20 19:15 20:1
  23:20 24:11 25:3,5

26:9 29:22 35:21,22
  35:24 42:20 43:4
  44:21 48:18 61:19
  64:25 65:25 70:10
  76:23 101:2,22
  103:15 110:17
  147:2
stated 39:5 102:2
  115:8
statement 42:6 57:14
  93:5 99:21 101:20
  101:20 103:9,10
  117:1 121:6,9,18
statements 75:14,17
  89:12
states 1:1 2:1 8:14
  16:13,14 25:22 39:5
  67:1 69:19,22 70:1
  73:5 77:4
stating 62:11 66:9
  68:2 103:23 112:14
statute 6:21 17:13,21
  34:19 52:8 60:6,8
  60:13,16 70:14,18
  71:8
statutes 15:24 16:1
  16:21,23 17:2 18:4
  41:1,8,11,15,17,19
  51:8
statutory 40:18,23
stay 31:18 67:7 102:5
staying 67:11
stephan 55:19
stepping 126:22
steps 39:24 51:21,24
  52:1
sticks 110:24
stopped 47:16
stories 136:7
straight 30:9
street 2:18 3:7,14 4:8
  4:20 5:8 8:11
strike 28:2 127:15
  131:13

study 6:16 36:14 49:6
  49:7,12
sturdevant 3:12,13
  9:12,12,13 15:4
  20:8 32:18 36:13
  39:14 41:22 42:22
  43:7 44:21 48:18
  53:10 58:21 60:11
  63:23 64:8,13,16,19
  64:23 65:13,20 66:2
  67:3,8,16 68:10
  69:16 70:2,6 76:20
  77:14 83:21 85:2
  87:19,23 88:19 89:8
  89:21 92:11 95:21
  96:19 98:14 99:14
  99:19 101:24
  102:16,20 105:3
  109:15 110:8,13,18
  112:6 115:3,8,11
  118:6,9,11,15
  120:11,14 127:9,13
  127:21 128:1 131:7
  133:14 135:12,19
  135:23 141:16,17
  144:3
sturdevantlaw 3:17
subassignment 57:12
  63:10 70:17 83:25
subject 11:10 29:24
  35:4,7
subjected 123:17
subjects 35:1
submit 49:10
submitted 35:16,18
  44:25 46:22 114:15
subpart 100:20
subscribed 147:16
subscriber 31:9
subsequent 55:20
subsequently 69:7
substance 47:12
  108:7
substantial 98:24

**substantially** 29:10
**substitute** 59:12 79:4
  80:8
**substituted** 79:20
  80:16
**substitution** 32:24
  33:4 56:13 57:6,18
  57:23 58:2 61:12,13
  61:14 62:2 70:5
  71:13 78:23 79:16
  80:10,14 86:14,19
  113:22 129:24
  131:18 138:2
  141:21 144:19
**substitutions** 142:22
  143:10,16
**subway** 87:25
**successful** 55:20
**successors** 138:25
  139:5
**suggesting** 54:20
  59:11
**suggestions** 91:7
**suing** 88:14,14
**suite** 2:18 3:7 4:8
  8:11
**sum** 20:23
**summarize** 38:5
**suntrust** 1:6 2:6 4:14
  8:13 9:7 13:19
  16:12 23:14 124:2,6
  124:9,12 125:24
  140:2 145:17
**support** 119:10,13
  121:2,17 122:23
**supported** 57:19,24
  135:1,8
**supports** 119:12
  120:16
**supposed** 101:22
**supreme** 24:11 38:1,4
  38:13 48:1
**sure** 13:8,10 19:23,24
  33:14 34:4 48:21,22

81:1 103:2 110:18
  137:15 139:2
**suspect** 11:22 46:18
  141:23
**suspended** 19:17
**suzanne** 1:22 2:21
  8:8 147:24
**swear** 17:17
**swears** 114:16
**switch** 86:25 123:9
**sworn** 9:18 147:7
**system** 25:7 30:15
  31:1,3 36:15,19,22
  36:25 37:5,9 38:23
  40:8,13,16,20 41:16
  46:19 109:14,16,21
  109:22 110:1,6,10
  114:9
**systems** 1:11 2:11 5:4
  6:16 23:5 25:22
  40:3 46:16 80:3
  93:23 94:6 114:6
  115:19

---

**T**

**table** 22:13 66:22
  114:19,24 115:24
**take** 8:18 15:3 40:5
  43:7 44:7 46:9 48:7
  49:21 60:11 62:1
  66:24 67:3,16,19
  79:19 82:25 90:24
  90:24 91:13 102:4
  102:13 113:12
  117:22 119:18
  120:5 135:12
  138:10 145:9
**taken** 2:17 10:12 13:4
  17:16 51:22 95:13
  147:4
**tale** 86:16
**talk** 26:6 29:14 32:19
  37:8 101:11,13
  103:25
**talked** 34:19 35:12

50:6 71:18 83:17
  88:7,15 103:13
  107:12 116:13
  122:18 129:5
**talking** 11:25 18:1
  24:8 26:7 31:3 47:6
  68:14,16 70:3,4,6
  79:2,12 116:11,13
  129:22 143:6,11
**tamburri** 1:4 2:4 6:20
  8:13 9:14 13:19
  20:4 52:20 56:11
  61:25 78:25 81:5
  83:4 85:14 86:14
  128:10,17
**tamburris** 74:17
  125:19 139:3
**tasked** 125:13
**taught** 32:4
**teach** 31:24 32:1,2
**tell** 48:17 49:1 66:25
  69:5 88:22 90:25
  107:11,24 108:1,5,7
**tells** 63:17
**ten** 19:24
**term** 55:25 140:23
**terms** 106:11 114:22
**test** 141:19
**testified** 9:23 10:20
  11:20 19:1 35:13
  68:23 74:12,16
  76:14 77:7 78:11,18
  78:20 86:5 91:18
  94:11,13,25 95:8
  99:1 103:18 105:23
  116:14 117:12,18
  122:13 132:13,17
  138:9 145:5
**testify** 36:3 73:10
  91:6
**testifying** 12:9,14
  147:7
**testimony** 13:16 14:3
  15:5,14 26:6 47:3,6

59:1 62:10,13,15,23
  63:1,3,8,12,19,25
  64:3,5,9,12,14,15
  64:16,18,21 65:24
  65:24 66:3,5,9,11
  66:15,17,18,19,25
  67:25 68:6,18,21
  69:2,3,9,10,12,19
  72:17 73:1,3,13
  78:13 91:22,23 92:5
  94:16 96:20 98:15
  98:20 101:5 102:2,7
  102:9 103:2,14
  104:4,5,13,25 105:4
  105:13,21,25 106:4
  106:15,21,24 107:3
  107:20 108:18,21
  108:22 109:6 111:9
  111:12 112:22,24
  114:12,18,22
  115:10 116:16,18
  117:23 119:10,13
  119:17 120:1,3,15
  122:24 127:5 128:5
  131:8,13 132:18
  133:18,19 136:25
  137:2,6,7,8,11,18
  138:19 139:14
  147:11
**thank** 9:17 87:1,2,18
  99:19 122:17
  145:25
**thats** 10:8 12:25
  15:25 17:15 21:9
  22:4 23:9 26:10
  27:7 30:5,8,19,20
  30:21,24 34:22
  36:11 44:8 46:9,24
  48:7 49:21,24 52:21
  55:10 56:3 59:6
  60:3,8 61:3,16 62:1
  63:5,20 69:9 70:13
  70:14 72:21 81:9
  84:3 85:25 86:21,21

86:21 88:17,25 91:7
91:12 93:24 100:25
101:19 105:25
107:6,18 108:14
109:8 116:6,10
117:19 118:8
121:11,13,15
127:24 130:3,7
133:4,9,16,17
134:20 137:18
139:6,7,19 141:25
144:3,21
**theory** 29:22
**thereon** 138:9
**theres** 29:25,25 30:5
30:18,20 31:7 42:24
50:13,14,15 63:15
63:16 65:21 68:7
70:21 72:2 80:4
93:22,23 95:9,10
98:19,22 101:4
102:22 109:17,17
112:24 117:23,23
119:12 120:1,3
122:5,7,22
**theyre** 14:6 15:17
35:23 51:7 59:5
135:13
**theyve** 47:15 60:12
**thing** 14:7
**things** 92:16 112:3
128:25
**think** 10:24 11:20
13:15 15:13,25 17:3
17:4,11 19:4 23:6
32:23 34:20 36:11
37:3 40:5 41:11
47:15 48:12,20
50:11 51:4 58:6,25
61:4 62:13 63:13
64:23 65:3 66:10,11
70:21 73:20 76:17
76:23 77:22 78:6
80:12 85:4 88:11,18

91:3 92:4 94:3
96:10 97:16 99:11
100:4 101:9,16
104:20 107:1,6
109:12,25 111:25
112:8,12 113:2
114:25 118:11
121:22 122:6,17,20
123:17 130:3
131:10 134:20
135:24 136:2,22
141:6 142:11,16
**third** 16:5 30:20
88:24 89:2,9,16
123:23
**thomas** 1:16 2:16 6:3
6:12 8:6 9:21 10:5
82:17,22 146:2
**thought** 33:9 46:5
87:19 92:16 93:8
100:5 123:2
**thoughts** 92:6
**thousand** 21:25
**thousands** 112:13
**three** 36:10 126:25
**throw** 30:10
**tier** 87:15,20
**tigar** 9:16
**time** 8:25 10:17 16:3
22:12 28:14 33:2
43:7,11,14,19 44:5
59:19,24 68:1,12
82:18 87:6,9 101:10
102:13 122:2
139:15 146:2,4
147:5
**timeframe** 12:18
**times** 24:13 36:10
77:16 90:5 105:14
126:25
**tina** 16:9 62:10 64:18
68:17,24 70:23
**title** 29:22,23 77:9
83:10,12 97:11,21

97:25 98:13 103:17
104:3 112:18
**today** 13:16 15:2,20
23:8 24:9 27:3
44:10,12,20 46:11
48:11,15 61:3 71:21
71:23 88:25 89:12
91:25 94:4 98:17
99:10 103:1 110:20
111:1 125:16 129:5
132:19 133:18
144:6,8
**todays** 26:5 146:1
**told** 41:14 57:11
78:14 81:2 89:21
108:24 124:6,16
132:9 133:7 140:1
**top** 46:17
**topics** 35:9
**total** 143:18
**totally** 84:17
**touched** 83:18
**tower** 5:8
**trains** 38:21
**transactions** 98:3
100:16,17,17
**transcribed** 147:9
**transcript** 6:23 16:9
90:18 91:25 93:6
136:19 147:10
**transcripts** 16:10
**transfer** 74:20,24
75:4 77:11 83:10,12
84:12 103:17 104:2
128:6,22 145:6,11
145:20
**transferred** 128:11
128:17
**transferring** 101:3
**travel** 143:22,24
**traveled** 13:14
**tree** 38:19
**trial** 12:9,12 36:3
122:24

**tried** 11:12 48:4
91:10
**triggered** 22:1
**true** 51:11 63:3 64:3
93:24 104:11
147:10
**trust** 11:18,23,24
12:2 30:15 42:12,14
50:4,10,24 51:13
52:21 61:11 74:18
74:23 75:3 76:2,6
81:8,10 82:11 86:19
128:7,10,17,23
129:23 138:22
139:3,4,12,24,25
140:4 142:13
143:10,15 145:11
145:15,20
**trustee** 1:8 2:8 4:16
9:8 29:25 30:18,22
32:24 50:15 51:10
51:11,12,13,15 52:4
53:7,14,23,25 54:3
54:6,11 58:2 59:12
61:12 79:5,16,20
80:8,9,10,11,16,25
81:25 82:3,7,8
85:17 129:24
131:18 138:3
**trustees** 12:3 30:14
50:23 52:11 81:23
**truth** 75:16
**try** 20:23 93:1 102:6
**trying** 29:2 33:22
35:1 65:6 106:3
**turn** 55:9 72:1 90:24
91:13 128:3
**two** 11:4 16:2 20:1
21:25 31:11 35:15
57:6 65:9 74:7
79:10 93:21 95:9
103:19 106:17
144:12
**type** 28:3 35:19

## U

u 1:8 2:8 4:15 9:8
23:10 75:9 76:4
124:25 125:4,7
126:2 128:7,11,17
128:21
ulc 6:16 49:16
unable 110:25
uncertainty 68:7,11
uncertified 6:23
unclear 69:15
underlying 117:19
undersigned 76:3
147:1
understand 10:6
13:11,14,20,21,22
23:2,23 32:7 36:24
37:8 42:10 45:3
46:13 50:2 58:24
61:16 69:18 76:11
80:12,21,23 84:16
119:20 136:24
understanding 29:2
32:21 50:9,12 51:1
51:25 52:6,10 54:3
54:6,8 63:13 64:11
65:6 67:25 68:24
78:10 84:10 94:5,7
94:15 99:25 100:5
113:17,19 139:23
understood 33:18
69:9,10
uniform 49:6,7,18
united 1:1 2:1 8:14
university 87:14
unlawful 72:11,14,20
unquote 99:23
100:12
unsuspecting 83:13
updates 31:14
use 33:24 56:4 72:12
136:12
usually 114:15

## V

vague 58:21 68:10,12
69:16 83:21 109:15
valerio 16:11
valid 58:9 59:4
109:22 116:9
140:14,17,24
141:14
validity 109:14,16,21
110:1,6,9 141:20
142:2 145:11,19
value 75:9
variation 47:14 73:19
73:20
various 67:23 104:14
105:11 139:10
vary 73:6,7,16
verb 136:12
verbally 89:1
verify 54:13 134:1
veritext 5:14 8:8
version 60:16,21,23
61:3,6
versus 8:13 13:19
vice 23:20,25 76:8,18
77:6,10 97:12,15
98:13 112:10
video 8:4,6,17 9:14
9:17,25 43:10,13,19
44:4 59:18,23 82:16
82:20 87:5,8 123:11
146:1
videographer 5:13
videotaped 1:16 2:16
view 56:10 58:8
59:10 100:24
views 33:7 91:11
virtue 76:9
volume 1:19 2:17 6:3
82:17,21
volunteer 22:2,9
38:20
vs 1:5 2:5
vulnerable 83:14

85:13 86:10

## W

w 3:6
want 12:24 30:10
32:14 44:20 83:17
84:19 92:6,18,19
102:15 117:22,25
123:11
wanted 32:19 70:7
88:2
wars 87:25
wasnt 28:23 48:21
59:13 126:19
way 8:24 11:13 17:21
29:11 33:16 34:6
47:2,18 51:5 71:24
76:12 80:18 85:11
86:15 94:4 109:24
130:4,25 131:20
133:7 134:1,17
141:19
week 15:5 66:20
weighing 136:23
wells 1:7 2:7 4:14 9:7
16:10 23:12 124:14
124:20,23 126:2
went 22:2 30:13
45:12 109:23
weve 60:1 70:4 79:2
79:12 83:17,18
112:1,1 122:18
129:5
whats 14:25 25:7
29:20,20 31:14,18
48:19 50:18 52:18
62:15,21,21 73:22
75:11,12,18 77:19
112:4
whatsoever 112:17
whereof 147:15
whispers 8:20
whoops 15:3
willfully 72:8
william 104:8

wisecrack 87:14
wish 11:12 77:15
witness 6:2 9:17
10:23 13:18 14:18
15:24 17:15 32:9
35:14 41:24 42:24
47:5 52:24 53:18
60:14 62:4,5 63:25
64:17 65:3 66:5
67:12,19 68:1,13
69:18 70:9 76:23
85:4 87:2,22,25
92:13 94:12 95:1,9
95:23 96:21 98:17
102:1,15,24 109:17
110:19 112:8
117:12 121:1 123:7
131:9 133:16
147:15
witnesses 147:6
wont 13:9
word 33:23 55:8 56:3
56:3,4 98:16 133:16
133:17,23
words 37:2 55:13
56:2 133:19
work 14:18 27:5,16
29:19 49:13 91:11
123:20 141:3,4,4
142:10,11,13 144:1
144:4
worked 21:8,19
22:21
working 15:23 78:14
works 93:17 94:10,24
95:7
written 32:13 82:1,4
129:12
wrong 103:20 127:19
wrote 49:8

## X

## Y

yeah 88:6

**year** 21:3 29:13 35:15
  88:21
**years** 10:14,16 19:24
  20:22 22:11 24:19
  31:5 37:20,22 40:24
  50:20 90:6 100:18
  105:15 107:13
  111:5 127:1 137:3,4
  137:12,13,13 143:5
**york** 109:24
**youd** 34:23 120:4
  121:4
**youll** 123:16
**youre** 10:6 13:12
  33:24 40:7 58:14
  64:25 65:7,8 66:24
  71:22 91:5,5 97:20
  102:7 103:3 104:21
  104:24 107:2 114:1
  114:2 120:1,9,24
  121:16 133:11
**youve** 13:4,18 14:24
  16:3,19 19:11 30:25
  32:8 36:9 37:16
  45:4 70:6 71:17,21
  84:17 86:13 88:10
  111:15,18,23
  114:11 116:24
  117:18,18 118:1
  137:11,21 139:20
  145:4

---
**Z**
---

---
**0**
---
**00** 15:20 25:25 32:25
  38:15,20,25 39:5,25
  41:10 42:5 80:10,15
  80:20 100:10
  101:20 105:25
  106:5,10
**000** 112:10
**01** 9:15 23:15 39:10
  39:10,15,20 43:15
  43:20,25 44:5,10,15

44:20,25 45:5,10,15
45:20,25 46:5,10,15
46:20,25 47:5,10,15
47:20,25 48:5,10,15
48:20,25 49:5,10,15
49:20,25 50:5,10,15
50:20,25 51:5,10,15
51:20,25 52:5,10,10
52:15,20,25 53:5,10
53:15,20,25 54:5,10
54:15,20,25 55:5,10
55:15,20,25 56:5,10
56:15,20,25 57:5,10
57:15,20,25 58:5,10
58:15,20,25 59:5,10
59:15,20,25 60:5,10
60:15,20,25 61:5,10
61:15,15,20,25 62:5
62:10,15,20,25 63:5
63:10,15,20,25 64:5
64:10,15,20,25 65:5
65:10,15,20,25 66:5
66:10,15,20,25 67:5
67:10,15,20,25 68:5
68:10,15,20,25 69:5
69:10,15,20,25 70:5
70:10,15,20,25 71:5
71:10,15,20,25 72:5
72:10,15,20,25 73:5
73:10,15,20,25 74:5
74:10,15,20,25 75:5
75:10,15,20,25 76:5
76:10,15,20,25 77:5
77:10,15,20,25 78:5
78:10,15,20,25 79:5
79:10,15,20,25 80:5
80:25 81:5,10 91:10
106:15,20,25 107:5
**02** 12:10 21:10 22:10
  39:25 40:5,10,15
  48:25 80:10,15,20
  80:25 81:5,10,15,15
  81:20,25 82:5,10
  82:15,20,25 83:5,10

83:15,20,25 84:5,10
84:15,20,25 85:5,10
85:15,20,25 86:5,10
86:15,20,25 87:5,10
87:15,20,25 88:5,10
88:15,20,25 89:5,10
89:15,20,25 90:5,10
90:15,20,25 91:5,10
91:15,20,25 92:5,5
92:10,15,20,25 93:5
93:10,15,20,25 94:5
94:10,15,20 95:5,10
95:15,20,25 96:5,10
96:15,20,25 97:5,10
97:15,20,25 98:5,10
98:15,20,25 99:5,10
99:15,20,25 100:5
100:10,15,20,25
101:5,10,15,20,25
102:5,10,15,20,25
103:5,10,15,20,25
104:5,10,15,20,25
105:5,10,15,20
107:10,15,20,25
130:5 137:10
140:15 141:15
144:20
**03** 28:15 34:15 38:5
  40:20,25 41:5 43:14
  43:15,20 46:20
  81:25 82:5,10 90:15
  94:15 97:10 105:5
  105:25 106:5,10,15
  106:20,25 107:5,10
  107:15,20,25 108:5
  108:5,10,10,15,15
  108:20,20,25 109:5
  109:10,15,20,25
  110:5,10,15,20,25
  111:5,10,15,20,25
  112:5,10,15,20,25
  112:25 113:5,10,15
  113:20,25 114:5,10
  114:15,20,25 115:5

115:10,15,20,25
116:5,10,15,20,25
117:5,10,15,20,25
118:5,10,15,20,25
119:5,10,15,20,25
120:5,10,15,20,25
121:5,10,15,20,25
122:5,10,15,20,25
123:5,10,15,20,25
124:5,10,15,20,25
125:5,10,15,20,25
126:5,10,15,20,25
127:5,10,15,20,25
128:5,10,15,20,25
129:5,10,15,20,25
130:5,10,15,20,25
131:5,10,15,20,25
132:5,10,15,20,25
133:5,10,15,20,25
134:5,10,15,20,25
135:5,10,15,20,25
136:5,10,15,20,25
137:5,10,15,20,25
138:5,10,15,20,25
139:5,10,15,20,25
140:5,10,15,20,25
141:5,10,15,20,25
142:5,10,15,20,25
143:5,10,15,20,25
144:5,10,15,20,25
145:5,10,15,20,25
**04** 11:20 14:25 20:15
  29:5 33:15 41:10,15
  41:20,25 43:20,20
  44:5 55:15 71:20
  72:5 82:15,18 93:20
  105:25 108:25
  109:5,10 121:10
  125:25
**05** 38:15 42:5,10,15
  42:20,25 64:10
  65:20 77:25 85:15
  89:10 103:5,25
  108:25 109:15,20

109:25 116:15
120:10 133:25
135:15
**06** 10:25 14:5 17:20
24:25 30:20 42:25
43:5,10,11,25 49:20
57:10 77:5 96:10
110:5,10,15,20,25
111:5 114:10
142:15
**07** 13:10 44:5,5,10,15
44:20,25 45:5 52:25
72:25 78:20 79:10
81:25 111:10,15,20
124:5 138:5
**08** 43:25 45:10,15,20
45:25 46:5 61:20
64:15 66:20 69:15
82:25 98:5 106:15
110:5 111:20,25
112:5,10 120:15
129:10 132:20
**09** 19:20 46:10,15
49:5 75:20 112:15
112:20 119:10
130:10 131:25
145:20

---
**1**
---

**1** 1:25 16:8 43:14,20
44:5,16 55:12 59:19
59:24 60:13 82:17
82:17,21
**10** 1:18 2:20 6:4,18
8:1 24:10 27:20
35:20 45:10 46:20
46:25,25 47:5,10,15
51:5 59:25 62:11,19
63:9,11 65:12 67:2
74:20 80:25 88:15
112:25 113:5,10,15
118:5 123:15 140:8
144:25
**101** 2:18 4:8 8:11
**10th** 8:5 61:21 62:25

63:16,18 66:15 68:4
68:8,19 69:8,14
70:1
**11** 2:19 8:2,5,5,10,15
8:20,25 9:5,10,15
9:20,20,25 10:5,10
10:15,20,25 11:5,10
11:15,20,25 12:5,10
12:15,20,25 13:5,10
13:15,20,25 14:5,10
14:15,20,25 15:5,10
15:15,20,25 16:5,10
16:15,20,25 17:5,10
17:15,20,25 18:5,10
18:15,20,25 19:5,10
19:15,20,25 20:5,10
20:15,20,25 21:5,10
21:15,20,25 22:5,10
22:15,20,25 23:5,10
23:15,20,25 24:5,10
24:15,20,25 25:5,10
25:15,20,25 26:5,10
26:15,20,25,25 27:5
27:10,15,20,25 28:5
28:10,15,20,25 29:5
29:10,15,20,25 30:5
30:10,15,20,25 31:5
31:10,15,20,25 32:5
32:10,15,20,25 33:5
33:10,15,20,25 34:5
34:10,15,20,25 35:5
35:10,15,20,25 36:5
36:10,15,20,25 37:5
37:10,15,20,25 38:5
38:10 44:16 47:20
47:25 48:5 53:15
54:10 99:15 101:5
113:20,25 114:5
115:20 126:5 127:5
128:5,15 138:25
144:5
**117** 6:23
**118** 17:7,10,19,23
**1185** 6:21 17:11

60:23,25 71:4,14,20
**11cv02899** 8:16
**11cv02899jst** 1:5 2:5
**11th** 68:3,8,19 69:14
**12** 21:15 38:15,20,25
39:5,10,15,20,25
40:5,10,15,20,20,25
41:5,10,15,20,25
42:5,10,15,20,25
43:5,10,11 48:5,10
48:15,20 70:15
103:10 108:5
109:15 114:10,15
114:20,25 115:5,10
115:15 121:15,25
123:5 125:5
**120** 1:12 2:12
**123** 6:6
**129** 3:7
**13** 26:5 31:15 41:15
48:25 49:5,10,15
50:15 55:5 79:15
84:25 101:25
104:15 115:20,25
116:5,10 136:15
139:20 147:18
**134** 122:11
**138** 103:2
**14** 8:20 12:15 49:20
49:25,25 50:5,10
53:20 62:20 65:25
68:5 72:10 84:10
87:10 89:15 93:5
100:15 105:10
112:15 116:15,20
116:25 117:5
135:20 137:15
141:20 142:20
**141** 103:2
**144** 6:7
**147** 1:25
**15** 6:20 20:20 25:5
32:10 44:10 50:15
50:20,25 60:25

76:10 87:15 107:10
111:10 114:15
117:10,15,20,25
**16** 22:15 29:25 42:10
51:5,10,15,20 55:20
64:20 91:15 113:20
116:25 118:3,5,10
118:15,20,24,25
119:5 121:1 140:20
**1680812** 1:23
**17** 8:5 11:25 16:10
17:25 33:5,20 37:10
39:15 46:10 51:25
52:5 57:15 68:25
71:25 78:5 83:15
86:25 95:15 98:10
117:10 118:10
119:10,15,20,25
120:5
**1750** 3:7
**18** 17:5 18:25 35:10
43:5 52:10,15,20
69:20 89:20 102:5
115:25 120:10,15
120:20,25 121:5
145:25
**1800** 2:18 4:8 8:11
**19** 6:18 19:10 52:15
52:25 53:5,10 63:15
80:10 85:20 90:20
106:5 116:25 118:3
118:24 121:1,10,15
121:20 129:15
**192** 114:25 115:14,15
115:18
**1969** 19:21
**1970** 19:10
**1st** 61:7

---
**2**
---

**2** 7:4 16:5 52:19,23
61:10,10,19,23
82:18,21,22 87:6,9
139:13,15,15
**20** 10:16 13:15 15:6

15:25 34:5 38:10,20
45:15 53:5,15,20,25
54:5 67:21 78:25
93:25 106:20
126:10 131:10
145:5
**2000** 21:3,4,12,13,13
22:8 23:16 26:22
29:14
**2006** 139:16
**2007** 1:9 2:9 4:16
9:9
**2008** 21:25 22:9 24:3
24:13,16
**2009** 47:16 140:2
**2010** 32:23 47:16
55:19 61:22 62:12
122:3 141:14 142:3
**2011** 49:9 60:13,21
61:7
**2012** 6:18 16:7,7
**2013** 1:18 2:20 6:20
8:1,5 147:18
**21** 2:19 8:2,5,5,10,15
11:5 27:5 54:10,15
54:20,25 56:10 60:5
66:5 67:14 77:10
116:20 121:20,25
122:5,10 130:15
**21st** 61:22
**22** 8:20,25 9:5,10
15:5,6 36:15 55:5
55:10 58:15 67:13
79:20 81:15 82:5,20
82:21 111:25
118:15 122:15,20
122:25 128:20
132:25 135:25
**23** 9:15,20,25 10:5,10
10:15,20 30:25
34:20 40:25 49:10
55:15,20,25 56:5
67:22 68:10 71:5
82:25 83:5,10 93:7

93:13,13,15 99:20
112:10 113:5 123:5
123:10,10 124:10
134:5
**24** 9:25 10:25 11:5,10
11:15 14:10 21:20
25:10 27:25 44:15
51:10 56:10,15,20
56:25 57:5 67:20
83:15,20,25 84:5
86:15 87:5 92:10
96:15 97:15 108:10
119:15 123:15,20
123:25 125:10
139:5 140:25
142:25
**25** 8:25 10:16 11:20
11:25 12:5 24:19
31:20 35:25 37:15
47:20 51:25 54:15
57:10,15,20,25
61:25 64:25 67:15
73:5 84:10,15,20
93:7,14 104:5 109:5
109:20 122:15
124:5,10,15,20,25
134:25 144:10
**26** 12:10,15,20,25
13:5 24:15 26:10
55:25 58:5,10 61:5
62:25 66:25 73:20
75:10 76:15 81:15
84:25 85:5,10
101:10 114:20
118:20 125:5,10,15
125:20 132:5
138:10
**268621** 4:22
**27** 12:20 13:10,15,20
13:25 23:20 30:5
58:15,20,25 59:5
85:15,20,25 86:5,10
88:20 110:10
125:25 126:5,10,15

126:20,25 136:20
139:25
**28** 7:5 14:5,10,15,20
19:25 22:20 29:10
42:15 59:10,15
61:25 62:3 73:16
75:25 80:1 81:5
85:5,25 86:15,20
87:20 94:5 98:25
102:10 126:15
127:5,10,10,15,20
127:25 128:12,15
129:24 130:2,15,20
130:23 131:18
132:4,8,11,16,21
133:3 134:3 135:5
137:21,24 138:16
140:10,13 141:21
144:17
**29** 10:5 14:25 15:5,10
15:15 17:10 28:20
32:15 40:5 45:20
58:5 59:19 86:25
87:5,6 95:20 98:15
116:5 122:5 128:5
128:10
**2924** 41:15

---

**3**

**3** 2:20 6:21 8:16 15:7
72:1,2 91:14 101:1
146:2,4
**30** 15:20,25 16:5,9
18:5 24:19 47:4
59:10 60:10 74:25
90:16 93:9 94:12,20
103:15 104:5
107:15 117:12
119:1,5 128:15,20
128:25 129:5
**31** 16:10,15,20,25
41:20 48:10 56:15
69:25 77:15 119:1,5
129:10,15,20,20,25
133:5 143:5

**32** 17:5,10,15 36:5
43:10 50:20 59:20
92:15 93:10 128:25
130:5,10,15,20,25
131:5 134:10 141:5
141:25 143:20
**33** 11:10 17:20,25
18:5,10,15,20 59:24
59:25 60:5,10,15,20
70:20 71:10 72:15
78:10 87:25 96:20
114:25 119:20
120:20 124:15
131:10,15,20
**34** 10:10 18:25 19:5
19:10,15 47:5 53:25
60:25 61:5,10 66:10
90:25 122:10
131:25 132:5,10,15
145:10
**35** 13:20 19:20,25
20:5,10,25 23:25
49:15 58:20 61:15
61:20,25 62:5,10,15
65:5 83:20 89:25
100:20 127:15
132:20,25 133:5,10
133:15,20
**350** 45:20
**354** 3:14
**36** 15:10 20:15,20,25
21:5 26:15 34:10
39:20 44:20 56:20
57:20 62:20,25 63:5
63:10 106:25
110:15 112:5
117:15 125:15
133:25 134:5,10,15
134:20
**37** 8:10 9:5 16:15
18:10 21:10,15,20
21:25 22:5 28:5
30:10 31:5 37:20
63:15,20,20,25 64:5

69:5 91:20 105:15
130:25 134:25
135:5,10
**38** 21:25 22:10,15,20
22:25,25 23:5,10
36:20 51:15 64:10
64:15,20,25 65:5,10
65:15 79:25 80:15
86:5 87:9,10,15,20
87:25 88:5,10 99:5
99:25 107:20
108:15 109:10
135:15,20,25 136:5
136:10,25
**39** 14:15 19:5 23:15
23:20,25 24:5 32:20
38:25 62:5 65:20,25
66:5,10,15 68:15
88:15,20,25 89:5
102:15 104:20
116:10 123:20
131:15 132:10
136:15,20,25 137:5
139:10

**4**

**4** 74:6 101:1 103:15
128:5 129:4
**40** 10:15 12:5 20:22
24:10,15,20 29:15
33:10 34:25 63:5
66:20,25 67:5,10,15
67:25 76:20 82:15
88:25 89:10,15,20
89:25 90:5,10 95:25
113:10 133:10
137:3,4,10,12,13,13
137:15,20,20,25
138:15 140:10
**402** 141:22
**405** 6:12 43:21 44:8
**406** 6:14 43:23 46:10
98:18,22 104:10
**407** 6:16 43:25 48:8
48:20

**408** 6:19 44:2 49:22
55:9 124:7 128:4
129:4 134:22 140:9
**409** 6:21 59:21 60:4
70:14
**41** 13:25 15:15 24:25
25:5,10,15,20 35:15
48:15 54:20 60:15
67:20,25 70:5 90:15
90:20,25 91:5
113:25 118:25
134:15 136:5 138:5
138:10,15,20
143:10
**410** 6:23 117:6
**415** 3:9,16 4:10,22
5:10
**42** 25:15,25 26:5,10
26:15,20 31:25
47:10 67:5 68:5,10
68:15,20 73:10
91:10,15,20,25 93:6
93:14 97:20 110:20
120:25 135:5
138:25 139:5,10,15
144:15
**425** 4:20
**43** 6:12,14,16 11:15
26:25 27:5,10,10,15
28:25 41:5 58:25
62:10 68:25 69:5,10
73:25 83:25 92:5,10
92:15,20,20,25
94:10 116:25
139:20,25 140:5
141:10
**44** 6:19 27:20,25 28:5
28:10 41:25 61:10
63:25 69:15,20,25
70:5,10 76:5 82:10
84:15 93:5,10,15
101:15 115:5
119:25 126:20
140:10 142:5

**4421352** 5:10
**45** 19:10 23:5 28:15
28:20,25 36:10
40:10 44:25 56:5
70:15,20,25 72:20
74:10 90:5 93:20,25
94:5,10 96:25
111:15 117:20
124:20 127:20
140:15,20,25 141:5
141:10
**46** 17:15 29:5,10,15
29:20 37:25 46:15
52:5 56:25 65:10
71:5,10,15 75:5
80:20 85:10 88:5
91:5 94:15,20 95:5
95:10 102:20
106:10 122:20
141:15,20,25 142:5
142:10
**47** 18:15 29:25 30:5
30:10,15 71:20,25
95:15,20,25 96:5
100:25 107:5
109:25 128:10
142:15,20,25 143:5
143:10,15
**4772410** 3:16
**48** 12:25 16:20 20:5
30:20,25 31:5,10
43:15 47:25 70:10
71:15 72:5,10,15,20
75:15 78:15 91:25
96:10,15,20,25 97:5
104:10 112:20
143:20,25
**49** 9:10 31:15,20,25
32:5 33:25 48:20
55:10 67:10 72:25
73:5,10,15 97:10,15
97:20,25 115:10
129:25 133:15
137:5 144:5,10,15

**5**

**5** 76:13,21 77:2,19
91:15 101:2 117:3
117:11
**50** 16:5 32:10,15,20
36:25 39:5 45:25
54:5 69:10 73:20,25
74:5 77:20 83:5
96:5 98:5,10,15,20
108:20 110:25
138:20 144:20,25
145:5,10,15
**51** 2:20 10:20 14:20
22:5 24:5 28:10
32:25 33:5,10 51:20
59:15 66:15 74:10
74:15 81:20 82:20
97:5 98:25 99:5,10
137:25 139:15
140:5 145:20,25
146:2,4
**5111** 1:22 2:22
147:25
**52** 7:4 33:15,20,25
50:5 68:20 74:20,25
75:5 90:10 97:25
99:15,20,25 100:5
103:20 105:20
114:5 123:25
127:25 129:5
142:10
**53** 6:24 23:10 24:20
25:20 34:5,10 42:20
50:25 59:20 70:25
75:10,15 93:15
100:5,10,15,20,25
102:25 104:25
116:24 118:3,24
121:1,5 134:20
145:15
**54** 21:5 27:15 32:5
34:15,20,25 35:5
47:15 64:5 75:20,25
76:5 81:10 88:10

95:5 101:5,10,15
112:10 113:15
117:5 119:5 120:5
124:25 125:20
131:5,20 132:15
135:10
**55** 20:10 31:10 35:10
35:15 52:20 57:25
76:10,15,20,25
84:20 89:5 101:20
101:25 102:5,10,15
102:20,25 136:10
**56** 8:15 26:20 29:20
30:15 35:20,25 36:5
36:10 40:15 58:10
73:15 74:5,15 76:25
77:5,10,15,20 84:5
95:10 99:10 103:5
103:10,15,20
117:25 143:15
**57** 35:5 36:15,20,25
37:5 45:5 46:5 57:5
62:15 77:25 78:5,10
78:15 79:5 80:5
92:25 103:25 104:5
104:10 107:25
111:5 143:25
**58** 13:5 16:25 18:20
19:15 37:10,15,20
37:25 53:10 54:25
60:20 63:10 65:15
78:20,25 79:5 98:20
104:15,20,25
126:25
**59** 6:21 37:5 38:5,10
50:10 59:5 67:15
79:10,15,20,25 80:5
83:10 86:10,20
105:5,10,15,20
115:15 122:25
133:20

**6**

**6** 16:9 47:4 90:16
93:9 94:12 97:16

104:5 117:12 129:3
147:18
**62** 7:5
**6595933** 4:10
**67** 121:25

**7**

**7** 49:9 82:25 103:15
113:9
**75** 27:4

**8**

**8** 58:13 59:7,9 61:20
63:14 134:21,22
135:15 136:12
**80s** 27:16
**87** 6:5
**8th** 62:22,24 63:11,20
64:6 65:11 66:10
69:5,6

**9**

**9** 117:3,11 121:25
122:11
**94105** 4:9 5:9
**941052482** 4:21
**941111** 3:8
**95104** 3:15
**9547151** 3:9