UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DEBORAH TAMBURRI,

    Plaintiff,

    v.

SUNTRUST MORTGAGE, INC., et al.,

    Defendants.

Case No.  11-cv-02899-JST

**ORDER TO SHOW CAUSE**

Currently before the Court are three motions for summary judgment filed by Defendants. ECF Nos. 280, 283, 289.  Plaintiff filed oppositions to each of those motions.  ECF Nos. 305, 319, 320.

Civil Local Rule 7-3(a) limits Plaintiff's opposition briefs to twenty-five pages.  Civil Local Rule 3-4(c)(2) provides, with respect to papers presented for filing:

> Text must appear on one side only and must be double-spaced with no more than 28 lines per page, except for the identification of counsel, title of the case, footnotes and quotations. Typewritten text may be no less than standard pica or 12-point type in the Courier font or equivalent, spaced 10 characters per horizontal inch. Printed text, produced on a word processor or other computer, may be proportionally spaced, provided the type may not be smaller than 12-point standard font (e.g., Times New Roman). The text of footnotes and quotations must also conform to these font requirements.

Each of Plaintiff's oppositions to Defendants' motions contains body text in 12-point Times New Roman font, but appears to use non-standard character spacing; in particular, it appears Plaintiff condensed the character spacing uniformly by 0.5–0.7 points (the amount differs from brief to brief).  The result is that Plaintiff's opposition briefs fit into twenty-five pages more than twenty-five pages' worth of text had they been written in standard Times New Roman 12-point font using

appropriate character spacing.[1]

---

[1] For example, the following passage occupies 19 lines in Plaintiff's Opposition to MERS, Inc.'s Motion for Summary Judgment but, spaced correctly, it occupies 22 lines:

> Plaintiff's loan was securitized and placed into a trust shortly after the transaction was consummated. (Goodell Decl., Exh. E, F.) Under the terms of the trust, SunTrust was the servicer and Wells Fargo was the master servicer. (Goodell Decl., Exh. E, F.) "Servicers like SunTrust [and Wells Fargo] are incentivized to ensure that foreclosures happen faster, even at the expense of legal compliance" because they "have no state in the ultimate performance of the [Plaintiff's] mortgage." SunTrust receives a servicing fee based upon the unpaid principal balance and other ancillary fees, such as late fees for legal fees. "A servicer is more likely to make more money on a defaulted loan for several months because of the additional ancillary fee income." This compensation scheme deprived SunTrust and Wells Fargo of any incentive to provide Plaintiff with a loan modification, or other option to avoid foreclosure. (Goodell Decl., Exh. G, 128:9-15; 132:21-25; 135:18-25; 136:12; *see also* Goodell Decl., Exh. H, pg. 11, ¶ ¶51-52; pg. 12 ¶ 57-58; pg. 15, ¶ 70.) Instead, this scheme incentivized both SunTrust and Wells Fargo to misrepresent the ownership of her loan and to conceal from her the nature of their own relationship under the securitized loanin both the STARM Trust documents and the Pooling & Servicing Agreement ("PSA"). Their misrepresented and omission flowed from their desire to not adequately train and pay their employees to be knowledgeable about mortgage securitization. (Goodell Decl., Exh. G, 128:9-15; 132:21-25; 135:18-25; 136:12.) SunTrust provided no training as recently as 2011 to its employees on how to respond to borrower inquiries regarding the ownership of their loans. Wells Fargo and SunTrust's decision to not adequately train their employees was an intentional one designed to increase profits, not to ensure that their employees and agents were knowledgeable about mortgage securitization and legal compliance. (Goodell Decl., Exh. H, pg. 3, ¶ 18; pg. 12, ¶ 59; pg. 20, ¶ 90.) (ECF No. 319 at 2-3.)

The following passage occupies 27 lines in Plaintiff's Corrected Opposition to Defendants Suntrust, U.S. Bank, and Wells Fargo's Motion for Summary Judgment but, spaced correctly, it occupies 32 lines:

At that stage of the litigation, US Bank represented to this Court that it had been assigned the Note and Deed of Trust on June 8, 2010, another point noted by Judge Chen. ( Dkt. 82.) As part of his Order denying Moving Defendant's motion to dismiss, Judge Chen noted the discrepancy between the document's date and the notarization date, and ruled that it was unclear who the beneficiary of Plaintiff's loan was. Now, Moving Defendants claim, through a cursory statement by their counsel, that ReconTrust was acting as agent for MERS by relying upon the exact same document that Judge Chen ruled could not be used to establish the identity of the beneficiary of Plaintiff's Deed of Trust. Plaintiff objects to this unsupported assertion, based on the same analysis used by Judge Chen, and because the attempt to use an out-of-court statement to prove the matter asserted is hearsay and inadmissible under Fed. R. Evid. 801. *Martinez v. America's Wholesale Lender*, 446 Fed. Appx. 940, 943 (9th Cir. 2011); *Herrera v. Deutsche Bank National Trust Co*, 196 Cal. App. 4th 1366, 1375 (2011). This is not a matter for which this Court may properly take judicial notice, particularly considering that ReconTrust itself does not claim that it initiated foreclosure on behalf of MERS. ReconTrust assets that it recorded the Notice of Default on behalf of SunTrust. (ReconTrust Memo at 11.) Thus, Fed. R. Evid. 201 does not permit this Court to take judicial notice of a "fact" which there is much discrepancy of in the record before this Court, including SunTrust's own testimony in which they stated they were "not sure" who the beneficiary was under Plaintiff's Deed of Trust. (Goodell Decl., Exh. K, 121:12-122:2; Goodell Decl., Exh. L.)

Other evidence calls ReconTrust's authority into question. MERS itself claims that it *never* requested that *any* entity initiate foreclosure proceedings under this loan. (Goodell Decl., Exh. L., 138:08-138:11). SunTrust and US Bank produced limited power of attorneys purportedly giving SunTrust authority to execute foreclosure-related documents on their behalf, but they produced no documents giving SunTrust authority during the time period in question. (Goodell Decl., Exh. M, 149:18-151:23; Exh EE.) Moreover, MERS' own rules provide that "[i]f MERS is not the party initiating foreclosure, the assignment from MERS must be executed prior (emphasis added) to the foreclosing entity commencing the foreclosure." (Goodell Decl., Exhibit BB: MERS 000019.)

1    Civil Local Rule 7-4(b) provides: "Unless the Court expressly orders otherwise pursuant
2 to a party's request made prior to the due date, briefs or memoranda filed with opposition papers
3 may not exceed 25 pages of text and the reply brief or memorandum may not exceed 15 pages of
4 text." Plaintiff did not make such a request. Consequently, Plaintiff's three opposition briefs
5 exceed the limits of the Court's local rules without the Court's authorization, in contravention of
6 Local Rule 7-4(b).
7    While the Court is unused to concerning itself with the rules regarding font sizes and
8 character spacing, the violation of those rules has the potential to unfairly increase the burden on
9 the Court and the parties to read, digest, and respond to a party's written argument.
10    Plaintiff is hereby ORDERED to take one of the following actions by August 1, 2013:
11    1.   File a response to this Order demonstrating that Plaintiff's summary judgment
12 oppositions, and each of them, comply with the Local Rules; or
13    2.   File amended responses that comply with the Local Rules, which amendments
14 shall consist solely of the use of proper character spacing and the elimination of sufficient text
15 from the original responses to bring the responses within the appropriate page limit, clearly
16 indicating which text has been eliminated; or
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23

---

Similarly, the MERS rules provide that "[i]f a Member chooses to have MERS foreclose, the note must be endorsed in blank and be in the possession of one of the MERS Member's Certifying Officers." (emphasis in original). *Id*. Despite this requirement, MERS testified that it *never* had an interest in the Plaintiff's Promissory Note, and *never* had a copy of the Promissory Note assigned to it. (ECF No. 321 at 16-17.)

4

3. File a response SHOWING CAUSE why Plaintiff's oppositions should not be stricken.

**IT IS SO ORDERED**.

Dated: July 28, 2013

_____
JON S. TIGAR
United States District Judge

5