UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH TAMBURRI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SUNTRUST MORTGAGE, INC., et al.,<br><br>　　　　Defendants. | Case No.  11-cv-02899-JST<br><br>**ORDER RE SUMMARY JUDGMENT** |

Before the Court are three motions for summary judgment filed by Defendants Suntrust Mortgage, Inc., Wells Fargo Bank, N.A., and US Bank N.A., ECF No. 288, ReconTrust Co., N.A., ECF No. 269, and Mortgage Electronic Registration Systems, Inc., ECF No. 289.  The Court also addresses Defendant ReconTrust's motion to exclude the opinions of Adam J. Levitin and Thomas A. Cox.  ECF No. 269.

I.   **BACKGROUND**

　A.   **Undisputed Facts**

Plaintiff Deborah Tamburri purchased the property located at 2968 Sombrero Circle in San Ramon, California in 1983. Third Am. Compl., ECF No. 146 ("TAC") ¶¶ 1–2.  On December 12, 2006, Tamburri refinanced her mortgage, borrowing $640,000 from Defendant SunTrust Mortgage, Inc.  Kleine Decl. ISO Defs.' Mot. for Summ. J., Ex. 17, ECF No. 284-3 ("Note").  The loan was secured by a Deed of Trust on the property, which was recorded in Contra Costa County eight days later.  Kleine Decl., Ex. 18, ECF No. 284-4 ("DOT").  The DOT named SunTrust Mortgage, Inc. as lender; Jackie Miller as trustee; and, "acting solely as nominee for Lender," Defendant Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary.  DOT p. 1. The Deed of Trust gave the lender authority to exercise the power of sale should the borrower fail

"to perform the covenants and agreements contained" in the deed, including failure to pay the principal and interest payments when due, and failure to pay all taxes, assessments, charges, fines, and impositions attributable to the property that could attain priority over the Deed of Trust. See DOT ¶¶ 1, 4, 9, 22, 24.

Shortly thereafter, the loan was securitized and placed into a trust called STARM Mortgage Loan Trust 2007-2. Pursuant to a pooling and servicing agreement, SunTrust transferred its ownership interest in Plaintiff's loan to Mortgage Asset Securitization Transactions, Inc. (depositor), via UBS Real Estate Securities, Inc. (transferor), which then transferred the loans to Defendant U.S. Bank as trustee for the trust; the trust's master servicer was Defendant Wells Fargo and SunTrust remained the servicer. See Kleine Decl., Ex. 27, ECF No. 285-1.

In February 2007, Plaintiff called SunTrust with questions regarding a financial hardship. She was transferred to collections. Kleine Decl., Ex. 46, ECF No. 287-16 ("Loan Notes") p. 25.[1] She called again in June 2007 and stated that she was unemployed; the next month SunTrust enrolled her in a loss mitigation program (a repayment plan). Loan Notes p. 25. Ultimately, Plaintiff caught up on her payments. However, a federal tax lien was recorded on the property in December 2007 in the amount of $37,895.50. Kleine Decl., Ex. 19, ECF No. 284-5 ("Tax Lien").

In April 2008, Plaintiff again became unemployed. Kleine Decl., Ex. 31, ECF No. 287-1, p. 2. Plaintiff's declaration states that she called SunTrust in July 2008 to discuss a loan modification, but that she "was told that there was nothing SunTrust could do and that [she] should call back after [her] loan was delinquent." Tamburri Decl. ISO Pl.'s Opp. to Defs. SunTrust, US Bank, Wells Fargo & MERS' Mots. for Summ. J. ¶ 10. SunTrust's loan notes do

---

[1] Plaintiff objects to the loan notes based on the deposition testimony of Nicole Harwood, who testified that she did not have personal knowledge of the contents of the notes. The Court overrules the objection. The notes are admissible under the business records exception, as Plaintiff concedes in her opposition to the Bank Defendants' Motion, ECF No. 330 p. 22 ("much of the testimony offered consists of Ms. Harwood reading from a document that she does not have personal knowledge of and for which there is a foundation admissible under the business records exception."). See also F.R.E. 803(6), (b) (outlining business records exception to hearsay rule); Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 819 (9th Cir. 2002). In any case, Plaintiff does not dispute any of the facts contained in the notes; in fact, she confirms them in her declaration discussing her contacts with SunTrust.

2

not show that any such call occurred, and Plaintiff has provided no other evidence of it. Whether the call occurred is a disputed issue of fact. However, the Loan Notes do show that Plaintiff spoke to SunTrust on May 1, 2008, that they discussed loss mitigation options, that SunTrust told her that it would not accept partial or deferred payments, and that SunTrust sent her a loss mitigation application as a result of the call. Loan Notes p. 22. According to the Loan Notes, the next time Plaintiff spoke to SunTrust was in September 2008, Loan Notes p. 21, after she defaulted on her loan in August, Kleine Decl., Ex. 39, ECF No. 287-9, p. 8. Defendants have submitted evidence that Plaintiff has remained in default since that date, and Plaintiff does not dispute that evidence. Id. pp. 3–6.

Plaintiff discussed loan mitigation with SunTrust in September 2008. Loan Notes pp. 20–21. She further discussed loan mitigation with SunTrust on several occasions, including on September 16, October 6, 8, 9, 13, 21, and 23, 2008. On October 21, Plaintiff spoke to the loss mitigation department at SunTrust and asked for an unlimited forbearance plan to give her time to regain employment and avoid foreclosure. Loan Notes p. 19. SunTrust advised her, as it had before, that she did not qualify for a loan modification because she did not have enough income. Id.

A notice of default was recorded on April 21, 2009 by Trustee Corps, stating that the loan was past due in the amount of $34,281.65. Kleine Decl., Ex. 20, ECF No. 284-6 ("First NOD"). That notice of default listed SunTrust as the loan servicer, and MTC Financial, Inc. dba Trustee Corps as the trustee for SunTrust Mortgage, Inc. First NOD p. 2. Trustee Corps recorded a notice of rescission of the first notice of default on January 13, 2010, dated November 16, 2009. Kleine Decl., Ex. 21, ECF No. 284-7 ("First Rescission").

Recontrust recorded a notice of default on June 9, 2010, stating that the loan was past due in the amount of $80,648.42. Kleine Decl., Ex. 22, ECF No. 284-8 ("Second NOD"). The second notice of default listed as servicer U.S. Bank N.A., as trustee for STARM 2007-2 c/o Recontrust Co., N.A. Second NOD p. 2. A substitution of trustee substituting Recontrust for Jackie Miller dated June 10, 2010 was recorded on June 21, 2010. Kleine Decl., Ex. 23, ECF No. 284-9 ("Sub. of Trustee"). Recontrust does not dispute that the substitution occurred after it recorded the notice

of default.

Recontrust recorded a notice of trustee's sale on December 15, 2010, which listed Tamburri's total indebtedness as $758,663.08. Kleine Decl., Ex. 24, ECF No. 284-10 ("Not. of Sale"). The notice was signed on the back by Mary C. Jones, an assistant vice president at SunTrust Mortgage, Inc., on July 8, 2010 in Richmond, Virginia. Not. of Sale p. 2. The sale was scheduled for January 7, 2011. Recontrust rescinded the second notice of default on September 19, 2012. Kleine Decl., Ex. 26, ECF No. 284-11 ("Second Rescission"). No notice of default, foreclosure sale, or related proceeding is currently pending.

### B. Procedural History

Plaintiff filed this action in Contra Costa County Superior Court on April 13, 2011, Case No. C11-00869; SunTrust the action to this Court on June 13, 2011, on the basis of federal question jurisdiction arising out of Plaintiff's claim, now dismissed, for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605. ECF No. 1. Plaintiff sought and, on July 6, 2011, obtained a temporary restraining order enjoining the foreclosure of her home. ECF No. 33. The Court then granted in part and denied in part two motions to dismiss, the first on December 15, 2011, ECF No. 82, and the second on June 21, 2012, ECF No. 115.

## II. LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The Court must draw all reasonable inferences in the light most favorable to the non-moving party. Johnson v. Rancho Santiago Cmty. Coll. Dist., 623 F.3d 1011, 1018 (9th Cir. 2010). However, unsupported conjecture or conclusory statements do not create a genuine dispute as to material fact and will not defeat summary judgment. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

Where the moving party bears the burden of proof at trial, that party bears the initial

4

burden of producing evidence that would entitle it to a directed verdict at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the moving party would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, then the non-moving party has no obligation to produce anything, and summary judgment must be denied. If, however, the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. Id. at 1102–03

At summary judgment, the Court applies the same evidentiary standard of proof that it would apply at trial. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). The Court draws all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight that particular evidence is accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The Court determines whether the non-moving party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party. T.W. Elec. Serv. v. Pac. Elect. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case, summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of fact could not find for the non-moving party based on the record as a whole, there is no "genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Affidavits and declarations "must be made on personal knowledge, set out facts that

1 would be admissible in evidence, and show that the affiant or declarant is competent to testify on
2 the matters stated." Fed. R. Civ. P. 56(c)(4). If a party fails to support an assertion of fact, the
3 Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact
4 undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting
5 materials — including the facts considered undisputed — show that the movant is entitled to it; or
6 (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). "The choice among possible orders
7 should be designed to encourage proper presentation of the record." Adv. Cttee. Notes to 2010
8 Amendments to Fed. R. Civ. P. 56(e). However, "[w]here the evidentiary matter in support of the
9 motion does not establish the absence of a genuine issue, summary judgment must be denied even
10 if no opposing evidentiary matter is presented." Adv. Cttee. Notes to 1963 Amendments to Fed.
11 R. Civ. P. 56(e).

**III. ANALYSIS**

Plaintiff's Third Amended Complaint ("TAC"), ECF No. 146, asserts five causes of action: violation of California Civil Code section 2923.5; wrongful foreclosure in violation of California Civil Code section 2924; violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; fraud; and for declaratory and injunctive relief. Defendants move for summary judgment on each claim.

**A. Cal. Civ. Code § 2923.5**

"Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to 'assess' the borrower's financial situation and "explore" options to prevent foreclosure." Mabry v. Superior Court, 185 Cal. App. 4th 208, 213–14 (2010). Plaintiff alleges SunTrust and Wells Fargo violated California Civil Code section 2923.5 "by failing to contact Plaintiff, in person or by telephone, at least 30 days prior to recording the Notice of Default on June 9, 2010." TAC ¶ 79.

The only remedy for a violation of section 2923.5 is postponement of the foreclosure sale before it occurs. See Mabry, 185 Cal. App. 4th at 231. In the Mabry court's own words, section 2923.5 provides for "more time and only more time." Id. "Civil Code section 2923.5 does not provide for damages . . . or for setting aside a foreclosure sale" once the sale has already taken

6

place. Stebley v. Litton Loan Servicing, LLP, 202 Cal. App. 4th 522, 526 (2011), rev. den'd (Mar. 14, 2012). Where a sale has already occurred, a cause of action arising under section 2923.5 is moot. Walton v. Mortgage Elec. Registration Sys. Inc., 507 F. App'x 720, 721–22 (9th Cir. 2013); Martinez v. Am.'s Wholesale Lender, 446 F. App'x 940, 943 (9th Cir. 2011).

Here, no sale has occurred and none is pending because the second notice of default, which gave rise to this action, has been rescinded.[2] Section 2923.5 does not provide any relief beyond that which Plaintiff has already obtained. Consequently, Defendants' motions for summary judgment on Plaintiff's first cause of action will be granted and judgment entered in their favor on Plaintiff's section 2923.5 claim.

**B.    Wrongful Foreclosure in Violation of California Civil Code Section 2924**

Plaintiff's second cause of action against each Defendant alleges that "improprieties in the assignment, transfer and exercise of the power of sale through the securitization of Plaintiff's mortgage loan" constituted violations of California Civil Code section 2924. TAC ¶ 83. In addition, Plaintiff asserts that SunTrust initiated foreclosure proceedings without having the authorization to do so, that "SunTrust has repeatedly told Plaintiff that Wells Fargo was the owner of Plaintiff's loan," and that US Bank has not responded to Plaintiff's qualified written requests for information about the loan, and has denied ownership of it. Id. ¶¶ 84–92.

California's non-judicial foreclosure scheme, codified at California Civil Code sections 2924 through 2924k, provides the framework for the regulation of foreclosure sales pursuant to the power of sale contained in a deed of trust, such as the one here. See Generally Moeller v. Lien, 25 Cal. App. 4th 822, 830 (Cal. Ct. App. 1994). "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." Id. at 830.

Though the statute itself does not provide for a private right of action, California courts

---

[2] The Court previously enjoined any sale pursuant to that second notice of default while this action was pending, but that injunction is no longer necessary.

7

look to it in evaluating the equitable cause of action for wrongful foreclosure Plaintiff has asserted here. The elements of that cause of action are: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 104 (Cal. Ct. App. 2011) (citing Bank of Am. Nat. Trust & Sav. Ass'n v. Reidy, 15 Cal. 2d 243, 248 (Cal. 1940)).

Defendants move for summary judgment because the notice of default was rescinded, negating the first and second elements of the wrongful foreclosure claim — unlawful sale, and prejudice, and because no sale has taken place. Per Defendants, Recontrust's voluntary rescission of the second notice of default, leaving no foreclosure proceeding pending, mooted Plaintiff's case. The Court agrees that Plaintiff cannot state a claim for wrongful foreclosure on these facts.

Plaintiff argues that "[c]ommon sense and logic dictate" that Defendants cannot "initiate unlawful and fraudulent non-judicial foreclosure proceedings on two separate occasions and proceed to attempt to conduct an illegal foreclosure sale, and then . . . claim that they are immune from civil liability." Opp., ECF No. 330 (no emphasis). Notwithstanding Plaintiff's appeal to "common sense and logic," her position contradicts the many California courts that have held that there is no state law preemptive right of action to determine standing to foreclose, or claim for damages for wrongful initiation of foreclosure proceedings absent a completed sale. See Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 1154 (2011), rev. den'd (May 18, 2011), cert. den'd, 132 S. Ct. 419 (2011); Robinson v. Countrywide Home Loans, Inc., 199 Cal. App. 4th 42, 46 (Cal. Ct. App. 2011).

That Defendants rescinded the notice of default during the pendency of this case does not alter the result. Although no party identified a case where a notice of default was rescinded during the pendency of the litigation, such cases, though rare, do exist. In each case, the plaintiff's wrongful foreclosure claim was mooted by cancellation of the sale. For example, in Wooten v. Countrywide Home Loans Inc., 11-cv-1791-MCE, 2012 WL 346460 (E.D. Cal. Feb. 1, 2012), the

8

court observed in dismissing a pro se plaintiff's complaint that the plaintiff's execution of a loan modification agreement during the pendency of the suit, and the subsequent cancellation of the foreclosure proceedings, likely rendered the plaintiff's claims "directed at the foreclosure proceedings" moot.  In Sakugawa v. Mortgage Elec. Registration Sys. Inc., No. 10-cv-00028-JMS, 2011 WL 776051 (D. Haw. Feb. 25, 2011), the District of Hawaii, evaluating a similar foreclosure statute, granted summary judgment in favor of the defendants where the servicer rescinded the notice of foreclosure because plaintiff could not have suffered damage within the meaning of the wrongful foreclosure claim without a foreclosure sale.  In Medici v. JPMorgan Chase Bank, N.A., 11-cv-00959-HA, 2012 WL 929785 (D. Or. Mar. 16, 2012), the District of Oregon similarly found a wrongful foreclosure claim moot after the notice of foreclosure was rescinded, leaving only the plaintiff's tort claims.  And, in In re Mortgage Elec. Registration Sys. (MERS) Litig., 09-cv-2119-JAT, 2011 WL 4550189 (D. Ariz. Oct. 3, 2011) reconsideration denied, No. 10-cv-1547-PHX-JAT, 2012 WL 932625 (D. Ariz. Mar. 20, 2012), the District of Arizona followed suit.

Similarly unavailing is Plaintiff's argument that her claim survives because she may recover emotional distress damages due to Defendants' conduct.  Again, she cites no decision authorizing emotional distress damages for wrongful foreclosure claims, much less one in which the foreclosure sale was never consummated, and the Court is not aware of any.  Plaintiff's reliance on Ragland v. U.S. Bank, Nat'l Assoc., 209 Cal. App. 4th 182 (2012), is misplaced.  In Ragland, the California court held only that the plaintiff could seek emotional distress damages in connection with her claim for intentional infliction of emotional distress.  Plaintiff there alleged that defendant lender "engaged in outrageous conduct by inducing her to skip the April loan payment, refusing later to accept loan payments, and selling her home at foreclosure."  Id. at 204.  The plaintiff in Ragland did not claim emotional distress damages in connection with a wrongful foreclosure claim, and the Ragland court did not hold that a plaintiff may recover emotional distress damages on a claim for wrongful foreclosure or — more aptly in this case — a claim for *attempted* wrongful foreclosure.[3]

---

[3] Indeed, the Ragland court granted summary judgment in favor of defendants on the plaintiff's claim for negligent infliction of emotional distress.  209 Cal. App. 4th at 208.

1          Plaintiff's reliance on Young v. Bank of America, 141 Cal. App. 3d 108, 113–15 (Cal. Ct. App. 1983), is also misplaced. That case concerned a claim under California's Credit Card Act, and specifically California Civil Code section 1747.50, which provides that a cardholder may bring an action for recovery of damages in the event of a willful violation of the statute. 141 Cal. App. 3d at 113. The case did not concern an alleged wrongful foreclosure, or any of the statutes at issue here.

For the foregoing reasons, the Court will enter judgment against Plaintiff on her wrongful foreclosure claim because no sale has taken place and because Plaintiff cannot show cognizable injury.

### C.     Declaratory Relief

Plaintiff's fifth cause of action for declaratory relief against all Defendants seeks (1) an injunction enjoining Defendants from foreclosing on her home until this action is resolved, and (2) a judicial decree that: (a) the substitutions, notices of default, and notice of trustee's sale are invalid; and (b) that Defendants do not have the legal right to institute foreclosure proceedings. TAC ¶¶ 125, 128. The rescission of the notice of default underlying this action renders the claim moot.

A claim is rendered moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) (quotation omitted). Here, the issues are no longer live, because the notice of default that lead the litigation has been rescinded.

Plaintiff argues that she is "entitled to know under what circumstances these defendants can initiate foreclosure proceedings in the future." ECF No. 331 p. 25; ECF No. 330 p. 27; ECF No. 329 p. 29. With regard to what may happen prospectively, the Court has already noted that there is no right of action to determine preemptively an entity's standing to foreclose in the future. Gomes, 192 Cal. App. 4th at 1154. Moreover, to the extent that Plaintiff seeks an opinion about the legality of a notice of default that might be filed in the future, Plaintiff's claim for declaratory

relief cannot proceed because a judicial pronouncement on that topic "would be an advisory opinion, which the Constitution prohibits." McQuillion v. Schwarzenegger, 369 F.3d 1091, 1095 (9th Cir.2004); Defenders of Wildlife v. Martin, 454 F. Supp. 2d 1085, 1105 (E.D. Wash. 2006) ("issuing a declaratory judgment about the adequacy of a withdrawn biological opinion would have no such effect and would be in the nature of an advisory opinion"). Although Plaintiff is correct that Defendants are free to seek foreclosure on the property again, "any defects in that subsequent action would give rise to a separate claim from what is alleged in the Complaint, which is based on this particular Notice of [Default]." Sakugawa, 2011 WL 776051, at *6.

Plaintiff also argues that her claim is not moot because she still has a claim for attorneys' fees. ECF No. 330 at 23:19-21, 24:3-10. The Court need not decide whether Plaintiff in fact has a valid claim for attorneys' fees, because "the existence of a claim for attorney fees is not sufficient to revive an otherwise moot action." Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir. 1996).

The decision in Smith v. Krueger, 150 Cal. App. 3d 752, 757 (Cal. Ct. App. 1983), upon which Plaintiff relied heavily at the hearing, does not change that conclusion. Krueger stands only for the proposition that rescission of a notice of default does not preclude one party to a deed of trust from seeking attorneys' fees following entry of judgment, where the deed of trust contains an attorneys' fees provision. Id. at 756–57. Krueger says nothing about whether an underlying claim for wrongful foreclosure survives the rescission of a notice of default; indeed, Krueger did not involve a wrongful foreclosure claim.

Plaintiff also alleges that she is entitled to pursue a wrongful foreclosure claim because her credit was damaged as a result of Defendants' actions and alleged misrepresentations. ECF No. 330 p. 13. Plaintiff cites no authority for this assertion. Even if there were any authority, however, the Court would still be required to enter judgment in favor of Defendants. Plaintiff was already in substantial default on her loan, and she presents no evidence that Defendants' actions, rather than her default, caused any injury to her credit rating. See Sakugawa, 2011 WL 776051, at *4 ("Plaintiff was in default on the mortgage loan and has presented no evidence suggesting that the Notice of Foreclosure, as opposed to his default, caused any injury to his credit rating.").

Accordingly, judgment must enter against Plaintiff on her fifth cause of action for

1 declaratory relief.

### D. Fraud

Plaintiff's fourth cause of action for fraud against SunTrust and Wells Fargo alleges that Defendants misrepresented the identity of the owner of Plaintiff's loan because the incentives available to SunTrust and Wells Fargo as servicers led them to prefer foreclosure over a loan modification. To prove her fraud claim, Plaintiff must establish: (1) that SunTrust and Wells Fargo made a misrepresentation to Plaintiff; (2) which they knew to be false; (3) that SunTrust and Wells Fargo intended to induce Plaintiff to rely on it; (4) that Plaintiff did reasonably rely on it; and (5) that she did so to her detriment. Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 93 (Cal. Ct. App. 2001). Defendants move for summary judgment because Plaintiff cannot establish reliance or damages.

While Plaintiff identifies a host of alleged misrepresentations, she fails to explain how she relied on any of them to her detriment. Instead, Plaintiff argues that the reliance element "is met by simply showing that a party would have behaved differently." ECF No. 330 (citing Boschma v. Home Loan Ctr., 198 Cal. App. 4th 230, 251 (Cal. Ct. App. 2011)). But behaving differently, by itself, does not establish a claim for fraud. Plaintiff must have relied *to her detriment* in order to state a claim for fraud. Boschma does not hold otherwise. 198 Cal. App. 4th at 251 (listing elements, including damages).

Even if "behaving differently" were enough, Plaintiff never explains how she behaved differently as a result of Defendants' purported misrepresentations. Plaintiff knew that SunTrust was the servicer of the loan, as evidenced by the literally dozens of phone calls she made to it seeking a loan modification or forbearance. Indeed, Plaintiff herself admits that she sought several such modifications by sending documentation directly to SunTrust. Simply put, even if the foreclosure proceedings were unlawfully initiated (a question the Court does not decide today), Plaintiff does not dispute (1) that she was in default at the time, (2) that she engaged in loss mitigation efforts with SunTrust, (3) and that SunTrust rejected her loan modification applications. Plaintiff never explains how knowing who owned her loan would have changed her behavior.

Finally, Plaintiff appears to argue that her decision to file for bankruptcy was induced by

misrepresentations made by SunTrust in exchange for approving her for a loan modification. But the only evidence Plaintiff offers in this regard is her declaration, in which she states only that she "was told by a SunTrust employee that voluntary Chapter 7 bankruptcy discharge *may* better qualify me for a loan because I would no longer have any unsecured debt following a discharge." Tamburri Decl. ¶ 69 (emphasis added). Plaintiff does not claim that SunTrust or any other defendant promised her that she *would* receive a modification if she filed for bankruptcy, and so to the extent that she implies that she relied on the statement to receive a modification, the reliance was unreasonable. Nor does the evidence support any claim that she filed for bankruptcy based on that statement. Instead, Plaintiff states: "I filed a voluntary Chapter 7 petition in order to halt the sale of my home." Id. ¶ 70. These facts do not establish reliance or damages.

Because Plaintiff cannot show reliance or damages based on Defendants' alleged misrepresentations, the Court will enter judgment against her on her fraud claim.

### E. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

In order to have standing to assert a UCL claim, a private plaintiff must show that she "*suffered injury in fact* and has *lost money or property* as a *result* of unfair competition." Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 521 (Cal. Ct. App. 2013) (original emphasis) (quoting Cal. Bus. & Prof. Code, § 17204). "[T]he phrase 'as a result of' in the UCL imposes a causation requirement; that is, the alleged unfair competition must have *caused* the plaintiff to lose money or property." Hall v. Time Inc., 158 Cal. App. 4th 847, 849 (Cal. Ct. App. 2008) (emphasis added). By definition, a plaintiff does not "satisfy the causation prong of the statute if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" Jenkins, 216 Cal. App. 4th at 521 (quoting Daro v. Super. Ct., 151 Cal. App. 4th 1079 (Cal. Ct. App. 2007)).

Plaintiff cannot meet the economic injury requirement of the UCL. There is no basis for injunctive relief under the UCL, because there is no longer any pending foreclosure to enjoin. Plaintiff did not lose any money or property "as a result of" any of Defendants' actions, let alone suffer a monetary loss capable of restitution by Defendants. Plaintiff has not paid any fees or charges that she alleges were incurred as a result of foreclosure. The foreclosure was initiated

13

only *after* Plaintiff defaulted on her loan. Thus, Plaintiff cannot assert that her alleged economic injury was "caused by" Defendants' acts, because the asserted wrongful "actions occurred *after* [Plaintiff's] default on her loan." See id. (upholding dismissal of UCL claim without leave to amend).

Plaintiff also alleges credit damage and emotional distress, see, e.g., TAC ¶ 108, but those are not compensable "lost money or property" under the UCL. Kariguddaiah v. Wells Fargo Bank, N.A., No. C 09-5716 MHP, 2010 WL 2650492, at *8 (N.D. Cal. July 1, 2010) ("Damage to Kariguddaiah's credit, increased interest payments to other vendors, and emotional distress are not damages capable of restitution").

Because there is no evidence that Plaintiff suffered the economic injury required for UCL standing, the Court will enter judgment against her on her UCL claim.

## IV. MOTION TO EXCLUDE TESTIMONY OF ADAM J. LEVITIN AND THOMAS A. COX

Defendant ReconTrust also moves to exclude the testimony of Plaintiff's expert witnesses Adam J. Levitin and Thomas A. Cox on the grounds that the opinions are irrelevant because the witnesses lack subject matter expertise regarding California's foreclosure statutes, and because their opinions regarding those statutes are improper legal opinions. ECF No. 269. Because the Court will enter judgment in Defendants' favor without reaching these experts' testimony, the Court denies the motion as moot.[4]

## V. CONCLUSION

Because no foreclosure proceeding is currently pending, rendering her first, second, and fifth causes of action for violation of California Civil Code sections 2923.5 and 2924, and for declaratory relief moot, and because Plaintiff cannot establish causation or damages with respect to her third and fourth causes of action for fraud and violation of California's unfair competition

---

[4] The Court would note that ReconTrust both relied directly on Professor Levitin's written opinion in its motion for summary judgment, ECF No. 280 at 15:19, and moved to exclude it. ECF No. 269. The Bank Defendants cited Professor Levin at least three times in their motion. ECF No. 288 at 7:10-12, 13:3-5, 16:23-17:1. Since the Court is denying the motion to exclude for other reasons, it will not comment further on this inconsistency.

1 law, the Court hereby GRANTS Defendants' motions for summary judgment in their entirety.

2 Defendants are ordered to submit a proposed form of judgment within 10 days of this order.

3     **IT IS SO ORDERED**.

4 Dated: August 26, 2013

                                                                  JON S. TIGAR
                                                   United States District Judge